1  ZEIGER, TIGGES & LITTLE LLP
   Marion H. Little, Jr., Esq. (0042679)
2  Michael R. Reed, Esq. (0063995)
   3500 Huntington Center
3  41 South High Street
   Columbus, OH 43215
4  Telephone:    (614) 365-9900
   Facsimile:    (614) 365-7900
5  Email: reed@litohio.com

6  SQUIRE, SANDERS & DEMPSEY L.L.P.
   Joseph A. Meckes (State Bar No. 190279)
7  Daniel T. Balmat (State Bar No. 230504)
   One Maritime Plaza, Suite 300
8  San Francisco, CA 94111-3492
   Telephone: +1.415.954.0200
9  Facsimile: +1.415.393.9887
   Email: jmeckes@ssd.com
10 Email: dbalmat@ssd.com

11 Attorneys for Plaintiff
   THE O.N. EQUITY SALES COMPANY
12
                    **UNITED STATES DISTRICT COURT**
13
                   **NORTHERN DISTRICT OF CALIFORNIA**
14
                          **(SAN JOSE DIVISION)**
15

16
17 THE O.N. EQUITY SALES COMPANY,        Case No.  C07-03303 JF (RS)
   an Ohio Corporation,
                                          The Honorable Jeremy Fogel
18                Plaintiff,
                                          **(Filed via ECF/PACER)**
19       vs.

20 THOMAS NEMES, INDIVIDUALLY            **PLAINTIFF'S NOTICE OF MOTION AND**
   AND AS TRUSTEE OF THE THOMAS          **MOTION FOR AN ORDER AUTHORIZING**
21 NEMES TRUST, and MICHAEL J.           **THE PARTIES TO ENGAGE IN**
   BENKERT, INDIVIDUALLY AND ON          **IMMEDIATE DISCOVERY ON THE ISSUE**
22 BEHALF OF SHORE 2 SHORE               **OF ARBITRABILITY; MEMORANDUM OF**
   ENTERPRISES, INC., and JERRY J.       **POINTS AND AUTHORITIES**
23 THOMAS, INDIVIDUALLY AND AS
   TRUSTEE OF THE JERRY J. THOMAS        [E-Filed concurrently with [Proposed] Order]
24 AND NANCY M. THOMAS 1998 INTER
   VIVOS TRUST, and NANCY M.
25 THOMAS, INDIVIDUALLY AND AS
   TRUSTEE OF THE JERRY J. THOMAS        DATE:        October 5, 2007
26 AND NANCY M. THOMAS 1998 INTER        TIME:        9:00 a.m.
   VIVOS TRUST.                          CTRM:        3, 5th Floor
27
                Defendants.              Complaint Filed:    June 22, 2007
28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

1    TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:

2    PLEASE TAKE NOTICE THAT that, on October 5, 2007 at 9:00 a.m., or as soon

3    thereafter as the matter may be heard, in the courtroom of the Honorable Jeremy Fogel, located at

4    280 South 1st Street, Fifth Floor, San Jose, California 95113, Plaintiff The O.N. Equity Sales

5    Company ("ONESCO") will and hereby does move the Court, pursuant to Rule 26 of the Federal

6    Rules of Civil Procedure and Local Rules 7 and 37, for an Order permitting the parties to engage

7    in immediate discovery on the issue of arbitrability.

8    This motion is based on the memorandum of points and authorities in support hereof, the

9    exhibits attached to this motion, the pleadings, records and papers on file herein and such other

10   and further evidence and argument as may be presented at or before any hearing of this motion.

11

12                                          Respectfully submitted,

13   Dated: August 31, 2007                 ZEIGER, TIGGES & LITTLE LLP

14

15                                          By:_____/s/_____
                                                        Michael R. Reed
16
                                            Attorneys for Plaintiff
17                                          THE O.N. EQUITY SALES COMPANY

18

19

20

21

22

23

24

25

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

1

**TABLE OF CONTENTS**

2
**Page**

3

MEMORANDUM IN SUPPORT ..................................................................................... 1

4

I.      INTRODUCTION ................................................................................................. 1

5

II.     STATEMENT OF THE CASE .............................................................................. 2

6

III.    STATEMENT OF FACTS .................................................................................... 3

7

        A.      Gary Lancaster And The Lancorp Financial Fund Business Trust. ........... 3

8

        B.      Defendants' Irrevocable Commitment To Purchase Lancorp Fund
                Investments ................................................................................................. 3

9

        C.      What Defendants Asserted In Their NASD Statement Of Claim. .............. 4

10

        D.      Defendants' Effort to Rewrite Their Claims Makes Clear That
                Discovery is Appropriate. .......................................................................... 5

11

IV.     LAW & ARGUMENT ......................................................................................... 5

12

        A.      The Court Must Determine Whether An Agreement To Arbitrate
                Exists, And No Presumption Is Applicable To Its Analysis. .................... 5

13

        B.      The Question Of Arbitrability Hinges On Whether The Events
                Giving Rise To Defendants' Claims Occurred When Lancaster

14

                Was An Associated Person Of ONESCO. .................................................. 6

15

                1.      The Existence Of An Agreement To Arbitrate Under
                        NASD Rules Depends On The Timing Of Events Giving

16

                        Rise To The Investor's Claims. ..................................................... 6

17

                2.      In A Securities Action Premised On Alleged Fraud And
                        Misrepresentation, The Events Giving Rise To The Claims

18

                        Are The Alleged Misrepresentations Or Omissions. ..................... 7

19

                3.      Courts Properly Treat Multiple Claims Individually In
                        Determining Whether They Are Subject To An Express
                        Arbitration Agreement. .................................................................. 8

20

        C.      The Issue Of Arbitrability In This Case Must Be Resolved
                Through Application Of Standard Procedures Applicable To

21

                Motions For Preliminary Injunction. ......................................................... 9

22

                1.      A Party Is Irreparably Harmed In Being Forced To
                        Arbitrate A Dispute It Never Agreed To Arbitrate,

23

                        Therefore, A Civil Action For Injunctive Relief Is Proper. ......... 9

24

                2.      Courts Routinely Permit Discovery On The Issue Of
                        Arbitrability. .................................................................................. 9

25

                3.      Courts Routinely Permit Discovery On The Issue Of
                        Arbitrability. ................................................................................ 11

26

V.      CONCLUSION ................................................................................................. 12

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

1

# TABLE OF AUTHORITIES

2

**Page**

*AT&T Tech., Inc. v. Communications Workers of America,*
3       475 U.S. 643 (1986)............................................................................................ 5

4       *Asdar Group v. Pillsbury, Madison & Sutro,*
        99 F.3d 289 (9th Cir. 1996)............................................................................... 7
5
        *Carson v. Giant Food, Inc.,*
6       175 F.3d 325 (4th Cir. 1999)............................................................................. 6

7       *Dean Witter Reynolds, Inc. v. Goyette,*
        25 F. Supp. 2d 1344 (M.D. Fla. 1996) ............................................................ 11
8
        *Edward D. Jones & Co. v. Sorrells,*
9       957 F.2d 509 (7th Cir. 1992)......................................................................... 1, 8

10      *H.L. Libby Corp. v. Skelly & Loy, Inc.,*
        910 F. Supp. 195 (M.D. Pa. 1995) ................................................................... 10
11
        *Hooters of America, Inc. v. Phillips,*
12      39 F. Supp. 2d 582 (D.S.C. 1998)..................................................................... 10

13      *Howsam v. Dean Witter Reynolds, Inc.,*
        537 U.S. 79 (2002)..................................................................................... 11, 12
14
        *International Union of Electrical Radio & Machine Workers,*
15      *AFL-CIO v. Westinghouse Electric Corp.,*
        48 F.R.D. 298 (S.D.N.Y. 1969).]..................................................................... 10
16
        *Investor's Capital Corp. v. Brown,*
17      129 F. Supp. 2d 1340 (M.D. Fla. 2000) ........................................................... 10

18      *LAWI/CSA Consolidators, Inc. v. Wholesale & Retail Food Distribution,*
        *Teamsters Local 63,*
19      849 F.2d 1236 (9th Cir. 1988)............................................................................ 9

20      *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,*
        501 U.S. 350 (1991)............................................................................................ 7
21
        *Litton Finance Printing Division v. National Labor Relations Board,*
22      501 U.S. 190 (1991)............................................................................................ 5

23      *MONY Sec. Corp. v. Bornstein,*
        390 F.3d 1340 (11th Cir. 2004).......................................................................... 6
24
        *MONY Sec., Inc. v. Vasquez,*
25      238 F. Supp. 2d 1304 (M.D. Fla. 2002) ............................................................. 9

26      *Malhotra v. Equitable Life Assurance Society of the United States, AXA,*
        364 F. Supp. 2d 299 (E.D.N.Y. 2005) ............................................................... 7
27
        *McLaughlin Gormley King Co. v. Terminix International Co., L.P.,*
28      105 F.2d 1192 (8th Cir. 1997)........................................................................... 10

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

1

### TABLE OF AUTHORITIES (Continued)

2

<u>Page</u>

3

*Merrill Lynch Investment Managers v. Optibase, Ltd.,*

4

337 F.3d 125 (2nd Cir. 2003).......................................................................... 9

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cohen,*

5

62 F.3d 381 (11th Cir. 1995)............................................................................ 11

6

*Merrill Lynch, Pierce, Fenner & Smith v. Masland,*

7

878 F. Supp. 710 (M.D. Pa. 1995) .................................................................. 11

*Paine Webber, Inc. v. Hofmann,*

8

984 F.2d 1372 (3d Cir. 1993)....................................................................... 8, 11

9

*Sanford v. Memberworks, Inc.,*

483 F.3d 956 (9th Cir. 2007)............................................................................ 9

10

*Three Valleys Municipal Water District v. E.F. Hutton & Co., Inc.,*

11

925 F.2d 1136 (9th Cir. 1991).......................................................................... 5

12

*Wafra Leasing Corp. v. Prime Capital Corp.,*

192 F. Supp. 2d 852 (N.D. Ill. 2002) ............................................................... 7

13

*Wheat, First Sec., Inc. v. Green,*

14

993 F.2d 814 (11th Cir. 1993).................................................................... 1, 4, 6

15

16

### STATE CASES

17

*Antell v. Andersen LLP,*

1998 WL. 245878 (N.D. Ill. May 4, 1998) ...................................................... 7

18

*BS Sun Shipping Monrovia v. Citgo Petroleum Corp.,*

19

2006 WL. 2265041 (S.D.N.Y. Aug. 8, 2006) ................................................. 10

20

*Fyrnetics (Hong Kong) Ltd. v. Quantum Group, Inc.,*

2000 WL. 1139907 (N.D. Ill. Aug. 10, 2000) ................................................. 11

21

*Northwestern Human Services, Inc. v. Panaccio,*

22

2004 WL. 2166293 (E.D. Pa., Sept. 24, 2004) (Exh. K) ................................ 7

23

*Overseas Oil Transport Corp. v. Phibro Energy, A.G.,*

1989 WL. 77176 (S.D.N.Y. Feb. 1, 1989) ...................................................... 10

24

*Sands Brothers & Co., Ltd. v. Ettinger,*

25

2004 WL. 541846 (S.D.N.Y., Mar. 19, 2004) ................................................. 6

26

*The Shaw Group, Inc. v. Triplefine International Corp.,*

2001 WL. 1246583 (S.D.N.Y. Oct. 18, 2001) ................................................ 10

27

*World Group Sec. v. Ko,*

28

2004 WL. 1811145 (N.D. Cal., Feb. 11, 2004)................................................ 6

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

-iii-

1

**MEMORANDUM IN SUPPORT**

2

**I.     INTRODUCTION**

3

4

5

6

> *"[I]n a Title 9 action to compel arbitration, the discovery provisions of the Federal Rules are applicable.  Rule 26 allows discovery only of matters relevant to the controversy, and in a Title 9 action, the issue of arbitrability is a relevant and proper matter for discovery."*

[*Moore's Federal Practice* (2d ed.) § 81.05[7] (emphasis added).[1]]

7

8          Such is the case here.  At issue in this case is whether the claims asserted against Plaintiff

9    O.N. Equity Sales Company ("ONESCO") by Defendants Thomas Nemes, individually, and as

10    Trustee of the Thomas Nemes Trust ("Nemes"); Michael J. Benkert, individually, and on behalf

11    of Shore 2 Shore Enterprises, Inc. ("Benkert"); and Jerry J. and Nancy M. Thomas, individually,

12    and as Trustees of the Jerry J. Thomas and Nancy M. Thomas 1998 Inter Vivos Trust (the

13    "Thomases") (collectively, "Defendants") as part of NASD Case No. 07-01378 (the "NASD

14    Action") are arbitrable.  This is the only issue presented by ONESCO's complaint (Docket No. 1)

15    and its motion for preliminary injunction (filed concurrently).

16          It is undisputed that no written arbitration agreement exists in this case.  Thus, as set forth

17    below and in ONESCO's Motion for Preliminary Injunction, the issue of arbitrability under

18    NASD Rule 12200, as explained in *Wheat, First Sec., Inc. v. Green*, 993 F.2d 814, 820 (11th Cir.

19    1993), necessarily requires a factual inquiry into the timing of events giving rise to the fraud and

20    misrepresentation claims asserted by Defendants in the NASD Action.  As the Court will see,

21    there is a fundamental factual dispute as to the *substance and timing* of events giving rise to

22    Defendants' claims.  Resolution of this dispute is essential to the Court's determination of the

23    arbitrability of such claims – indeed it is the exclusive province of the Court to resolve this.

24          The instant motion is now filed to have the Court resolve what will undoubtedly be a

25    contentious issue at the outset of this case:  the availability of relevant discovery on the issue of

26

27

28

---

[1]      *See also* Moore's Federal Practice (3d ed.) § 81.08[1] ("The federal rules apply only to judicial proceedings under the FAA, such as actions brought in district court to compel arbitration.") (emphasis added).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN     Case No. C07-03303 JF (RS)
IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY

1   arbitrability. In other federal actions involving the same counsel, the same underlying

2   investment, and the same question of arbitrability, Defendants' counsel has taken the position that

3   no discovery is appropriate under the circumstances. Undoubtedly, Defendants will take the same

4   position here.

5        Defendants are wrong. It is hornbook law that in such a case, the issue of arbitrability is a

6   relevant and proper topic for discovery. The case law clearly treats this as a factual issue, and one

7   to be decided only after discovery on and presentation of evidence relevant to the fundamental

8   issue of arbitrability – as in any other civil action governed by the Federal Rules of Civil

9   Procedure. By addressing this issue at this early stage, the Court can timely resolve this

10  inevitable dispute, and order the parties to immediately begin participating in the discovery that

11  will prove essential to the Court's ultimate decision in this case and, specifically, the injunctive

12  relief sought.

13              **II.    STATEMENT OF THE CASE**

14       This case asks whether the claims asserted by Defendants against ONESCO as part of the

15  NASD Action are arbitrable, pursuant to NASD rules, given the timing of events giving rise to

16  Defendants' claims and the fact that Defendants never had any type of customer or contractual

17  relationship with ONESCO. In the NASD Action, Defendants seek to hold ONESCO liable for

18  the alleged actions of an individual who was, at one time, associated with ONESCO, but whose

19  actions, which form the basis for Defendants' claims, had nothing to do with the business of

20  ONESCO and, in fact, occurred *prior to his association therewith*.

21       In light of the timing of and circumstances surrounding the events that provide the factual

22  predicate for Defendants' NASD claims, ONESCO initiated this action to have *the Court*

23  determine the arbitrability of such claims. Specifically, ONESCO seeks a declaration that such

24  claims are not arbitrable pursuant to NASD rules and injunctive relief enjoining Defendants from

25  proceeding with the NASD Action. [*See* Complaint, Docket No. 1.]

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN    Case No. C07-03303 JF (RS)
IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY

### III.    STATEMENT OF FACTS

**A.    Gary Lancaster And The Lancorp Financial Fund Business Trust.**

As more fully explained in our Complaint, the genesis of this dispute are Defendants' investments in a *private placement* offered by the Lancorp Financial Fund Business Trust (the "Lancorp Fund"), a Nevada Business Trust unaffiliated with ONESCO.  Non-party Gary Lancaster ("Lancaster") served as Trustee of the Lancorp Fund.  Lancaster was a registered representative with ONESCO (a broker-dealer registered with the NASD), on an independent contractor basis, from March 23, 2004 to January 3, 2005.  [*See* Exh. A, Form U-5 for Gary Lancaster; Exh. B, Affidavit of Jeffrey Bley, ("Bley Aff'd").]  *As the NASD expressly recognized in its August 10, 2006 Letter of Acceptance, Waiver and Consent Agreement with Lancaster, Lancaster never disclosed his involvement with the Lancorp Fund to ONESCO.*  [*See* Exh. C., Letter of Acceptance, No. 20050034080-01]

As part of this private placement offering, the Lancorp Fund prepared a detailed Private Placement Memorandum, a copy of which is attached to the Complaint as Exhibit A.  Prior to investing in Lancorp, all potential investors, *including Defendants*, were required to review this Memorandum and execute a Subscription Agreement.

**B.    Defendants' Irrevocable Commitment To Purchase Lancorp Fund Investments**

Defendants never established any form of contractual or customer relationship with ONESCO.  Rather, all of their dealings were solely with Lancorp Fund.  More importantly,  the information recovered to date by ONESCO reveals that Defendants' irrevocable commitments to purchase Lancorp Fund investments occurred before Lancaster's association with ONESCO, and that such commitments were induced by alleged misrepresentations or omissions that occurred prior thereto.

For instance, we know that beginning in March 2003, Lancaster and the Lancorp Fund began circulating the Private Placement Memorandum that forms the basis for many, if not all, of Defendant's misrepresentation and omission claims.  We know that Lancaster was affiliated with ONESCO, as a registered representative, *only* from March 23, 2004 to January 3, 2005.  We also

-3-

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN
IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY                    Case No. C07-03303 JF (RS)

1  know that Defendant Nemes executed a subscription agreement with Lancorp Fund on or about

2  July 15, 2003; Defendant Benkert executed a subscription agreement with Lancorp Fund on or

3  about June 23, 2003; and Defendants Jerry Thomas and Nancy Thomas executed a subscription

4  agreement with Lancorp Fund on or about August 14, 2003.  [Exhs. D, E, & F (Nemes, Benkert,

5  and Thomas Subscription Agreements).]

6         In executing the subscription agreements, Defendants memorialized their *irrevocable*

7  *commitments* to purchase investments from the Lancorp Fund.  [*See id.*]  As a matter of law and

8  common sense, any misrepresentations or omissions that induced such commitments (i.e.,

9  Defendants' investment decisions) must have occurred at or before the time of Defendants'

10  execution of the agreements.

11  **C.    What Defendants Asserted In Their NASD Statement Of Claim.**

12         Despite these facts, Defendants will contend that there is no dispute as to the occurrence

13  and timing of events giving rise to their claims asserted in the NASD Action, and that such events

14  clearly occurred during Lancaster's tenure with ONESCO.  Thus, according to Defendants,

15  discovery is inappropriate.  Such a contention is belied by Defendants' own allegations in their

16  NASD statement of claim.

17         Defendants' claims are based primarily, if not completely, on alleged material

18  misrepresentations and omissions that induced their *original decisions* to invest in the Lancorp

19  Fund.  This is made clear in the allegations contained on pages 17 through 20 of Defendants' first

20  amended statement of claim.

21         For instance, in paragraph 41 of their first amended statement of claim, Defendants allege

22  that "Respondent ONESCO, acting through Lancaster, *recommended* that Claimants invest in ...

23  [an] unregistered, fraudulent investment ..."  [*See* First Amended Statement of Claim, at 17

24  (emphasis added) (Compl. Exh. K).]  At paragraph 42, Defendants allege that "Respondent

25  ONESCO, acting through Lancaster, made numerous false representations to Claimants

26  concerning this Lancorp Financial Fund Business Trust ... and Megafund Corporation ...

27  investment."  [*Id.* at 18]  And in paragraphs 43 to 47, Defendants accuse ONESCO, acting

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN     Case No. C07-03303 JF (RS)
IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY

1  through Lancaster, of making numerous other misrepresentations or omissions with respect to the

2  risks associated with and operations of the Lancorp Fund. [*Id.* at 18-20.]

3  　　　　These allegations are premised in large part on statements contained in (and/or alleged

4  omissions from) the private placement memorandum, which was unquestionably provided to

5  Defendants *before they* executed their irrevocable commitments to purchase Lancorp Fund

6  investments, and before Lancaster became affiliated with ONESCO.  In short, although

7  Defendants assert a number of federal and state law causes of action in their NASD statement of

8  claim, *all* are fundamentally premised on the same events or occurrences (i.e., the same factual

9  predicate):  *Lancaster's alleged misrepresentations and/or omissions that induced their original*

10 *decision to invest in the Lancorp Fund*.

**D.**　**Defendants' Effort to Rewrite Their Claims Makes Clear That Discovery is Appropriate.**

13 　　　　While we believe this simple analysis compels the issuance of injunctive relief,

14 Defendants contend otherwise and will attempt to interject "new facts."  By doing so, Defendants

15 will attempt to create factual disputes as to the occurrence and timing of events giving rise to the

16 Defendants' NASD claims; while at the same time inexplicably arguing that no actual dispute

17 exists.   In any event, discovery as to the actual timing and occurrence of the events giving rise to

18 Defendants' claims is clearly appropriate.

**IV.**　**LAW & ARGUMENT**

**A.**　**The Court Must Determine Whether An Agreement To Arbitrate Exists, And No Presumption Is Applicable To Its Analysis.**

22 　　　　The law is clear that the question of whether a given dispute is arbitrable is for the Court

23 and not an arbitration panel to decide.  Indeed, U.S. Supreme Court authority holds that questions

24 of arbitrability must be resolved by the courts.  *See Litton Fin. Printing Div. v. Nat'l Labor*

25 *Relations Bd.*, 501 U.S. 190, 208 (1991) ("whether or not a company is bound to arbitrate, as well

26 as what issues it must arbitrate, is a matter to be determined by the Court"); *AT&T Tech., Inc. v.*

27 *Communications Workers of America*, 475 U.S. 643, 649 (1986) (determining whether a contract

28 creates a duty to arbitrate a particular matter is an issue for the courts to decide).  The Ninth

SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

-5-

PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRATION    Case No. C07-03303 JF (RS)

1  Circuit, obviously, adheres to the same rule. *See Three Valleys Mun. Water Dist. v. E.F. Hutton*

2  *& Co., Inc.*, 925 F.2d 1136, 1141 (9th Cir. 1991) ("The court must determine whether a contract

3  *ever* existed; unless that issue is decided in favor of the party seeking arbitration, there is no basis

4  for submitting a question to an arbitrator.").

5       In resolving this issue, there is no presumption of arbitrability. The general presumption

6  in favor of arbitrability is limited to disputes where the existence of an express arbitration

7  agreement is not in question. The presumption has no application where, as here, the _existence_ of

8  an agreement covering the claims at issue is the very question to be decided by the Court. *See,*

9  *e.g., Carson v. Giant Food, Inc.*, 175 F.3d 325, 329 (4th Cir. 1999).

    **B.**    **The Question Of Arbitrability Hinges On Whether The Events Giving**
10           **Rise To Defendants' Claims Occurred When Lancaster Was An**
11           **Associated Person Of ONESCO.**

        **1.**    **The Existence Of An Agreement To Arbitrate Under NASD Rules**
12                **Depends On The Timing Of Events Giving Rise To The Investor's**
13                **Claims.**

14       To compel a broker-dealer to arbitrate under NASD Rules, and specifically Rule 12200 of

15  the NASD arbitration code, a claimant must qualify as a "customer" of either the broker-dealer or

16  of a person associated with the broker-dealer _at the time of the occurrence of events giving rise to_

17  _his or her claims_. *See, e.g., Wheat, First Securities, Inc. v. Green*, 993 F.2d 814, 820 (11th Cir.

18  1993). In other words, "customer" status, for purposes of arbitrability under the NASD Rules

19  "must be determined as of the time of the events providing the basis for the allegations of fraud."

20  *Id.* ("customer" status for purposes of arbitrability "should be determined as of the time of the

21  occurrence of events that constitute the factual predicate for the causes of action contained in the

22  arbitration complaint").[2]

23       Thus, critical to this Court's decision on the issue of arbitrability is a determination both

24  of the events giving rise to Defendants' claims and the timing thereof.

25  ---

[2]    *Accord: MONY Sec. Corp. v. Bornstein*, 390 F.3d 1340 (11th Cir. 2004) (reaffirming that
26  "customer status for purpose of the NASD is 'determined as of the time of the events providing the
allegations.'"); *World Group Sec. v. Ko*, 2004 WL 1811145, at *6 (N.D. Cal., Feb. 11, 2004) (holding
27  under similar NASD Rule 10201 that an associated person had no claim against member firm based on
contractual relationship and events occurring before the person was associated with the member) (Exh. G);
28  *Sands Bros. & Co., Ltd. v. Ettinger*, 2004 WL 541846 (S.D.N.Y., Mar. 19, 2004) (Exh. H).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN    Case No. C07-03303 JF (RS)
IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRATION

2.     **In A Securities Action Premised On Alleged Fraud And Misrepresentation, The Events Giving Rise To The Claims Are The Alleged Misrepresentations Or Omissions.**

It is well settled that in an action premised on allegations of securities fraud, the events giving rise to an investor's claims are the *misrepresentations* that induce the investments in question – not the date of sale, or of payment with respect to the investments in question. *See, e.g., Hornor, Townsend*, Case No. 1:01-CV-2979-JEC, *9 (N.D. Ga. Sept. 6, 2005) ("The events that constitute the factual predicate for defendants' claim that Tommy Fountain made fraudulent representations are the sales pitches that Fountain made up to the date that the sale was made.") (Exh. I).

In an analogous context, courts consistently identify alleged pre-sale misrepresentations and omissions as the events giving rise to claims under Federal Rule 10b-5, for purposes of the statutes of repose applicable thereto. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 364 (1991) (holding that the statute of repose for a Rule 10b-5 claim starts from the date of the alleged misrepresentation inducing a sale, not from the date of sale itself); *Asdar Group v. Pillsbury, Madison & Sutro*, 99 F.3d 289, 294-95 (9th Cir. 1996). This rule recognizes the basic proposition that a cause of action premised on fraud arises at the time of "the alleged fraudulent conduct" – *i.e.*, a defendant's "affirmative misrepresentation" or omission. *See Antell v. Andersen LLP*, 1998 WL 245878, *5-6 (N.D. Ill. May 4, 1998) ("violation" of Rule 10b-5 occurs when "a defendant makes an affirmative misrepresentation") (Exh. J).[3]

In applying this rule, courts presume "[a]s a matter of simple logic, [that] any misrepresentation or omission must have occurred *on or before the date of sale*." *Northwestern Human Services, Inc. v. Panaccio*, 2004 WL 2166293, at *18 (E.D. Pa., Sept. 24, 2004) (holding that a "violation" of Section 10(b) occurs when the fraudulent misrepresentation is made, not at

---

[3]     *See also Malhotra v. Equitable Life Assurance Society of the United States, AXA*, 364 F. Supp.2d 299, 305 (E.D.N.Y. 2005) (subsequent purchases are time-barred unless "*triggered by a new and materially different omission*") (emphasis added); *Wafra Leasing Corp. v. Prime Capital Corp.*, 192 F. Supp. 2d 852, 863-64 (N.D. Ill. 2002) (holding that the violation "occurs when the defendant makes a misrepresentation in connection with the sale or purchase of securities").

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

-7-
PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN          Case No. C07-03303 JF (RS)
IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY

1    the time of purchase) (emphasis added) (Exh. K).  In other words, common sense dictates that a

2    misrepresentation or omission cannot induce an investment decision *after that decision has*

3    *already been made*.

4        The same rule applies here.  Because Defendants' claims are premised on fraud and

5    misrepresentation/omission, the events giving rise to their claims are the alleged

6    misrepresentations or omissions that induced their decisions to invest in Lancorp Fund.  The

7    question of whether such misrepresentations or omissions occurred before Lancaster became

8    affiliated with ONESCO cannot be fully answered without discovery on the issue of arbitrability.

9            **3.    Courts Properly Treat Multiple Claims Individually In**
              **Determining Whether They Are Subject To An Express**
10            **Arbitration Agreement.**

11        Even assuming for the sake of argument that one or more of Defendants' claims is

12    arbitrable, the arbitrability of one claim does not automatically mean that other, non-arbitrable

13    claims should be ordered to arbitration.  In fact, courts properly treat different claims individually

14    in determining arbitrability based on the timing of events and occurrences giving rise to them.

15    *See*, *e.g.*, *Paine Webber, Inc. v. Hofmann*, 984 F.2d 1372, 1377 (3d Cir. 1993).

16        If the timing of events giving rise to certain claims falls outside of the alleged arbitration

17    agreement, then such claims *should not be arbitrated* – even if others are subject to arbitration.

18    *Id.  See also Edward D. Jones & Co. v. Sorrells*, 957 F.2d 509 (7th Cir. 1992) (vacating NASD

19    arbitration award as to certain claims based on determination that such claims were not arbitrable

20    due to timing of events giving rise to them); *Hornor, Townsend & Kent, Inc.*, *supra*, at *11 (one

21    of multiple claims subject to arbitration because "representations inducing" investment occurred

22    when representative was associated with broker-dealer).

23        Thus, in this case, even if the Court determines that one or more of Defendants' claims are

24    arbitrable, it should not simply order all remaining claims to arbitration.  Rather, the Court must

25    examine each claim and determine the timing of the events or occurrences giving rise thereto – *an*

26    *inherently factual issue*.  If any of Defendants' claims fall outside of the applicable NASD rules

27    (*i.e.*, the agreement), they cannot be arbitrated.

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN    Case No. C07-03303 JF (RS)
IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY

**C.**   **The Issue Of Arbitrability In This Case Must Be Resolved Through Application Of Standard Procedures Applicable To Motions For Preliminary Injunction.**

        **1.**   **A Party Is Irreparably Harmed In Being Forced To Arbitrate A Dispute It Never Agreed To Arbitrate, Therefore, A Civil Action For Injunctive Relief Is Proper.**

Courts hold that an action for declaratory and injunctive relief, pursuant to Federal Rule 65, is the appropriate method for a party to protect itself from being compelled to arbitrate claims for which it has no obligation to do so. *See also Merrill Lynch Investment Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2nd Cir. 2003) (unless arbitration is enjoined, movant would suffer irreparable harm by being forced to expend time and resources arbitrating an issue that is not arbitrable and as to which any award would not be enforceable); *Sanford v. Memberworks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007) ("It is axiomatic that … a party cannot be required to submit any dispute which he has not agreed so to submit."). In light of this settled precedent, ONESCO filed the instant action in an effort to *fully and finally* adjudicate the parties' rights with respect to the alleged arbitration agreements (i.e., NASD Rules) at issue, and in order to prevent the irreparable harm that would inevitably result if ONESCO is forced to arbitrate claims that it never agreed to arbitrate.[4] In short, this is a quintessential civil action.

        **2.**   **Courts Routinely Permit Discovery On The Issue Of Arbitrability.**

> "[I]n a Title 9 action to compel arbitration, the discovery provisions of the Federal Rules are applicable. Rule 26 allows discovery only of matters relevant to the controversy, <u>and in a Title 9 action, the issue of arbitrability is a relevant and proper matter for discovery</u>."

[*Moore's Federal Practice* (2d ed.) § 81.05[7] (emphasis added).]

It is hornbook law that discovery on the issue of arbitrability is proper with respect to a party's motion to compel arbitration – *an action expressly governed by the Federal Arbitration Act*. It follows that discovery on the issue of arbitrability is equally, if not more, appropriate in a

---

[4]   *See LAWI/CSA Consolidators, Inc. v. Wholesale & Retail Food Distribution, Teamsters Local 63*, 849 F.2d 1236, 1241 n.3 (9th Cir. 1988) (holding that party was entitled to injunctive relief once it established that it was not under a contractual duty to arbitrate); *MONY Sec., Inc. v. Vasquez*, 238 F. Supp. 2d 1304, 1308 (M.D. Fla. 2002) ("This Court has continuously held that irreparable harm is present if a party is compelled to arbitrate a claim absent an agreement between the parties to arbitrate.).

SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY     Case No. C07-03303 JF (RS)

1  preliminary injunction action, which is governed by Rule 65 of the Federal Rules of Civil

2  Procedure.  Indeed, Federal Rule 81(a)(3) contemplates discovery on the issue of arbitrability

3  even in actions brought solely pursuant to the Federal Arbitration Act:

> "[T]he petitioner argues that the Federal Arbitration Act
> contemplates a speedy and inexpensive determination of the
> question of arbitrability.  In light of this, the petitioner contends that
> the application of the normal discovery rules of the Federal Rules of
> Civil Procedure would be inimical to this statutory scheme. …
>
> This argument, though, as even the petitioner recognizes,
> flies in the face of the clear language of Rule 81(a)(3), F.R. Civ.P.,
> which provides that the Federal Rules of Civil Procedure apply to
> proceedings under Title 9, U.S.C., to the extent that matters of
> procedure are not provided for in those statutes.  Title 9 is silent on
> the question of the availability of discovery devices in proceedings
> brought pursuant to its provisions.  If it had been deemed necessary
> as a matter of policy to exempt Title 9 proceedings from the usual
> discovery procedures it would have been a simple matter for the
> draftsmen of Rule 81(a)(3) to have done so."

[*International Union of Electrical Radio & Machine Workers, AFL-CIO v. Westinghouse Electric Corp.*, 48 F.R.D. 298, 300 (S.D.N.Y. 1969).]

14  Recognizing that, as here, the question of arbitrability often hinges on the resolution of

15  factual disputes, courts routinely permit the parties to conduct discovery – *including depositions* –

16  on that issue, whether the action is brought pursuant to the Arbitration Act or the federal rules.

17  *See Investor's Capital Corp. v. Brown*, 129 F. Supp.2d 1340, 1341 (M.D. Fla. 2000) ("this Court

18  … concludes that the Plaintiff is entitled to limited discovery *on the 'customer' issue*" for

19  purposes of determining arbitrability under NASD rules) (emphasis added); *International Union*

20  *of Electrical Radio & Machine Workers, AFL-CIO v. Westinghouse Electric Corp.*, 48 F.R.D.

21  298, 300-01 (S.D.N.Y. 1969) (noticed depositions relating to issue of arbitrability must proceed).[5]

---

[5]  *See also Overseas Oil Transport Corp. v. Phibro Energy, A.G.*, 1989 WL 77176, *3 (S.D.N.Y. Feb. 1, 1989) (with respect to party's motion to compel arbitration, "discovery is allowed into the issue of whether an arbitrable contract exists.") (Exh. L); *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, 2006 WL 2265041, *4 (S.D.N.Y. Aug. 8, 2006) (discovery was "necessary" on issue of contract negotiation and formation before court could decide issue of arbitrability, in action where plaintiff sought declaration that Defendant's claims were not arbitrable) (Exh. M); *H.L. Libby Corp. v. Skelly & Loy, Inc.*, 910 F. Supp. 195, 200 (M.D. Pa. 1995) (on party's motion to compel arbitration, and with respect to issue of "whether their contract included the agreement to arbitrate," court "permit[ted] a limited period for discovery"); *McLaughlin Gormley King Co. v. Terminix International Co., L.P.*, 105 F.2d 1192, 1193 (8th Cir. 1997) (affirming trial court order "freezing resolution of the parties' dispute pending discovery pertinent to the issue of arbitrability"); *The Shaw Group, Inc. v. Triplefine International Corp.*, 2001 WL 1246583, *1 (S.D.N.Y. Oct. 18, 2001) (recognizing that parties may conduct discovery "as to the arbitrability of … claims") (Exh. N); *Hooters of America, Inc. v. Phillips*, 39 F. Supp.2d 582, 591 (D.S.C.

-10-

SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

1    As these authorities make clear, discovery in this case is both necessary and proper with

2    respect to the question of arbitrability.

3    ### 3.    **Courts Routinely Permit Discovery On The Issue Of Arbitrability.**

4

5    Consistent with the decisions permitting discovery on the issue of arbitrability, courts

6    routinely consider extrinsic evidence and conduct evidentiary hearings in cases where a broker-

7    dealer seeks injunctive relief to enjoin arbitration.[6]  The mere fact that arbitrability is in issue does

8    not change the process due the parties under Rule 65 of the Federal Rules of Civil Procedure.

9    *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cohen*, 62 F.3d 381, 386 (11th Cir. 1995),

10    is directly on point.  In that case, the plaintiff broker-dealer sought injunctive relief to enjoin the

11    arbitration of the defendant investors' misrepresentation and omission claims because such claims

12    were premised on events and occurrences outside of the timeframe contemplated under NASD

13    rules.  *Id.*  The defendants argued that the events and occurrences happened at a later date, and

14    thus, their claims based on those occurrences were arbitrable under NASD rules.  *Id.*  After the

15    district court summarily dismissed the plaintiff's action, the Eleventh Circuit reversed and

16    ordered the district court to fully "examine each of the [NASD claimants'] claims in order to

17    determine what is the 'occurrence or event' giving rise to that claim." *Id.* at 385.[7]

18    1998) (party "entitled to limited discovery relative to the circumstances surrounding the making of the
alleged arbitration agreement" including "interrogatories, requests to produce and five depositions").

19

20    [6]    *See Merrill Lynch, Pierce, Fenner & Smith v. Masland*, 878 F. Supp. 710, 714-15 (M.D. Pa. 1995)
("[T]he first step will be to determine whether parties intended to submit disputes over the operative

21    occurrence or event, and/or when it occurred to arbitration.  *In resolving this question, the court should
look to the language of the contract and all relevant extrinsic evidence. ... An evidentiary hearing is
necessary for this determination*.") (emphasis added); *Dean Witter Reynolds, Inc. v. Goyette*, 25 F. Supp.

22    2d 1344, 1344-46 (M.D. Fla. 1996) (granting preliminary injunction enjoining arbitration based on timing
of events giving rise to investors' claims after "consideration of the parties' pleadings, *the evidence filed

23    herein*, and the arguments of counsel") (emphasis added); *Paine Webber, Inc. v. Hofmann*, 984 F.2d 1372,
1382 (3d Cir. 1993) (in resolving dispute as to arbitrability based on timing of "operative occurrence or

24    event, ... the court should look to the language of the contract and *all relevant extrinsic evidence*") (also
recognizing that question of "operative occurrence or event" includes "many factual disputes to be

25    resolved") (emphasis added); *Fyrnetics (Hong Kong) Ltd. v. Quantum Group, Inc.*, 2000 WL 1139907
(N.D. Ill. Aug. 10, 2000) (court held "evidentiary hearing to assist in determining whether the dispute that

26    gave rise to this action is subject to mandatory arbitration provisions") (Exh. O).

27    [7]    Subsequent to *Merrill Lynch*, the U.S. Supreme Court, in a limited holding, determined that
the NASD's express six-year arbitration limitation rule, at issue in *Merrill Lynch*, generally does

28    not present a question of arbitrability for the court.  *See Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002).  This subsequent holding (which addressed an NASD rule not at issue here),

-11-

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

1    The appeals court held that, in order to decide the issue of arbitrability under NASD rules,

2    the district court was required to "look to the parties' agreement and attempt to determine their

3    intentions." *Id.*  Given the nature of the defendants' claims, it was "not a foregone conclusion …

4    that the purchase date is the relevant occurrence or event giving rise" their claims. *Id.*  In

5    ordering a full examination of the defendant's claims for purposes of arbitrability, the court

6    rejected the defendants' argument that the burdens imposed on the parties justified less than full

7    process with respect to the Plaintiff's motion:

8        On remand, the district court should examine each of the Cohens'
         claims in order to determine what is the "occurrence or event"
9        giving rise to that claim. … *Although our holding may compel
         federal courts to hold mini-trials on timeliness, which may be
10       followed by full arbitration if the claims are not deemed time-
         barred, concerns for judicial economy alone are not sufficient to
11       justify interference with the binding agreement of the parties.*

12   [*Id.* at 385 (emphasis added).]

13   The same is true here.  Any burden imposed on the parties by discovery on the issue of

14   arbitrability is outweighed by the parties' respective rights to have their arbitration agreement

15   applied consistent with its express terms.

16   ## V.    CONCLUSION

17   For all of the reasons set forth herein, discovery on the issue of arbitrability is both

18   relevant and essential in this case.   As a result, such discovery must commence without delay.

19                                              Respectfully submitted,

20   Dated: August 31, 2007                    ZEIGER, TIGGES & LITTLE LLP

21

22                                             By:_____/s/_____
                                                             Michael R. Reed
23
                                               Attorneys for Plaintiff
24                                             THE O.N. EQUITY SALES COMPANY

25   SANFRANCISCO/231495.2

26   _____

27   in no way impacts the required arbitrability analysis employed by the *Merrill Lynch* court, and
     specifically the court's recognition that the question of timing for purposes of arbitrability
28   requires *a detailed inquiry* into the occurrence and timing of events giving rise to an investor's
     claims.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

-12-
PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN     Case No. C07-03303 JF (RS)
IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRATION

1

## PROOF OF SERVICE
(Pursuant to Federal Law)

2

3

The undersigned certifies and declares as follows:

4

I, REGINA ARROYO, am a resident of the State of California and over 18 years of age and am not a party to this action.  My business address is One Maritime Plaza, Suite 300, San Francisco, California  94111-3492, which is located in the county where any non-personal service described below took place.

5

6

On August 31, 2007, a copy of the following document(s):

7

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY; MEMORANDUM OF POINTS AND AUTHORITIES**

8

9

were served via United States District Court Electronic Filing Service on the party(ies) as set forth below:

10

11

Joel A. Goodman
Goodman & Nekvasil, P.A.
Email: gn.law@verizon.net

12

13

Richard Angelo Kutche
Law Offices of Richard A. Kutche
Email: rakutche@pacbell.net

14

15

Attorneys for all Defendants

16

17

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  Executed on August 31, 2007, at San Francisco, California.

18

19

*/s/  Regina Arroyo*
REGINA ARROYO

20

21

22

23

24

25

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY                Case No. C07-03303 JF (RS)

## PROOF OF SERVICE
(Pursuant to Federal Law)

The undersigned certifies and declares as follows:

I, Kim Nhung Phan, am a resident of the State of California and over 18 years of age and am not a party to this action. My business address is One Maritime Plaza, Suite 300, San Francisco, California 94111-3492, which is located in the county where any non-personal service described below took place.

On August 31, 2007, a copy of the following document(s):

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY; MEMORANDUM OF POINTS AND AUTHORITIES**

were served via United States District Court Electronic Filing Service on the party(ies) as set forth below:

Joel A. Goodman
Goodman & Nekvasil, P.A.
Email: gn.law@verizon.net

Richard Angelo Kutche
Law Offices of Richard A. Kutche
Email: rakutche@pacbell.net

Attorneys for all Defendants

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. Executed on August 31, 2007, at San Francisco, California.

_/s/ Kim Nhung Phan_
KIM NHUNG PHAN

PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY                    Case No. C07-03303 JF (RS)