Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2003 WL 23832424 (N.D.Ga.)
(Cite as: Not Reported in F.Supp.2d)

▷

Hornor, Townsend & Kent, Inc. v. Hamilton
N.D.Ga.,2003.
Only the Westlaw citation is currently available.
United States District Court,N.D. Georgia, Atlanta Division.
HORNOR, TOWNSEND & KENT, INC. Plaintiff,
v.
Joseph HAMILTON and Millicent Hamilton, Defendants.
No. Civ.A.1:02 CV 2979 J.

Sept. 29, 2003.

Christian R. Bartholomew, Randi Perry Spallina, Morgan Lewis & Bockius, Miami, FL, Jonathan Brennan Butler, Paul W. Stivers, Rogers & Hardin, Atlanta, GA, for Plaintiff.
J. Pat Sadler, Sadler & Hovdesven, Atlanta, GA, Joel A. Goodman, Goodman & Nekvasil, Clearwater, FL, for Defendants.

*ORDER*

CARNES, J.

*1 This case is before the Court on Plaintiff's Motion for Relief From Judgment Pursuant to Fed.R.Civ.P. 60(b)(2) and/or 60(b)(3) [35], Plaintiff's Motion to Exceed Page Limitation [41], Plaintiff's Request for Hearing [48], and Defendants' Motion for Discovery Prior to this Court's Ruling on Plaintiff's Motion for Relief From Judgment [57]. The Court has reviewed the record and the arguments of the parties and, for the reasons set forth below, concludes that Plaintiff's Motion for Relief From Judgment [35] should be DENIED until the Court obtains jurisdiction to consider, after which it should be GRANTED, Plaintiff's Motion to Exceed Page Limitation [41] should be GRANTED, Plaintiff's Request for Hearing [48] should be DENIED, and Defendants' Motion for Discovery Prior to this Court's Ruling on Plaintiff's Motion for Relief From Judgment [57] should be DENIED.

*BACKGROUND*

The dispute underlying this litigation arose over the purchase of investments in payphones by Joseph and Millicent Hamilton (the "Hamiltons"). The Hamiltons lost $364,000 when they purchased allegedly fraudulent, unregistered securities from investment broker Tommy Fountain. They allege that Tommy Fountain was acting as a registered agent for Hornor, Townsend & Kent, Inc. ("HTK"), a brokerage firm, when he sold them the investments, and the Hamiltons therefore seek to hold HTK responsible for their losses. On April 27, 2001, the Hamiltons filed a Statement of Claim against HTK, seeking arbitration before the National Association of Securities Dealers ("NASD"), pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2 (2003).

After the Hamiltons filed their Statement of Claim, HTK filed an action for Declaratory and Injunctive Relief, seeking a Declaratory Judgment that no agreement to arbitrate exists between HTK and the Hamiltons that would require HTK to participate in the arbitration and seeking an Order from this Court staying the arbitration. HTK contended that, contrary to the Hamiltons' allegations in their Statement of Claim, the Hamiltons did not purchase the allegedly fraudulent investments from Tommy Fountain, but instead purchased them from his son, Scott Fountain, who was never associated with HTK in any way. Thus, HTK contended that, as the Hamiltons were never customers of HTK or of any of its associated persons, HTK could not be liable for any alleged losses they may have sustained on the investments in question.

In an Order [32] dated August 6, 2002, this Court concluded that a valid agreement to arbitrate existed between the parties and that HTK was required to arbitrate. (Order [32] at 8.) [FN1] The Court granted the Hamiltons' Motion for Order Directing Arbitration [27] and dismissed the case. (*Id.*) Specifically, the Court held that HTK was bound to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT Q

Not Reported in F.Supp.2d

Page 2

Not Reported in F.Supp.2d, 2003 WL 23832424 (N.D.Ga.)
**(Cite as: Not Reported in F.Supp.2d)**

arbitrate by Rule 10301(a) of the NASD Code of Arbitration Procedure, which provides, in relevant part:

> FN1. The Court's Order has subsequently been published. See *Hornor, Townsend & Kent, Inc. v. Hamilton*, 218 F.Supp.2d 1369 (N.D.Ga.2002). This publication was done without the Court's permission or prior knowledge. Although the Court does not know for sure how this happened, it has been the Court's experience that whenever a case has been published without its permission, such has occurred through the efforts of the winning counsel to publicize his victory. For a variety of reasons, this Court disagrees with the publication of a district court's Order without the latter's permission. A district court is in a better position than a prevailing attorney to decide whether a particular decision is appropriate for publication. One reason not to publish a district court opinion is that the court may sometimes vacate its decision. That has happened here, and now this Court will be forced to publish this current Order, for no other reason than to keep the public record straight.
> Nevertheless, when citing to the previous Order in this case, the Court will continue to cite to that previous Order in the format in which it was originally issued by this Court, not its published form.

Any dispute, claim, or controversy ... between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code, as provided by any duly executed and enforceable written agreement or upon the demand of the customer.

*2 NASD Code § 10301(a). The Court reached its conclusion by applying the "two-component test" for determining whether the party challenging arbitration is entitled to litigate the matter fully before the court, as set out in *Wheat, First Secs.,*

*Inc. v. Green*, 993 F.2d 814, 817 (11th Cir.1993). (Order [32] at 27-34.) Under this two-prong test, a party challenging arbitration must unequivocally deny that an agreement to arbitrate was reached and must also offer "some evidence" to substantiate that denial. *Wheat, First Secs.*, 993 F.2d at 817; *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir.1992) (citing *T & R Enters., Inc. v. Cont'l Grain Co.*, 613 F.2d 1272, 1278 (5th Cir.1980)). Otherwise, the district court has no choice but to compel arbitration. See *Chastain*, 957 F.2d at 855 (to place the making of the arbitration agreement in issue, a party must substantiate his denial of such an agreement "with enough evidence to make the denial colorable").

The Court found that HTK met the first prong of the test by unequivocally denying that it had an agreement to arbitrate with the Hamiltons. (*Id.* at 27.) The Court concluded, however, that the Hamiltons alleged sufficient facts and produced sufficient evidence to establish that they were customers of Tommy Fountain, an associated person of HTK, and that HTK failed to produce " some evidence" to substantiate its denial that the Hamiltons were customers of Tommy Fountain. (*Id.* at 33-34.) The Court thus concluded that the Hamiltons' claims fell within the scope of NASD Rule 10301 and that HTK was therefore required to submit to mandatory arbitration of these claims. (*Id.* at 34.)

*DISCUSSION*

I. *The Instant Motion to Reconsider*

On October 8, 2002, HTK filed the instant motion requesting the Court to vacate its Order of August 6, 2002, which Order directed HTK to arbitrate with the Hamiltons. (Pl.'s Mot. For Relief from J. Pursuant to Fed.R.Civ.P. 60(b)(2) and/or 60(b)(3) and Supp. Mem. of Law ("Pl.'s Mot. for Relief") [35] at 1.) HTK contends that the Hamiltons have recently produced documents in the arbitration ordered by this Court that establish that either they or their counsel misled the Court. (*Id.*) HTK asserts that these documents show that the Hamiltons

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-03303-JF   Document 24-18   Filed 08/31/2007   Page 3 of 11

Page 4 of 12

Not Reported in F.Supp.2d                                                                                                          Page 3
Not Reported in F.Supp.2d, 2003 WL 23832424 (N.D.Ga.)
**(Cite as: Not Reported in F.Supp.2d)**

actually made their first investment in ETS Payphones on August 2, 1999, before Tommy Fountain was ever even associated with HTK, not in October 1999, as they had represented to the Court. (*Id.* at 2-3.) Specifically, HTK points to a Purchase Agreement, dated August 2, 1999, under which the Hamiltons purchased 34 payphones for $238,000, to be leased and shipped to ETS, subject only to a 15-day right of refusal. (*Id.* at 4 and Ex. F.) The Hamiltons did not exercise this right of recision and were then sent a confirming letter dated September 10, 1999, welcoming them to the "ETS Payphone Equipment Lease Program." (*Id.* at 4 and Ex. G.) The letter stated that "[t]he 'Commencement Date' for your 'Payphone Equipment Lease' is hereby established and your first lease payment will be made and mailed on October 1, 1999." (*Id.*)

*3 HTK also argues that the Hamiltons have produced "documents that belie their claim that they relied or could have relied on Tommy [Fountain]'s status as an HTK broker." (*Id.* at 5.) Included in these documents are business cards from The Fountain Financial Group ("TFFG"), which bear the names of Scott Fountain and an individual named Charles Rothchild and state "Securities offered through The Leaders Group, Inc." (*Id.* at 5 and Ex. D.) HTK concludes that the "Hamiltons have not produced a single document that would support their sworn declarations and assertions that TFFG or Tommy [Fountain] held themselves out as selling securities through HTK at the time of the August Purchase." (*Id.* at 5.)

HTK asserts that "it is now clear" that Tommy Fountain was not associated with HTK at the time that the Hamiltons made their ETS payphone investments. (*Id.* at 6.) HTK charges that the Hamiltons and/or their counsel [FN2] "knew that the August Purchase Agreement utterly undercuts their position that HTK should arbitrate with them and sought to hide that fact by using the October date, rather than the operative August purchase date." (*Id.* at 6-7.) HTK points out that the Hamiltons have produced a Purchase Agreement dated December 1, 1999, for their second ETS investment, and it is this December purchase date that the Hamiltons falsely cited as the date of their investment. (*Id.* at 7.) HTK argues that, because it did not previously have knowledge of the information contained in these documents that the Hamiltons have produced, it could not make "numerous arguments, both legal and factual, establishing that it should not be required to arbitrate with them." (*Id.* at 8.) "Indeed, at the most basic level, HTK could not argue, as it now can, that the Hamiltons were not its customers in *any* sense of the word when they purchased $238,000 worth of ETS investments." (*Id.*) (emphasis in original).

   FN2. Counsel for the Hamiltons are Joel A. Goodman and Stephen Krosschell.

HTK has requested relief from the Court's judgment under two subsections of Federal Rule of Civil Procedure 60. The Court will discuss the requirements of each subsection in turn.

### A. Rule 60(b)(2)

Federal Rule of Civil Procedure 60(b) sets forth the grounds on which a court, in its discretion, can rescind or amend a final judgment or order. *Griffin v. Swim-Tech Corp.,* 722 F.2d 677, 679 (11th Cir.1984). This rule should "be construed in order to do substantial justice, but this does not mean that final judgments should be lightly reopened. The desirability for order and predictability in the judicial process speaks for caution in the reopening of judgments." *Id.* at 680 (citation omitted). A court should consider exercising its discretion in "those cases in which the true merits of a case might never be considered because of technical error, or fraud or concealment by the opposing party, or the court's inability to consider fresh evidence." *Fackelman v. Bell,* 564 F.2d 734, 735 (5th Cir.1977) (citations omitted). [FN3] In short, Rule 60(b) gives the district courts the discretionary power "to vacate judgments whenever such action is appropriate to accomplish justice." *Griffin,* 722 F.2d at 680 (quoting *Klapprott v. United States,* 335 U.S. 601, 615, 69 S.Ct. 384, 93 L.Ed. 266 (1949)).

   FN3. Decisions of the "pre-split" Fifth Circuit handed down before the close of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-03303-JF    Document 24-18    Filed 08/31/2007    Page 4 of 11    Page 5 of 12

Not Reported in F.Supp.2d                                                                                           Page 4
Not Reported in F.Supp.2d, 2003 WL 23832424 (N.D.Ga.)
**(Cite as: Not Reported in F.Supp.2d)**

business on September 30, 1981, are binding as precedent in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981).

**\*4** Under Rule 60(b)(2), a court may relieve a party from a final judgment, order, or proceeding upon production of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Fed.R.Civ.P. 60(b)(2).[FN4] In order for a court to grant such a motion, a party must satisfy a five-part test:

> FN4. Federal Rule of Civil Procedure 59(b) requires that a motion for a new trial be filed no later than 10 days after the entry of judgment. Fed.R.Civ.P. 59(b).

(1) the evidence must be newly discovered since the trial; (2) due diligence on the part of the movant to discover the new evidence must be shown; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be such that a new trial would probably produce a new result.
*Toole v. Baxter Healthcare Corp.,* 235 F.3d 1307, 1316 (11th Cir.2000) (quoting *Scutieri v. Paige,* 808 F.2d 785, 793 (11th Cir.1987)). The movant bears the burden of demonstrating that the requirements have been satisfied. *Stilwell v. Travelers Ins. Co.,* 327 F.2d 931, 933 (5th Cir.1964). If any one of the five elements is not satisfied, the motion fails. *Harduvel v. General Dynamics Corp.,* 801 F.Supp. 597, 604 (M.D.Fl.1992) (citing *Raymond v. Raymond Corp.,* 938 F.2d 1518, 1527 (1st Cir.1991)).

Before applying the above test to the facts in this case, a brief summary of the dispute is helpful. As set out in much greater detail in the Court's Original Order [32] at 3-7, the Hamiltons made a very bad investment in unregistered securities and they seek to recoup the large amount of money they lost, arguing that they were defrauded by the persons who sold these securities to them: Scott and Tommy Fountain. When this case was originally presented to the Court, plaintiff HTK argued that it was only Scott, not his father, Tommy Fountain, who had sold these securities. The identity of the seller was and is pivotal in this case because the Hamiltons can force plaintiff HTK into arbitration only if they meet the requisite test for showing that Tommy Fountain was involved in the sale, as only Tommy Fountain was a broker with HTK. Upon a showing that one of the sellers was an agent of HTK, the Hamiltons can then require HTK to participate in arbitration because the latter is a member of NASD, an organization whose rules provide for arbitration between its members and customers who make claims against a member. (Order [32] at 14.) Moreover, the Hamiltons would obviously prefer to have HTK on the hook in this case because HTK will likely be the only entity with a deep enough pocket to reimburse the Hamiltons for their large investment losses.

In its original Order, this Court concluded that, for the purpose of proving arbitrability, the Hamiltons had made the necessary showing that they were customers of Tommy Fountain and similarly concluded that plaintiff HTK had failed to produce " some evidence"-the standard applicable to its burden-to support its denial. (*Id.* at 27-34.) That being the case, the Court concluded that HTK, the brokerage firm that had employed Tommy Fountain, would have to participate in an arbitration concerning the Hamiltons' claims. For purposes of resolving the present motion only, the Court will not alter its initial conclusion that the evidence suggests Tommy Fountain's likely involvement in the sales of these unregistered securities. What has changed, however, is the possibility-and HTK would say the clear certainty-that Tommy Fountain was not even employed by HTK when the Hamiltons initially succumbed to the Fountains' successful sales pitch. Specifically, discovery in the arbitration proceeding has revealed to HTK that although, when originally before this Court, the Hamiltons had sworn that they first purchased their securities on October 1, 1999, the Hamiltons actually made this purchase on August 2, 1999. (Pl.'s Mot. For Relief [35] at 2-3.) This fact is tremendously significant because on August 2, 1999, Tommy Fountain was not employed by HTK, although he was so employed on October 1, 1999. Clearly, if the sale occurred at a time when Tommy Fountain was not employed by

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 5

Not Reported in F.Supp.2d, 2003 WL 23832424 (N.D.Ga.)
**(Cite as: Not Reported in F.Supp.2d)**

HTK, the latter cannot be hauled into an arbitration proceeding convened to adjudicate the Hamiltons' complaint about the propriety of the sale.

*5 With the above summary in mind, the Court will examine whether the five requirements necessary to relieve a party from a final judgment are met as to HTK's discovery of the August 2, 1999 bill of sale that is related to the Hamiltons' first ETS investment. First, it is undisputed that the bill of sale has been newly discovered since the Court issued its order in this case on August 6, 2002. (See Defs.' Repaginated Mem. of Law in Opp'n to Pl.'s Mot. For Relief From J. Pursuant to Fed.R.Civ.P. 60(b)(2) and/or 60(b)(3) ("Defs.' Mem. in Opp'n") [55] at 19.)

Second, HTK must show that it exercised due diligence to discover the new evidence before this Court issued the August 6, 2002 Order. Here, the Court concludes that HTK had no ability to obtain this information. The bill of sale was in the exclusive control of the Hamiltons, who did not produce it until they were required to do so in the NASD arbitration. Moreover, this Court granted the Hamiltons' Motion for Protective Order to Preclude Discovery [8] in the August 6, 2002 Order. The Court specifically concluded that "HTK is not entitled to engage in discovery in order to depose the Fountains, the Hamiltons, or any other potential witnesses." (Order [32] at 35 .) The Court pointed out that both parties had the opportunity to present affidavits and documentary evidence. (Id.) Yet, the Hamiltons did not produce this documentary evidence, and HTK did not have the ability to compel them to do so.

The Hamiltons argue that HTK cannot show that it used due diligence to discover the evidence because it has not shown that it sought to obtain the documents relating to their ETS purchase that were filed in the ETS bankruptcy proceeding ongoing in the United States Bankruptcy Court for the District of Delaware. (Defs.' Mem. in Opp'n [55] at 19.) " Evidence that is contained in the public records at the time of trial cannot be considered newly discovered evidence." Scutieri, 808 F.2d at 794. The document that the Hamiltons point to as a public record relating to their ETS purchase that could have been obtained through the bankruptcy court, however, is not the sales agreement that HTK argues constitutes the article of newly discovered evidence. Instead, it is a proof of claim form that was apparently sent to the Hamiltons by the bankruptcy court. At any rate, the form lists " 10/01/1999" as the "Date of your agreement with ETS." (Defs.' Mem. in Opp'n [55] at Ex. A.) This apparently refers to the date that the lease agreement between the Hamiltons and ETS was to take effect. (See Mot. for Relief [35] at Ex. G.) There is no reference to the August 2, 1999, purchase date for the first ETS investment by the Hamiltons. This new date, not the October date listed by the bankruptcy court's claim form, is what makes the purchase agreement new evidence. In short, there is no indication that HTK had any reasonable means of acquiring the August 2, 1999 purchase agreement before the issuance of this Court's Order in this case.

*6 Third, the evidence is neither cumulative nor impeaching. This Court's Order was premised on its belief that the Hamiltons made their first ETS investment on October 1, 1999, as this is the date that the Hamiltons, in their original affidavit, stated that they made their investment. (Order [32] at 5 at Ex. A.) The purchase agreement dated August 2, 1999 serves to directly contradict this statement. Nor is the evidence merely impeaching of the Hamiltons' credibility. Instead, it tends to prove a substantive matter at dispute in this litigation. In sum, the August purchase agreement creates an entirely different time-line for the Hamiltons' first ETS investment than the one that the Hamiltons gave this Court before it issued its Order in this case. It is therefore neither cumulative nor merely impeaching.

Fourth, the evidence is obviously material. Under NASD Rule 10301(a), HTK is required to arbitrate any claim between the Hamiltons and an associated person of HTK arising in connection with the activities of the associated person. As this Court noted in its Order, Tommy Fountain became associated with HTK on September 11, 1999. (Order [32] at 20.) The August purchase agreement is thus highly material because it indicates that the Hamiltons' first ETS investment might have

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 23832424 (N.D.Ga.)
**(Cite as: Not Reported in F.Supp.2d)**

occurred in August of 1999, before Tommy Fountain even became associated with HTK. HTK is not required to arbitrate claims between customers and unassociated persons that arose because of the activities of those unassociated persons. HTK can be required to arbitrate with the Hamiltons only if Tommy Fountain was associated with HTK at the time that the Hamiltons made their ETS investments. The August purchase agreement is material to a determination whether that is the case or not.

Finally, the Court concludes that this evidence is such that it would probably result in a new outcome of this proceeding, at least as to the first investment. In its Order, the Court followed the two-component test set out in *Wheat, First Secs., Inc. v. Green*, 993 F.2d 814, 817 (11th Cir.1993), to determine whether the party challenging arbitration, HTK, was entitled to litigate the matter fully before the court, pursuant to Section 4 of the FAA. (Order [32] at 27.) [FN5] Though HTK satisfied the first component of the test by unequivocally denying that an agreement to arbitrate had been reached, the Court concluded that HTK was unable to meet the second component by offering "some evidence" to substantiate that denial. (*See id.* at 33-34.) As noted, the focus of HTK's argument before the Court issued its Order was that the Hamiltons were never customers of Tommy Fountain, but instead were customers of his son, who was never associated with HTK. The Court concluded that the affidavit produced by HTK in support of this argument did not "refute the Hamiltons' allegations that they were customers of Tommy Fountain when they purchased the ETS investments." (*Id.* at 31.) The new evidence, in the form of the August purchase agreement, however, allows HTK to make a different and more persuasive argument than the one that it made before.

   FN5. *See* 9 U.S.C. § 4 (2003) ("If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.").

*7 In summary, the Hamiltons made two separate investments in ETS phones. The Court's Order was explicitly based on the premise that both of those investments were made during the time period that Tommy Fountain was an associated person of HTK. It now appears that the first of those investments was made in August of 1999, before Tommy Fountain became associated with HTK in September of 1999. If the investment was made through Tommy Fountain when he was not associated with HTK, then the Hamiltons were not the customers of an associated person, which fact must be determined "as of the time of the events providing the basis for the allegations" of wrongdoing. *See Wheat, First Secs., Inc.*, 993 F.2d at 820 ("The Appellants were not customers of Wheat First at the time of the allegedly fraudulent Central stock transactions."). So, as the case now stands, because of the introduction of the August 2, 1999 purchase agreement, HTK has met both parts of the *Wheat, First* "two-component" test. It has both unequivocally denied that there is a valid agreement to arbitrate, and it has offered "some evidence" to substantiate that denial. *See id.* at 817. The new evidence allows HTK to substantiate its denial of any obligation to arbitrate "with enough evidence to make the denial colorable." *Id.* at 819 (citation omitted). Thus, the Court must reach a different conclusion under the *Wheat, First* test, and it now concludes that HTK is entitled to litigate the question of arbitrability fully before this Court, as provided in Section 4 of the FAA.

Notwithstanding this new development in the case, the Hamiltons argue that the date of their first ETS investment goes to the merits of their claim against HTK and must thus be determined by the arbitrator. (*See* Defs.' Mem. in Opp'n [55] at 14.) [FN6] The Court disagrees with the Hamiltons' position.

   FN6. "Although the validity of the ... purchase date will likely be an important issue on the merits in the arbitration, this Court cannot decide that issue and thereby usurp the authority of the arbitrators." (*Id.*) "Plaintiff may argue to ... the arbitrators that the events that occurred while T. Fountain worked for HTK were insufficient to give rise to liability, but this

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 7

Not Reported in F.Supp.2d, 2003 WL 23832424 (N.D.Ga.)
**(Cite as: Not Reported in F.Supp.2d)**

decision is one for the arbitrators to make on the merits, not this Court. (Defs.' Repaginated Sur-Reply Mem. in Opp'n to Pl.'s Mot. for Relief From J. [56] at 5.)

" '[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." '*AT & T Tech., Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (citations omitted). Although the Supreme Court generally favors the enforceability of arbitration agreements, "[t]he question [of] whether the parties have submitted a particular dispute to arbitration, *i.e.,* the 'question of arbitrability,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (citations omitted). The question of whether a particular dispute must be arbitrated because of its inclusion in an arbitration agreement is separate from the question of who decides arbitrability. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944-45, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

As there is now no clear indication that the parties to this case agreed to arbitrate the question of arbitrability, it is an issue to be decided by this Court. The Court must therefore determine whether the question concerning Tommy Fountain's status as an associated person of HTK at the time of the Hamiltons' ETS investments is a question of arbitrability, to be decided by the Court, or a merits question, to be decided by the arbitrator. The Supreme Court has interpreted the phrase "question of arbitrability" narrowly, applying it "where contracting parties would likely have expected a court [and not an arbitrator] to have decided the gateway matter." *Howsam,* 537 U.S. at 83. In these situations, a court "avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate." *Id.* at 83-84. It therefore follows that the court decides the question of " whether the parties are bound by a given arbitration clause." *Id.* at 84 (citation omitted).

*8 The Supreme Court has distinguished substantive questions of arbitrability from procedural ones. *Id.* Arbitrators decide the latter, which include whether conditions precedent to arbitration have been fulfilled, waiver, latches, delay, estoppel, and time limits. *Id.* at 84-85. Courts decide substantive issues of arbitrability when there is no valid arbitration agreement. *Id.* at 85. Having articulated this distinction, the *Howsam* Court ruled that the applicability of the NASD Code statute of limitations provision, § 10304,[FN7] is a matter presumptively for the arbitrator, not for the judge. *Id.* The Court concluded that the "time limit rule closely resembles the gateway questions that this Court has found not to be 'questions of arbitrability.' " ' *Id.* at 85 (citations omitted).

FN7. § 10304 provides that "no dispute ' shall be eligible for submission [to arbitration] where six (6) years have elapsed from the occurrence or event giving rise to the ... dispute." ' *Id.* at 82.

Applying the Supreme Court's analysis, this Court concludes that Tommy Fountain's status as an associated person of HTK is a question of arbitrability that must be decided by a court, not an arbitrator. In essence, the Supreme Court has created a distinction somewhat analogous to the distinction between subject matter jurisdiction and affirmative defenses to a claim, such as a statute of limitations defense, with the former type disputes being decided by a court and the latter by an arbitrator. That is, just as a court must initially determine whether it has jurisdiction to even entertain a case, in arbitration matters, a court must decide initially whether the parties entered into an agreement to arbitrate the particular dispute. A court's decision that there was no agreement to arbitrate is equivalent to a decision that the arbitrator lacks subject matter jurisdiction to hear the case. Moreover, only a court, not an arbitrator, can decide whether this "jurisdiction" exists to permit arbitration to proceed. Once a court has determined that the parties did, in fact, agree to arbitrate the particular dispute, however, then all disputes related to the merits of the claims, including procedural defenses, such as statute of limitation defenses, are for the arbitrator to resolve.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                    Page 8
Not Reported in F.Supp.2d, 2003 WL 23832424 (N.D.Ga.)
**(Cite as: Not Reported in F.Supp.2d)**

Applying that dichotomy to this case, the Court concludes that the instant case involves a question of substantive arbitrability-or the arbitrator's " subject matter jurisdiction"-which is a question for this Court to decide. The Court must determine whether Tommy Fountain was associated with HTK when the Hamiltons made their investment. At this juncture, given the new evidence offered by HTK, the Court can no longer make that determination from a simple review of documents and affidavits. Instead, HTK has now produced "some evidence" to support its denial of the relationship and may now fully litigate the arbitrability of the Hamiltons' claims-albeit not the claims, themselves-before this Court.

Although the Court concludes that it must now take back this case to litigate more fully the arbitrability of the claim, it bears noting that the Hamiltons have offered two new arguments of their own in attempting to persuade this Court not to wrest the dispute from the arbitrator. First, they offer a very convoluted explanation as to why, as a legal matter, the October date, not the August date, was really the purchase date. (*See* Def.'s Mem. of Law in Opp'n [55] at 7.) See discussion *infra* at 28. In essence, they argue that the purchase date for unregistered securities is the date of the last of the seller's activities in the transaction, such as delivery. (Defs.' Repaginated Sur-Reply Mem. in Opp'n to Pl.'s Mot. for Relief From J. [56] at 10-11.) That may or may not be, but the above is not the issue before the Court at this time, and in any event it has not been fully briefed by the parties. Moreover, the Court finds it disingenuous for the Hamiltons to argue that this August date is not a significant date. Clearly, they knew it was important, else they would not have gone to such pains to conceal it from this Court in the original stages of the litigation. In short, HTK has presented "some evidence," un der the *Wheat, First* two-component test, to support its denial of the arbitrability of the Hamiltons' claims. The Hamiltons may make their counter-arguments at future proceedings in this litigation.

\*9 Second, the Hamiltons argue that even if the first investment is not arbitrable, the second one is because it occurred at a time when Tommy Fountain was clearly employed by HTK. This may well become a successful argument for the Hamiltons. At this juncture, however, the Court is not clear that it can slice the case so neatly into two parts: one arbitrable and the other not. Moreover, given that the lack of candor by the Hamiltons' counsel in their original submissions has triggered the current dispute, the Court is not inclined to allow them to recast their arguments to fit new facts that they have tried so hard to keep from the Court.

In short, as HTK has satisfied all five requirements for relief under Federal Rule of Civil Procedure 60(b)(2), the Court, were it allowed to do so, would GRANT HTK's motion for relief and from judgment and VACATE its August 6, 2002 Order requiring HTK to arbitrate with the Hamiltons. Given the procedural posture of this case, however, the Court cannot grant, outright, HTK's motion. Rather, at the time the motion was filed, the original Order directing arbitration was on appeal to the Eleventh Circuit. This Court is considering HTK's Rule 60(b) motion only because the Eleventh Circuit has asked it do so, during which remand period the appellate court has stayed the appeal [61]. As the Eleventh Circuit has recently noted, once an appeal has been filed, a district court has the jurisdiction to deny a Rule 60(b) motion, but it lacks the jurisdiction to grant such a motion. *Mahone v. Ray,* 326 F.3d 1176, 1180 (2003). Instead, when the district court believes that such a motion should be granted, it should "indicate its belief that the arguments raised are meritorious." *Id.* Then, the movant may petition the appellate court to remand the matter to confer jurisdiction on the district court to grant the motion. *Id.*

Consistent with this directive from the Eleventh Circuit, this Court indicates its belief that HTK's Motion For Relief From Judgment is meritorious. Accordingly, the Court DENIES HTK'S motion [FN8] only because it has no jurisdiction otherwise to grant the motion,[FN9] but this Court indicates that, had it jurisdiction, it would GRANT the motion.

> FN8. The Clerk's Office and its docketing procedures do not recognize any disposition of a motion other than granting it or denying it. So, the Court has to pick

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-03303-JF   Document 24-18   Filed 08/31/2007   Page 9 of 11

Page 10 of 12

Not Reported in F.Supp.2d

Page 9

Not Reported in F.Supp.2d, 2003 WL 23832424 (N.D.Ga.)
**(Cite as: Not Reported in F.Supp.2d)**

one of those two words. Thus, if it cannot say "grant," it has to say "deny." Although the Court has had to say it denies the motion, it clearly intends to communicate its belief that the motion should, in fact, be granted.

FN9. It may be that, when it stayed its appeal pending this Court's resolution of the Rule 60(b) motion, the Eleventh Circuit was signaling to the Court that it could go ahead and grant the present motion. Yet, the Court does not wish to exceed its authority and considers it prudent to await an explicit directive from the circuit court before proceeding further.

### B. Rule 60(b)(3)

Federal Rule of Civil Procedure 60(b)(3) allows a court to relieve a party from a final judgment, order, or proceeding on the basis of "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." Fed.R.Civ.P. 60(b)(3). "Rule 60(b)(3) allows a court to grant relief from a final judgment if the moving party proves by clear and convincing evidence that an adverse party has obtained the verdict through fraud, misrepresentation, or other misconduct." *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1287 (11th Cir.2000) (citations omitted). "The moving party must ... show that the conduct prevented the losing party from fully and fairly presenting his case or defense." *Id.* (citing *Scutieri v. Paige*, 808 F.2d 785, 794 (11th Cir.1987) (additional citation omitted). [FN10] Rule 60(b)(3) does not require that any information withheld be of such nature as to alter the result in the case. *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir.1978) (citations omitted). "This subsection of the Rule is aimed at judgments which were unfairly obtained, not at those which are factually incorrect." *Id.* (footnote omitted).

FN10. Some courts have also held that granting a Rule 60(b)(3) motion requires a showing of scienter. The law on this point remains unsettled in the Eleventh Circuit. *See Harduvel v. General Dynamics Corp.*, 801 F.Supp. 597, 608 n. 21 (M.D.Fl.1992) (citing cases); *see also United States v. One (1) Douglas A-26B Aircraft*, 662 F.2d 1372, 1374-75 (11th Cir.1981) (declining to decide whether Rule 60(b)(3) affords relief for a claim based upon innocent misrepresentation by a party, rather than fraud).

*10 To obtain relief under Rule 60(b)(3), the moving party must prove by *clear and convincing evidence* that an adverse party has obtained the verdict through fraud, misrepresentation, or other misconduct. Clear and convincing evidence is an intermediate standard of proof, lying somewhere between proof by a preponderance of the evidence and proof beyond a reasonable doubt. *Weng v. U.S. Atty. Gen.*, 287 F.3d 1335, 1340 n. 11 (11th Cir.2002) (citations omitted). Yet, although it sounds onerous, "clear and convincing" does not mean "unequivocal" or "proof that admits of no doubt." *United States v. Owens*, 854 F.2d 432, 435 n. 8 (11th Cir.1988) (citing *Addington v. Texas*, 441 U.S. 418, 432, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)). Rather, the party bearing this burden of proof must persuade the jury that his claim is highly probable. *Id.* (quoting *State v. Renforth*, 155 Ariz. 385, 746 P.2d 1315, 1318 (Ariz.Ct.App.1987)). [FN11]

FN11. The Eleventh Circuit Pattern Jury Instructions for use in criminal cases state that "[a] 'reasonable doubt' is a real doubt, based upon reason and common sense after careful and impartial consideration of all the evidence in the case. Proof beyond a reasonable doubt, therefore, is proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs." Eleventh Circuit Pattern Jury Instructions Criminal, Instruction 3, p. 16 (West 1997). On the other hand, "[a] 'preponderance of the evidence' simply means an amount of evidence that is enough to persuade you

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 23832424 (N.D.Ga.)
**(Cite as: Not Reported in F.Supp.2d)**

that the ... claim is more likely true than not true." Eleventh Circuit Pattern Jury Instructions Civil, Instruction 6.1, p. 22 (West 2000). Clear and convincing evidence, then, is a burden of proof that lies somewhere between these two more familiar standards.

At the very least, it appears to the Court that the Hamiltons misrepresented the date of their first investment in ETS phones. In their original affidavit, the Hamiltons stated that their first investment was made on October 1, 1999. October 1, 1999, however, appears to be the date that their lease agreement with ETS started, not the date that they originally purchased the phone securities. (See Mot. For Relief [35] at Ex. G.) The purchase agreement between the Hamiltons and BEE Communications, Inc., for the pay phones that the Hamiltons were to lease to ETS (under the October 1, 1999 agreement) is dated August 2, 1999. (See id. at Ex. F.) Indeed in their affidavit, the Hamiltons stated that they made their second investment in ETS on December 1, 1999. This date corresponds with the purchase agreement between the Hamiltons and BEE Communications for that set of phones. (See id. at Ex. K.) Presumably, there would be a corresponding lease agreement for this second investment as well. It is curious that the Hamiltons chose to reference the date of the lease agreement as the purchase date for the first investment, but chose to reference the date of the purchase agreement as the purchase date for their second investment. This inconsistency prompts questions about the motivation behind the omission of the purchase agreement date in previous pleadings before this Court.

In explanation, the Hamiltons argue that they had a substantial legal and evidentiary basis for asserting that October 1, 1999, was the investment date for their first investment. (Defs.' Mem. Of Law in Opp'n [55] at 5-6.) They argue that their investment was not final until this lease agreement began and that this date should be considered the relevant date for the beginning of their first investment. (Id. at 7-8, 746 P.2d 1315.) They therefore argue that HTK cannot show that any fraud occurred with their allegations regarding the date of the investment. (Id. at 9, 746 P.2d 1315.) That may be, but Rule 60(b)(3) covers judgments granted because of misrepresentation, as well as fraud. Even if the Hamiltons truly believed that October 1, 1999, was the correct date to allege as the date of their initial ETS investment, and even if they had good reasons to so believe, the appearance that they misrepresented this date still remains as a result of the inconsistent date reference to the second purchase.

*11 Further, in their first affidavit, the Hamiltons stated that they "knew and believed that Tommy L. Fountain was a licensed broker and securities representative for the brokerage firm of Hornor, Townsend & Kent, Inc. prior to, during, and after [their] purchase of ETS Payphone Equipment Inc. investment. (Mot. For Relief [35] at Ex. A.) In their second affidavit, however, the Hamiltons state that they knew Tommy Fountain was a licensed broker for HTK because he told them in August of 1999 that he would be transferring his broker's securities license to HTK. (See Aff. attached to Defs.' Mem. of Law in Opp'n [55] at ¶ 2.) Again, these statements appear to be inconsistent. How could the Hamiltons have "known" that Tommy Fountain was an HTK broker before their investment in ETS when he told them that he was not yet an HTK broker, but would soon be transferring his license over to HTK? Whether this is just a question of semantics or something more, the Hamiltons' statement in the second affidavit bolsters an inference that the first affidavit contains a misrepresentation.

Nevertheless, the Court does not reach the question whether HTK has met its burden under Rule 60(b)(3) by clear and convincing evidence, as the Court has already indicated its belief that relief is appropriate under Rule 60(b)(2). It is therefore unnecessary for the Court to address whether the Hamiltons' alleged misrepresentations prevented the HTK from fully and fairly presenting its case, pursuant to Rule 60(b)(3).

**II. *Defendants' Discovery Motion***

Defendants filed a motion [57] on March 14, 2001,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

requesting that the Court allow the completion of discovery before it rules on plaintiffs' Rule 60(b) motion. A trial court has broad discretion in regulating discovery. *Hancock v. Hobbs,* 967 F.2d 462, 468 (11th Cir.1992); FN12 *Save The Bay, Inc. v. United States Army,* 639 F.2d 1100, 1103 (5th Cir. Feb.1981). No discovery is needed at this point to resolve plaintiffs' Rule 60(b) motion. The Court has reviewed the record and made a ruling on that motion based upon all that is known at this point. Moreover, given that defendants' omission of an important fact has triggered the present proceeding, the Court is not inclined to allow them discovery to try to remedy a situation that they have created. Therefore, the Court DENIES Defendants' Motion For Discovery Prior to This Court's Ruling on Plaintiff's Motion for Relief From Judgment [57].

FN12. Two courts of appeals have held specifically that this discretion in regulating discovery matters applies to the scope of discovery regarding a Rule 60(b) motion. *See Hillsdale Assocs. v. East Channel Corp.,* No. 90-55237, 1991 WL 174617, at *3 (9th Cir. Sept.6, 1991) (unpublished opinion); *H.K. Porter Co. v. Goodyear Tire & Rubber Co.,* 536 F.2d 1115, 1119 (6th Cir.1976).

## CONCLUSION

For the foregoing reasons, the Court DENIES HTK'S motion only to the extent that the Court is uncertain that it has jurisdiction to grant the motion, but this Court indicates that, had it jurisdiction, it would GRANT the motion Plaintiff's Motion for Relief From Judgment Pursuant to Fed.R.Civ.P. 60(b)(2) [35-1].FN13 The Court DENIES AS MOOT plaintiff's Motion For Relief Pursuant to 60(b)(3) [35-2]. The Court GRANTS plaintiff's Motion to Exceed Page Limitation [41], DENIES plaintiff's Request for Hearing [48], and DENIES without prejudice defendants' Motion for Discovery. Upon an explicit directive from the Eleventh Circuit, this Court will VACATE its Order [32] dated August 6, 2002 and reinstate this action for further proceedings to determine the arbitrability of the Hamiltons' claims against HTK.

FN13. *See* discussion *supra* at 23-25.

**\*12** SO ORDERED

N.D.Ga.,2003.
Hornor, Townsend & Kent, Inc. v. Hamilton
Not Reported in F.Supp.2d, 2003 WL 23832424 (N.D.Ga.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.