SUBSCRIPTION AGREEMENT
LANCORP FINANCIAL FUND BUSINESS TRUST
SUBSCRIPTION AGREEMENT


Lancorp Financial Fund Business Trust
1382 Leigh Court
West Linn, Oregon 97068

  Re: Offering of Shares of Lancorp Financial Fund Business Trust

Gentlemen:

  1. <u>Subscription</u>. The undersigned hereby applies to purchase the number of shares of the Investor Shares of Lancorp Financial Fund Business Trust, a Nevada business trust (the "Trust"), par value $0.001 per share (the "Shares") indicated below in accordance with the terms of this Subscription Agreement and the private placement materials relating to the offering (the "Offering") of the Shares (such private placement materials, including all financial statements, exhibits and schedules contained therein or attached thereto, and any amendments and supplements thereto, is hereinafter referred to as the "Confidential Memorandum"). Any capitalized terms used herein shall have the same meaning as used in the Confidential Memorandum. The undersigned has received a copy of the Confidential Memorandum. The Shares are being offered by the Trust. Subject to the terms and conditions of the Confidential Memorandum and this Subscription Agreement, the undersigned hereby irrevocably offers to purchase __5 (five)__ Shares and therefore tenders to the Trust:

    (a) One executed Lancorp Financial Fund Business Trust Purchaser Questionnaire;

    (b) One executed Lancorp Financial Fund Business Trust Purchaser Representative Questionnaire, if a Purchaser Representative is used;

    (c) If applicable, one executed Lancorp Financial Fund Business Trust Accredited Investor's Letter; and

    (d) A check payable to "Lancorp Financial Fund Business Trust Escrow Account" in the amount of $__25,000__ for the Shares. It is understood that the cash contribution tendered is irrevocable by the undersigned and may be deposited for collection in accordance with the Confidential Memorandum, regardless and independent of the sale of any other Shares in the Trust. The check tendered shall be held in a separate escrow account established by the Trust as described in the Confidential Memorandum, and shall be promptly returned to the undersigned if the Shares are not subscribed for and accepted by the Trust pursuant to the terms and conditions specified in the Confidential Memorandum. Upon the acceptance of subscriptions for the Shares by the Trust as specified in the Confidential Memorandum, the cash held in the escrow account will be released to the Trust as provided in the Confidential Memorandum.

    (e) Color copy of a photo ID, driver's license or passport.


  2. <u>Acceptance and Subscription</u>. The undersigned understands and agrees that this subscription is made subject to the following terms and conditions:

    (a) The Trust will have the right to reject this subscription, in whole or in part.

    (b) This subscription will be deemed to be accepted by or on behalf of the Trust only when it is signed by the Trust.

SB-6

EXHIBIT

K

  (c) The Trust will have no obligation to accept subscriptions for the Shares in the order received.

  (d) The Offering may be terminated at any time by the Trust prior to the final acceptance of subscriptions for the required number of the Shares as specified in the Confidential Memorandum.

 3. <u>Representations and Warranties</u>. The undersigned represents and warrants as follows:

  (a) The undersigned has received information, and has carefully reviewed the Confidential Memorandum and has relied on the disclosures contained therein, information otherwise provided to him in writing by the Trust, or information from books and records of the Trust. The undersigned understands that all documents, records and books pertaining to this investment have been made available for inspection by his attorney and/or his accountant and/or his Purchaser Representative and him, and that the books and records of the Trust will be available, upon reasonable notice, for inspection by investors during reasonable business hours at its principal place of business. The undersigned and/or his advisers have had a reasonable opportunity to ask questions of and receive answers from the Trust, or a person or persons acting on its behalf, concerning the Offering of the Shares, and all such questions have been answered to the full satisfaction of the undersigned. No oral representations have been made or oral information furnished to the undersigned or his advisers in connection with the Offering of the Shares were in any way inconsistent with the information furnished.

  (b) The undersigned (i) has adequate means of providing for his current needs and possible personal contingencies, (ii) has no need for liquidity in this investment, (iii) is able to bear the substantial economic risks of an investment in the Shares for the period of time described in the Confidential Memorandum, and (iv) at the present time, could afford a complete loss of such investment.

  (c) The undersigned recognizes that the Trust has a limited financial and operating history and no history of profitable operations, and that the Shares as an investment involve special risks, including those disclosed to the undersigned by the Trust.

  (d) The undersigned understands that the Shares have not been nor will be registered under the Securities Act or the securities laws of any state, in reliance upon an exemption therefrom for non-public offerings. The undersigned understands that the Shares must be held for the period of time described in the Confidential Memorandum. The undersigned further understands that the Trust is under no obligation to register the Shares on his behalf or to assist him in complying with any exemption from registration.

  (e) The Shares are being purchased solely for his own account for investment and not for the account of any other person and not for distribution, assignment, or resale to others and no other person has a direct or indirect beneficial interest in the Shares. The undersigned or his advisers have such knowledge and experience in financial, tax, and business matters to enable him to utilize the information, made available to him in connection with the Offering of the Shares to evaluate the merits and risks of the prospective investment and to make an informed investment decision with respect thereto.

  (f) The undersigned realizes that he may not be able to sell or dispose of his Shares as there will be no public market. In addition, the undersigned understands that he has no right to transfer the Shares.

  (g) The undersigned, if a corporation, partnership, trust, or other entity, is authorized and otherwise duly qualified to purchase and hold the Shares, such entity has its principal place of business as set forth on the signature page hereof, and such entity has not been formed for the specific purpose of acquiring the Shares.

  (h) All information which the undersigned has provided to the Trust concerning himself, his financial position, and his knowledge of financial and business matters, or, in the case of a corporation, partnership, trust or other entity, the knowledge of financial and business matters of the person making the investment decision on behalf of such entity, is correct and complete as of the date set forth at the end hereof, and if there should be any adverse change in such information prior to his subscription being accepted, he will immediately provide the Trust with such information.

(i) The undersigned, if he is an individual, is at least 21 years of age.

(j) <u>Compliance with Regulation D</u>. The undersigned understands and agrees that the following restrictions and limitations are applicable to his purchase and his resales, hypothecations or other transfers of the Shares pursuant to Regulation D under the Securities Act:

(i) The undersigned agrees that the Shares shall not be sold, pledged, hypothecated or otherwise transferred unless the Shares are registered under the Securities Act, and the securities laws of any state, or are exempt therefrom;

(ii) A legend in substantially the following form has been or will be placed on any certificate(s) or other document(s) evidencing the Shares:

THE SECURITIES REPRESENTED BY THIS INSTRUMENT OR DOCUMENT HAVE BEEN ACQUIRED FOR INVESTMENT AND HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE SECURITIES LAW OF ANY STATE. WITHOUT SUCH REGISTRATION, SUCH SECURITIES MAY NOT BE SOLD, PLEDGED, HYPOTHECATED OR OTHERWISE TRANSFERRED EXCEPT UPON DELIVERY TO THE COMPANY OF AN OPINION OF COUNSEL SATISFACTORY TO THE COMPANY THAT REGISTRATION IS NOT REQUIRED FOR SUCH TRANSFER OR THE SUBMISSION TO THE COMPANY OF SUCH OTHER EVIDENCE AS MAY BE SATISFACTORY TO THE COMPANY TO THE EFFECT THAT ANY SUCH TRANSFER SHALL NOT BE IN VIOLATION OF THE SECURITIES ACT OF 1933, AS AMENDED, THE SECURITIES LAW OF ANY STATE, OR ANY RULE OR REGULATION PROMULGATED THEREUNDER.

(iii) Stop transfer instructions to the transfer agent of the Shares have been or will be placed with respect to the Shares so as to restrict the resale, pledge, hypothecation or other transfer thereof, subject to the further items hereof, including the provisions of the legend set forth in subparagraph (ii) above; and

(iv) The legend and stop transfer instructions described in subparagraphs (ii) and (iii) above will be placed with respect to any new certificate(s) or other document(s) issued upon presentment by the undersigned of certificate(s) or other document(s) for transfer.

(k) The undersigned acknowledges that _____ (complete if applicable) has acted as his "Purchaser Representative" as defined in Regulation D promulgated under the Securities Act, and (i) that he can bear the economic risk of this investment; (ii) he has relied upon the advice of such Purchaser Representative as to the merits of an investment in the Trust and the suitability of such investment for the undersigned; and (iii) such Purchaser Representative has confirmed to him, in writing, any past, present or future material relationship, actual or contemplated, between such Purchaser Representative or its Affiliates and the Trust, or its Affiliates.

(l) The undersigned understands that neither the Securities and Exchange Commission nor the securities commission of any state has made any finding or determination relating to the fairness for public investment in the Shares and that the Securities and Exchange Commission as well as the securities commission of any state will not recommend or endorse any offering of securities.

(m) The undersigned understands that:

(i) No assurances are or have been made regarding any economic advantages (including tax) which may inure to the benefit of the undersigned;

(ii) No assurances are or have been made concerning the distribution of profits to the Trust's investors; and

(iii) He is aware that this subscription is independent of any other subscription for the Shares.

(n) The undersigned acknowledges and is aware that it never has been represented, guaranteed, or warranted to him by the Trust, its directors, officers, agents or employees, or any other person, expressly or by implication, as to any of the following:

    (i) The approximate or exact length of time that he will be required to remain as an owner of his Shares;

    (ii) The percentage of profit and/or amount of or type of consideration, profit or loss to be realized, if any, as a result of this investment; or

    (iii) That the limited past performance or experience on the part of the Trust, or any future projections will in any way indicate the predictable results of the ownership of the Shares or of the overall financial performance of the Trust.

(o) The undersigned acknowledges that the Trust has made available to him or his Purchaser Representative, if any, or other personal advisers the opportunity to obtain additional information to verify the accuracy of the information furnished to him and to evaluate the merits and risks of this investment.

(p) The undersigned confirms that he has consulted with his Purchaser Representative, if any, or other personal advisers and that said Purchaser Representative or other advisers have analyzed the information furnished to him and the documents relating thereto on his behalf and have advised him of the business and financial aspects and consequences of and liabilities associated with his investment in the Shares. The undersigned represents that he has made other risk capital investments or other investments of a speculative nature, and by reason of his business and financial experience and of the business and financial experience of those persons he has retained to advise him with respect to investments of this nature. In reaching the conclusion that he desires to acquire the Shares, the undersigned has carefully evaluated his financial resources and investments and acknowledges that he is able to bear the economic risks of this investment.

(q) The undersigned acknowledges that all information made available to him and/or his Purchaser Representative, if any, and/or personal advisers in connection with his investment in the Shares, including the information furnished to him is and shall remain confidential in all respects and may not be reproduced, distributed or used for any other purpose without the prior written consent of the Trust.

4. Indemnification. The undersigned agrees to indemnify and hold harmless the Trust and its Affiliates from and against all damages, losses, costs, and expenses (including reasonable attorneys' fees) which they may incur by reason of the failure of the undersigned to fulfill any of the terms or conditions of this subscription, or by reason of any breach of the representations and warranties made by the undersigned herein, or in any document provided by the undersigned to the Trust.

5. Limitation on Transfer of the Shares. The undersigned acknowledges that he is aware that there are substantial restrictions on the transferability of the Shares. Since the Shares will not be, and since the undersigned has no right to require that they be, registered under the Securities Act, or the securities laws of any state, the Shares may not be, and the undersigned agrees that they shall not be, sold or transferred except pursuant to an effective registration statement or an exemption from such registration statement under said statutes. The undersigned also acknowledges that he will be responsible for compliance with all conditions on transfer imposed by any federal or state securities statute and securities law administrator and for any expenses incurred by the Trust for legal or accounting services in connection with reviewing such a proposed transfer and/or issuing opinions in connection therewith.

6. Survival. The foregoing representations, warranties and undertakings are made with the intent that they may be relied upon in determining the undersigned's suitability as an investor in the Trust and the undersigned hereby agrees that such representations and warranties shall survive his purchase of the Shares in the Trust. The undersigned hereby acknowledges and agrees that he is not entitled to cancel, terminate or revoke this Subscription Agreement, or any agreements hereunder, and that this Subscription Agreement and such agreements shall survive (a) changes in the transactions, documents, and instruments previously furnished to the undersigned which are not materially adverse, and (b) the undersigned's death or disability.

7. <u>Notices</u>. All notices or other communications given or made hereunder shall be in writing and shall be delivered or mailed by registered or certified mail, return receipt requested, postage prepaid, to the undersigned or to the Trust at the respective addresses set forth herein.

8. <u>Miscellaneous</u>.

(a) The undersigned agrees not to transfer or assign this Subscription Agreement, or any of the undersigned's interest herein, and further agrees that the transfer or assignment of the Shares acquired pursuant hereto shall be made only in accordance with all applicable laws.

(b) The undersigned agrees that the undersigned may not cancel, terminate, or revoke this Subscription Agreement or any agreement of the undersigned made hereunder and that this Subscription Agreement shall survive the death or disability of the undersigned and shall be binding upon the undersigned's heirs, executors, administrators, successors, and assigns.

(c) Notwithstanding any of the representations, warranties, acknowledgments, or agreements made herein by the undersigned, the undersigned does not thereby or in any other manner waive any rights granted to the undersigned under federal or state securities laws.

(d) Words of any gender used in this Subscription Agreement shall be held and construed to include any other gender, and words in the singular number shall be held to include the plural, and vice versa, unless the context requires otherwise. In addition, the pronouns used in this Subscription Agreement shall be understood and construed to apply whether the party referred to is an individual, partnership, joint venture, corporation or an individual or individuals doing business under a firm or trade name, and the masculine, feminine and neuter pronouns shall each include the other and may be used interchangeably with the same meaning.

(e) This Subscription Agreement constitutes the entire agreement among the parties hereto with respect to the subject matter hereof and may be amended only by a writing executed by all parties.

(f) This Subscription Agreement shall be enforced, governed, and construed in all respects in accordance with the laws of the State of Texas and all obligations hereunder shall be deemed performable in West Linn, Oregon.

(g) Within 10 days after receipt of a written request from the Trust, the undersigned agrees to provide such information and to execute and deliver such documents as reasonably may be necessary to comply with any and all laws and ordinances to which the Trust is subject.

IN WITNESS WHEREOF, I have executed this Subscription Agreement as of the 14th day of August, 2003.

**INTENTIONALLY LEFT BLANK**

INSURANCE COVERAGE ELECTION FORM
FOR INVESTOR UNITS

The Subscriber hereto, fully identified hereinabove, confirms that the option of securing insurance protection for the principal sum invested in the Fund's Units has been disclosed and is fully understood by the undersigned. The initials and signature of the Subscriber in the chosen option below indicates the decline or request of the Subscriber to be protected by insurance. The Subscriber further acknowledges that an amount equal to three quarters of one percent (0.75%) per quarter of the invested principal sum to be insured shall be deducted from such principal amount at the beginning of each calendar quarter.

_[initialed]_   Insurance Coverage is hereby requested.
Initial here

_____   Insurance Coverage is hereby declined.
Initial here

Jerry J. Thomas
Printed Name of Subscriber

_[signature]_ Jerry J. Thomas
Signature of Subscriber

Date: 8/14/03

SB-11

TYPE OF OWNERSHIP

(Check One)

_____  Individual (one signature required)

_____  Joint Tenants with Right of Survivorship (both parties must sign)

_____  Tenants in Common (both parties must sign)

_____  Community Property (one signature required if interest held in one name, i.e., managing spouse, two signatures required if interest held in both names).

____✓_____  Trust

_____  Corporation

_____  Partnership

Please print here the exact name (registration) investor desires for the Shares.

*Jerry J. Thomas or Nancy M. Thomas Trustees of the Jerry J. Thomas and Nancy M. Thomas 1998 Inter Vivos Trust*

NAME OF REFERRING PARTY:    Provide the name of the person(s) or entity who initially informed you of Lancorp Financial Fund.

Name(s):   *Robert T. Reese*

Address:   *316 Mid Valley Center, No. 159*
           *Carmel, CA 93923*

Phone:     *REDACTED*

SB-12



## SIGNATURE PAGE
## FOR INDIVIDUAL INVESTOR

_____
Signature

_____
Social Security Number

_____
Print or Type Name

Residence Address:

_____

_____

Mailing Address:

_____

_____

      Executed at _____, this ____ day of _____, 2003.

THE STATE OF _____  *
                                                 *
COUNTY OF _____  *

      On this ___ day of _____, 2003, before me, the undersigned, a Notary Public of said State, duly commissioned and sworn, personally appeared _____, known to me to be the person or person(s) whose name is (or whose names are) subscribed to the within instrument, and acknowledged that he (or she or they) executed the same for the purposes and consideration therein expressed, AND WHO ALSO UPON OATH SWORE THAT THE STATEMENTS THEREIN CONTAINED ARE TRUE AND CORRECT.

      IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

                                                        _____
                                                        Notary Public for the State of _____
                                                        Printed Name: _____
                                                        My Commission Expires: _____

y/A

## SIGNATURE PAGE
## FOR CORPORATE OR PARTNERSHIP INVESTOR

_____
Name of Corporation or Partnership (Please Print or Type)

By_____
   Signature of Authorized Agent

Title: _____

Taxpayer Identification Number: _____

Address of Principal Offices: _____

_____

_____

Mailing Address, if Different: _____

_____

_____

Attention: _____

   Executed at _____, this ____ day of _____, 2003.

THE STATE OF _____ *
                                  *
COUNTY OF _____ *

   On this ____ day of _____, 2003, before me, the undersigned, a Notary Public of said State, duly commissioned and sworn, personally appeared _____, known to me to be the person or person(s) whose name is (or whose names are) subscribed to the within instrument, and acknowledged that he (or she or they) executed the same for the purposes and consideration therein expressed, AND WHO ALSO UPON OATH SWORE THAT THE STATEMENTS THEREIN CONTAINED ARE TRUE AND CORRECT.

   IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

                                                              Notary Public for the State of _____
                                                              Printed Name: _____
                                                              My Commission Expires: _____

SIGNATURE PAGE
FOR TRUST INVESTOR

Name of Trust (Please Print or Type)

Jerry J. Thomas or Nancy M. Thomas, Trustees of the Jerry J. Thomas
Name of Trustee (Please Print or Type) and Nancy M. Thomas 1998 Inter Vivos Trust

By: _Jerry J. Thomas_   _Nancy M. Thomas_
Trustee's Signature

Date Trust was Formed: June 23, 1998

Taxpayer Identification Number: _____

Trustee's Address: 341 Sunkist Lane
Los Altos, CA 94022

_____

Attention: Jerry and/or Nancy Thomas

Executed at _____, this ____ day of _____, 2003.

THE STATE OF _____ *
                                    *
COUNTY OF _____ *

On this ___ day of _____, 2003, before me, the undersigned, a Notary Public of said State, duly commissioned and sworn, personally appeared _____, known to me to be the person or person(s) whose name is (or whose names are) subscribed to the within instrument, and acknowledged that he (or she or they) executed the same for the purposes and consideration therein expressed, AND WHO ALSO UPON OATH SWORE THAT THE STATEMENTS THEREIN CONTAINED ARE TRUE AND CORRECT.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

_See attached certificate_
Notary Public for the State of _____
Printed Name: _____
My Commission Expires: _____

August 14, 2003

SB-16

SUBSCRIPTION ACCEPTED:

LANCORP FINANCIAL FUND BUSINESS TRUST

By: *[signature]*
Gary L. Lancaster, Chairman

Date: \_\_\_\_AUGUST\_\_\_\_, 2003.