Westlaw.

Not Reported in F.Supp.    Page 1
Not Reported in F.Supp., 1994 WL 374425 (S.D.Cal.), Fed. Sec. L. Rep. P 98,243
(Cite as: Not Reported in F.Supp.)

▷
Prudential Securities, Inc. v. Dusch
S.D.Cal.,1994.

United States District Court, S.D. California.
PRUDENTIAL SECURITIES, INC.
v.
DUSCH, et al.
**No. 93-1470-IEG (RBB).**

March 28, 1994.

Opinion
GONZALEZ, District Judge.
*1 The motion for summary judgment brought by plaintiff Prudential Securities, Inc. ("Prudential") came on regularly for hearing on March 14, 1994 at 10:30 a.m. in Courtroom 11 of the above-entitled court, the Honorable Irma E. Gonzalez presiding. Michele R. Fron of the law firm of Keesal, Young & Logan appeared on behalf of the plaintiff. Carol C. McCall appeared on behalf of defendants Janet C. Dusch, an individual, and Janet C. Busch, Trustee of The Janet C. Dusch Trust ("Dusch").

In this motion, Prudential seeks declaratory relief on the question of the scope of Prudential's obligation to arbitrate claims filed by Busch before the National Association of Securities Dealers, Inc. ("NASD"), and on the scope of its liability for those claims.

In the NASD claim, Dusch seeks damages from Prudential and her securities broker, John Knoth, based upon her allegation that investments recommended to her were unsuitable in light of her investment objectives. Dusch claims damages based upon investments made while her account was established and maintained through Thompson McKinnon Securities, Inc. ("TMS"), and while Knoth was employed by Prudential, as well as damages incurred while her account was maintained by Prudential. Dusch also seeks damages for losses incurred in two investments made prior to 1986 at a brokerage firm that was neither Prudential nor TMS. She contends that all of these claims are subject to arbitration:

Prudential, however, claims that (1) it is not required to arbitrate claims against Dusch for transactions and events which took place prior to the time Dusch became a Prudential customer; (2) it is not liable for damages based upon investments Dusch made while her account was established and maintained through other brokerage firms, including TMS, and while Knoth was an employee of TMS; and (3) Prudential did not assume any liabilities of TMS arising out of the retail brokerage account(s) maintained by Dusch at TMS.

Summary judgment is proper when the pleadings and other evidence properly before the Court show that no genuine issue of material fact exists, and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).

I. Arbitrability of Defendant's Claims.

Prudential claims it has never entered into any contractual agreement with Dusch to arbitrate claims or controversies. The general rule is that a party cannot be required to submit to arbitration any dispute which he has not agreed to submit. *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 (1960). The only other basis for Busch to arbitrate against Prudential is based upon the NASD Code of Arbitration. The Code limits a member's obligation to arbitrate claims between members, such as Prudential and its "customers." Code of Arbitration, Part III, ¶ 3712, § 12(a). Prudential thus claims that only Dusch's claims which pertain to the period during which she was Prudential's customer must be submitted to arbitration.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT

P

*2 Dusch, however, seeks arbitration of all claims against Prudential, including those claims arising before September 1, 1989, the time when Dusch became a customer of Prudential. Dusch claims that when her account was transferred from TMS to Dusch, Prudential assumed the obligations of TMS, including the obligation to arbitrate claims. Specifically, Dusch claims that Prudential's answer to Dusch's claim filed with the NASD sought to enforce a choice-of-law provision which was contained in the Thompson McKinnon Signature Card, and stated that the agreement on the card to apply New York Law to disputes is an agreement " with Respondents," which referred to Prudential. Thus Dusch claims that Prudential considered the signature card an agreement between her and Prudential, not simply between her and TMS. Because the same signature card contains an arbitration agreement for any dispute arising between Dusch and TMS, Dusch claims that Prudential assumed the obligation to arbitrate all of its disputes with her.

Prudential denies that the card requires it to arbitrate disputes arising *before* the time Dusch became a customer of Prudential. The Court agrees that the card does not apply to the time before Dusch became a customer of Prudential. The purchase agreement between TMS and Prudential clearly indicates that Prudential will receive the account documentation for the TMS accounts, and from that point forward, Prudential is the interested party to the account agreements. Thus, at the time Dusch's account was transferred to Prudential, the documentation relating to her account was assumed by Prudential. The arbitration agreement did not become binding upon Prudential until it became a party to the agreement, on September 1, 1989, when Dusch's account was transferred. Therefore, it had not agreed to arbitrate disputes relating to events prior to that date. As far as the NASD Code of Arbitration requirement that an NASD member arbitrate claims upon demand of the customer, this only applied once Dusch became a customer of Prudential. Prior to her becoming a customer of Prudential, there was no agreement to arbitrate. *See Wheat, First Sec., Inc. v. Green,* 993 F.2d 814 (11th Cir.1993).

Prudential has nevertheless agreed to arbitrate any claims Dusch may have concerning statements made to her by Knoth after he became an employee of Prudential, on August 25, 1989.[FN1] The Court therefore finds that Dusch's claims arising prior to August 25, 1989 are not subject to arbitration. However, any claims concerning statements made by Knoth after he became an employee of Prudential, or claims concerning Prudential's management of Dusch's account after she became a customer of Prudential on September 1, 1989, are subject to arbitration.

II. Successor-in-Interest Liability

The next question is whether Prudential is the successor-in-interest to TMS, and therefore liable for alleged acts and transactions which occurred at TMS. In California, a corporation which purchases the principal assets of another does not assume the liability of the selling corporation unless: (1) there is an express or implied agreement of assumption of liability; (2) the transaction amounts to a consolidation or merger of the two corporations; (3) the purchasing corporation is a mere continuation of the seller; or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability. *Ray v. Alad Corp.,* 19 Cal.3d 22 (1977).

*3 In this case, the Purchase Agreement entered into between Prudential and TMS ("the Agreement") specifically states that "the Buyer [Prudential] shall not assume any liabilities, obligations, contracts, undertakings or commitments of Seller [TMS] ..." Complaint, Exhibit A, ¶ 1(b). Under the Agreement, Prudential accepted liability only for specific contracts and leases for the purchase of assets. It did not assume liability for conduct of TMS's employees or of TMS.

Second, the transactions between TMS and Prudential did not amount to a consolidation or merger of the two corporations. There is no continuation of management or general business operations of TMS through the acquisition by Prudential of certain TMS assets. The management of Prudential did not change. Prudential had the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 3

Not Reported in F.Supp., 1994 WL 374425 (S.D.Cal.), Fed. Sec. L. Rep. P 98,243
**(Cite as: Not Reported in F.Supp.)**

option of hiring TMS employees only if Prudential found them acceptable. Further, only those customers willing to transfer their accounts became Prudential customers. This does not suggest a merger or consolidation. Several courts which have examined the Agreement between TMS and Prudential have similarly found that the transaction did not constitute a consolidation or merger. *See Simpson v. DeRussy,* 89-3461 Slip.Op.1990 WL 357272, at WL 2 (E.D.La. May 10, 1990).[FN2]

Third, for the same reasons, Prudential was not a mere continuation of TMS. Fourth, there has been no evidence presented that the transfer of assets to the purchaser was for fraudulent purposes.

Dusch argues that her NASD complaint does allege fraudulent transfer, thereby precluding summary judgment. However, an examination of her complaint shows that while she discusses the transfer of her account in the context of alleging mismanagement by TMS and by Knoth, she does not allege that the transfer of assets between TMS and Prudential was for fraudulent purposes. *See* NASD claim, Exhibit B to Declaration of Michele Fron, pp 4-6. Dusch's declaration also does not allege a transfer for fraudulent purposes. Because Dusch neither alleges such fraud nor provides any evidence to support such a claim, the allegation of fraud in Dusch's opposition does not preclude summary judgment. Dusch also alleges that the Agreement between Prudential and TMS is ambiguous as regards the assumption of liability. Dusch points to a provision in the Agreement which states:

(n) *Account Documentation.* Seller [TMS] will take all actions necessary to assure that Buyer [Prudential] shall become the successor in interest in the account documentation of any non-objecting customers that relates to the business of Seller [TMS] and its subsidiaries.

Exhibit A to declaration of Michele Fron, p. 35 § (n). However, this provision refers to account documentation only, making Prudential the interested party to the account agreements. The provision is not ambiguous and does not contradict the provision which states that Prudential does not assume the liabilities of TMS with regard to its accounts.

*4 Dusch also claims that the indemnity provisions of the Agreement show that Prudential contemplated its potential liability for any malfeasance in connection with a TMS investor account. However, the indemnity provisions pertain only to the conversion process of accounts, not to TMS's handling of its accounts prior to the Agreement.

The Court therefore finds no ambiguity in the Agreement which creates a triable issue of fact regarding the successor liability of Prudential. This finding is consistent with the findings of other courts which have reviewed this Agreement and not found any ambiguities giving rise to a triable issue of fact. *See Simpson v. DeRussy; Schmidt v. E. Packer Wilbur,* 783 F.Supp. 329 (E.D.Mich.1992) supra.

### III. Discovery

Dusch requests that in the event this Court is inclined to grant Prudential's motion, that the motion be continued to permit Dusch an opportunity to conduct discovery on the issues raised. The district court has discretion to continue a motion for summary judgment if the opposing party needs to discovery essential facts. Federal Rule of Civil Procedure 56(f); *California Union Ins. v. American Diversified Savings,* 914 F.2d 1271, 1278 (9th Cir.1990).

Dusch requests an opportunity to conduct discovery on Prudential's statement in its answer to her NASD claims that "claimant entered into an agreement with Respondents," to ascertain if any other agreements exist from which TMS assumed Prudential's obligations, and to explore the lack of account transfer documentation for Dusch's individual account. Dusch also seeks discovery on the extent of TMS's ability to meet creditors' demands upon completion of the Prudential Agreement, in light of its bankruptcy petition pending at that time.

Prudential objects to Dusch's request for a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Page 4

Not Reported in F.Supp., 1994 WL 374425 (S.D.Cal.), Fed. Sec. L. Rep. P 98,243
**(Cite as: Not Reported in F.Supp.)**

continuance, because Dusch has had almost six months from the filing of this complaint on September 24, 1993 within which to conduct discovery. Further, Prudential claims discovery is not needed for the Court to decide this motion.

The Court finds that additional discovery is neither necessary nor appropriate under these circumstances. On the question of arbitrability, Dusch has presented no evidence suggesting that there exists an agreement to arbitrate claims concerning events that occurred before Dusch became a customer of Prudential. As far as the question of successor liability, the Agreement between Prudential and TMS indicates clearly that Prudential is not a successor-in-interest to TMS, and therefore is not liable for actions by TMS agents prior to the transfer of assets to Prudential. Additional discovery will not alter the interpretation of the parties' contract.

Further, Dusch has failed to follow the proper procedure required to move for a continuance under Rule 56(f). Rule 56(f) requires affidavits setting forth particular facts expected from the movant's discovery. *Mackey v. Pioneer Nat. Bank,* 867 F.2d 520, 523-24 (9th Cir.1989). A Rule 56(f) motion must show how additional discovery would preclude summary judgment and why a party cannot immediately provide "specific facts" demonstrating a genuine issue of material fact. *Id;* Rule 56(e), (f). Dusch has not filed affidavits supporting her requests, nor explained which specific facts she expects to discovery and how they would preclude summary judgment. Accordingly, Dusch's request for a continuance to conduct additional discovery is DENIED. Prudential's Motion for Summary Judgment is GRANTED.

*5 Dusch has requested sanctions against Prudential for bringing its present Motion for Summary Judgment. This request is DENIED, as is Prudential's request for sanctions against Dusch.

IT IS SO ORDERED.

FN1. In a Supplemental Declaration submitted to the Court after the March 14 hearing, Michele R. Fron, counsel for Prudential, informed the Court that John Knoth had become an employee of Prudential on August 25, 1989, rather than on September 1, 1989, as Prudential had previously claimed. Prudential is therefore willing to arbitrate any of Dusch's claims concerning representations made by Knoth after he became an employee of Prudential, even if these occurred before September 1, 1989.

FN2. *Simpson* addressed the exact issue presented in this case, whether Prudential assumed the liabilities of TMS by virtue of the purchase agreement. The Court found no successor liability.

S.D.Cal.,1994.
Prudential Securities, Inc. v. Dusch
Not Reported in F.Supp., 1994 WL 374425 (S.D.Cal.), Fed. Sec. L. Rep. P 98,243

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.