Joel A. Goodman (FL Bar No. 802468)
Admitted *pro hac vice*
Email: gn.law@verizon.net
Goodman & Nekvasil, P.A.
14020 Roosevelt Blvd., Suite 808
P.O. Box 17709
Clearwater, Florida 33762
Telephone:  727-524-8486
Facsimile:  727-524-8786

Richard A. Kutche (CA Bar No. 151950)
Email: rakutche@pacbell.net
Law Offices of Richard A. Kutche
46 South First Street
San Jose, CA 95113
Telephone:  (408) 295-0474
Facsimile: (408) 295-6693
Local counsel

Attorneys for Defendants

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE O.N. EQUITY SALES COMPANY, | Case No. C 07-03303 JF RS |
| Plaintiff, | Judge Jeremy Fogel |
| v. | **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY** |
| THOMAS NEMES, Individually and as Trustee of the THOMAS NEMES TRUST, MICHAEL J. BENKERT, Individually and on Behalf of SHORE 2 SHORE ENTERPRISES, INC., and JERRY J. THOMAS and NANCY M. THOMAS, Individually and as Trustees of the JERRY J. THOMAS and NANCY M. THOMAS 1998 INTER VIVOS TRUST, | |
| Defendants. | Date:          October 5, 2007<br>Time:          9:00 a.m.<br>Courtroom:  3, 5th Floor |

1

## TABLE OF CONTENTS

2

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    This Court Should Follow the Decisions of Other Judges not to Permit Costly and Time-Consuming Discovery before Considering Lancorp Investors' Motions to Compel Arbitration. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    No Discovery is Necessary, because the Pertinent Documents Show on Their Face that Defendants are Entitled to Arbitrate.. . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    C.    Timing Questions are Arbitrable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    D.    This Court Should Apply Motion Procedures and Proceed Summarily to the Arbitrability Issue, Without Lengthy and Expensive Delay for Depositions and Other Discovery Procedures. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    E.    The Sole Limited Issue Before this Court Is Whether the Arbitration Obligation Is Susceptible to a Construction Allowing Arbitration. No Discovery Is Necessary for this Scope Issue. . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    F.    Permitting Depositions and Other Discovery Would Improperly Allow ONESCO to Obtain Court-ordered Discovery on the Merits That it Could Not Obtain in the Arbitration. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# TABLE OF AUTHORITIES

Cases

ACE Ltd. v. CIGNA Corp.,
2001 WL 767015 (S.D.N.Y. July 6, 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Ainslie v. Spolyar,
926 P.2d 822 (Ore. Ct. App. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARW Exploration Corp. v. Aguirre,
1990 WL 270291 (W.D. Okla. Dec. 10, 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

AT&T Tech., Inc. v. Communications Workers of Am.,
475 U.S. 643 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 15, 19

Beer v. Nutt,
2007 WL 13100 (S.D.N.Y. Jan. 3, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Belke v. Merrill Lynch, Pierce, Fenner & Smith,
693 F.2d 1023 (11th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Bender v. Smith Barney, Harris Upham & Co.,
789 F. Supp. 155 (D.N.J. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Blue Chip Stamps v. Manor Drug Stores,
421 U.S. 723 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

BS Sun Shipping Monrovia v. Citgo Petroleum Corp.,
2006 WL 2265041 (S.D.N.Y. Aug. 8, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Burlington Northern Joint Protective Board v. Burlington Northern R.R.,
822 F.2d 810 (8th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Cincinnati Gas & Elec. v. Benjamin F. Shaw Co.,
706 F.2d 155 (6th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Cohen v. Stratosphere Corp.,
115 F.3d 695 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10

Commerce Park at DFW Freeport v. Mardian Const. Co.,
729 F.2d 334 (5th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Comsat Corp. v. National Science Foundation,
190 F.3d 269 (4th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc.,
61 F.R.D. 8 (D.V.I. 1973),
rev'd on other grounds, 499 F.2d 1391 (3d Cir. 1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Getty v. Harmon,
53 F. Supp. 2d 1053 (W.D. Wash. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10

Gold v. Deutsche Aktiengesellschaft,
1998 WL 126058 (S.D.N.Y. Mar. 19, 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Health Services Management Corp. v. Hughes,
975 F.2d 1253 (7th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

H.K. Porter Co., Conners Steel Division v. Local 37, United Steel Workers of Am.,
400 F.2d 691 (4th Cir. 1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

H.L. Libby Corp. v. Skelly and Loy, Inc.,
910 F. Supp. 195 (M.D. Pa. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Hooters of Am., Inc. v. Phillips,
39 F. Supp. 2d 582 (D.S.C. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Howsam v. Dean Witter Reynolds, Inc.,
537 U.S. 79 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

Inlandboatmens Union of the Pacific v. Dutra Group,
279 F.3d 1075 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

In re Prudential Ins. Co. of Am. Sales Practice Litig.,
975 F. Supp. 584 (D.N.J. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

International Union of Electrical Radio & Machine Workers v. Westinghouse Electric Corp.,
48 F.R.D. 298 (S.D.N.Y. 1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

Investors Capital Corp. v. Brown,
125 F. Supp. 2d 1346 (M.D. Fla. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Investors Capital Corp v. Brown,
129 F. Supp. 2d 1340 (M.D. Fla. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Investors Capital Corp. v. Rimmler,
2001 WL 114936 (M.D. Fla. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Kanuth v. Prescott, Ball & Turben, Inc.,
1988 WL 90392 (D.D.C. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Kristian v. Comcast Corp.,
446 F.3d 25 (1st Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Kruse v. Sands Bros. & Co.,
226 F. Supp. 2d 484 (S.D.N.Y. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,
501 U.S. 350 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

Lomax v. Woodmen of World Life Ins. Society,
228 F. Supp. 2d 1360 (N.D. Ga. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

McLaughlin Gormley King Co. v. Terminix Int'l Co., L.P.,
105 F.3d 1192 (8th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cohen,
62 F.3d 381 (11th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Merrill Lynch, Pierce, Fenner & Smith Inc. v. Coors,
357 F. Supp. 2d 1277 (D. Colo. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

MONY Sec. Corp. v. Bornstein,
390 F.3d 1340 (11th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.
460 U.S. 1 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15, 17

Multi-Financial Sec. Corp. v. King,
386 F.3d 1364 (11th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 17

O.N. Equity Sales Co. v. Pals,
___ F. Supp. 2d ___, 2007 WL 2506033 (N.D. Iowa Sept. 6, 2007). . . . . . . . . . . . . . . . . 3, 4, 5, 6

O.N. Equity Sales Co. v. Steinke,
____ F. Supp. 2d ____, 2007 WL 2421761 (C.D. Cal. Aug. 27, 2007). . . . . . . . . . . . . . . . 3, 4, 5

O.R. Sec., Inc. v. Professional Planning Assoc.,
857 F.2d 742 (11th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Overseas Oil Transport Corp. v. Phibro Energy, A.G.,
1989 WL 77176 (S.D.N.Y. Feb. 1, 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

PaineWebber, Inc. v. Hofmann,
984 F.2d 1372 (3d Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Prima Paint Co. v. Flood & Conklin Mfg. Co.,
388 U.S. 395 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Randolph County Fed. Sav. & Loan Assoc. v. Sutliffe,
775 F. Supp. 1113 (S.D. Ohio 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Securities and Exchange Comm'n v. McCarthy,
322 F.3d 650 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Shaw Group, Inc. v. Triplefine Int'l Corp.,
2001 WL 1246583 (S.D.N.Y. Oct. 18, 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Simula, Inc. v. Autoliv, Inc.,
175 F.3d 716 (9th Cir.1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Thomas O'Connor & Co. v. Insurance Co. of N. Am.,
697 F. Supp. 563 (D. Mass. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Trujillo v. North County Transit Dist.,
63 Cal. App. 4th 280, 73 Cal. Rptr. 2d 596 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United Paperworkers Int'l Union v. Misco, Inc.,
484 U.S. 29 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

-iv-

1    USAllianz Sec., Inc. v. Southern Michigan Bancorp, Inc.,
2    290 F. Supp. 2d 827 (W.D. Mich. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

3    Vestax Sec. Corp. v. McWood,
     280 F.3d 1078 (6th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

4    Virginia Sprinkler Co. v. Road Sprinkler Fitters Local Union No. 669,
5    868 F.2d 116 (4th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

6    Washington Square Sec., Inc. v. Aune,
     253 F. Supp. 2d 839 (W.D.N.C. 2003),
7    aff'd 385 F.3d 432 (4th Cir. 2004).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

8    WMA Sec., Inc. v. Wynn,
     191 F.R.D. 128 (S.D. Ohio 1999),
9    approved,105 F. Supp. 2d 833, 836 (S.D. Ohio 2000),
     aff'd, 2002 WL 504965 (6th Cir. Apr. 1, 2002).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

10   World Group Sec., Inc. v. Sanders,
11   2006 WL 1278738 (D. Utah 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

12   **Statutes and Rules**

13   Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"). . . . . . . . . . . . . . . . . . . . . . 11, 12, 14, 17, 20

14   15 U.S.C. §§ 77*l*, m. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

15   15 U.S.C. § 78i(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

16   15 U.S.C. § 78r(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

17   17 C.F.R. § 240.10b-5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

18   Federal Rule of Civil Procedure 43(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

19   Federal Rule of Civil Procedure 81(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

20   Cal. Corp. Code § 25501. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

21   Ore. Rev. Stat. § 59.115. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

22   NASD Rule 10301. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7

23   NASD Rule 10304. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

24   NASD Rule 12200. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6, 7, 14, 15, 17

25   **Other Authorities**

26   3 Ian R. MacNeil *et al.*,
     Federal Arbitration Law § 34.1 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
27
     Moore's Federal Practice. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
28

1

Order Approving Proposed Rule Changes Relating to the
Arbitration Process and the Use of Predispute Arbitration Clauses,
Exchange Act Release No. 34-26805, 1989 WL 991624 (May 10, 1989). . . . . . . . . . . . . . . . . . . 2

Notice to Members 99-90, NASD Regulation Announces
New Discovery Guide to be Used in Arbitration Proceedings,
1999 WL 33176593 (NASDR Oct. 25, 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# STATEMENT OF FACTS

Defendants Thomas Nemes, Individually and as Trustee of the Thomas Nemes Trust, Michael J. Benkert, Individually and on Behalf of Shore 2 Shore Enterprises, Inc., and Jerry J. Thomas and Nancy M. Thomas, Individually and as Trustees of the Jerry J. Thomas and Nancy M. Thomas 1998 Inter Vivos Trust, through their undersigned counsel, simultaneously herewith are filing a Notice of Motion and Motion to Compel Arbitration and Memorandum of Points and Authorities in Support ("Motion to Compel Arbitration"), and supporting exhibits.  In opposition to the Motion by Plaintiff O.N. Equity Sales Company ("ONESCO") for an Order Authorizing the Parties to Engage in Immediate Discovery on the Issue of Arbitrability ("Motion for Discovery"), Defendants rely on and incorporate herein–and do not repeat in detail here–the facts, arguments, and exhibits included in their other filing.  Based on these facts and arguments as well as the facts and arguments that follow, this Court should preclude ONESCO from conducting any discovery in this case, until this Court rules on Defendants' Motion to Compel Arbitration in the pending arbitration between the Defendants and ONESCO under the rules of the National Association of Securities Dealers, Inc. ("NASD"), and on ONESCO's Motion for Preliminary Injunction ("Injunction Motion") to enjoin that arbitration.

ONESCO has filed 19 federal court actions around the country in Arizona, California, Colorado, Florida, Iowa, Michigan, Minnesota, New Jersey, Pennsylvania, Texas, Vermont, Virginia, Washington, and West Virginia to enjoin investors' arbitrations relating to Lancorp, and more court actions are expected.  Defendants' counsel has proposed to lessen expense and simplify matters by accepting service, consolidating cases, and staying some of the cases and arbitrations. ONESCO has rejected all such proposals.  As a result of these 19 federal court actions, Defendants' counsel has dozens of court events in ONESCO cases scheduled during the next few months, including in-person appearances in federal courts around the country.  More events will be scheduled for motions, responses, replies, depositions, discovery, hearings, and trials that may be filed or ordered or become necessary in these cases.  In addition, Defendants' counsel must attend to various events in the underlying ONESCO arbitrations and in his non-ONESCO cases. (See attached Exh. "1,"

1   Declaration of Joel A. Goodman ("Goodman Dec."), ¶ 2, 4).  As a result of this heavy ONESCO

2   caseload, scheduling depositions in this case will be difficult.

3        ONESCO's former registered representative, Gary L. Lancaster ("Lancaster"), sent ONESCO

4   a full set of investment documents for each Lancorp investor. See Lancaster's Second Declaration,

5   attached to the Motion to Compel Arbitration as Exh. "4." ONESCO thus already has most or all of

6   the pertinent documents for Defendants' investments, as evidenced by the attachments to ONESCO's

7   Complaint in this Court.  Nevertheless, in other court cases, ONESCO has sent 66 document requests

8   to Lancorp investors and said that it wants to take Lancaster's and Lancorp investors' depositions,

9   which it could not do in the underlying arbitration. (See Goodman Dec., ¶ 6.)

10       Although Defendants oppose any discovery, they would be forced to take their own

11  depositions of ONESCO's personnel, if discovery is permitted.  Flying to and from a particular

12  jurisdiction for depositions can take two days.  Accordingly, if depositions are allowed in these cases

13  across the country, they could take weeks to complete.  The costs to complete these depositions

14  could be $25,000 to $30,000 or more for transcripts, plane fares, hotels, and food.  (See Goodman

15  Dec. ¶ 5.)

16       These costs and time consumed would defeat the reasons that Defendants opted for

17  arbitration as a speedier and less costly alternative to litigation and the reasons that the Securities and

18  Exchange Commission ("SEC") required the NASD to promulgate its arbitration system.

19
20       Costs to investors for SRO arbitration historically have been low, and must remain
         so. The application of these fees should not be permitted to operate in a manner that
21       weighs too heavily on individual parties or serves as a disincentive to pursuing the
         redress of investors' grievances against broker-dealers or their associated persons.

22  Order Approving Proposed Rule Changes, Exchange Act Release No. 34-26805, 1989 WL 991624,

23  at *20 (May 10, 1989).  Through its scorched-earth and expensive litigation strategy, ONESCO has

24  driven up the costs of the Lancorp investors' arbitrations and frustrated the purpose of arbitration.

25

26

27

28

**ARGUMENT**

**A.    This Court Should Follow the Decisions of Other Judges not to Permit Costly and Time-Consuming Discovery before Considering Lancorp Investors' Motions to Compel Arbitration.**

ONESCO seeks to enjoin an arbitration filed by an investor in Lancorp Financial Fund Business Trust ("Lancorp"). This Court should adopt the decision of a Los Angeles federal judge in almost identical circumstances not to allow discovery until he ruled on Lancorp investors' motion to compel arbitration and ONESCO's motion for preliminary injunction.

> [T]he best procedure . . . is the plaintiff wants to file a motion for a preliminary injunction, and the defendant wants to file a motion to compel arbitration. . . . [I]t's a question of law for the court to decide. . . . [T]hose motions . . . should be filed immediately so we can have a resolution of the issue. I suggest that you . . . set them for hearing on the same date. (pp. 4-5)

> I don't think there's any discovery that needs to be done for the Court to decide either of these motions. If I decide the motion to compel arbitration, obviously the motion for preliminary injunction [will] be . . . moot. (pg. 5)

> . . . [T]here are really no issues that are a secret. All of the documents . . . are available to everyone and it's just going to be a legal argument. (pg. 20)

(See attached Exh. "2.") Thereafter, the court compelled arbitration and denied the motion for preliminary injunction, seeing no need for discovery or trial. "The Court . . . finds that based on the extensive briefing and evidence submitted by the parties, this issue can be resolved without further discovery or an evidentiary hearing." O.N. Equity Sales Co. v. Steinke, ___ F. Supp. 2d ___, 2007 WL 2421761, at *2 (C.D. Cal. Aug. 27, 2007).

Iowa and Florida judges have reached the same conclusion. "ONESCO has not shown that immediate discovery is required to determine the issue of arbitrability." O.N. Equity Sales Co. v. Pals, ___ F. Supp. 2d ___, 2007 WL 2506033, at *1 (N.D. Iowa Sept. 6, 2007). "[The Lancorp investor's] motion for protective order . . . is GRANTED. . . . All proceedings, other than . . . [the investor's] motion to compel arbitration . . . are stayed pending . . . a ruling on the motion to compel arbitration." (See attached Exh. "3.") This Court should do likewise.

**B.    No Discovery is Necessary, because the Pertinent Documents Show on Their Face that Defendants are Entitled to Arbitrate.**

This Court can readily determine that Defendants are entitled to arbitrate under NASD Rule 12200 without delay for court-ordered discovery. ONESCO does not dispute it must arbitrate

1  regarding Lancorp investments after Lancaster became an ONESCO agent, but ONESCO claims that

2  Defendants' Lancorp investment predated Lancaster's ONESCO tenure.  As Defendants explain in

3  their Motion to Compel Arbitration, however, the Private Placement Memorandum ("PPM")

4  (attached to ONESCO's Complaint as Exh. "A") provides that Lancorp could cancel the offer at any

5  time. (PPM at i-iii, 4) The signing of a Lancorp subscription agreement which Lancorp could refuse

6  to accept did not constitute a Lancorp sale. <u>Cohen v. Stratosphere Corp.</u>, 115 F.3d 695 (9th Cir.

7  1997). No discovery is needed on this point, which is unmistakable and is proved by ONESCO's

8  own exhibit to its Complaint.

9          The Los Angeles and Iowa federal judges agreed.

10         [P]ursuant to the terms of the Private Placement Memorandum and the Subscription
           Agreements, Defendants' money was held in an escrow account and the Lancorp
11         Fund could cancel the Subscription Agreements and terminate the offering at any
           time prior to the initial closing date. As a result, there was no 'sale of securities' until
12         May of 2004.

13  <u>Steinke</u>, 2007 WL 2421761, at *3.

14         [T]he court finds, that Lancaster did not, in fact, invest his or other investors' funds
           initially, but held those funds in escrow, because the Lancorp Trust had not yet
15         "gotten off the ground." . . . [A]ccording to the private placement memorandum, the
           investors' initial cash payments were held in escrow until the closing date. . . . [T]he
16         investment was subject to withdrawal, cancellation, or modification by Lancorp
           without notice until the closing date. . . .  Lancorp could decide, in its sole discretion,
17         to terminate the offering at any time before the maximum number of units had been
           sold.
18

19  <u>Pals</u>, 2007 WL 2506033, at *2.

20         Furthermore, although Defendants may have executed Lancorp documents before Lancaster

21  became an ONESCO representative, Lancaster's First Declaration, ¶¶ 3-5, <u>see</u> Exh. "2" attached to

22  the Motion to Compel Arbitration, establishes that the Lancorp offering changed, and Lancaster

23  required Defendants either to reconfirm their investment after acknowledging the change or to take

24  back their money.  These new investment decisions, memorialized in Defendants' reconfirmation

25  letters in April 2004 attached to the Motion to Compel Arbitration as Exh. "3," were new events

26  occurring while Lancaster worked for ONESCO for which ONESCO may be held liable in

27  arbitration. <u>See</u> <u>Getty v. Harmon</u>, 53 F. Supp. 2d 1053, 1056 (W.D. Wash. 1999) (treating investors'

28

1  options to reject renewals as new investments).   The dates of the reconfirmation letters are again

2  unmistakable.  No discovery is needed on this point for this Court to compel arbitration.

3      The California and Iowa federal judges again agreed.  "[I]n April of 2004, Defendants were

4  required to reconfirm their subscriptions or withdraw their funds as a result of the change in the

5  terms relating to the insurance component–an event which occurred while Lancaster was working

6  as a registered representative of ONESCO."  Steinke, 2007 WL 2421761, at *3.

7      Contrary to ONESCO's contentions, the record shows beyond dispute that the terms
       of the Lancorp Fund private placement offering were materially changed in April
8      2004, which required all subscribers to confirm their subscriptions or receive a return
       of their funds, that Lancaster held all funds invested in the Lancorp Fund private
9      placement offering until May 2004, and that the Lancorp Fund private placement
       offering did not close until May 2004 . . . .
10

11  Pals, 2007 WL 2506033, at *6.

12      Defendants can also arbitrate because they alleged continuing fraud and supervisory failures

13  after Lancaster became an ONESCO agent. (See, e.g., Defendants' Arbitration Claim, ¶¶ 9-34,

14  attached to the Complaint as Exh. "K.") Lancaster's First and Second Declarations are replete with

15  evidence of supervisory failure.  According to his two Declarations, Lancaster disclosed to ONESCO

16  his Lancorp involvement, but ONESCO never asked him about it, inspected his office, reviewed his

17  customer files, reviewed his correspondence, told him who his supervisor was, or supplied him with

18  procedures or compliance manuals.  World Group Sec., Inc. v. Sanders, 2006 WL 1278738 (D. Utah

19  May 8, 2006), USAllianz Sec., Inc. v. Southern Mich. Bancorp, Inc., 290 F. Supp. 2d 827 (W.D.

20  Mich. 2003), and Beer v. Nutt, 2007 WL 13100 (S.D.N.Y. Jan. 3, 2007), required arbitration of

21  supervision or continuing fraud claims, even though the investments occurred before the broker

22  joined the firm.  No discovery is needed to find that Defendants have alleged failures to supervise

23  and continuing fraud.

24      Again, the California and Iowa judges agreed.  "The plain language of Defendants' First

25  Amended Statement of Claim indicates that they seek redress not just for the alleged improper

26  investments made by Lancaster, but also for the alleged failure of ONESCO to supervise him after

27  March 23, 2004. A claim for failure to supervise clearly 'arises in connection with the business' of

28  ONESCO for the purposes of Rule 10301(a) [now Rule 12200]." Steinke, 2007 WL 2421761, at *3.

1    The Lancorp investor "has alleged negligent supervision of Lancaster, the 'associated person,' by

2    ONESCO . . . during the time that Lancaster was an 'associated person.' Thus, the second condition

3    for an arbitrable dispute within the terms of Rule 10301(a) [now Rule 12200] is met." <u>Pals</u>, 2007

4    WL 2506033, at *6.

5        Finally, as explained in more detail in Defendants' Motion to Compel Arbitration, the Court

6    in <u>Howsam v. Dean Witter Reynolds, Inc.</u>, 537 U.S. 79, 85 (2002), ruled that timing questions under

7    NASD arbitration rules are for the arbitrators, not the courts, to decide. This Court need not permit

8    discovery on arbitrability, when the timing question on which ONESCO seeks discovery is not a

9    "gateway" arbitrability issue as defined in <u>Howsam</u>.

10        In its filings in this Court and other courts, ONESCO has identified only three issues for

11    discovery: (1) what representations were made to Lancorp investor(s) before Lancaster worked for

12    ONESCO, (2) whether representations after Lancaster became an ONESCO agent were materially

13    different from those made earlier, and (3) whether Lancaster's Declaration is credible that he

14    disclosed Lancorp to ONESCO. These issues, however, improperly relate to the merits, not to

15    arbitrability. <u>See AT&T Tech., Inc. v. Communications Workers of Am.</u>, 475 U.S. 643, 649 (1986)

16    (In ruling on arbitrability, "a court is not to rule on the potential merits of the underlying claims.").

17    First, the content of a seller's representations and omissions is fundamental to the merits of every

18    securities fraud case. Second, although Defendants reject ONESCO's argument that ONESCO is

19    absolved of liability if Lancaster's later and earlier representations were the same, discovery of facts

20    about these representations would at least provide a factual basis for this argument on the merits.

21    Third, evidence that Lancaster did not disclose his Lancorp involvement to ONESCO again would

22    support ONESCO's argument on the merits that it is not liable to Defendants.

23        The proof that these discovery matters relate to the merits rather than arbitrability is that even

24    assuming *arguendo* that all of ONESCO's factual allegations on which it hopes to discover

25    supporting evidence are true, Defendants can still arbitrate, because their allegations still satisfy the

26    two requirements for arbitrability under NASD Rule 12200. First, Defendants were ONESCO

27    customers through Lancaster, because a customer under NASD Rule 12200 is anyone who is not a

28    broker or dealer. <u>Multi-Financial Sec. Corp. v. King</u>, 386 F.3d 1364, 1368 (11th Cir. 2004) ("The

-6-

1   NASD generally defines the term 'customer' as anyone who is not a broker or a dealer."). "[U]nder

2   the NASD Code, when the investor deals with an agent or representative, the investor deals with the

3   member, and on that basis the investor is entitled to have resolved in arbitration any dispute that

4   arises out of that relationship." Vestax Sec. Corp. v. McWood, 280 F.3d 1078, 1082 (6th Cir. 2002).

5   Second, Defendants have alleged that ONESCO failed to supervise events occurring in connection

6   with their Lancorp investments while they were Lancaster's customers and while Lancaster worked

7   for ONESCO.  "'A dispute that arises from a firm's lack of supervision over its brokers arises in

8   connection with its business,'" for purposes of the second requirement for arbitrability under NASD

9   Rule 12200 (or its predecessor Rule 10301). Id. (citation omitted).

10          Accordingly, this Court need not be concerned with ONESCO's allegations of disputed facts

11  which, if they have any validity, relate only to the merits, not to arbitration.

12          [W]e are unconcerned with MONY's cornucopia of disputed facts. Instead, we focus
            on those facts required to satisfy . . . [the] two-part test [for arbitrability under Rule
13          10301, now Rule 12200]. . . . [T]he facts that matter in this case are undisputed: the
            Bornsteins were customers of . . . an associated person of MONY. This undisputed
14          fact pattern is somewhat common, and the overwhelming response is that the case is
            subject to arbitration. More importantly, this fact pattern falls wholly within the clear
15          language of Rules 10101 and 10301, which focus first on whether the investor is a
            customer, and second on whether the dispute arose in connection with the business
16          of the member.

17  MONY Sec. Corp. v. Bornstein, 390 F.3d 1340, 1346 (11th Cir. 2004) (citations omitted).  Because

18  the two requirements for arbitrability under Rule 12200 are satisfied, this Court must summarily

19  compel arbitration, without delay for discovery and a two-day hearing.

20          **C.    Timing Questions are Arbitrable.**

21          On pages 8 and 11-12 of its Motion for Discovery, ONESCO improperly cites cases such as

22  PaineWebber, Inc. v. Hofmann, 984 F.2d 1372 (3d Cir. 1993), and Merrill Lynch, Pierce, Fenner &

23  Smith, Inc. v. Cohen, 62 F.3d 381 (11th Cir. 1995), which decided that courts should hold hearings

24  on the timeliness of arbitration demands within the six-year time bar of NASD Rule 10304.  These

25  citations are improper, because the Supreme Court rejected Hofmann and Cohen and found that

26  courts should not hold timeliness hearings.  "[T]he NASD time limit rule is a matter presumptively

27  for the arbitrator, not for the judge. The time limit rule closely resembles the gateway questions that

28

1    this Court has found not to be 'questions of arbitrability.'" <u>Howsam v. Dean Witter Reynolds, Inc.</u>,

2    537 U.S. 79, 85 (2002).

3        As Defendants explain in more detail in their Motion to Compel Arbitration, under <u>Howsam</u>,

4    the arbitrators, not this Court, decide timing questions.  The Eleventh Circuit has itself found in a

5    securities case that the arbitration agreement applied to prior transactions.

> [A]ppellee argues that because certain acts complained of occurred prior to execution
> of the arbitration agreement those claims are not properly disposed of by submission
> to an arbitrator.  Again, we disagree.  By its own terms the contract between the
> parties covers not only disputes arising out of the agreement, but in the disjunctive
> includes "any controversy between us arising out of your business." (emphasis
> supplied).  An arbitration clause covering disputes arising out of the contract or
> business between the parties evinces a clear intent to cover more than just those
> matters set forth in the contract.

<u>Belke v. Merrill Lynch, Pierce, Fenner & Smith</u>, 693 F.2d 1023, 1028 (11th Cir. 1982).

12        Moreover, even under <u>Hofmann</u>'s now-incorrect analysis, to avoid interfering with the

13   arbitrators' merits decisions, <u>Hofmann</u> barred NASD arbitration of timeliness disputes only if the

14   investors' claim that their causes of action arose during the six-year time frame of Rule 10304 was

15   patently only a tolling argument.  "In view of the general presumption of arbitrability, the court

16   should, as a benchmark, generally accept a party's statement as to what constitutes a cause of action

17   and permit the arbitration of that claim as long as the asserted cause of action is not clearly a mere

18   tolling or discovery argument." 984 F.2d at 1381.

19        Here, Defendants' assertion that their causes of action arose while Lancaster worked for

20   ONESCO is not "a mere tolling . . . argument."  To contend that Defendants' claims are based on

21   representations made before Lancaster worked for ONESCO and therefore are not arbitrable,

22   ONESCO relies on federal cases interpreting the repose period for claims under the Securities and

23   Exchange Commission's Rule 10b-5, 17 C.F.R. § 240.10b-5.  <u>See</u> Motion for Discovery at 7.  In

24   <u>Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson</u>, 501 U.S. 350, 364 & n.9 (1991), the Court

25   adopted for Rule 10b-5 claims, the limitations period from 15 U.S.C. § 78i(e), which bars claims

26   more than three years after a violation.  <u>Lampf</u> could have chosen–but did not choose–the repose

27   period from 15 U.S.C. § 78r(c), which runs three years from the "cause of action," rather than from

28   the "violation." Some cases have found that the distinction between "cause of action" and "violation"

-8-

1    is significant and therefore have calculated the repose period from the date of the misrepresentation,

2    even if the actual securities sale occurs later.  See, e.g., In re Prudential Ins. Co. of Am. Sales

3    Practice Litig., 975 F. Supp. 584, 603 (D.N.J. 1997).

4        Other cases, however, have rejected this view and found that the repose period runs from the

5    sale date.  Starting a time bar before investors have even bought the investment is counterintuitive.

6        This Court believes the better view to be that the statute of limitations for a § 10(b)
         and Rule 10b-5 claim runs from the date of the purchase or sale of the security. The
7        violation is the use of a fraudulent device or the making of an untrue statement of
         material fact or the omission to state a material fact in connection with the purchase
8        of sale . . . . Thus, a violation is not complete until a sale or purchase occurs.

9    Randolph County Fed. Sav. & Loan Assoc. v. Sutliffe, 775 F. Supp. 1113, 1122 (S.D. Ohio 1991).

10   ONESCO's contentions thus rest on a disputed technical contention of law about the applicable

11   statute of repose for Rule 10b-5 claims.

12       Regardless of this technical point about repose periods, Defendants' arbitration claims are

13   based on their causes of action, which are necessarily based on the Lancorp sales to them.  They have

14   no claims and no standing, under Rule 10b-5 or otherwise, until the sales occurred, and they lost their

15   money.  "[O]ne asserting a claim for damages based on the violation of Rule 10b-5 must be either

16   a purchaser or seller of securities."  Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 749

17   (1975) (Person who is induced as a result of misrepresentations in a prospectus not to purchase a

18   security lacks standing to bring a Rule 10b-5 claim.).

19       As stated in more detail in Defendants' Motion to Compel Arbitration at 8-12, the Lancorp

20   investors' initial subscription agreements were merely conditional, because Lancorp could cancel,

21   modify, or withdraw the offer at any time.  Consequently, execution of the initial Lancorp

22   subscription agreements did not constitute sales, and the Lancorp shares were not sold until, at the

23   earliest, April or May 2004 after Lancaster became an ONESCO employee, when the investors

24   reconfirmed their investments, opted not to receive back their funds, and Lancorp became

25   operational.

26       "Words of promise do not constitute a promise if they make performance . . . optional
27       with the purported promisor.". . . . Thus, even if the subscribers are viewed as
         promisors who irrevocably committed themselves to purchase securities by executing
28       the Subscription Agreement, a contract of purchase was not formed because
         Stratosphere made no return promise . . . .

1    Cohen v. Stratosphere Corp., 115 F.3d 695, 701 (9th Cir. 1997). "Here, the class members had the

2    option of rejecting the renewals. Therefore, each renewal, whether accompanied by new

3    representations or not, was based upon a new decision, and each constituted a new investment" when

4    the investment decision was made. Getty v. Harmon, 53 F. Supp. 2d 1053, 1056 (W.D. Wash. 1999).

5    Under Cohen and Getty, the Lancorp investments were sold when Lancaster was an ONESCO

6    employee.  Defendants are entitled to arbitrate Rule 10b-5 claims based on these sales.

7         ONESCO also fails to recognize that Defendants have other claims besides their Rule 10b-5

8    claims. Their claims under the Securities Act of 1933 require actual purchases, and, when Lampf was

9    decided, the statute of repose for their securities fraud claims under the 1933 Act was "three years

10   after the sale." 15 U.S.C. §§ 77l, m.  If ONESCO is correct that arbitrability depends on the timing

11   of the operative event of the claim, then Defendants' 1933 Act claims are arbitrable, because these

12   claims require actual sales which did not occur until after Lancaster became an ONESCO employee.

13   Similarly, Defendants' claims under the California and Oregon securities laws require actual sales

14   to purchasers. Cal. Corp. Code § 25501; Ore. Rev. Stat. § 59.115; Ainslie v. Spolyar, 926 P.2d 822,

15   824-827 (Ore. Ct. App. 1996).   Defendants' common law claims require actual damages and

16   therefore require that the sale occurred. See, e.g.,Trujillo v. North County Transit Dist., 63 Cal. App.

17   4th 280, 286-287, 73 Cal. Rptr. 2d 596, 600 (1998) ("[T]the usual elements of a tort . . . [are] legal

18   duty of care . . ., breach of duty . . ., legal causation, and damages . . . ."). Defendants did not lose

19   their funds until after Lancaster started working for ONESCO.  Accordingly, ONESCO cannot

20   reasonably claim that Defendants' claims are  "clearly a mere tolling . . . argument."

21        **D.    This Court Should Apply Motion Procedures and Proceed Summarily**
22        **to the Arbitrability Issue, Without Lengthy and Expensive Delay for**
          **Depositions and Other Discovery Procedures.**
23
          In its Motion for Discovery at 9, ONESCO states this case "is a quintessential civil action,"
24
     and it opposes summary disposition. ONESCO asks this Court to allow discovery and an evidentiary
25
     hearing with "*a detailed inquiry* into the occurrence and timing of events giving rise to" Defendants'
26
     claims.  Motion for Discovery at 11-12 & n.7 (emphasis supplied by ONESCO).  To that end,
27
     ONESCO has in other, similar cases propounded dozens of document requests, and it wants to
28
     conduct court-ordered depositions it could not conduct in the underlying arbitration.  Defendants

1  anticipate that ONESCO will then need or seek to reserve two days on this Court's busy calendar

2  for an evidentiary hearing on arbitrability.

3      ONESCO's request for time-consuming inquiry into arbitrability disregards black letter law

4  under the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").  Although ONESCO filed a court

5  complaint, Defendants have moved to compel arbitration, and, accordingly, the FAA governs.

6  Section 6 of the FAA provides that applications to compel arbitration under Section 4 are treated as

7  motions.  Discovery is not automatically permitted for motions.  Section 6 therefore preempts the

8  usual entitlement to discovery that a party has when litigating a complaint.  This preemption applies

9  regardless of whether, as in this case, the plaintiff filed a complaint to enjoin an arbitration or, as in

10  the more typical case, the plaintiff filed a complaint alleging that the defendant is liable on the

11  merits.  In either case, motions to compel arbitration trump the procedures that would otherwise

12  apply.  The court must then immediately begin to resolve the arbitrability question by procedures

13  applicable to motions.

14      ONESCO's position that it is automatically entitled to the same full process that it would get

15  in an ordinary civil proceeding is incorrect.

16          [T]he language of Section 6 preempts the applicability of the Federal Rules

17  that in a Application to Vacate is to be treated procedurally in the manner of a motion.

18       . . . .

19          It would defeat the purpose of arbitration if a reviewing court was obligated

20  to give all the due process of the parties filing actions of a civil nature and deserving of Federal Rule 16 treatment, e.g., a scheduling conference, hearing, etc.

21  <u>Health Services Management Corp. v. Hughes</u>, 975 F.2d 1253, 1258 (7th Cir. 1998).

22      The [FAA] provides that "[a]ny application to the court ... shall be made and heard in the manner provided by law for the making and hearing of motions," . . .  Rule

23  81(a)(3) of the Federal Rules of Civil Procedure states, in part: "In proceedings under Title 9, U.S.C., relating to arbitration . . . [the Rules of Civil Procedure] apply only

24  to the extent that matters of procedure are not provided for in those statutes." Fed. R. Civ. P. 81(a)(3). Thus, the language of Section 6 preempts the Federal Rules. The

25  policy behind this section "is to expedite judicial treatment of matters pertaining to arbitration."

26

27  <u>Kruse v. Sands Bros. & Co.</u>, 226 F. Supp. 2d 484, 486 (S.D.N.Y. 2002) (citations omitted).

28      The "plain meaning" of the FAA and "the unmistakably clear congressional purpose [was]

that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject

to delay and obstruction in the courts." <u>Prima Paint Co. v. Flood & Conklin Mfg. Co.</u>, 388 U.S. 395, 404 (1967).  Congress expressed a "clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." <u>Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 22 (1983).  <u>Moses H. Cone</u> cited Section 6 of the FAA and found that "a request for relief under . . .§ 4 [of the FAA] is to be treated procedurally as a motion." <u>Id.</u> at 22 n.27.  Consequently, to effectuate "the statutory policy of rapid and unobstructed enforcement of arbitration agreements," the FAA requires courts when determining arbitrability to hold "an expeditious and summary hearing, with only restricted inquiry into factual issues." <u>Id.</u> at 22-23.  "The Arbitration Act calls for a summary and speedy disposition of motions or petitions to enforce arbitration clauses." <u>Id.</u> at 29.  ONESCO's opposition to summary disposition contradicts the Supreme Court's command that summary disposition is required.

Because these speedy procedures of Section 6 of the FAA apply to all provisions of the Act, the Eleventh Circuit's comments about motions to vacate arbitration awards under Section 10 of the FAA apply equally to arbitrability questions under Section 4.

> If . . . the application to vacate the award may be brought in the form of a complaint, . . . the proceeding . . . would develop into full scale litigation, with the attendant discovery, motions, and perhaps trial. . . .
>
> We disagree.  It is well-established that "[t]he purpose of the Federal Arbitration Act was to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that would be speedier and less costly than litigation."  The policy of expedited judicial action expressed in section 6 of the [FAA] would not be served by permitting parties who have lost in the arbitration process to file a new suit in federal court.

<u>O.R. Sec., Inc. v. Professional Planning Assoc.</u>, 857 F.2d 742, 745-46 (11th Cir. 1988) (citations omitted); <u>Commerce Park at DFW Freeport v. Mardian Const. Co.</u>, 729 F.2d 334, 340 (5th Cir. 1984) ("[A]n evidentiary hearing was not required [because it would] . . . have contravened the clear intent underlying the Arbitration Act . . . 'to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.'").

Further reinforcing the summary nature of FAA proceedings is the use of the word "application" in Sections 4 and 6 as the means to compel arbitration. The court in <u>Securities and</u>

-12-

1    Exch. Comm'n v. McCarthy, 322 F.3d 650, 656-57 (9th Cir. 2003) (citations omitted), stressed this

2    point when it found that the SEC could summarily enforce a disciplinary order.

3          "Applications" are distinct from "actions." . . . Congress's use of the word
       "application" . . . is significant. . . .

4

5          [A]n "action" is the formal and ordinary means by which parties seek legal
       and/or equitable relief before a court of law through the filing of a formal complaint,
       triggering the full array of legal, procedural, and evidentiary rules governing the

6      process by which a court adjudicates the merits of a dispute. . . .

7          "Applications," however, are different.  An "application" is merely a
       "motion."  A "motion" is defined as, "[a] written or oral application requesting a

8      court to make a specified ruling or order."  A "application" is not a "lawsuit" or a
       "formal complaint."  It does not necessarily . . . trigger "all the formal proceedings

9      in a court of justice" as does the filing of an "action."  Had Congress intended to
       require the Commission to bring a full-blown civil action . . . in order to enforce its

10     orders, Congress would have made this explicit by requiring the Commission to file
       an "action" . . ., rather than an "application."

11

12   Any other conclusion would defeat the national policy favoring arbitration.  Parties enter into

13   arbitration to avoid court-related procedures of the sort sought by ONESCO in the instant litigation.

14   "If the courts were free to intervene on these grounds, the speedy resolution of grievances by private

15   mechanisms would be greatly undermined."  United Paperworkers Int'l Union v. Misco, Inc., 484

16   U.S. 29, 38 (1987).

17          E.    **The Sole Limited Issue Before this Court Is Whether the Arbitration
                 Obligation Is Susceptible to a Construction Allowing Arbitration.  No
18               Discovery Is Necessary for this Scope Issue.**

19   ONESCO quotes from the second edition of Moore's Federal Practice, ¶ 81.05[7], that "the

20   issue of arbitrability is a relevant and proper matter for discovery."  Motion for Discovery at 1.

21   Moore's second edition, however, has been superseded for ten years.  The third edition, ¶ 81.08[1],

22   more circumspectly than the second edition, states as follows:

23          The Federal Rules apply to proceedings relating to arbitration only when the
       proceeding is judicial in nature and the matters of procedure are not otherwise

24     provided for in the Federal Arbitration Act (FAA).  The federal rules apply to judicial
       proceedings under the FAA, such as the actions brought in district court to compel

25     arbitration.  For example, a district court may order discovery pursuant to Rule 26 to
       provide evidence relevant to the existence of an arbitration agreement when deciding

26     whether to compel arbitration. . . .
              . . . .

27
             If the FAA covers a procedure, the Civil Rules do not apply.
28

-13-

The FAA permits discovery only in limited circumstances.  For example, FAA Section 4 "provides for discovery and a full trial in connection with a motion to compel arbitration only if 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue.'"  Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 726 (9th Cir.1999) (quoting 9 U.S.C. § 4).  This provision for discovery about the existence or making of an arbitration agreement corresponds to Moore's statement regarding discovery of the existence of an agreement.  Most of ONESCO's cited cases concern discovery of this sort whether an enforceable arbitration agreement exists at all.[1]  Motion for Discovery at 10 & n.5.  In this case, however, no issue exists about the making or existence of ONESCO's agreement with the NASD to comply with Rule 12200.  ONESCO does not dispute that Rule 12200 exists and is binding.  ONESCO is also not entitled to discovery and trial on its "failure, neglect, or refusal" to comply with Rule 12200–the other basis in Simula and Section 4 for a trial on arbitrability.  Defendants and ONESCO agree that ONESCO will arbitrate only under duress.

Because these are the only two possible grounds for trial under Section 4 of the FAA, ONESCO is not entitled to discovery and trial under Section 4.

> There was no question about the refusal or failure to perform under the arbitration agreement.  CG & E filed this action to avoid being required to perform.  No trial was required on this issue.  Nor was there any factual question about the "making" of the agreement to arbitrate.  CG & E did not contend that the parties had not intended to include the arbitration clause in the . . . contract.  There was no question of mistake or inadvertence which might require proof of matters not shown by the contract itself.  The only question of "the making of the agreement to arbitrate" in this case is whether the claim of Shaw is covered by the arbitration clause.  This could be determined by examination of the language of the arbitration provision itself . . . .

---

[1]  See Overseas Oil Transp. Corp. v. Phibro Energy, A.G., 1989 WL 77176 (S.D.N.Y. Feb. 1, 1989) (discovery whether an arbitration agreement signatory was an agent of the party to the arbitration); BS Sun Shipping Monrovia v. Citgo Petro. Corp., 2006 WL 2265041 (S.D.N.Y. Aug. 8, 2006) (same); H.L. Libby Corp. v. Skelly and Loy, Inc., 910 F. Supp. 195 (M.D. Pa. 1995) (discovery whether an arbitration agreement was part of the parties' contract); McLaughlin Gormley King Co. v. Terminix Int'l Co., L.P., 105 F.3d 1192 (8th Cir. 1997) (discovery whether an arbitration agreement had expired); Shaw Group, Inc. v. Triplefine Int'l Corp., 2001 WL 1246583 (S.D.N.Y. Oct. 18, 2001) (discovery whether a valid arbitration agreement had been made); Hooters of Am., Inc. v. Phillips, 39 F. Supp. 2d 582, 591 (D.S.C. 1998) (discovery about "making of the alleged arbitration agreement").

Cincinnati Gas & Elec. v. Benjamin F. Shaw Co., 706 F.2d 155, 159 (6th Cir. 1983).

Here, the issue is not the existence of NASD Rule 12200, but its scope–whether it applies to the disputes between the parties.  When the issue is the scope of an arbitration obligation, the law provides that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  Moses H. Cone Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).  If arbitration obligations clearly exist, arbitrability is presumed, and arbitration generally is required.

> [A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage.

AT&T Tech., Inc. v. Communication Workers of Am., 475 U.S. 643, 650 (1986) (citation omitted).

Courts have found that timing issues are subject to the arbitrability presumption.

> Plaintiffs argue that the arbitration agreements are not enforceable . . . because the arbitration agreements do not apply retroactively. Plaintiffs concede that the arbitration agreements are generally valid. Put another way, Plaintiffs argue that their antitrust claims do not fall within the scope of the arbitration agreements as a result of non-retroactivity. Plaintiffs are in fact raising a scope question. Thus, the general [presumption in favor of arbitration for the resolution of scope questions] . . . applies.

Kristian v. Comcast Corp., 446 F.3d 25, 35 (1st Cir. 2006). This Court must therefore compel arbitration if it can find any interpretation of NASD Rule 12200 and the facts which would allow arbitration.  See Washington Square Sec,, Inc. v. Aune 385 F.3d 432, 436 (4th Cir. 2004) (construing ambiguities in Rule 10301 in favor of arbitration).

Here, ONESCO authorized Lancaster to sell investments, and Lancaster offered investment decisions to Defendants while he worked for ONESCO. NASD Rule 12200 is at least susceptible to an interpretation of these facts that would allow arbitration.  Susceptibility is all that is necessary to resolve the parties' disputes about the scope of the NASD arbitration obligation, and this Court can decide this simple issue–whether Rule 12200 is objectively susceptible to an interpretation favoring arbitration–without delay for discovery.  At best, even assuming *arguendo* that discovery

1  could raise doubts about the scope of the arbitration agreement, the mere existence of doubts is not

2  sufficient to preclude arbitration.

3      In <u>Washington Square Sec., Inc. v. Aune</u>, 253 F. Supp. 2d 839 (W.D.N.C. 2003), <u>aff'd</u>, 385

4  F.3d 432 (4th Cir. 2004), as in the present case, the investors dealt with the firm's representative

5  while he worked for the firm and therefore were entitled to arbitrate.  "[T]here is no need to conduct

6  any discovery, albeit limited, where it is clear that the instant dispute is, in fact, arbitrable."  <u>Id</u>. at

7  845.  In <u>WMA Sec., Inc. v. Wynn</u>, 191 F.R.D. 128 (S.D. Ohio 1999), <u>approved</u> <u>WMA Sec., Inc. v.</u>

8  <u>Wynn</u>, 105 F. Supp. 2d 833, 836 (S.D. Ohio 2000), <u>aff'd</u>, 2002 WL 504965 (6th Cir. Apr. 1, 2002)

9  the investors dealt with the firm's representative while he worked for the firm.  The magistrate

10  entered a protective order, because "further discovery about those issues in this Court would be

11  pointless.  The issues of further discovery and jurisdiction are merged in the Motion for a Protective

12  Order."  <u>Id</u>. at 131.

13      The Court in <u>Virginia Sprinkler Co. v. Road Sprinkler Fitters Local Union</u>, 868 F.2d 116,

14  120-21 (4th Cir. 1989) (citations omitted), disallowed discovery on arbitrability.

15          Virginia Sprinkler has argued that the district court should have permitted
16      discovery on . . . the Union's intent. . . .  The district court correctly refused such a
        request.  The whole point of the facial invalidity test is to avoid enmeshing courts in
17      detailed interpretations of the meanings of provisions that should instead be decided
        by the arbitrator.  Unless the provision in question is patently invalid or unless it is
18      obvious on the face of the language that the arbitration clause does not cover the
        dispute, the case should go to arbitration.  Arbitration loses much of its value if one
19      party can enforce protracted litigation and expensive discovery merely by raising
        questions about the party's intent in adopting a particular contract provision.
20
        When <u>Bender v. Smith Barney, Harris Upham & Co.</u>, 789 F. Supp. 155, 159 (D.N.J. 1992),
21
    considered a broker's arbitration obligations under NASD rules, the court did not hold a trial,
22
    because "[t]his is not a case where plaintiff disputes the existence of the arbitration agreement, but
23
    rather a case where the plaintiff challenges the scope of the arbitration clause."  In a similar case
24
    involving a broker's NASD arbitration obligation, the court ruled
25
            that in the absence of a claim that the arbitration agreement at issue is the product of
26      fraud or mistake, there is no requirement of a jury trial or evidentiary hearing.
        Arbitration agreements would have little value if a mini-trial on the scope of the
27      agreement were a prerequisite to enforcement.

28  <u>Kanuth v. Prescott, Ball & Turben, Inc.</u>, 1988 WL 90392, at *4 (D.D.C. 1988).

-16-

ONESCO's own words reveal that the issue in this case involves the scope of NASD Rule 12200, rather than its existence. According to ONESCO, the arbitrability "presumption has no application where, as here, the *existence* of an agreement ***covering* the claims at issue** is the very question to be decided by the Court." Motion for Discovery at 6 (emphasis added). ONESCO's use of the word "covering" establishes that the question in this case is the scope of Rule 12200. If the scope presumption did not apply to coverage questions, then this presumption would never apply.

ONESCO cites Investors Capital Corp v. Brown, 129 F. Supp. 2d 1340, 1341 (M.D. Fla. 2000), but the Eleventh Circuit later rejected Brown's understanding of arbitrability. See Multi-Financial Sec. Corp. v. King, 386 F.3d 1364, 369 (11th Cir. 2004) (finding Investors Capital Corp. v. Brown, 145 F. Supp. 2d 1302 (M.D. Fla. 2001), to be "not persuasive"). In addition, the Brown magistrate had recommended immediate arbitration, and another Florida district judge disallowed discovery in almost identical circumstances. See Investors Capital Corp. v. Brown, 125 F. Supp. 2d 1346 (M.D. Fla. 2001); Investors Capital Corp. v. Rimmler, 2001 WL 114936, at *2 (M.D. Fla. Feb. 5, 2001) ("[The brokerage firm's] request to conduct limited discovery on the issue of arbitrability is DENIED.").

ONESCO also cites International Union of Elec. Radio & Machine Workers v. Westinghouse Elec. Corp., 48 F.R.D. 298, 300 (S.D.N.Y. 1969), which rejected an argument that discovery was inconsistent with the FAA's requirement of "a speedy and inexpensive determination of the question of arbitrability." International Union allowed discovery on the parties' intent in entering into a arbitration agreement, even without a showing of special need. International Union relied on the supposed "clear language" of Federal Rule of Civil Procedure 81(a)(3) that the civil procedure rules apply unless the FAA provides otherwise.

The Court in Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22 (1983), however, overruled this reasoning, stating that Congress expressed a "clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." Moses H. Cone cited Section 6 of the FAA and found that "a request for relief under . . . § 4 [of the FAA] is to be treated procedurally as a motion." Id. at 22 n.27. Contrary to International Union, the FAA does provide that parties opposing arbitration are not

automatically entitled to discovery. Under Section 6 of the FAA, applications to compel arbitration are treated as motions, which are not subject to the discovery rules in the same way that complaints are. Federal Rule of Civil Procedure 43(e) permits courts to decide motions without testimony and depositions. Appellate courts have foreclosed discovery on intent. <u>Virginia Sprinkler Co.</u>; <u>Inlandboatmens Union of the Pacific v. Dutra Group</u>, 279 F.3d 1075, 1084 (9th Cir. 2002) ("The IBU's . . . contention that it should be allowed discovery . . . that it did not intend that disputes arising under the settlement be arbitrated is . . . without merit. . . .").

This Court should follow the many cases that have disallowed discovery on arbitrability. In addition to the cases previously cited, Defendants cite <u>ACE Ltd. v. CIGNA Corp.</u>, 2001 WL 767015, at *5 n.2 (S.D.N.Y. July 6, 2001) ("[D]iscovery . . . [is] more appropriate for evaluating the merits . . . (which is the arbitrator's task) than for determining . . . arbitrability . . . (which is our only task here).”), <u>Gold v. Deutsche Aktiengesellschaft</u>, 1998 WL 126058, at *3 (S.D.N.Y. Mar. 19, 1998) ("The instant case . . . does not require the development of the factual record before an order compelling arbitration is issued."), <u>Lomax v. Woodmen of World Life Ins. Society</u>, 228 F. Supp. 2d 1360, 1366 (N.D. Ga. 2002) ("Plaintiffs' Motion to Conduct Discovery on . . . Arbitrability . . . is DENIED . . . .”), and <u>Merrill Lynch, Pierce, Fenner & Smith Inc. v. Coors</u>, 357 F. Supp. 2d 1277, 1280 (D. Colo. 2004) ("[J]udicial economy would be advanced by staying discovery . . . pending a decision on Defendant's dispositive motion [to dismiss or compel arbitration]. . . . '[R]equiring the parties to submit to full discovery [prior to a ruling on the arbitrability issue] may unnecessarily subject them "to the very complexities, inconveniences and expenses of litigation that they determined to avoid."'" (citation omitted)).

> **F.  Permitting Depositions and Other Discovery Would Improperly Allow ONESCO to Obtain Court-ordered Discovery on the Merits That it Could Not Obtain in the Arbitration.**

While nominally limited to the arbitrability issue, Defendants' and Lancaster's depositions would inevitably delve into the merits of the parties' disputes. Beyond doubt, ONESCO will depose them about all aspects of their dealings with ONESCO and each other and the investments Defendants purchased. Under the guise of asking questions about "arbitrability," ONESCO will thereby improperly obtain court-ordered discovery about issues relevant to its liability that are

committed to the NASD arbitrators for decision. See AT&T Tech., Inc. v. Communications Workers of Am., 475 U.S. 643, 649 (1986) ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitrators, a court is not to rule on the potential merits of the underlying claims.").

Because courts cannot decide the merits of the parties' disputes when they determine arbitrability, courts routinely refuse to allow merits discovery. "[T]he ordering of discovery which, in essence, pertains to a matter in binding arbitration would be inappropriate." Burlington Northern Joint Protective Board v. Burlington Northern R.R., 822 F.2d 810, 812 (8th Cir. 1987). "The district judge, having determined that arbitration was appropriate, properly refrained from examining the merits of the case. Consequently, his order quashing the notice to depose the manager for inquiry on the merits of the controversy was not an abuse of discretion." H.K. Porter Co., Conners Steel Division v. Local 37, United Steel Workers of Am., 400 F.2d 691, 695-96 (4th Cir. 1968).

The court in ARW Exploration Corp. v. Aguirre, 1990 WL 270291, at *1-2 (W.D. Okla. Dec. 10, 1990), disallowed discovery despite claims that discovery was needed to determine arbitrability.

> [D]iscovery on the merits prior to arbitration is inconsistent with the aims of arbitration. . . .
>
> . . . Defendants have correctly identified the general rule that discovery is prohibited on the merits prior to a determination of arbitrability, and plaintiff has offered nothing in response. In essence, plaintiff would have defendants prove a negative–that plaintiff has no special need. Instead, if plaintiff desires an exception to the general rule, it is plaintiff's burden to prove its entitlement.

See also Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc., 61 F.R.D. 8, 10 (D.V.I. 1973), rev'd on other grounds, 499 F.2d 1391 (3d Cir. 1974) ("In proceedings to compel arbitration, discovery . . . into the merits . . . is improper.").

Moreover, to fulfill arbitration's purpose to reduce costs, arbitration discovery, particularly depositions, is generally limited. "A hallmark of arbitration–and a necessary precursor to its efficient operation–is the limited discovery process." Comsat Corp. v. National Science Foundation, 190 F.3d 269, 276 (4th Cir. 1999). "Limitations on discovery, particularly judicially initiated discovery, remain one of the hallmarks of American commercial arbitration, including arbitration under the FAA. Avoidance of the delay and expense associated with discovery is still one of the reasons

1    parties choose to arbitrate." 3 Ian R. MacNeil *et al.*, Federal Arbitration Law § 34.1 at 34:2 (1997)

2    (footnote omitted). The NASD has said that "[d]epositions are strongly discouraged in arbitration."

3    Notice to Members 99-90, 1999 WL 33176593, at *5 (NASDR Oct. 25, 1999).

4        When arbitration obligations exist, discovery is the arbitrators' province, and interfering with

5    their domain through court-ordered discovery frustrates the FAA's purpose that arbitrators, not

6    courts, resolve arbitrable disputes. Otherwise, courts become embroiled in the arbitration, and

7    parties obtain double-barreled discovery through both arbitration and court, which defeats the object

8    of arbitration to avoid judicial intervention. "Allowing such discovery here, even on a limited basis,

9    would . . . provide the plaintiff with two forums to hear its single claim, and would thereby frustrate

10   the purposes of the Act." Thomas O'Connor & Co. v. Insurance Co. of N. Am., 697 F. Supp. 563,

11   567 (D. Mass. 1988).

12       ONESCO's request for discovery is only a Trojan horse which, once through this Court's

13   gates, would thwart arbitration's purpose to provide a less costly and speedier alternative to

14   litigation. ONESCO will be able to obtain the information it seeks by questioning Defendants and

15   Lancaster at the arbitration hearing. ONESCO should not be able to obtain discovery on the merits

16   of Defendants' claims through court-ordered depositions prior to the arbitration, when the arbitrators

17   themselves would not permit these depositions. The better course is, as the FAA commands, to

18   resolve the arbitrability issue immediately and summarily, without substantial delay and expense for

19   depositions and the other courtroom procedures inherent in ONESCO's requested litigation.

20       WHEREFORE, this Court should preclude discovery until it has ruled on Defendants'

21   Motion to Compel Arbitration and ONESCO's Injunction Motion.

22                                     Respectfully submitted,

23   DATED: September 14, 2007         GOODMAN & NEKVASIL, P.A.
24                                        By: /s/ Joel A. Goodman
                                          Joel A. Goodman
25                                        Attorney *pro hac vice*

26                                     LAW OFFICES OF RICHARD A. KUTCHE
27                                        Richard A. Kutche
                                          Local counsel

28                                     Attorneys for Defendants

# CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List below.

/s/ Joel A. Goodman
Joel A. Goodman
Goodman & Nekvasil, P.A.
14020 Roosevelt Blvd., Suite 808
P.O. Box 17709
Clearwater, Florida 33762
Telephone:  727-524-8486
Facsimile:  727-524-8786

**Electronic Mail Notice List**

Daniel T. Balmat                          Marion Homer Little, Jr,
dbalmat@ssd.com, rarroyo@ssd.com          little@litohio.com

Joseph Anthony Meckes                     Michael R. Reed
jmeckes@ssd.com, sfr_docket@ssd.com       reed@litohio.com

Defendants' Memorandum in Opposition to Plaintiff's Motion for Discovery  -  Case No. C 07-03303 JF RS