Joel A. Goodman (FL Bar No. 802468)
Admitted *pro hac vice*
Email: gn.law@verizon.net
Goodman & Nekvasil, P.A.
14020 Roosevelt Blvd., Suite 808
P.O. Box 17709
Clearwater, Florida 33762
Telephone: 727-524-8486
Facsimile: 727-524-8786

Richard A. Kutche (CA Bar No. 151950)
Email: rakutche@pacbell.net
Law Offices of Richard A. Kutche
46 South First Street
San Jose, CA 95113
Telephone: (408) 295-0474
Facsimile: (408) 295-6693
Local counsel

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE O.N. EQUITY SALES COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS NEMES, Individually and as Trustee of the THOMAS NEMES TRUST, MICHAEL J. BENKERT, Individually and on Behalf of SHORE 2 SHORE ENTERPRISES, INC., and JERRY J. THOMAS and NANCY M. THOMAS, Individually and as Trustees of the JERRY J. THOMAS and NANCY M. THOMAS 1998 INTER VIVOS TRUST,<br><br>Defendants. | Case No. C 07-03303 JF RS<br><br>Judge Jeremy Fogel<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO CONSOLIDATE PRELIMINARY INJUNCTION HEARING WITH TRIAL ON THE MERITS**<br><br>Date: October 5, 2007<br>Time: 9:00 a.m.<br>Courtroom: 3, 5th Floor |

# TABLE OF CONTENTS

INTRODUCTION. . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . 1

ARGUMENT. . . . . . . . . . 3

A. This Court should Adopt California and Iowa Federal Judges' Decisions to Compel ONESCO to Arbitrate without Delay for Discovery or Trial. . . . . . . . . . 3

B. This Court Can Readily Determine that the Parties' Disputes are Arbitrable, without the Delay and Expense Inherent in ONESCO's Request for a Full Trial on the Merits. . . . . . . . . . 4

C. This Court Should Apply the Procedures Applicable to Motions and Proceed Summarily to the Arbitrability Issue, Without Lengthy and Expensive Delay for a Full Trial. . . . . . . . . . 8

D. The Sole Limited Issue Before this Court Is Whether ONESCO's Arbitration Obligation Is Susceptible to a Construction Which Allows Arbitration. A Trial is Unnecessary for this Scope Issue. . . . . . . . . . 9

E. A Trial would Improperly Require Determinations on the Merits. . . . . . . . . . 11

CERTIFICATE OF SERVICE. . . . . . . . . . 12

**TABLE OF AUTHORITIES**

**Cases**

AT&T Tech., Inc. v. Communication Workers of Am., 475 U.S. 643 (1986). . . . . . . . . . 10, 11

Beer v. Nutt, 2007 WL 13100 (S.D.N.Y. Jan. 3, 2007). . . . . . . . . . 7

Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723 (1975). . . . . . . . . . 6

Cohen v. Stratosphere Corp., 115 F.3d 695 (9th Cir. 1997). . . . . . . . . . 5

Getty v. Harmon, 53 F. Supp. 2d 1053 (W.D. Wash. 1999). . . . . . . . . . 6

Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002). . . . . . . . . . 7

Kruse v. Sands Bros. & Co., 226 F. Supp. 2d 484 (S.D.N.Y. 2002). . . . . . . . . . 8

Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1 (1983). . . . . . . . . . 1, 9, 10

O.N. Equity Sales Co. v. Pals, ___ F. Supp. 2d __, 2007 WL 2506033 (N.D. Iowa Sept. 6, 2007). . . . . . . . . . 4, 5, 6, 7

O.N. Equity Sales Co. v. Steinke, ____ F. Supp. 2d ____, 2007 WL 2421761 (C.D. Cal. Aug. 27, 2007). . . . . . . . . . 3, 4, 5, 6, 7

O.R. Sec., Inc. v. Professional Planning Assoc., 857 F.2d 742 (11th Cir. 1988). . . . . . . . . . 9

Prima Paint Co. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967). . . . . . . . . . 9

Simula, Inc. v. Autoliv, Inc., 175 F.3d 716 (9th Cir.1999). . . . . . . . . . 8

United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29 (1987). . . . . . . . . . 9

USAllianz Sec., Inc. v. Southern Mich. Bancorp, Inc., 290 F. Supp. 2d 827 (W.D. Mich. 2003). . . . . . . . . . 7

World Group Sec., Inc. v. Sanders, 2006 WL 1278738 (D. Utah May 8, 2006). . . . . . . . . . 7

**Statutes and Rules**

Federal Arbitration Act, 9 U.S.C. §§ 1-16. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 9

Federal Rule of Civil Procedure 43(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Federal Rule of Civil Procedure 65(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

NASD Rule 12200. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 9, 10

## INTRODUCTION

The Motion and Memorandum of Points and Authorities in Support ("Motion to Consolidate") by Plaintiff O.N. Equity Sales Company ("ONESCO") that this Court conduct a trial on the merits of ONESCO's Complaint for injunctive relief simultaneously with the Court's consideration of ONESCO's Motion for Preliminary Injunction and Memorandum of Points and Authorities in Support ("Injunction Motion") would, if granted, substantially delay the determination of the arbitrability issue in this case, unnecessarily consume the time of this Court, and interfere with the arbitrators' decisions on the merits of the parties' disputes. An actual trial would require lengthy formal trial procedures and testimony, in lieu of the speedier procedures that are the proper basis for arbitrability decisions. Under Section 6 of the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), courts must resolve arbitrability issues by the streamlined procedures applicable to motions, not by the trial procedures applicable to complaints.

Rather than conduct a full trial as an initial matter, this Court should instead immediately consider together ONESCO's Injunction Motion and Defendants' Motion to Compel Arbitration and Memorandum of Points and Authorities in Support ("Motion to Compel Arbitration"). In deciding these two motions, this Court should determine whether it can compel arbitration based on the documents and arguments presented. Only through this procedure will this Court honor the command of the FAA and the Supreme Court "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 22 (1983).

## STATEMENT OF FACTS

Defendants Thomas Nemes, Individually and as Trustee of the Thomas Nemes Trust, Michael J. Benkert, Individually and on Behalf of Shore 2 Shore Enterprises, Inc., and Jerry J. Thomas and Nancy M. Thomas, Individually and as Trustees of the Jerry J. Thomas and Nancy M. Thomas 1998 Inter Vivos Trust, through their undersigned counsel, simultaneously herewith are filing their Motion to Compel Arbitration, their Memorandum of Points and Authorities in Opposition to ONESCO's Motion for an Order Authorizing the Parties to Engage in Immediate Discovery on the Issue of Arbitrability ("Motion for Discovery"), and supporting exhibits.

Defendants rely on and incorporate herein–and do not repeat in detail here–the facts, arguments, and exhibits included in these other filings.

Briefly stated, ONESCO's argument in its Injunction Motion is that Defendants signed subscription agreements for their purchase of Lancorp Financial Fund Business Trust ("Lancorp") from Gary L. Lancaster ("Lancaster"), before Lancaster started working for ONESCO. ONESCO does not dispute that it is required to arbitrate with investors who purchased their Lancorp investment while Lancaster worked for ONESCO, but ONESCO believes that Defendants' arbitration claims are based on their subscription agreements and on Lancaster's representations before Lancaster started worked for ONESCO. ONESCO concludes it is therefore not required to arbitrate with Defendants under Rule 12200 of the National Association of Securities Dealers, Inc. ("NASD").

In their Motion to Compel Arbitration at 8-10, Defendants pointed out that, according to the Lancorp Private Placement Memorandum ("PPM") at i-iii, 1-4 (attached to ONESCO's Complaint as Exh. "A"), Lancorp could cancel or terminate the offering at any time. Lancorp investors' initially invested funds were merely held in escrow until the investment closed in April and May 2004, after Lancaster started working for ONESCO. (See Lancaster's declaration ("Lancaster First Declaration" or "Lancaster First Dec."), attached to the Motion to Compel Arbitration as Exh. "2.") The investment did not take place and was not final at the time Defendants signed the initial subscription agreements in 2003.

According to the Lancaster First Declaration, ¶ 4, Lancorp was slow getting off the ground. In addition, the offering materially changed when Lancaster found he could not get the insurance he had promised to offer. Consequently, Lancaster eliminated the insurance component and substituted instead a validated written obligation from the bank or broker/dealer acting as custodian. While working for ONESCO, he then offered the new investment to his customers, including Defendants. Lancaster required Defendants to acknowledge the material change in the investment, before Defendants could reconfirm their investments. Defendants signed the reconfirmations in April 2004. (See Exh. "3," attached to the Motion to Compel Arbitration) These new investment decisions occurred while Lancaster worked for ONESCO.

ONESCO has filed 19 federal court actions around the country in Arizona, California, Colorado, Florida, Iowa, Michigan, Minnesota, New Jersey, Pennsylvania, Texas, Vermont, Virginia, Washington, and West Virginia to enjoin investors' arbitrations relating to Lancorp, and more court actions will likely be filed. Defendants' counsel has proposed to lessen expense and simplify matters by accepting service, consolidating cases, and staying some of the cases and arbitrations. ONESCO has rejected all such proposals. See Declaration of Joel A. Goodman ("Goodman Dec."), ¶ 2, attached to Defendants' Memorandum of Points and Authorities in Opposition to ONESCO's Motion for Discovery as Exh. "1."

As a result of these 19 federal court actions, dozens of events are or will be scheduled to occur in the pending court cases around the country during the next few months. More events will be scheduled for motions, responses, replies, depositions, discovery, hearings, and trials that will be filed or ordered or become necessary in these cases. In addition, Defendants' counsel must attend to various events in the underlying ONESCO arbitrations and in his non-ONESCO cases. See Goodman Dec., ¶ 4.

ONESCO has requested several other federal courts to conduct discovery and to conduct full trials in the pending cases after consolidating the preliminary and final injunction hearings. Defendant anticipates that ONESCO will make the same requests to all of the other courts in which cases are currently pending. If Defendants' counsel must during the same time period attend to all of the procedural requirements of 19 or more federal cases around the country, respond to discovery requests and conduct depositions in 19 or more federal cases around the country, prepare for and conduct full two-day trials in 19 or more federal cases around the country, and simultaneously attend to his responsibilities in other, non-ONESCO cases, the inevitable result will be substantial delay for all of the cases, including the present case in this Court.

## ARGUMENT

### A. This Court should Adopt California and Iowa Federal Judges' Decisions to Compel ONESCO to Arbitrate without Delay for Discovery or Trial.

In the parties' scheduling report in ONESCO v. Steinke, C.D. Cal. Case No. CV07-3170, ONESCO made the same request to Judge John F. Walter in Los Angeles that it is now making to

this Court to consolidate the preliminary and final injunction hearings. Judge Walter correctly rejected this request. As Defendants explained in their Memorandum of Points and Authorities in Opposition to ONESCO's Motion for Discovery at 2, Judge Walter directed instead that the investors' motion to compel arbitration and ONESCO's motion for preliminary injunction be heard together and as soon as possible.

> [I]t seems to me that the best procedure . . . is the plaintiff wants to file a motion for a preliminary injunction, and the defendant wants to file a motion to compel arbitration. . . . [I]t's a question of law for the court to decide. . . . [T]hose motions . . . should be filed immediately so we can have a resolution of the issue. I suggest that you . . . set them for hearing on the same date. (pp. 4-5)
>
> . . . .
>
> . . . I don't think there's any discovery that needs to be done for the Court to decide either of these motions. If I decide the motion to compel arbitration, obviously the motion for preliminary injunction is going to be . . . moot. (p. 5)

(A copy of the transcript of Judge Walter's decision is attached to Defendants' Memorandum of Points and Authorities in Opposition to ONESCO's Motion for Discovery as Exh. "2.") Thereafter, Judge Walter compelled ONESCO to arbitrate, without delay for discovery or trial. O.N. Equity Sales Co. v. Steinke, ____ F. Supp. 2d ____, 2007 WL 2421761 (C.D. Cal. Aug. 27, 2007).

An Iowa federal judge has reached the same conclusions.

> ONESCO has not shown that immediate discovery is required to determine the issue of arbitrability. . . . [W]hile a motion for preliminary injunction ordinarily requires a hearing, . . . a motion to compel arbitration does not necessarily require a hearing. Because of the well-developed record provided by the parties concerning the pending motions and the court's disposition herein of the Motion To Compel Arbitration, the court finds it unnecessary to hold a hearing on any of the pending motions.

O.N. Equity Sales Co. v. Pals, ___ F. Supp. 2d ___, 2007 WL 2506033, at *1 (N.D. Iowa Sept. 6, 2007) (citations omitted). This Court should follow the same procedure.

### B. This Court Can Readily Determine that the Parties' Disputes are Arbitrable, without the Delay and Expense Inherent in ONESCO's Request for a Full Trial on the Merits.

This Court can readily determine from the investment documents and the applicable law that ONESCO is not entitled to a trial. ONESCO claims it is not required to arbitrate because Defendants' Lancorp subscription agreements predated Lancaster's employment with ONESCO. As explained in Defendants' Motion to Compel Arbitration at 2, however, the very Lancorp Private

Placement Memorandum ("PPM") which ONESCO attached to its Complaint as Exh. "A" establishes that Lancorp retained the right to cancel, modify, or withdraw the offer at any time. PPM at i-iii, 4. The mere initial signing of a Lancorp subscription agreement which Lancorp could refuse to accept at any time therefore did not by itself constitute a Lancorp sale. No trial is needed on this point, which is unmistakable and is proved by ONESCO's own exhibit to its Complaint.

In Cohen v. Stratosphere Corp., 115 F.3d 695, 701 (9th Cir. 1997), like the present case, the prospectus issuer reserved the "'right to withdraw or cancel such offer and to reject any subscription in whole or in part.'" Cohen consequently concluded that a completed securities contract had not been made at the time the subscription agreement was signed. "The mutual assent and intent to be bound that are required for the formation of a contract to sell securities . . . is absent in this case. . . . [E]ven if the subscribers are viewed as promisors who irrevocably committed themselves to purchase securities by executing the Subscription Agreement, a contract of purchase was not formed because Stratosphere made no return promise to sell the securities." Id.

The California and Iowa federal judges in Steinke and Pals agreed. "[P]ursuant to the terms of the Private Placement Memorandum and the Subscription Agreements, Defendants' money was held in an escrow account and the Lancorp Fund could cancel the Subscription Agreements and terminate the offering at any time prior to the initial closing date. As a result, there was no 'sale of securities' until May of 2004." 2007 WL 2421761, at *3.

> [T]he court finds, that Lancaster did not, in fact, invest his or other investors' funds initially, but held those funds in escrow, because the Lancorp Trust had not yet "gotten off the ground." The court finds that, according to the private placement memorandum, the investors' initial cash payments were held in escrow until the closing date. The court finds, further, that the investment was subject to withdrawal, cancellation, or modification by Lancorp without notice until the closing date. Indeed, the court finds that, pursuant to the private placement memorandum, Lancorp could decide, in its sole discretion, to terminate the offering at any time before the maximum number of units had been sold.

Pals, 2007 WL 2506033, at *2.

Furthermore, as explained in more detail in Defendants' Motion to Compel Arbitration at 10-13, although Defendants may have executed their Lancorp subscription agreements in 2003 before Lancaster became an ONESCO representative, the Lancorp offering then materially changed, and Lancaster required Defendants to reconfirm their investments after acknowledging the change. See

Lancaster First Dec., ¶¶ 3-5, attached to Defendants' Motion to Compel Arbitration as Exh. "2." These circumstances are like those in Getty v. Harmon, 53 F. Supp. 2d 1053, 1056 (W.D. Wash. 1999), in which "the class members had the option of rejecting the renewals. Therefore, each renewal, whether accompanied by new representations or not, was based upon a new decision, and each constituted a new investment" at the time the investment decision was made.

The California and Iowa judges in Steinke and Pals again agreed. "Moreover, in April of 2004, Defendants were required to reconfirm their subscriptions or withdraw their funds as a result of the change in the terms relating to the insurance component–an event which occurred while Lancaster was working as a registered representative of ONESCO." 2007 WL 2421761, at *3.

> Contrary to ONESCO's contentions, the record shows beyond dispute that the terms of the Lancorp Fund private placement offering were materially changed in April 2004, which required all subscribers to confirm their subscriptions or receive a return of their funds, that Lancaster held all funds invested in the Lancorp Fund private placement offering until May 2004, and that the Lancorp Fund private placement offering did not close until May 2004 . . . .

Pals, 2007 WL 2506033, at *6.

Defendants did not even have standing to file suit until the sale was completed in April and May 2004, and they lost their money. Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723 (1975). Defendants' new investment decisions, memorialized in their reconfirmation letters in April 2004, were new events occurring while Lancaster worked for ONESCO for which ONESCO may be held liable in arbitration. Any earlier representations regarding Lancorp carried forward to that time, just as ONESCO in the arbitration might attempt to introduce evidence about Defendants' educational and employment background, even though this background might predate their communications with Lancaster. The dates on the reconfirmation letters attached to Defendants' Motion to Compel Arbitration as Exh. "3" are unmistakable. A full trial is not needed on this point for this Court to compel arbitration.

In addition, as explained in Defendants' Motion to Compel Arbitration at 13-15, even if ONESCO has correctly characterized their initial Lancorp subscription agreements, Defendants can still arbitrate because they allege continuing fraud and supervision failures occurring when Lancaster offered to return their funds, while Lancaster was an ONESCO employee. (See, e.g., ¶¶ 9-34 of

Defendants' arbitration claim attached to ONESCO's Complaint as Exh. "K."). Lancaster's Declarations attached to Defendants' Motion to Compel Arbitration as Exh. "2" and "4" are replete with evidence that ONESCO did not supervise Lancaster. According to these Declarations, Lancaster disclosed to ONESCO his Lancorp involvement, but ONESCO never asked about it. ONESCO did not inspect his office, ask for or review his customer files, review his incoming or outgoing correspondence, tell him who his supervisor was, or supply him with ONESCO's procedures or compliance manuals. World Group Sec., Inc. v. Sanders, 2006 WL 1278738 (D. Utah May 8, 2006), USAllianz Sec., Inc. v. Southern Mich. Bancorp, Inc., 290 F. Supp. 2d 827 (W.D. Mich. 2003), and Beer v. Nutt, 2007 WL 13100 (S.D.N.Y. Jan. 3, 2007), required arbitration of supervision and continuing fraud claims, even though the investments occurred before the broker joined the firm.

Again, the California and Iowa judges in Steinke and Pals agreed. "The plain language of Defendants' First Amended Statement of Claim indicates that they seek redress not just for the alleged improper investments made by Lancaster, but also for the alleged failure of ONESCO to supervise him after March 23, 2004. A claim for failure to supervise clearly 'arises in connection with the business' of ONESCO for the purposes of Rule 10301(a) [now Rule 12200]." Steinke, 2007 WL 2421761, at *3. The Lancorp investor "has alleged negligent supervision of Lancaster, the 'associated person,' by ONESCO . . . during the time that Lancaster was an 'associated person.' Thus, the second condition for an arbitrable dispute within the terms of Rule 10301(a) [now 12200] is met." Pals, 2007 WL 2506033, at *6. Once again, no trial is necessary for this Court to determine that Defendants have alleged failures to supervise and continuing fraud occurring while Lancaster worked for ONESCO. This Court can compel arbitration on that basis.

Finally, as explained in more detail in Defendants' Motion to Compel Arbitration at 15-17, the Court in Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 85 (2002), ruled that timing questions under NASD arbitration rules are for the arbitrators, not the courts, to decide. This Court does not need to hold a trial on arbitrability, when the timing question on which ONESCO seeks to hold a trial is not a "gateway" arbitrability issue as defined in Howsam.

**C. This Court Should Apply the Procedures Applicable to Motions and Proceed Summarily to the Arbitrability Issue, Without Lengthy and Expensive Delay for a Full Trial.**

In this action, although ONESCO filed a court complaint, Defendants have moved to compel arbitration. Accordingly, as explained in more detail in Defendants' Memorandum of Points and Authorities in Opposition to ONESCO's Motion for Discovery at 10-13, the Federal Arbitration Act ("FAA") governs the arbitrability issue and preempts any inconsistent procedures that might otherwise apply. Section 6 of the FAA, 9 U.S.C. § 6, provides that court applications to compel arbitration under Section 4 "shall be made and heard in the manner provided by law for the making and hearing of motions." Under Federal Rule of Civil Procedure 43(e), motions can be decided without oral testimony or depositions. Pursuant to Section 6, federal courts have frequently determined in arbitration-related cases that procedures applicable to motions should be used, and they have not used other provisions of the Federal Rules of Civil Procedure.

Consequently, the provision in Federal Rule of Civil Procedure 65(a)(2) for a trial on the merits is preempted in this case. Instead, this case is properly decided on the basis of the pertinent documents and declarations, in the same way that other motions are decided.

> The Federal Arbitration Act provides that "[a]ny application to the court ... shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided." [9 U.S.C. § 6.] Rule 81(a)(3) of the Federal Rules of Civil Procedure states, in part: "In proceedings under Title 9, U.S.C., relating to arbitration . . . [the Federal Rules of Civil Procedure] apply only to the extent that matters of procedure are not provided for in those statutes." Fed. R. Civ. P. 81(a)(3). Thus, the language of Section 6 preempts the Federal Rules. The policy behind this section "is to expedite judicial treatment of matters pertaining to arbitration."

Kruse v. Sands Bros. & Co., 226 F. Supp. 2d 484, 486 (S.D.N.Y. 2002) (citations omitted).

As explained in more detail in Defendants' Memorandum of Points and Authorities in Opposition to ONESCO's Motion for Discovery at 13-15, Section 4 of the FAA "provides for discovery and a full trial in connection with a motion to compel arbitration only if 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue.'" Simula, Inc. v. Autoliv, Inc.,175 F.3d 716, 726 (9th Cir.1999) (quoting 9 U.S.C. § 4). Neither of these issues is present here. ONESCO does not dispute that NASD Rule 12200 is valid and binding, and no trial

is necessary on ONESCO's failure, neglect, or refusal to comply with Rule 12200. The parties agree that ONESCO will arbitrate only under duress.

The "plain meaning" of the FAA and "the unmistakably clear congressional purpose [was] that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." Prima Paint Co. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 (1967). Congress expressed a "clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22 (1983). Moses H. Cone cited Section 6 of the FAA and found that "a request for relief under . . .§ 4 [of the FAA] is to be treated procedurally as a motion." Id. at 22 n.27. Consequently, to effectuate "the statutory policy of rapid and unobstructed enforcement of arbitration agreements," the FAA requires courts when determining arbitrability to hold "an expeditious and summary hearing, with only restricted inquiry into factual issues." Id. at 22-23. "The Arbitration Act calls for a summary and speedy disposition of motions or petitions to enforce arbitration clauses." Id. at 29.

To facilitate the national policy favoring arbitration, the FAA requires "expedited judicial action" without delay for "discovery, motions, and perhaps trial." O.R. Sec., Inc. v. Professional Planning Assoc., 857 F.2d 742, 745-46 (11th Cir. 1988). Any other conclusion would defeat the national policy favoring arbitration as a means of settling disputes. Parties enter into arbitration precisely to avoid court-related procedures of the sort sought by ONESCO through the instant litigation. "If the courts were free to intervene on these grounds, the speedy resolution of grievances by private mechanisms would be greatly undermined." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987).

In view of the FAA's command that arbitration-related applications in court must be resolved expeditiously, this Court should deny ONESCO's request for expensive and time-consuming delay while ONESCO conducts a full two-day trial on arbitrability.

**D. The Sole Limited Issue Before this Court Is Whether ONESCO's Arbitration Obligation Is Susceptible to a Construction Which Allows Arbitration. A Trial is Unnecessary for this Scope Issue.**

The issue in this case is whether the parties' disputes are within the scope of ONESCO's agreement with the NASD to arbitrate all controversies with customers, pursuant to NASD Rule 12200. When the sole issue is the scope of an arbitration obligation such as NASD Rule 12200, the governing law provides that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). If arbitration obligations clearly exist, as they do in this case pursuant to NASD Rule 12200, arbitrability is presumed, and arbitration generally is required.

> [A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

AT&T Tech., Inc. v. Communication Workers of Am., 475 U.S. 643, 650 (1986) (citation omitted).

Certainly, the facts of this case are at least susceptible to an interpretation allowing arbitration under NASD Rule 12200 which can be reached without discovery. Rule 12200 reads as follows:

> Parties must arbitrate a dispute under the Code if:
> • Arbitration under the Code is either:
> (1) Required by a written agreement, or
> (2) Requested by the customer;
> • The dispute is between a customer and a member or associated person of a member; and
> • The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

(A copy of Rule 12200 is attached to Defendants' Motion to Compel Arbitration as Exh. "5.")

Here, as Defendants have previously explained in this Memorandum and in their other filings in this Court, ONESCO cannot dispute that, under the governing case law, Defendants are entitled to arbitrate against ONESCO for transactions that occurred while Lancaster worked for ONESCO. Defendants seek to hold ONESCO liable as a result of events occurring while Lancaster worked for ONESCO. A trial is unnecessary for this Court to conclude that Rule 12200 is at least susceptible

to an interpretation that allows Defendants to demand arbitration regarding ONESCO's liability for these events. Susceptibility is all that is necessary to resolve the parties' disputes about the scope of the NASD arbitration obligation, and this Court can decide this simple issue-whether Rule 12200 is objectively susceptible to an interpretation favoring arbitration-without holding a two-day trial.

**E. A Trial would Improperly Require Determinations on the Merits.**

In its Motion to Consolidate at 4-5 and its Injunction Motion at 17-18, ONESCO identifies only two issues for trial: (1) what representations were made to Defendants before Lancaster became an ONESCO representative, and (2) whether representations made to Defendants after Lancaster became an ONESCO representative were materially different from the earlier representations. These subjects for trial, however, improperly pertain to the merits, not to arbitrability. See AT&T Tech., Inc. v. Communications Workers of Am., 475 U.S. 643, 649 (1986) ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitrators, a court is not to rule on the potential merits of the underlying claims.").

On the merits, Defendants disagree with ONESCO's argument that ONESCO is absolved of liability if Lancaster's later and earlier representations were the same. On the merits, Defendants likewise disagree with ONESCO's argument that it is absolved of liability if the later representations to them were immaterial. Defendants disagree with many other ONESCO contentions. Only the arbitrators, however, can resolve these disagreements. By requesting a trial on these issues, ONESCO is incorrectly attempting to convert liability issues into arbitrability issues. It is incorrectly asking this Court to interfere with the arbitrators' domain and to make findings on the merits that are properly committed to the arbitrators.

WHEREFORE, Defendants respectfully request this Court to deny ONESCO's request to consolidate the hearing on its Injunction Motion with the final trial on the merits.

Respectfully submitted,

DATED: September 14, 2007

GOODMAN & NEKVASIL, P.A.
By: /s/ Joel A. Goodman
Joel A. Goodman
Attorney *pro hac vice*

LAW OFFICES OF RICHARD A. KUTCHE
Richard A. Kutche
Local counsel

Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List below.

/s/ Joel A. Goodman
Joel A. Goodman
Goodman & Nekvasil, P.A.
14020 Roosevelt Blvd., Suite 808
P.O. Box 17709
Clearwater, Florida 33762
Telephone: 727-524-8486
Facsimile: 727-524-8786

**Electronic Mail Notice List**

Daniel T. Balmat
dbalmat@ssd.com, rarroyo@ssd.com

Joseph Anthony Meckes
jmeckes@ssd.com, sfr_docket@ssd.com

Marion Homer Little, Jr,
little@litohio.com

Michael R. Reed
reed@litohio.com