ZEIGER, TIGGES & LITTLE LLP
Marion H. Little, Jr., Esq. (admitted *pro hac vice*)
Michael R. Reed, Esq. (admitted *pro hac vice*)
3500 Huntington Center
41 South High Street
Columbus, OH 43215
Telephone:    (614) 365-9900
Facsimile:     (614) 365-7900
Email: reed@litohio.com

SQUIRE, SANDERS & DEMPSEY L.L.P.
Joseph A. Meckes (State Bar No. 190279)
Daniel T. Balmat (State Bar No. 230504)
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492
Telephone: +1.415.954.0200
Facsimile:  +1.415.393.9887
Email: jmeckes@ssd.com
Email: dbalmat@ssd.com

Attorneys for Plaintiff
THE O.N. EQUITY SALES COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN JOSE DIVISION)

| | |
|---|---|
| THE O.N. EQUITY SALES COMPANY, an Ohio Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>THOMAS NEMES, INDIVIDUALLY AND AS TRUSTEE OF THE THOMAS NEMES TRUST, and MICHAEL J. BENKERT, INDIVIDUALLY AND ON BEHALF OF SHORE 2 SHORE ENTERPRISES, INC., and JERRY J. THOMAS, INDIVIDUALLY AND AS TRUSTEE OF THE JERRY J. THOMAS AND NANCY M. THOMAS 1998 INTER VIVOS TRUST, and NANCY M. THOMAS, INDIVIDUALLY AND AS TRUSTEE OF THE JERRY J. THOMAS AND NANCY M. THOMAS 1998 INTER VIVOS TRUST.<br><br>Defendants. | Case No. C07-03303 JF (RS)<br><br>The Honorable Jeremy Fogel<br><br>**(Filed via ECF/PACER)**<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY**<br><br>Date:       October 5, 2007<br>Time:       9:00 a.m.<br>Courtroom:  3, 5th Floor<br><br>Complaint Filed:  June 22, 2007 |

SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY

Case No. C07-03303 JF (RS)

## TABLE OF CONTENTS

**Page**

A. Discovery And An Evidentiary Hearing Are Necessary To Decide Disputed Factual Contentions Created By Defendant's Assertions and Perjured Evidence ................................................................................................ 1

B. Recent Decisions In The O.N. Equity Sales Co. v. Dean Steinke, et al., and The O.N. Equity Sales Co. v. Pals Should Not Guide The Court's Analysis ......... 3

C. A Determination Of Arbitrability On The Basis Of Unilateral Submissions Would Eviscerate Controlling U.S. Supreme Court Precedent............................. 8

D. Timing, For Purposes Of Arbitrability, Is A Question For The Court.................. 10

E. Discovery Relevant To The Issue Of Arbitrability Cannot Be Denied Simply Because It Might Touch On Merits-Related Issues................................. 11

SQUIRE, SANDERS &
DEMPSEY L.L.P.
801 South Figueroa, 14th Floor
Los Angeles, CA 90017-5554

TABLE OF CONTENTS

-i-

Case No. C07-03303 JF (RS)

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Aguirre v. Chula Vista Sanitary Service*,
542 F.2d 779 (9th Cir. 1976) .................................................................................... 1, 3, 4

*AT&T Tech., Inc. v. Communications Workers of America*,
475 U.S. 643 (1986) ..................................................................................................... 8, 10

*Beer v. Nutt*,
2007 WL 13100 (S.D.N.Y. Jan. 3, 2007) ........................................................................... 7

*Carson v. Giant Food, Inc.*,
175 F.3d 325 (4th Cir. 1999) ............................................................................................. 3

*Communications Workers of America, AFL-CIO v. Tyco Power Systems, Inc.*,
99 Fed. Appx. 499 (5th Cir. April 26, 2004) .................................................................... 11

*Edward D. Jones & Co. v. Sorrells*,
957 F.2d 509 (7th Cir. 1992) ............................................................................................. 5

*Forts v. Ward*,
566 F.2d 849 (2d. Cir. 1977) ............................................................................................. 1

*Goldman Sachs & Co. v. Becker*,
2007 WL 1982790 (N.D. Cal. July 2, 2007) .................................................................. 5, 8

*Hornor, Townsend & Kent, Inc. v. Hamilton*,
218 F.Supp.2d 1369 (N.D. Ga., Sept. 29, 2003) ................................................... 5, 6, 8, 10

*Hornor, Townsend & Kent, Inc. v. Hamilton*,
Case No. 1:01-cv-02979 (N.D. Ga., Sept. 6, 2005) ........................................................... 9

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) ........................................................................................................ 9, 10

*International Brotherhood of Electrical Workers v. Balmoral Racing Club, Inc.*,
293 F.3d 402 (7th Cir. 2002) ........................................................................................... 11

*Litton Fin. Printing Div. v. Nat'l Labor Relations Bd.*,
501 U.S. 190 (1991) ......................................................................................................... 10

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cohen*,
62 F.3d 381 (11th Cir. 1995) ...................................................................................... 10, 11

*Multi-Financial Sec. Corp. v. King*,
386 F.3d 1364 (11th Cir. 2004) ......................................................................................... 4

*Paine Webber, Inc. v. Hofmann*,
984 F.2d 1372 (3d Cir. 1993) ............................................................................................ 5

# TABLE OF AUTHORITIES

**Page**

*Prudential Sec., Inc. v. Dusch*,
  1994 WL 374425 (S.D. Cal. March 28, 1994) .................................................................. 4

*Riley Manufacturing Co., Inc. v. Anchor Glass Container Corp.*,
  157 F.3d 775 (10th Cir. 1998) .......................................................................................... 3

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999) .......................................................................................... 11

*The O.N. Equity Sales Company v. Pals*,
  2007 WL 2506033 (N.D. Iowa Sept. 6, 2007) ................................................................. 3

*Vestax Securities Corp. v. McWood*,
  280 F.3d 1078 (6th Cir. 2002) .......................................................................................... 4

*Wheat, First Sec., Inc. v. Green*,
  993 F.2d 814 (11th Cir. 1993) ................................................................................ 3, 4, 10

*World Group Securities v. Ko*,
  2004 WL 1811145 (N.D. Cal. Feb. 11, 2004) .................................................................. 4

## FEDERAL STATUTES

Rule 26 ...................................................................................................................................... 11

Rule 56 ........................................................................................................................................ 7

NASD Rule 10301 .................................................................................................................... 10

SQUIRE, SANDERS &
DEMPSEY L.L.P.
801 South Figueroa, 14th Floor
Los Angeles, CA 90017-5554

-iii-

TABLE OF AUTHORITIES

Case No. C07-03303 JF (RS)

### A. Discovery And An Evidentiary Hearing Are Necessary To Decide Disputed Factual Contentions Created By Defendant's Assertions and Perjured Evidence.

At bottom, this Court must decide whether "all," "some," or "none" of Defendants' NASD claims are arbitrable. Defendants would have the Court answer this fundamental question based *solely* on the unsupported representations of their counsel and *evidence submitted by them* in the form of self-serving declarations executed by Gary Lancaster. In short, Defendants would have this Court conveniently accept their new representations and third-party evidence as fact, ignore the actual allegations that appear in their NASD statement of claim, and deny ONESCO the opportunity to gather and present evidence to rebut Defendants' new factual contentions and the non-party testimony Defendant has interjected. This is akin to a summary judgment motion with the non-movant denied the opportunity to conduct discovery.

Fortunately, Ninth Circuit Court of Appeals precedent precludes such tactics: "There is no apparent reason to deny [a party] an opportunity to present his witnesses where, as in this case, there is a sharp factual conflict, resolution of that conflict will determine the outcome, … the facts are simple, [and] little time would be required for an evidentiary hearing … ." *Aguirre v. Chula Vista Sanitary Service*, 542 F.2d 779, 781 (9th Cir. 1976).

ONESCO submits that if the Court simply views the actual allegations asserted by Defendants in their statement of claim (as opposed to their current attempt to recharacterize them), accepts the judicial admissions made by Defendants in their answer, and then applies the applicable law, there can be but one conclusion: ONESCO is entitled to injunctive relief. The alleged misrepresentations and omissions that induced Defendants' irrevocable commitment to purchase Lancorp Fund investments were surely made *prior to* such commitment, and as a result, prior to Lancaster's association with ONESCO.

But, given Defendants' repeated attempts to interject their own "evidence," the Ninth Circuit's decision in *Aguirre* dictates that the parties must be permitted to engage in appropriate discovery and *present evidence* relevant to the issue of arbitrability. *See also Forts v. Ward*, 566 F.2d 849, 851 (2d Cir. 1977) ("It is well established that motions for preliminary injunctions

- 1 -

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY

Case No. C07-03303 JF (RS)

SQUIRE, SANDERS & DEMPSEY L.L.P.
801 South Figueroa, 14th Floor
Los Angeles, CA 90017-5554

should not be resolved *on the basis of affidavits which evince disputed issues of fact*.") (emphasis added).

This is especially true here. Fact and credibility issues abound. Who actually sold the subject securities to Defendants? Was it Lancaster? Was it Robert Reese, a person who was never affiliated with ONESCO but named by Defendants in their Subscription Agreements as having introduced them to Lancorp Fund?[1] [*See* Defendants' Subscription Agreements at SB 11-12, Exhs. D, E & F to ONESCO's Motion for Immediate Discovery (Docket No. 22).]

What representations or omissions were actually made, by whom, and, more importantly, when did that occur? And finally, did Defendants actually request the insurance coverage that they now assert is fundamental to their NASD claims, and which Defendants did not mention in their NASD Statement of Claim?

The only purported real "evidence" offered by Defendants is in the form of Lancaster's affidavits. Defendants tender and, thus, vouch for this testimony as being true even though Defendants have, themselves, characterized Lancaster as having committed fraud; Lancaster has been disbarred by the NASD; and Lancaster has offered testimony directly contradicting his stipulated agreement with the NASD, which states that Lancaster *did not provide* ONESCO with written notice of his involvement with Lancorp Fund. [*See* Letter of Acceptance, Waiver, and Consent, Exh. B.] Of course, ONESCO has not been afforded an opportunity to cross examine Lancaster on the new facts Defendants now seek to unilaterally submit and which, they contend, settle the issue of arbitrability.

In sum, if the Court simply views Defendants' actual allegations in their NASD Statement of Claim (described at pages 4-5 of ONESCO's Motion for Immediate Discovery) and accepts their Subscription Agreements, its decision is simple: None of Defendants' claims are arbitrable. But if Defendants are permitted to offer unilateral factual submissions, then the Ninth Circuit's

---

[1] Indeed, Lancaster, during his deposition in *Securities and Exchange Commission v. Megafund Corporation, et al.*, Case No. 3:05-CV-1328-L (N.D. Texas), testified that he did not, in fact, solicit *any* investors in the Lancorp Fund, but that such solicitation was conducted by others who, like Mr. Reese, indisputably had no relationship with ONESCO. [*See* Lancaster Tr. at 66 (Exh. A).] Defendants offer nothing to suggest that Lancaster, as opposed to someone else, ever actually solicited their investments in Lancorp Fund. [*See* Defendants' Subscription Agreements at SB 11-12.]

- 2 -

SQUIRE, SANDERS & DEMPSEY L.L.P.
801 South Figueroa, 14th Floor
Los Angeles, CA 90017-5554

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY    Case No. C07-03303 JF (RS)

decision in *Aguirre* makes clear that discovery and an evidentiary hearing are necessary to determine whether "all," "some," or "none" of their Statement of Claim is arbitrable. Such discovery should proceed on an expedited basis.

### B. Recent Decisions In The O.N. Equity Sales Co. v. Dean Steinke, et al., and The O.N. Equity Sales Co. v. Pals Should Not Guide The Court's Analysis.

Defendants place significant reliance upon the Central District of California's recent decision in *The O.N. Equity Sales Co. v. Dean K. Steinke, et al.*, CV 07-3170-JFW (FFMx) and the Northern District of Iowa's decision in *The O.N. Equity Sales Company v. Pals*, 2007 WL 2506033 (N.D. Iowa Sept. 6, 2007) (Exh. D). These decisions are hardly unanimous. Indeed, in *The O.N. Equity Sales Company v. Cui*, Case No. 3:07-cv-02844-JSW (N.D. Cal.), on Friday, September 7, 2007, *another judge in the Northern District of California rejected these same arguments and held that discovery would be permitted*.[2]

Nonetheless, with all due respect to the *Steinke* and *Pals* District Courts, those decisions run directly afoul of *Aguirre*, as well as basic notions of due process, and they should not guide the Court's analysis here. At bottom, the *Steinke* and *Pals* courts permitted the defendants to interject evidence; then accepted their unilateral evidentiary submissions at face value; refused to allow ONESCO to make any challenge to these facts, be it by discovery or an evidentiary hearing; and then answered this inherently factual question in favor of the defendants based upon defendants' unilateral submissions. Essentially, the courts "presumed" arbitration was appropriate – where no presumption exists – and accepted the defendants' word for it.[3]

---

[2] A copy of the transcript from the Friday, September 7, 2007 hearing is attached as Exh. C.

[3] Courts have held that questions of arbitrability under NASD rules based on the timing of relevant events, as here, present a question of contract *existence*, to be determined by the court through application of standard principles of contract construction and interpretation. *Wheat, First Securities, Inc. v. Green*, 993 F.2d 814, 818-20 (11th Cir. 1993). In other words, the question of arbitrability based on the occurrence and timing of events giving rise to an investor's claims presents an issue as to the fundamental *existence*, and not the scope, of an express agreement to arbitrate. *Id.*

When the question is one of contract existence, as opposed to scope, *no presumption of arbitrability applies*. See, e.g., *Carson v. Giant Food, Inc.*, 175 F.3d 325, 329 (4th Cir. 1999) ("The general policy-based, federal presumption in favor of arbitration ... *is not applied as a rule of contract interpretation* ... ."); *Riley Manufacturing Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998) ("Unlike the general presumption that a particular issue is arbitrable when the existence of an arbitration agreement is not in dispute, ... when the dispute is whether there is a valid and enforceable

- 3 -

SQUIRE, SANDERS & DEMPSEY L.L.P.
801 South Figueroa, 14th Floor
Los Angeles, CA 90017-5554

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY    Case No. C07-03303 JF (RS)

A close examination of the *Steinke* and *Pals* decisions, in their entirety, makes clear their incompatibility with *Aguirre*. Both courts acknowledged that it is a task for the district court, not the arbitrators, to determine whether all or some of the dispute is arbitrable. They also acknowledged that the key factual question in resolving this issue is whether the defendants were "customers" during the limited time frame Lancaster was associated with ONESCO.[4] Under *Wheat, First*, "customer" status and, thus, ultimately the arbitrability of claims premised on allegations of securities fraud (as here) "*must be determined as of the time of the events providing the basis for the allegations of fraud.*" *Wheat, First*, 993 F.2d at 820. In other words, in determining the arbitrability of claims premised on securities fraud, a court is required to determine the "time of the occurrence of events" providing the "factual predicate" for such claims. *Id.* By definition, this is necessarily *a factual inquiry*.

To answer this factual inquiry, however, both courts simply accepted the defendants' one-sided submissions without providing ONESCO with an opportunity to conduct discovery and to challenge such submissions. This is made clear by what the courts cited as the basis for their analysis:

- <u>Nothing from the defendants themselves</u>. That is, none of the defendants tendered an affidavit or declaration as to the timing of their purchases, their intent, the timing of any alleged misrepresentations or omissions, or the materiality of any statement or communication to them. In short, the defendants did not provide any testimony to counter

---

arbitration agreement in the first place, the presumption of arbitrability falls away.").

[4] Perhaps some of the confusion may have arisen from the courts' reliance upon cases wherein there was no dispute as to the timing of relevant events for purposes of an investor's "customer" status under NASD rules. *See, e.g., Vestax Securities Corp. v. McWood*, 280 F.3d 1078, 1080 (6th Cir. 2002); *Multi-Financial Sec. Corp. v. King*, 386 F.3d 1364 (11th Cir. 2004). Simply put, *Vestax* and *Multi-Financial* are not this case. Here, the facts are disputed and, thus, as set forth in *Wheat, First, supra*, the court must determine "the time of the events providing the basis for the allegations of fraud." *Id.* at 820. If the alleged representative was not an "associated person" of a broker-dealer at the time of the events providing the "factual predicate" for an investor's claims, then no right to arbitration exists. *See id.* Indeed, this rule has been expressly recognized and adopted by other district courts in California. *See Prudential Sec., Inc. v. Dusch*, 1994 WL 374425, *2 (S.D. Cal. March 28, 1994) (Exh. E) (broker-dealer not required to arbitrate claims based on investments made before investor became a customer of broker-dealer); *World Group Securities v. Ko*, 2004 WL 1811145, *6 (N.D. Cal. Feb. 11, 2004) (same) (Exh. F).

- 4 -

SQUIRE, SANDERS & DEMPSEY L.L.P.
801 South Figueroa, 14th Floor
Los Angeles, CA 90017-5554

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY

Case No. C07-03303 JF (RS)

the timing of the purchases confirmed by the date of their respective Subscription Agreements.

- <u>Nothing from ONECO</u>. ONESCO's factual assertions, as stated in its complaint, as to the timing of the purchase and any alleged misrepresentations or omissions were rejected. Further, the courts did not permit ONESCO to conduct discovery from any hostile parties so that the arguments advanced by defendants as to the timing of the applicable events could be challenged.

- <u>The Steinke court did reference the defendants' statement of claim</u>: "The plain language of Defendants' First Amended Statement of Claim indicates that [claimants] seek redress not just for the alleged improper investments made by Lancaster, but also for the alleged failure of ONESCO to supervise him after March 23, 2004." *Steinke*, Slip op. at 3. The *Pals* court only briefly referred to the defendants' NASD claims and did not discuss any of defendants' specific NASD allegations. *Pals*, at *2. While ONESCO disagrees with the *Steinke* court's characterization of the statement of claim as including a claim for lack of supervision, even under the *Steinke* court's reading those claims based upon events predating Lancaster's association should have been excluded from the arbitration in both *Steinke* and *Pals*. That is, if the timing of events giving rise to certain claims falls outside of the alleged arbitration agreement, then such claims <u>*should not be arbitrated*</u> – even if others are subject to arbitration. *Paine Webber, Inc. v. Hofmann*, 984 F.2d 1372, 1377 (3d Cir. 1993).[5] *See also Goldman Sachs, supra*, at *6 ("[o]n a motion for preliminary injunction [to enjoin arbitration], however, [the court] <u>*may take into account evidence that directly contradicts [the investors'] statement of claims*</u>.").

- <u>The courts did reference information from the non-party declarations of Gary Lancaster</u>. Like in this case, the defendants in *Steinke* and *Pals* specifically offered testimony they

---

[5] *See also Edward D. Jones & Co. v. Sorrells*, 957 F.2d 509 (7th Cir. 1992) (vacating NASD arbitration award as to certain claims based on determination that such claims were not arbitrable due to timing of events giving rise to them); *Hornor*, Case No. 1:01-CV-2979-JEC, at *11 (one of multiple claims subject to arbitration because "representations inducing" investment occurred when representative was associated with broker-dealer).

- 5 -

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY    Case No. C07-03303 JF (RS)

SQUIRE, SANDERS & DEMPSEY L.L.P.
801 South Figueroa, 14th Floor
Los Angeles, CA 90017-5554

claim supported their position, but opposed any efforts by ONESCO to challenge the truth of such evidence, be it by hearing or deposition. While we submit it is inappropriate that one party can submit evidence and the second cannot (and, thus, discovery is necessary), we specifically note the conclusions reached by the courts are not supported by Lancaster's declaration. First, rather than noting the timing of the events actually prompting the investments, the *Steinke* court notes the "actual investment using Defendants' funds was not made until May of 2004." *Steinke*, Slip op at 3. Similarly, the *Pals* court notes that "the Lancorp Fund private placement offering did not close until May 2004." *Pals*, 2007 WL 2506033, at *6. This begs the question of what was the timing of the inducements. In any event, Lancaster's declaration actually *does not* say this (it only references the "effective" date of the fund) and in any event, it is untrue. According to testimony elicited from the SEC in *Securities and Exchange Commission v. Megafund Corporation, et al.*, Case No. 3:05-CV-1328-L, U.S. District Court Northern District of Texas, the funds were actually invested in *2005*, after Lancaster was no longer associated with ONESCO. [Lancaster Tr. at 24-25.] Second, both the *Steinke* and *Pals* courts found that an April 2004 letter from Gary Lancaster notifying Lancorp Fund investors of a replacement for promised insurance coverage constituted a "*material*" change in their investment. *Steinke*, Slip op. at 2 (emphasis added); *Pals*, at *6 ("the record shows beyond dispute that the terms of the Lancorp Fund private placement offering were materially changed in April 2004"). The defendants, of course, (like defendant here) *did not* even mention this April 2004 change in their NASD statement of claim. In fact, at least with respect to two of the Defendants, it is unclear whether they actually requested the insurance, in the first place. The April change is only mentioned by Lancaster whose foundation on this subject is suspect. Again, not a single defendant offered any affidavits or other evidence to suggest that this change was in any way material *to them*. Thus, the only persons who could claim this was a material event failed to do so, either in a pleading or by evidence.

Here, Defendants are attempting to use the same play book, which is based principally on the same playbook found to be inappropriate in *Hornor*: Deny ONESCO all discovery, while simultaneously offering their own evidence from a non-party (Lancaster) who has not been subject to any cross examination – a witness Defendants claim committed fraud, who has been disbarred by the NASD, and who has offered testimony flatly inconsistent with the written stipulation he signed with the NASD. Then, Defendants request that the Court simply accept their non-party evidence at face value and ignore the lack of evidence from Defendants themselves. Unfortunately, until ONESCO's appeals are prosecuted, that is exactly what happened in *Steinke* and *Pals*.

That does not make it right, and ONESCO submits that this Court appreciates that such an approach would be unacceptable under a Rule 56 summary judgment motion (which was the de facto result in *Steinke* and *Pals*) and is not any more acceptable here. Rather, in determining the arbitrability of Defendants' claims, this Court must conduct its own independent analysis to determine whether the events giving rise to Defendants' claims (i.e., alleged misrepresentations or omissions that induced their Lancorp Fund investment decisions) occurred before Lancaster's association with ONESCO.[6] In doing so, it must focus on the "factual predicate" for such claims and not subsequent events that arise therefrom. This issue should not be resolved upon the unilateral submissions of either party, nor should it be premised upon the characterizations of counsel. Rather, only after discovery from the parties and a proper evidentiary submission to the Court can this matter be resolved and a determination made as to whether all, some, or none of Defendants' claims are arbitrable.

---

[6] Defendants further rely upon *Beer v. Nutt*, 2007 WL 13100 (S.D.N.Y. Jan. 3, 2007) (Exh. G), for the proposition that claims of "continuing fraud" are arbitrable. This is a red herring. In *Beer*, the court held that an investor may arbitrate claims based on <u>new and materially different misrepresentations and omissions</u> made by an investment representative after an investor's initial purchase of securities. *Id.* at *3. Defendants, of course, do not alleges such a "continuing fraud" in their NASD Statement of Claim, nor do they allege any new and materially different misrepresentations or omissions that induced any of the alleged subsequent activities they now highlight, for the first time, through Lancaster's declaration.

- 7 -

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY    Case No. C07-03303 JF (RS)

### C. A Determination Of Arbitrability On The Basis Of Unilateral Submissions Would Eviscerate Controlling U.S. Supreme Court Precedent.

Just two months ago, another judge in *this very district* refused to accept an NASD claimant's allegations as fact in granting a preliminary injunction enjoining the claimant from arbitrating its claims. *Goldman Sachs & Co. v. Becker*, 2007 WL 1982790 (N.D. Cal. July 2, 2007) (Exh. H). In doing so, the court expressly recognized that "[o]n a motion for preliminary injunction [to enjoin arbitration, the court] … *may take into account evidence that directly contradicts [the investors'] statement of claims*." *Id.* at *6. Clearly, this rule applies even more forcefully to Defendants' after-the-fact factual contentions.

There is good reason for such a rule. Were arbitrability merely premised on a party's ability to assert arguably arbitrable claims, based on the unilateral and unchallenged factual assertions of such party or his or her counsel, the settled rule, which provides that "arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit …" would be completely eviscerated. *See AT&T Tech., Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986).

*Hornor, Townsend & Kent, Inc. v. Hamilton*, 218 F. Supp. 2d 1369 (N.D. Ga. 2002), serves as a prime example of the danger associated with accepting one party's unilateral factual contentions. In that case, *the same law firm representing Defendants in this case* represented investors attempting to force arbitration against an NASD member. In the opinion cited, the investors secured an order from the court denying a motion by Hornor Townsend, the plaintiff broker-dealer, for an injunction and allowing arbitration to proceed. The court's decision was based on a sworn statement by the defendants that a transaction they claimed was subject to arbitration had occurred on October 1, 1999 – three weeks after the sales representative with whom they had dealt became associated with Hornor Townsend.

Later, during discovery in the arbitration, Hornor Townsend learned that the transaction in question had actually occurred on August 2, 1999 – more than a month *before* the sales representative became its associated person – not on October 1, as the investors had claimed in a sworn statement. After Horner Townsend presented this new evidence to the court, the court

- 8 -

SQUIRE, SANDERS & DEMPSEY L.L.P.
801 South Figueroa, 14th Floor
Los Angeles, CA 90017-5554

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY

Case No. C07-03303 JF (RS)

granted reconsideration of judgment, conditioned upon remand of an appeal of the arbitrability issue from the Eleventh Circuit. *See Horner, Townsend & Kent, Inc. v. Hamilton*, 2003 WL 23832424 (N.D. Ga., Sept. 29, 2003) (Exh. I). The court expressed its concern that the defendants had misrepresented the purchase date in their affidavits in order to make their claims arbitrable. *Id.* at *10-11.

Nevertheless, the investors continued to try to force arbitration by means of various arguments that arbitrability was not controlled by NASD "customer" status on the transaction date, as ample case authorities hold, but, rather as of the dates of subsequent events arising from a contractual relationship. In finding that the claims arising from the August 2, 1999, transaction were not arbitrable, the court noted that "[d]efendants try mightily to date their first investment after September 11, 1999 – the date on which Tommy Fountain became associated with plaintiff – in an understandable effort to tie plaintiff to Fountain and thereby force plaintiff to an arbitration." *Hornor, Townsend & Kent, Inc. v. Hamilton*, Case No. 1:01-cv-02979 (N.D. Ga., Sept. 6, 2005) (slip op. at 9) (Exh. J). However, the court was not persuaded, and it commented that:

> The failure of defendants' counsel to alert the Court originally to the existence of this August 2nd purchase date and the drafting inconsistencies now apparent in defendants' original description of the purchase dates strongly suggest that even defendants' counsel recognize the weakness of their present argument. Otherwise, they would have aired all of these matters when they were originally before the Court instead of the Court having to learn all of this only after plaintiff later received discovery material that brought to light the existence of an earlier purchase date than that represented by counsel.

[*Id.*, slip op., at 10.]

Defendants and their counsel are trying to play the same game again. Defendants seek to compel arbitration based solely on the after-the-fact representations of their counsel, and with the aid of third-party affidavits, while denying ONESCO the opportunity to conduct discovery and present evidence of its own. To ensure that ONESCO is not forced to arbitrate a dispute it has not agreed to arbitrate, this Court should follow *Goldman Sachs*, and permit ONESCO an opportunity

SQUIRE, SANDERS & DEMPSEY L.L.P.
801 South Figueroa, 14th Floor
Los Angeles, CA 90017-5554

- 9 -

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY

Case No. C07-03303 JF (RS)

to challenge Defendants' contentions through immediate discovery and the presentation of evidence.

### D. Timing, For Purposes Of Arbitrability, Is A Question For The Court.

As an additional point, we respond to Defendants' argument that the question of timing, for purposes of arbitrability, is reserved for the arbitrators. They base this argument on *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002). Such reliance is not only misplaced, but it misstates the U.S. Supreme Court's limited holding in that case.

In *Howsam*, the Court determined that the NASD's six-year eligibility rule does not present a question for the court *because the application of that specific rule is not a question of arbitrability*. *Id.* at 82-85. Contrary to Defendant's contention, *Howsam* has nothing to do with the issue at hand – specifically the application of NASD Rule 10301(a), which courts across the country have uniformly recognized as an arbitrability rule to be addressed by the court. *See, e.g., Wheat, First*, 993 F.2d at 818-20; *Hornor, supra*. In fact, it is beyond peradventure that questions relating to arbitrability under any type of alleged arbitration agreement must be decided by the Court. *See Litton Fin. Printing Div. v. Nat'l Labor Relations Bd.*, 501 U.S. 190, 208 (1991) ("whether or not a company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court"); *AT&T Tech., Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986) (determining whether a contract creates a duty to arbitrate a particular matter is an issue for the courts to decide).

As *Wheat, First*, and other cases make clear, the *timing* of events giving rise to an investor's claims for purposes of arbitrability under NASD rules presents a question for the Court, and not the arbitration panel. *Wheat First*, 993 F.2d at 818-20; *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cohen*, 62 F.3d 381, 386 (11th Cir. 1995) (timing of events giving rise to investor's claims, for purposes of arbitrability, was issue to be resolved by the court after detailed analysis). Under the circumstances, *Howsam* simply does not impact the required analysis.

- 10 -

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY

Case No. C07-03303 JF (RS)

SQUIRE, SANDERS & DEMPSEY L.L.P.
801 South Figueroa, 14th Floor
Los Angeles, CA 90017-5554

### E. Discovery Relevant To The Issue Of Arbitrability Cannot Be Denied Simply Because It Might Touch On Merits-Related Issues.

Finally, Defendants' argument that discovery is inappropriate in this case because some discovery relevant to the question of arbitrability may touch on merits-related issues is nothing but a red herring.

The question of arbitrability in this case may very well require the Court to examine certain facts and issues that also are pertinent to the merits of Defendants' claims. But the potential of some overlap does not justify the complete denial of relevant discovery. As one court stated, when the question of arbitrability requires a court to determine whether an alleged arbitration agreement covers the claims at issue, some "overlap between merits issues and the question of arbitrability" is inevitable. *Communications Workers of America, AFL-CIO v. Tyco Power Systems, Inc.*, 99 Fed. Appx. 499, n.4 (5th Cir. April 26, 2004) (Exh. K). Specifically, where "it [is] the district court's duty to determine whether the dispute is subject to arbitration, and since the Agreement excludes from arbitration [certain matters], the district court [is] required to decide whether" the claims at issue fall within or without the agreement in question. *Id.* In such circumstances, "any overlap between merits issues and the question of arbitrability is due to the express language" of the alleged agreement. *Id.*[7] Such a rule, of course, derives from the fundamental proposition that "concerns for judicial economy alone are not sufficient to justify interference with the binding agreement of the parties." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cohen*, 62 F.3d 381, 386 (11th Cir. 1995).[8]

---

[7] See also *International Brotherhood of Electrical Workers v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 403 (7th Cir. 2002) (recognizing "*inevitable overlaps*" between central question of arbitrability and merits of claims at issue) (emphasis added).

[8] Defendant cites *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999), for the proposition that discovery and a full trial are proper, under the Federal Arbitration Act, only if "the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue." In other words, the Ninth Circuit recognizes that, even in actions brought pursuant to the Federal Arbitration Act, *discovery and a full trial is necessary where the existence of an agreement to arbitrate is in issue*. That is exactly the case here. Thus, *Simula* is pertinent to the Court's consideration of the issue presented here. But contrary to Defendant's contention, such decision *compels the Court to permit discovery and conduct a full trial on the issue of arbitrability*.

- 11 -
PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY          Case No. C07-03303 JF (RS)

SQUIRE, SANDERS & DEMPSEY L.L.P.
801 South Figueroa, 14th Floor
Los Angeles, CA 90017-5554

Of course, if Defendant believes that specific discovery requests are not relevant to the issue of arbitrability, but relate only to the merits of his claims, his recourse is to object pursuant to Rule 26 of the Federal Rules, and if necessary, to obtain a court ruling with respect to such objection. Defendant's unfounded, and untrue statement that ONESCO cannot be trusted to limit its requests to the issue of arbitrability does not justify an order prohibiting *all relevant* discovery because of the mere possibility that some overlap or disagreement as to relevance may occur.

Respectfully submitted,

Dated: September 20, 2007

ZEIGER, TIGGES & LITTLE LLP

By: _____/s/_____
         Michael R. Reed

Attorneys for Plaintiff
THE O.N. EQUITY SALES COMPANY

SANFRANCISCO/234748.1

SQUIRE, SANDERS &
DEMPSEY L.L.P.
801 South Figueroa, 14th Floor
Los Angeles, CA 90017-5554

- 12 -
PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR AN ORDER AUTHORIZING THE PARTIES TO ENGAGE IN IMMEDIATE DISCOVERY ON THE ISSUE OF ARBITRABILITY    Case No. C07-03303 JF (RS)