Slip Copy, 2007 WL 1982790 (N.D.Cal.)
**(Cite as: Slip Copy)**

Goldman Sachs & Co. v. Becker
N.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
GOLDMAN SACHS & CO. and Goldman Sachs Execution & Clearing, L.P., Plaintiffs,
v.
Anthony J. BECKER and Cecelia Fábos-Becker, Defendants.
**No. C 07-01599 WHA.**

July 2, 2007.

Joseph Edward Floren, Attorney at Law, Sheila Anil Jambekar, Morgan, Lewis, & Bockius, LLP, San Francisco, CA, for Plaintiffs.
Anthony J. Becker, San Jose, CA, pro se.
Cecelia Fábos-Becker, San Jose, CA, pro se.

### ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION
WILLIAM ALSUP, United States District Judge.

#### INTRODUCTION
*1 In this action under the Federal Arbitration Act, plaintiffs seek a preliminary injunction against defendants to prevent them from pursuing claims alleged in an arbitration proceeding before the National Association of Securities Dealers. Defendants present several theories of why plaintiffs should be bound to arbitrate a dispute. Plaintiffs have made strong showing of a likelihood of success on the merits by presenting evidence that there is no agreement or relationship between plaintiffs and defendants that would require plaintiffs to arbitrate any dispute between them. Plaintiffs have also shown a threat of irreparable injury should the arbitration proceed. Accordingly, plaintiffs motion for a preliminary injunction is **Granted.**

#### STATEMENT
Defendants *pro se* Anthony J. Becker and Cecelia L. Fábos-Becker are husband and wife. In June 2006, they filed a statement of claims with National Association of Securities Dealers Dispute Resolution, Inc., to initiate arbitration proceedings against plaintiffs Goldman Sachs & Co., and Goldman Sachs Execution and Clearing, L.P. A variety of other entities who provide financial services were also named in the Beckers' statement of claims including Prudential Financial Services. Prudential is not a party to this action. The gravamen of the Beckers' NASD complaint appears to be that Prudential's financial advisors gave them investment advice ill-suited to their situation, failed to notify them of significant changes in their accounts in a timely manner, failed to execute transactions as instructed, and misrepresented features of investment products the Beckers purchased (Floren Decl. Exh. A, 5-11). Defendants also argue that plaintiffs own their mortgage and are responsible for secretly denying them governmental mortgage relief.

Defendants purchased investment products from Prudential at sometime before this action commenced. Plaintiffs appear to be named in the arbitration claim by virtue of their various alleged connections with Prudential. According to the vice president of the legal department at Goldman Sachs, plaintiffs have never held any securities for the Beckers (Fryman Decl. ¶ 5). Defendants' arbitration claim against plaintiffs appears to be based, at least in part, on plaintiffs' underwriting an initial public offering of stock by Prudential, and Prudential's underwriting an initial public offering by Goldman Sachs (Floren Decl. Exh. A). Defendants also allege that Goldman Sachs controls Prudential by owning some of its stock.

In the arbitration proceeding, defendants also allege that plaintiffs own the mortgage on their home in San Jose (*id.* at 14). Defendants claim to have

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT

H

written to their mortgage servicer, Ocwen Federal Bank, FSB, asking for verification that plaintiffs owned the mortgage. The letters were not answered (*id.* at 15). Because defendants did not get confirmation regarding who owned their mortgage, they claim they were unable to get mortgage relief from the government when their small business was destroyed by a natural disaster. The Beckers seem to claim that plaintiffs somehow intentionally interfered with their ability to get mortgage relief.

*2 Plaintiffs declare that they have never owned the mortgage on defendants' house (Fryman Decl. ¶ 6). They explain that defendants' original lender, who was unrelated to plaintiffs, sold defendants' mortgage as part of a portfolio of mortgages to GSMC, one of plaintiffs' affiliates (*id.* at ¶ 7). The mortgage is now owned by MTGLQ Investors, L.P., a subsidiary of GSMC (*ibid.*).

Defendants commenced the arbitration proceeding, *Anthony J. Becker, et al. v. Prudential Securities Inc. nka Prudential Equity Group, et al.,* NASD-DR Arbitration Number 06-2947, in June 2006 (Fryman Decl. ¶ 9). Plaintiffs were served with the Beckers' statement of claim. On November 29, 2006, the date by which a response was due, plaintiffs filed an objection to the NASD's jurisdiction (Floren Decl. Exh. B). Defendants responded to plaintiffs' objection using many of the arguments repeated herein on December 25, 2006 (Floren Decl. Exh. C). Both parties filed another round of briefing. In a one-paragraph memorandum, the NASD denied plaintiffs' jurisdictional objection on February 14, 2007. The memorandum also stated that "this case will proceed in this forum against all NASD member firms and their associated persons" (Floren Decl. Exh. F).

Goldman Sachs filed this action on March 27, 2007, for declaratory and injunctive relief. Jurisdiction over this action is proper because of complete diversity of citizenship of parties, and the amount in controversy exceeds $75,000 because defendants' claims for damages in arbitration exceed that amount. At the same time they filed a motion for relief in the arbitration action (*id.* at Exh. G). The NASD held a preliminary arbitration hearing on March 28, 2007 (*id.* at ¶ 12). At the hearing, the arbitration panel chair declined to rule on the motion for relief from arbitration, encouraged plaintiffs and defendants to work toward an expedited resolution, and asked them to report back to the arbitration panel by April 30, 2007 (*ibid.*). Briefing schedules were set for the other parties to the arbitration.

Plaintiffs file this motion for a preliminary injunction on May 1, 2007. On June 5, 2007, defendants filed an ex parte application for a temporary restraining order enjoining plaintiffs from taking any action to foreclose on defendants' house. Both the application for a temporary restraining order and plaintiffs' motion for a preliminary injunction were heard on June 7, 2007. Defendants' application for a temporary restraining order was denied. The Court asked for a statement of reasons from a staff attorney at NASD arbitration, Elaine Kohn, explaining why plaintiffs' motion to be excused from arbitration was denied. This was received on June 20, 2007, and is discussed below. Plaintiffs filed an administrative motion to respond to the NASD's letter. The motion was granted, and defendants were also given an opportunity to respond. They did so on June 28, 2007.

### ANALYSIS

To prevail on a motion for a preliminary injunction in the Ninth Circuit:

*3 The moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in favor of the moving party.

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.,* 240 F.3d 832, 839-40 (9th Cir.2001) (citation omitted); *see also Arcamuzi v. Cont'l Air Lines, Inc.,* 819 F.2d 935, 937 (9th Cir.1987). " These standards 'are not separate tests but the outer reaches of a single continuum.' " *Stuhlbarg,* 240 F.3d at 840 (internal citation omitted).

**1. Probable Success on the Merits.**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"[T]he test for a preliminary injunction is 'probable success on the merits' or 'fair chance of success on the merits.'" *Johnson v. Cal. State Bd. of Accountancy,* 72 F.3d 1427, 1430 (9th Cir.1995) (internal citations omitted); *see also Republic of the Philippines v. Marcos,* 862 F.2d 1355, 1362 (9th Cir.1988) (finding that probable success equates to a showing of "a fair chance of success"). Plaintiffs argue that they are entitled to a preliminary injunction against their participation in the NASD arbitration initiated by defendants.

### A. Arbitrability of Defendants' Claims.

The arbitrability of disputes connected with transactions involving interstate commerce is governed by the Federal Arbitration Act. 9 U.S.C. 2. "Unless the parties clearly and unmistakably provided otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T Techs., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). The usual presumption in favor of arbitration is reversed when deciding the issue of whether a particular dispute is arbitrable. Where parties did not agree to submit the question of arbitrability to the arbitrator, the court should decide the question independently. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). "One party's membership in an exchange is insufficient, in and of itself, to evidence the parties' clear and unmistakable intent to submit the ' arbitrability' question to the arbitrators." *John Hancock Life Ins. v. Wilson,* 254 F.3d 48, 57 (2d Cir.2001).

Here, plaintiffs argue that there is no indication that plaintiffs and defendants contracted to have the question of arbitrability submitted to an arbitrator. Indeed, plaintiffs contend that there never was a relationship of any kind between plaintiffs and defendants. The Beckers' argument seems to be that they submitted the dispute to arbitration by the NASD, so it must be arbitrable. Furthermore, they urge that the issue of arbitrability was "vetted" by various people and organizations and that plaintiffs' attempts to get out of arbitration were "denied" by various government officials (Opp.2). The NASD did deny plaintiffs' motion to be excused from arbitration, but it is far from clear from the NASD's response that they closely considered the question of arbitrability. Elaine Kohn stated that "[an NASD] Dispute Resolution [staff attorney] performs a narrow, mechanical analysis of the claims ..." (Kohn Letter at 1). That the NASD looked at the claims and determined, in rather cursory fashion, that the dispute was arbitrable, does not indicate that there was any intent by the parties to submit the question of arbitrability to NASD Dispute Resolution. Defendants assertions to the contrary in their response to the NASD's letter are equally unavailing. There is little indication that the NASD actually took a close look at the complaint to see if there was an agreement or relationship that governed the question of arbitrability.

*4 "Merely arguing the arbitrability issue to an arbitrator does not indicated a clear willingness to arbitrate that issue, *i.e.,* a willingness to be effectively bound by the arbitrator's decision on that point." *First Options of Chicago,* 514 U.S. at 946. Throughout this proceeding, plaintiffs never evinced any intent to submit the question of arbitrability to the arbitrator. Defendants were the only willing party, so there was no agreement to be bound by the arbitrator's decision. Furthermore, there is no clear indication from the NASD's responses that it analyzed the question of whether it should decide whether the dispute is arbitrable. In defendants' response to the NASD's letter, they state that the SEC recommended that they file a claim in arbitration. These responses do not, as defendants argue, indicate that the dispute was arbitrable. It appears that the SEC was merely directing defendants to a preferred method of dispute resolution. Accordingly, plaintiffs have shown that they did not intend to submit the question of arbitrability to the arbitrator. Thus, they have shown that they have a reasonable likelihood of success in proving that this Court should determine the question of arbitrability.

### B. Contract to Arbitrate.

This order now turns to whether there was an

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

agreement to arbitrate between the parties. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Plaintiffs present evidence that there was no agreement of any kind between plaintiffs and defendants. Indeed, defendants seem to have conceded that there was no explicit agreement to arbitrate between themselves and Goldman Sachs. Defendants instead contend that their various agreements with other parties bind plaintiffs to arbitrate disputes.

Defendants first argue that their agreement with Prudential Securities is enforceable here against plaintiffs because Goldman Sachs has an ownership stake in Prudential. It is well-settled that a corporation and its shareholders are distinct legal entities. *Dole Food Co. v. Patrickson,* 538 U.S. 468, 474, 123 S.Ct. 1655, 155 L.Ed.2d 643 (2003). Even if shareholders exercise control, they are not personally liable for a corporation's contracts. *United States v. Best Foods,* 524 U.S. 51, 61-62, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998). Thus, even if defendants had agreed by contract to arbitrate disputes with Prudential, as they contend, this contract does not bind Goldman Sachs to participate in arbitration. Defendants also argue that the arbitration clause in their mortgage with WMC Mortgage Corporation binds Goldman Sachs to arbitration. Even assuming that the arbitration clause would bind the mortgage's current owner, plaintiffs have shown evidence that a subsidiary of an affiliate of Goldman Sachs-MTGLQ Investors-and *not* Goldman Sachs itself, owns defendants' mortgage. An agreement with an affiliate is not enough to bind plaintiffs to arbitration.

*5 Defendants next argue that because Goldman Sachs acted as an underwriter in one of Prudential's initial public offerings, and Prudential acted as an underwriter in one of Goldman Sachs' initial public offerings, Goldman Sachs should be bound by Prudential's arbitration agreement. Defendants' reliance on *In re Initial Public Offering Sec. Litig.,* 227 F.R.D. 65 (S.D.N.Y.2004) is misplaced. That decision did not hold that underwriters of initial public offerings were liable for all subsequent acts by the company making the initial public offering. It discussed holding underwriters liable for acts or omissions in connection with the initial public offering itself. That decision does not justify extending an underwriter's liability to all subsequent transactions, as defendants here attempt to do. *Id.* at 105-06. Furthermore, this decision is no longer good law. *See In re Initial Public Offering Sec. Litig.,* 471 F.3d 24 (2d Cir.2006) (vacating district court's decision to certify class and remanding for further proceedings).

In their response to the NASD's letter, defendants also cite to *Credit Suisse Securities (USA) v. Billing,* --- U.S. ----, 127 S.Ct. 2383, ---L.Ed.2d ---- (June 18, 2007), for the proposition that investors in a company are the customers of that company's underwriters. Defendants are correct that this decision noted that the SEC has authority to supervise the activities of underwriters. *Id.* at 2392. The *Credit Suisse* decision, however, dealt with whether the antitrust laws could be applied to allegedly anticompetitive practices in underwriting initial public offerings. The Supreme Court held that they could not. *Id.* at 2396. This decision simply does not address the question of whether disputes are arbitrable. Additionally, there is no indication on these facts that the Beckers participated in the initial public offering of Prudential itself. Defendants only allege that they received financial advice and bought investment products from Prudential. Accordingly, plaintiffs have shown that they have a substantial likelihood of success to show that they are not bound by contract to arbitrate this dispute.

### C. NASD Arbitration Rules.

Defendants finally argue that plaintiffs are bound by the NASD's arbitration rules to arbitrate this dispute. Plaintiffs are NASD members (Fryman Decl. ¶¶ 4-5). For NASD members, certain disputes are required to be submitted to arbitration. In their opposition, defendants cite to Rule 10100 which governs those disputes which *may* be submitted for arbitration. Rule 10301, which

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

governs disputes that are *required* to be submitted for arbitration, states (Floren Decl. Exh. H):
Any dispute, claim, or controversy eligible for submission under Rule 10100 Series between a customer and a member and/or an associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code, as provided by any duly executed and enforceable written agreement or upon demand of the customer.

*6 Plaintiffs first argue that defendants are not their "customers" within the definition of the rules. The NASD rules define the term "customer" broadly, excluding only brokers and dealers. NASD Rule 0120(g). The Ninth Circuit has not interpreted the meaning of a customer under the NASD rules. Other courts have held that a direct customer relationship between the member and the purported customer is not necessary, *i.e.*, that the Beckers never opened an account with plaintiffs is not in itself fatal. *John Hancock,* 254 F.3d at 60. "In order for someone to be a 'customer,' there must be some nexus between the investor and the member or associated person in order for a party to take advantage of the NASD arbitration provision." *Malak v. Bear Stearns & Co., Inc.,* 2004 WL 213014, *4 (S.D.N.Y.2004). Other courts have interpreted "customer" to require the purchase of securities from that NASD member, or to require at least some informal business relationship between parties. *See Fleet Boston Robertson Stephens v. Innovex, Inc.,* 264 F.3d 770 (5th Cir.1993); *BMA Financial Servs., Inc. v. Guin,* 164 F.Supp.2d 813, 819 (W.D.La.2001).

As mentioned above, the Court asked for a statement of reasons from NASD Dispute Resolution regarding why it denied plaintiffs' objections to proceeding in arbitration. The response stated that Dispute Resolution staff only determines whether claims fall within the scope of disputes eligible for arbitration. "The decision not to deny the Dispute Resolution forum in this case was a very narrow decision based solely upon definitions and provisions of the Code of Arbitration Procedure and the NASD Manual"

(NASD Letter at 1). Ms. Kohn went on to explain that the NASD looked at the definitions and determined that the Beckers were a customer of Goldman Sachs by taking the allegations in their claims as true. Specifically, the NASD's decision seemed to rely on the Beckers' statement that the dispute arose out of Goldman Sachs' business.

Here, it appears that the NASD assumed all of the Beckers' allegations and statements in their claims to be true, and then determined whether they were "customers" under the rule. On a motion for preliminary injunction, however, this order may take into account evidence that directly contradicts the Beckers' statement of claims. Closer consideration of any alleged customer relationship between plaintiffs and defendants shows that such relationships are too tenuous to drag plaintiffs into arbitration.

Defendants seem to argue that they are customers of plaintiffs either through Goldman Sachs' having been an underwriter for Prudential Securities' initial public offering or through Goldman Sachs' allegedly owning defendants' mortgage. Just as these arguments do not support a contractual relationship with plaintiffs, they do not support a customer relationship either. Defendants' customer relationship, if any, was with Prudential Securities. Although defendants purchased investment products from Prudential, they did not purchase stock in Prudential itself, so they have no connection to plaintiffs through Prudential Securities' initial public offering. As to the mortgage, defendants' customer relationship is more likely with MTGLQ Investors or their mortgage servicer.

*7 Defendants also argue that plaintiffs are "associated persons" of Prudential subject to the arbitration agreement. Under NASD bylaws, an "associated person" is intended to describe only natural persons. NASD By-Law Art. I, § (cc). For instance, a natural person associated with an investment bank who was authorized to sell securities on its behalf could be an associated person under NASD rules. *See, e.g., John Hancock,* 254 F.3d at 60. Here, plaintiffs present evidence that they are a corporation and a New York limited partnership, neither of which are natural persons.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

N.Y. Partnership Law § 121-101. It appears that plaintiffs cannot be associated persons under the NASD rules. Accordingly, plaintiffs have made a strong showing of likelihood of success. Indeed, defendants have not presented any evidence of a relationship, contractual or otherwise, between plaintiffs and themselves.

### 2. Balance of Hardships.

"Subjective apprehensions and unsupported predictions ... are not sufficient to satisfy a plaintiff's burden of demonstrating an immediate threat of irreparable harm." *Carribean Marine Serv. Co. v. Baldridge,* 884 F.2d 668, 675-676 (9th Cir.1988). Plaintiffs argue that they will be irreparably harmed if they are required to expend time and resources in defending against defendants' claims in arbitration. Simply put, they never agreed to settle disputes with defendants in arbitration. *See Merrill Lynch Inv. Managers v. Optibase, Ltd.,* 337 F.3d 125, 129 (2d Cir.2003) (affirming grant of preliminary injunction in favor of a party resisting arbitration because the dispute was outside the arbitration agreement). Plaintiffs contend that they would lose money and their employees' time if they had to defend these claims in arbitration. Additionally, plaintiffs did not delay in seeking this injunction. This motion was filed only a few days after the initial arbitration hearing. Attorney's fees could possibly compensate the expense, but given defendants' financial situation, it is not clear that plaintiffs could ever recover them even if they were available. Accordingly, they have shown a threat of irreparable harm.

Defendants argue that the balance of hardships should tip in their favor. This order need not reach the balance of hardships because plaintiffs have shown a strong likelihood of success on the merits and a threat of irreperable harm. Defendants contend, however, that plaintiffs have much greater financial resources with which to pursue this action, and that defendants' personal situation shows that the hardships favor them. This is likely true. Shortly before this motion was heard, defendants filed an application for a temporary restraining order seeking to enjoin plaintiffs from taking action to foreclose on defendants' home. This application was denied because plaintiffs simply had no control over foreclosure on the property. In short, defendants were going after the wrong parties because plaintiffs had no power to stop the foreclosure. Defendants' situation is certainly unfortunate, but it does not compel the conclusion that plaintiffs should have to defend against claims in arbitration where they had never agreed to do so. Accordingly, plaintiffs motion for a preliminary injunction is **Granted.**

### CONCLUSION

*8 For all of the above-stated reasons, defendants are enjoined pending resolution of this action from prosecuting the NASD arbitration against plaintiffs. This is without prejudice to prosecution of the arbitration against all other parties and is without prejudice to any other party to the arbitration seeking arbitration relief against plaintiffs. Since defendants are *pro se* parties, this order will alert them that they may be obligated under Rule 13 of the Federal Rules of Civil Procedure to file a counterclaim (if it can be done in good faith) against plaintiffs as to any claim arising out of the same transaction or occurrence, on pain of waiver.

**IT IS SO ORDERED.**

N.D.Cal.,2007.
Goldman Sachs & Co. v. Becker
Slip Copy, 2007 WL 1982790 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.