Westlaw.
Not Reported in F.Supp.
Not Reported in F.Supp., 1993 WL 197028 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

Page 1

C
Technetronics, Inc. v. Leybold-Graeus GmbH
E.D.Pa. 1993.
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
TECHNETRONICS, INC.
v.
LEYBOLD-GEAEUS GMBH, Leybold AG and
Leybold Technologies, Inc.
No. CIV. A. 93-1254.

June 9, 1993.

MEMORANDUM AND FINAL JUDGMENT
HUTTON.
*1 Presently before the Court is the defendants'
Motion to Dismiss Plaintiff's Complaint Under
Fed.R.Civ.P. 12(b)(6) or for a Stay Pending
International Arbitration, the plaintiff's response,
and the defendants' reply brief.

Leybold-Heraeus GmbH, its corporate successor
Leybold AG, and Leybold Technologies, Inc.
(collectively "Leybold") are businesses located and
incorporated in Germany. The companies design
and manufacture high-tech industrial manufacturing
equipment. In December, 1986, Leybold entered
into a contract with Rokoma B.V. ("Rokoma"), a
Netherlands company, for the purpose of selling
twenty pieces of high vacuum metalizing
equipment for use in the manufacturing of
recording CDs. During December, 1986, Rokoma
also entered into a separate contract with
Technetronics Inc. ("Technetronics"), a corporation
located in West Chester, Pennsylvania. Under the
Technetronics-Rokoma contract, Rokoma agreed to
"operate in the capacity of liaison between the
various manufacturers". (Technetronics Exhibit A
at ¶ 2, Responsibilities).

Pursuant to the terms of the original Rokoma-
Leybold contract, Rokoma was to purchase the
equipment for its ultimate user Technetronics, Inc.
Technetronics would then finance and ultimately
purchase the equipment from Rokoma. As per the

Rokoma-Leybold contract, Rokoma paid Leybold
DM (Deutschmarks) 1 million as a security deposit
on the equipment. The *Rokoma-Leybold* Contract
contained the following assignment of rights
provision:

9.11 Transfer of rights and obligations to
Technetronics Inc.
Seller [Leybold] agrees to the transfer of all rights
and obligations of Buyer [Rokoma] out of this
contract to Technetronics Inc. if requested so by
Technetronics Inc. in writing.

(Rokoma-Leybold Contract at ¶ 9.11). As the result
of a corporate disagreement over joint-venture
opportunities, Technetronics exercised its rights
under ¶ 9.11 and by letter dated March 2, 1988,
informing Leybold that it was directly assuming
Rokoma's rights and obligations under the contract.
(See Exhibit C to the Complaint, letter from
Technetronics to Mr. Hass of Leybold). The effect
of Technetronics' notice was to remove Rokoma
from the manufacturing chain and placed
Technetronics and Leybold in direct privity with
each other. *Id.*

In late March, 1988, Leybold informed
Technetronics that Rokoma, and thus
Technetronics, was in default for failure to accept
delivery. One month later, Leybold terminated the
original Rokoma-Leybold contract, which
Technetronics had assumed. Leybold claims that it
has sustained DM (Deutschmarks) 3.5 million in
damages, but that it has not filed a claim or suit
against Technetronics nor Rokoma because
Leybold believes that both companies have since
ceased doing business.

On June 24, 1992, Technetronics filed suit in the
Court of Common Pleas for Chester County,
Pennsylvania, for return of the DM (Deutschmarks)
1 million security deposit (Count I); and Leybold's
refusal to provide an accounting (Count II). The
Complaint was served on February 26, 1993. On
March 9, 1993, the defendants filed a notice of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

E-25

EXHIBIT

E

Not Reported in F.Supp.
Not Reported in F.Supp., 1993 WL 197028 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

removal to federal court pursuant to 28 U.S.C. § 1441. Leybold asserts two independent bases for federal jurisdiction. First, under the diversity of citizenship provision, 28 U.S.C. § 1332 and second, because the arbitration clause in the Rokoma-Leybold contract raises a federal question under the Federal Arbitration Act ("Arbitration Act"), 9 U.S.C. §§ 1-306 (1970 & Supp.1993).[FN1]

*2 The Rokoma-Leybold contract contains an international arbitration clause which provides:

¶ 9.7 Arbitration
All disputes arising in connection with the contract shall be finally settled under the rules of conciliation and arbitration as valid in Switzerland, Kanton Bern, by one or more arbitrators appointed in accordance with the rules. Any such arbitration shall be held in Bern/Switzerland, and the law of Switzerland shall apply.

(Rokoma-Leybold Contract at ¶ 9.7). On April 12, 1993, Leybold filed the present Motion to Dismiss under Fed.R.Civ.P. 12(b) in lieu of an answer to Technetronics's complaint.

## II. DISCUSSION

In its Motion to Dismiss, Leybold raises two arguments. First, that the arbitration clause in ¶ 9.7 of the Rokoma-Leybold contract is binding and therefore precludes this suit. Second, if this Court declines to order arbitration, the plaintiff has failed to effectuate proper service because the complaint was not served in compliance with the Hague Convention on Service of Process Abroad, 20 U.S.T. 361, T.I.A.S. No. 6638, 658 U.N.T.S. 163, *reprinted in,* Fed.R.Civ.P. 4 (West Supp.1992) at 210. In particular, Leybold alleges that the plaintiff has failed to serve a copy of the summons and complaint in the German language.

### A. Standard

Although styled as a motion to dismiss, in a motion to stay proceedings and/or compel arbitration, the appropriate standard of review for the district court is the same standard used in resolving summary judgment motions pursuant to Fed.R.Civ.P. 56(c). *Trott v. Paciolla,* 748 F.Supp. 305, 308 (E.D.Pa.1990) (citing *Par-Knit Mills v. Stockbridge Fabrics,* 636 F.2d 51, 54 & n. 9 (3d Cir.1980)). Accordingly, the court considers the evidence in the light most favorable to Technetronics, the party opposing the motion to stay pending arbitration. *Par-Knit Mills,* 636 F.2d at 54.

### B. The International Arbitration Clause

As mentioned above, the Rokoma-Leybold contract's arbitration clause provides:
¶ 9.7 Arbitration
All disputes arising in connection with the contract shall be finally settled under the rules of conciliation and arbitration as valid in Switzerland, Kanton Bern, by one or more arbitrators appointed in accordance with the rules. Any such arbitration shall be held in Bern/Switzerland, and the law of Switzerland shall apply.

(Rokoma-Leybold Contract at ¶ 9.7). Leybold argues that this clause requires international arbitration as a precondition to any suit brought in a United States court, either state or federal. (Leybold Motion to Dismiss at 6). Technetronics responds that it has never agreed to an arbitration clause because ¶ 9.7 appears only in the original Rokoma-Leybold contract. As such, Technetronics cannot be compelled to enter into international arbitration under the terms of a contract it did not sign. Finally, Leybold responds that when Technetronics assumed the rights and responsibilities of the Rokoma-Leybold contract, Technetronics accepted *all* of Rokoma's obligations, including international arbitration.

*3 The Honorable Clarence C. Newcomer of this district court recently reviewed when a district court must enforce a contractual provision calling for international arbitration under the Federal Arbitration Act ("Arbitration Act"), 9 U.S.C. §§ 1-306 (1970 & Supp.1993). *Euro-Mec Import, Inc. v. Pantrem & C.,* S.p.A., No. 92-2624, 1992 WL 350211 (E.D.Pa. Nov. 16, 1992). In *Euro-Mec,* the court stated:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1993 WL 197028 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

The appropriate starting point for ruling on defendant's motion is the Federal Arbitration Act ("Arbitration Act"), 9 U.S.C. § 1et. seq. The Arbitration Act is Chapter 1 of Title 9. Congress enacted the Arbitration Act "to ensure judicial enforcement of privately made agreements to arbitrate." *Tennessee Imports, Inc. v. Filippi,* 745 F.Supp. 1314, 1320 (M.D.Tenn.1990) (quoting *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 219 (1985)). The Arbitration Act provides that an arbitration clause "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1988).

*Euro-Mec,* 1992 WL 350211 at *2. The *Euro-Mec* court specifically addressed the application of the Federal Arbitration Act to contracts reached by international parties:The federal policy in favor of arbitration for international commerce is reflected in the Convention on Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"), 9 U.S.C. §§ 201-08 (1988).
Article II of the Convention states that signatory countries "shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences." Convention, Article II(1). The Convention defines an agreement in writing to include "an arbitral clause in a contract or an arbitration agreement." Convention, Article II(2). Further, the Convention states that the court of a signatory country "shall ... refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed."

*Id.* at *3; *see also*9 U.S.C.A. § 201 (West Supp.1993) (list of signatory nations). Both the United States and Germany are parties to Article II of the Convention. § 201 n.13 (German Democratic Republic acceded to the Federal Republic of Germany on October 3, 1990, with the unified Germany reaffirming the terms of the Convention).

### C. The Role of the District Court

In order for a district court to enforce an international arbitration clause, the court must complete a two step analysis. First, the court must conclude that the arbitration clause satisfies the four factor test set forth in *Tennessee Imports, Inc. v. Filippi,* 745 F.Supp. 1314, 1321-22 (M.D. Tenn.1990); *see also Euro-Mec,* 1992 WL 350211 at *2-4. Second, if the clause meets the *Tennessee Imports* criteria, the court must conclude that there is no independent reason to declare the provision "null and void, inoperative or incapable of being performed." *Tennessee Imports,* 745 F.Supp. at 1322 (citing Convention, Article II(3); *Ledee,* 684 F.2d at 187).

### 1. The Four Factor Tennessee Imports Test

*4 A district court must address four questions in determining the enforceability of arbitration clauses found in international commercial agreements.
1) Is there an agreement in writing to arbitrate the subject of the dispute? Convention, Articles II(1), II(2);
2) Does the agreement provide for arbitration in the territory of a signatory country? Convention, Articles I(1), I(3); 9 U.S.C. § 206;
3) Does the agreement arise out of a legal relationship, whether contractual or not, which is considered as commercial? Convention, Article I(3); 9 U.S.C. § 202; and
4) Is a party to the contract not an American citizen, or does the commercial relationship have some reasonable relation with one or more foreign states? 9 U.S.C. § 202.

*Euro-Mec,* 1992 WL 350211 at *4; *Tennessee Imports, Inc. v. Filippi,* 745 F.Supp. 1314, 1321-22 (M.D. Tenn.1990) (citing *Ledee v. Ceramiche Ragno,* 684 F.2d 184, 186 (1st Cir.1982)).

### 2. Factors Two, Three and Four

This Court concludes that the defendants can readily satisfy their burden of proving *Tennessee Import* factors two, three, and four. Initially, the United States (plaintiff's home country), Germany (defendant's home country), and Switzerland (neutrally designated site for arbitration) are all signatories to the Convention. *See*9 U.S.C.A. § 201

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

E-27

Not Reported in F.Supp.
Not Reported in F.Supp., 1993 WL 197028 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

(West Supp.1993) (list of signatory nations). As such, the three countries involved in this dispute, as signatory nations, qualify this dispute under the second factor.

Similarly, the contract for 20 high grade vacuum metalizers satisfies the third factor's requirement that the "agreement arise out of a legal relationship, whether contractual or not, which is considered as commercial." *Tennessee Imports,* 745 F.Supp. at 1321-22. Finally, the purchase of German manufactured products through a Netherlands intermediary satisfies the fourth factor that "the commercial relationship have some reasonable relation with one or more foreign states". *Id.*

## WHETHER THE TECHNETRONICS-ROKOMA CONTRACT

The defendants' burden is more difficult, however, with regards to proving the first *Tennessee Imports* factor. As the defendants themselves admit, Technetronics never signed "an agreement in writing to arbitrate the subject of the dispute" directly with Leybold. The only contract containing an arbitration clause is the original Rokoma-Leybold contract. As such, this Court must ascertain whether Technetronics is now bound by the terms and conditions of the original Rokoma-Leybold contract, or whether Technetronics may file suit directly against Leybold in the United States.

Under Pennsylvania law it is axiomatic that a party cannot be forced to accept the terms of a contract that it did not enter or otherwise adopt. *See e.g., Burkett v. Allstate Ins. Co.,* 534 A.2d 819 (Pa.Super. Ct.1987) (test for enforceability is if both parties have manifest their intent to be bound by the contract); *Project Development Group, Inc. v. O.J. Materials Corp.,* 766 F.Supp. 1348 (W.D. Pa.1991) (essential elements to the formation of a contract are "an offer, acceptance and a manifestation of assent").

*5 Notwithstanding these common law principles, Pennsylvania has also adopted the Uniform Commercial Code ("UCC"), including U.C.C. §

2-210 on the assignment and assumption of contract rights. 13 Pa. Con. Stat. § 2210 (Supp.1992). Section 2210 provides:

(d) Effect and enforceability of general assignment.- An assignment of "the contract" or of "all my rights under the contract" or an assignment in similar general terms is an assignment of rights and unless the language or the circumstances (as in an assignment for security) indicate the contrary, it is a delegation of performance of the duties of the assignor and its acceptance by the assignee constitutes a promise by him to perform those duties. This promise is enforceable by either the assignor or the other party to the original contract.

13 Pa. Con. Stat. § 2210. As this provision indicates, an "acceptance by the assignee constitutes a promise by him to perform those duties." *Id.*

As the foregoing discussion indicates, absent an assignment of the contract rights, Technetronics correctly asserts that it cannot be forced to arbitrate under the *Rokoma-Leybold Contract* because Technetronics was not a party to that agreement. However, Technetronics has "stepped into Rokoma's shoes" when it accepted all of Rokoma's rights and responsibilities under the original contract. *See Exhibit B* (Technetronics Letter to Leybold date Mar. 29, 1988 accepting exercising rights under ¶ 9.11); 13 Pa. Con. Stat. § 2210 (Supp.1993).

Within the Technetronics-Rokoma-Leybold business agreement, Technetronics is the assignee of Rokoma's rights under the Rokoma-Leybold agreement. (See Rokoma-Leybold Contract at ¶ 9.11). As discussed earlier, ¶ 9.11 of the original Rokoma-Leybold contract provides:

9.11 Transfer of rights and obligations to Technetronics Inc.
Seller [Leybold] agrees to the transfer of all rights and obligations of Buyer [Rokoma] out of this contract to Technetronics Inc. if requested so by Technetronics Inc. in writing.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

E-28

Not Reported in F.Supp.
Not Reported in F.Supp., 1993 WL 197028 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

(Rokoma-Leybold Contract at ¶ 9.11). When Technetronics accepted Rokoma's rights under the contract, it accepted *all* of Rokoma's rights as well as *all* of Rokoma's obligations, including the mandatory international arbitration clause.

In count I of its complaint Technetronics seeks recovery of the DM (Deutschmarks) 1 million dollar security deposit that Rokoma paid Leybold under the original contract. (See Complaint). Significantly, Technetronics' suit is against Leybold directly, and not Rokoma. Technetronics' complaint does not indicate that it is in a direct contractual relationship with Leybold for the DM (Deutschmarks) 1 million. Accordingly, Technetronics can only be asserting a claim against Leybold if it has assumed the *rights and responsibilities* that Rokoma had under the original Rokoma-Leybold contract. *See also* 13 Pa. Con. Stat. § 2210 (assumption of rights and responsibilities). Technetronics cannot assert the inconsistent defense that it has standing to sue for the security deposit under the Rokoma-Leybold contract, but that it is not bound by the arbitration clause contained within the same contract. *Id.* Accordingly, this Court concludes that Leybold has satisfied the first *Tennessee Export* factor and that this case must be referred to international arbitration.[FN2]

*4. Whether the Arbitration Clause is "Null and Void"*

*6 Having determined that Leybold can prove each of the four *Tennessee Import* factors, this Court must now determine whether there is an independent reason to declare the provision "null and void, inoperative or incapable of being performed." *Euro-Mec Import, Inc. v. Pantrem & C., S.p.A.,* No. 92-2624, 1992 WL 350211 (E.D.Pa. Nov. 16, 1992); *Tennessee Imports,* 745 F.Supp. at 1322 (citing Convention, Article II(3); *Ledee v. Ceramiche Ragno,* 684 F.2d 184, 186 (1st Cir.1982)).

As Judge Newcomer explained in *Euro-Mec,* a district court:

should limit application of the "null and void" clause to cases in which the arbitration agreement itself is "subject to an internationally recognized defense such as duress, mistake, fraud or waiver, or ... when [the agreement] contravenes fundamental policies of the forum state." *Tennessee Imports,* 745 F.Supp. at 1322 (citing *Rhone Mediteranee Compagnia Francese di Assicurazioni e Riassicurazoni v. Lauro,* 712 F.2d 50, 53 (3d Cir.1983) (citations omitted)).

*Euro-Mec Import, Inc. v. Pantrem & C., S.p.A.,* No. 92-2624, 1992 WL 350211 (E.D.Pa. Nov. 16, 1992) at *4-5. This Court finds no evidence on the record between Technetronics and Leybold of any of the traditionally recognized international defenses such as fraud, duress or mistake. The letters between Technetronics and Leybold evidence that Technetronics both initiated and accepted the assignment of rights under ¶ 9.11. As such, there is no evidence of mistake or fraud. Moreover, the increasing use of arbitration both in Pennsylvania and the federal courts does not "contravene[ ] fundamental policies of the forum state." *Tennessee Imports,* 745 F.Supp. at 1322. Accordingly, this Court grants the defendants' Motion to Dismiss as a result of Technetronics' failure to enter international arbitration.

*D. Insufficient Service of Process*

Because this Court dismisses this action based on the international arbitration clause, the Court does not reach the issue of whether Technetronics effectuated service in violation of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or commercial Matters, *opened for signature* Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638, 658 U.N.T.S. 163, *reprinted in,* Fed.R.Civ.P. 4 (West Supp.1992) at 210.

An appropriate Order follows.

FINAL JUDGMENT

AND NOW, this 9th day of June, 1993, upon consideration of the Defendants' Motion to Dismiss

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1993 WL 197028 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

Plaintiff's Complaint Under Fed.R.Civ.P. 12(b)(6) or for a Stay Pending International Arbitration, the Plaintiff's Response, and the Defendants' Reply Brief, IT IS HEREBY ORDERED that the Defendants' Motion to Dismiss is GRANTED.

IT IS FURTHER ORDERED that this case is DISMISSED.

> FN1. Count I of the Technetronics's complaint seeks recovery of the DM 1 million dollar security deposit. According to the June 4, 1993 *Wall Street Journal,* DM 1 million is worth approximately $625,000.00, thereby satisfying the jurisdictional requirement that the amount in controversy exceeds $50,000.00. 28 U.S.C. § 1332 (Supp.1993).

> FN2. Technetronics also asserts the alternative argument that Leybold cannot satisfy the first *Tennessee Imports* factor because the DM 1 million is not "sufficiently related to a commercial contract" to be subject to arbitration. *See Id.* at 1321-22. This Court disagrees. The DM 1 million was paid as a security deposit for the purchase of 20 custom ordered vacuum metalizer for use in the CD manufacturing business. By their very nature the original Rokoma-Leybold contract, the security deposit, and Technetronics assumption of the original contract were all "related to commercial" activity.

E.D.Pa. 1993.
Technetronics, Inc. v. Leybold-Graeus GmbH
Not Reported in F.Supp., 1993 WL 197028 (E.D.Pa.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

E-30