1   Joel A. Goodman (FL Bar No. 802468)
    Admitted *pro hac vice*
2   Email: gn.law@verizon.net
    Goodman & Nekvasil, P.A.
3   14020 Roosevelt Blvd., Suite 808
    P.O. Box 17709
4   Clearwater, Florida 33762
    Telephone:  727-524-8486
5   Facsimile:  727-524-8786

6   Richard A. Kutche (CA Bar No. 151950)
    Email: rakutche@pacbell.net
7   Law Offices of Richard A. Kutche
    46 South First Street
8   San Jose, CA 95113
    Telephone:  (408) 295-0474
9   Facsimile: (408) 295-6693
    Local counsel
10

11  Attorneys for Defendants

12              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
13

14  THE O.N. EQUITY SALES COMPANY,        )   Case No. C 07-03303 JF RS
                                          )
15              Plaintiff,                )
                                          )
16      v.                                )   **DEFENDANTS' MEMORANDUM**
                                          )   **OF POINTS AND AUTHORITIES IN**
17  THOMAS NEMES, Individually and as Trustee of )   **OPPOSITION TO PLAINTIFF"S**
    the THOMAS NEMES TRUST, MICHAEL J.    )   **MOTION FOR PRELIMINARY**
18  BENKERT, Individually and on Behalf of SHORE )   **INJUNCTION**
    2 SHORE ENTERPRISES, INC., and JERRY J. )
19  THOMAS and NANCY M. THOMAS, Individually)
    and as Trustees of the JERRY J. THOMAS and )   Date:        November 9, 2007
20  NANCY M. THOMAS 1998 INTER VIVOS      )   Time:        9:00 a.m.
    TRUST,                                )   Courtroom:   3, 5th Floor
21                                        )
                Defendants.               )
22  _____ )

23
            Defendants through the undersigned counsel, have separately filed a Motion to Compel
24
    Arbitration, a supporting Memorandum of Points and Authorities ("Memorandum to Compel
25
    Arbitration"), a Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to
26
    Consolidate Preliminary Injunction Hearing with Trial on the Merits, a Memorandum of Points and
27
    Authorities in Opposition to Plaintiff's Motion for an Order Authorizing the Parties to Engage in
28
    Immediate Discovery on the Issue of Arbitrability, and a Memorandum of Points and Authorities in

                                        -1-

Opposition to Plaintiff's Motion under Civil Rule 56(f) for an Order Precluding Summary Disposition of Defendants' Motion to Compel Arbitration Pending Discovery to Be Taken on the Issue of Arbitrability. As part of the present Memorandum in Opposition to the Motion for Preliminary Injunction ("Injunction Motion") filed by Plaintiff The O.N. Equity Sales Company ("ONESCO"), Defendants rely on and incorporate herein–and do not repeat in detail here–the arguments and exhibits included in their other filings.  Based on these arguments as well as the arguments that follow, this Court should deny ONESCO's Injunction Motion.

      **A.**      **The Merits-Related Allegations in the First 15 Pages of ONESCO's Injunction Motion are Irrelevant to the Arbitrability Issue in this Case.**

Much of the first 15 pages of ONESCO's Memorandum of Points and Authorities in Support of its Injunction Motion ("Injunction Memorandum") is irrelevant to the arbitrability issues in this case.  In these pages, ONESCO presents introductory arguments and alleges facts which ONESCO believes will place it in a favorable light. ONESCO asserts on the merits that its representative Gary L. Lancaster ("Lancaster") was experienced when ONESCO hired him, had a clean regulatory record, and did not disclose to ONESCO his involvement in Lancorp Financial Fund Business Trust ("Lancorp").  Injunction Memorandum at 3-5.  ONESCO alleges on the merits that Defendants were sophisticated and "accredited investors" and knew Lancorp's risks when they invested in it. Id. at 5-7.  ONESCO thinks on the merits that Defendants knew that Lancorp was sold without broker-dealers' assistance and knew that Lancaster was not acting on behalf of ONESCO.  Id. at 7-9. ONESCO asserts on the merits that Defendants signed their Lancorp subscription agreement before Lancaster started working for ONESCO and contends on the merits that any new representations and activity occurring after Lancaster started working for ONESCO were immaterial.  Id. at 9-10. ONESCO then discusses arbitrability principles and maintains that Defendants cannot compel arbitration under Rule 12200 of the National Association of Securities Dealers, Inc. ("NASD") on the ground that they were ONESCO customers.  Id. at 11-15.

Defendants disputes ONESCO's self-serving factual allegations in these opening pages of its Injunction Memorandum.  In any case, these factual allegations are contentions on the merits and

1    not pertinent to arbitrability.  The proof that these allegations pertain solely to the merits is that

2    Defendants are entitled to arbitrate even assuming *arguendo* that all of these allegations are true.

3        Defendants can arbitrate because their allegations satisfy the two requirements for

4    arbitrability under NASD Rule 12200.  First, pursuant to the overwhelming case law cited in

5    Defendants' Memorandum to Compel Arbitration at 4-8, they were ONESCO's and Lancaster's

6    customers.  A customer entitled to demand arbitration under NASD Rule 12200 is anyone who is

7    not a broker or dealer. Multi-Financial Sec. Corp. v. King,  386 F.3d 1364, 1368 (11th Cir. 2004)

8    ("The NASD generally defines the term 'customer' as anyone who is not a broker or a dealer.").

9    ONESCO concedes that Defendants were Lancaster's customers.  They therefore were ONESCO's

10   customers, entitled to enforce NASD Rule 12200.

11       As Defendants have previously advised this Court, five courts have now ruled that Lancorp

12   investors were Lancaster's customers and therefore are entitled to compel ONESCO to arbitrate.

13   O.N. Equity Sales Co. v. Steinke, ____ F. Supp. 2d ____, 2007 WL 2421761 (C.D. Cal. Aug. 27,

14   2007); O.N. Equity Sales Co. v. Pals, ____ F. Supp. 2d ____, 2007 WL 2506033 (N.D. Iowa Sept.

15   6, 2007); O.N. Equity Sales Co. v. Venrick, ___ F. Supp. 2d ___, 2007 WL 2705859 (W.D. Wash.

16   Sept. 17, 2007); O.N. Equity Sales Co. v. Robinson, 2007 WL 2840477 (E.D. Va. Sept. 27, 2007);

17   O.N. Equity Sales Co. v. Gibson, ____ F. Supp. 2d ____, 2007 WL 2705859 (S.D.W. Va. Oct. 1,

18   2007).   As Defendants have also previously advised this Court, two additional courts have

19   determined that the arbitrability issue can be resolved without discovery–O.N. Equity Sales Co. v.

20   Scott, Case No. 4:07cv269-RH/WCS (N.D. Fla. Sept. 9, 2007); O.N. Equity Sales Co. v.

21   Rahner,2007 WL 2908297 (D. Colo. Oct. 3, 2007)–and a third court made this same ruling today.

22   (See attached Exhibit "1.")

23       ONESCO's assertion that Defendants did not have a contractual or customer relationship

24   with ONESCO, Injunction Memorandum at 9, is both irrelevant and factually incorrect because,

25   under NASD rules, Defendants were customers of ONESCO through Lancaster.

26

27       When an investor deals with a member's agent or representative, the investor deals
         with the member.  "Federal case law plainly states that when the investor deals with
         an agent or representative [of a member], the investor deals with the member, and on

28       that basis the investor is entitled to have resolved in arbitration any dispute that arises
         out of that relationship." "[B]y dealing with [the firm's] registered representative,

1    [the investor] became a customer of that firm for purposes on NASD arbitration
     obligations.". . .  The parties agree that [the investor] dealt with [the broker], so [the
2    investor], in turn, dealt with [the firm].

3    Id. at 1370 (citations omitted).

4        Second, Defendants alleged with incontrovertible supporting documentation that events

5    relating to the sales of Lancorp investments to them occurred while Lancaster worked for ONESCO.

6    As stated in more detail in Defendants' Memorandum to Compel Arbitration at 2-3, after Lancaster

7    replaced Lancorp's insurance component with a validated bank or broker/dealer obligation,

8    Lancaster–while working for ONESCO–required Defendants to either (1) acknowledge this change

9    in writing and reconfirm their investments or (2) take back their invested funds.  Completed sales

10   did not occur until that time, because Defendants made a new investment decision.  Any earlier

11   representations carried forward as part of the background for this decision.  The initial Lancorp

12   subscription agreements were merely conditional, because Lancorp could cancel the agreements at

13   any time.  Memorandum to Compel Arbitration at 2, 8.

14       Defendants also alleged that ONESCO failed to supervise Lancaster during this period.  See

15   id. at 3-4.  The governing case law cited in Defendants' Memorandum to Compel Arbitration at 4-8

16   and 13-15, which ONESCO makes no attempt to challenge, provides that allegations of failures to

17   supervise satisfy the "in connection with the business activities of" component of NASD Rule

18   12200–the second requirement for arbitrability under this rule.

19       Accordingly, this Court should not be concerned with ONESCO's allegations of disputed

20   facts which, if they have any validity, relate only to the merits, not to arbitrability under NASD Rule

21   12200.

22       [W]e are unconcerned with MONY's cornucopia of disputed facts. Instead, we focus
         on those facts required to satisfy . . . [the] two-part test [for arbitrability under Rule
23       10301, now Rule 12200].  So while there many be dozens of disputed facts, the facts
         that matter in this case are undisputed: the Bornsteins were customers of Keller, who
24       was an associated person of MONY. This undisputed fact pattern is somewhat
         common, and the overwhelming response is that the case is subject to arbitration.
25       More importantly, this fact pattern falls wholly within the clear language of Rules
         10101 and 10301, which focus first on whether the investor is a customer, and second
26       on whether the dispute arose in connection with the business of the member.

27

28

MONY Sec. Corp. v. Bornstein, 390 F.3d 1340, 1346 (11th Cir. 2004) (citations omitted). Because both arbitrability components are satisfied, this Court must compel arbitration and deny injunctive relief.

By basing its arbitrability arguments on the merits of its liability defenses, ONESCO is improperly asking this Court to decide that ONESCO is not liable and therefore should not be required to arbitrate. This argument puts the cart before the horse. When resolving arbitrability, this Court cannot decide the merits, even if this Court thinks that one side's or the other side's arguments are frivolous.

> In deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims. Whether 'arguable' or not, indeed if it appears to the court to be frivolous, the . . . claim . . . is to be decided, not by the court asked to order arbitration but . . . by the arbitrator. ". . .The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious."

AT&T Tech., Inc. v. Communication Workers of Am., 475 U.S. 643, 649-50 (1986) (citation omitted). This Court must compel arbitration and deny injunctive relief without regard to the merits-related allegations in the first 15 pages of ONESCO's Injunction Memorandum.

**B.    NASD Rule 12200 is the Successor to Rule 10301 and is Interpreted in the Same Way.**

Although the cases which Defendants have cited involved NASD Rule 10301 and the present case involves the successor to NASD Rule 10301–Rule 12200–the same principles apply. When the NASD proposed Rule 12200, the Securities Industry Association requested that the Rule be amended to specify that only customers of the NASD member firm could require the firm to arbitrate. The NASD rejected this request and "responded that adding the words 'of the member' after the word 'customer' would inappropriately narrow the scope of claims that are required to be arbitrated under the Customer Code." Order Approving Proposed Rule Change to Amend NASD Arbitration Rules for Customer Disputes, 72 Fed. Reg. 4,574, 4,579 (2007).

> NASD . . . clarif[ied] . . . that the term "business activities of a member" in Proposed Rule 12200 would include "selling away" claims [allegations that an associated person engaged in securities activities outside his or her firm]. Under the current Code, NASD accepts cases brought by customers against associated persons in selling away cases, and cases by customers against the associated person's member firm if there is any allegation that the member was or should have been involved in the events, such as an alleged failure to supervise the associated person. . . . Rule

12200 is not intended to change the scope of arbitrable disputes. NASD reiterated . . . that it would continue to accept these types of cases under the Customer Code.

Id. at 4579-80.  Rule 12200 thus should be interpreted in the same way as Rule 10301.

**C.    The Supreme Court has Decided that Timing Issues under NASD Arbitration Rules are not Questions of Arbitrability and should be Determined by Arbitrators, not Courts.**

ONESCO's actual argument in support of its Injunction Motion does not begin until page 15 and is less than four pages long.  ONESCO argues that (1) Defendants' claims arose when they signed their Lancorp subscription agreements before Lancaster became an ONESCO representative, and (2) they cannot under NASD Rule 12200 demand arbitration of claims arising before Lancaster became an ONESCO representative. As Defendants explained in more detail in their Memorandum to Compel Arbitration at 15-17, however, the Supreme Court has found that courts should not decide timeliness issues under the six-year time bar of NASD Rule 10304.  "[T]he NASD time limit rule is a matter presumptively for the arbitrator, not for the judge. The time limit rule closely resembles the gateway questions that this Court has found not to be 'questions of arbitrability.'"  Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 85 (2002).  Howsam, id., cited the Court's prior decision in Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983), which said on this point that the "Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."

The same conclusion applies here.  Defendants have alleged that ONESCO is liable to them as a result of documented events occurring while Lancaster worked for ONESCO.  More is not required for this Court to compel arbitration.  Howsam ruled that timing issues about the nature and dates of the underlying events are not "gateway" arbitrability issues.  NASD arbitrators, not the courts, decide these issues.  Howsam requires this Court to reach the same conclusion.

**D.    Defendants may Arbitrate their Claims Based on Events Occurring While Lancaster Worked for ONESCO.**

To contend that Defendants' claims are based on representations made before Lancaster worked for ONESCO and therefore are not arbitrable, ONESCO relies in its Injunction

-6-

Memorandum at 18 on federal cases interpreting the repose period for claims under the Securities and Exchange Commission's Rule 10b-5, 17 C.F.R. § 240.10b-5. In <u>Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson</u>, 501 U.S. 350, 364 & n.9 (1991), the Court adopted for Rule 10b-5 claims, the limitations period from 15 U.S.C. § 78i(e), which bars claims more than three years after a violation. <u>Lampf</u> could have chosen–but did not choose–the repose period from 15 U.S.C. § 78r(c), which runs three years from the "cause of action," rather than from the "violation." Some cases have found that the distinction between "cause of action" and "violation" is significant and therefore have calculated the repose period from the date of the misrepresentation, even if the actual securities sale occurs later. <u>See</u>, <u>e.g.</u>, <u>In re Prudential Ins. Co. of Am. Sales Practice Litig.</u>, 975 F. Supp. 584, 603 (D.N.J. 1997).

Other cases, however, have rejected this view and found that the repose period runs from the sale date. Starting a time bar before investors have even purchased the investment is counterintuitive.

> This Court believes the better view to be that the statute of limitations for a § 10(b) and Rule 10b-5 claim runs from the date of the purchase or sale of the security. The violation is the use of a fraudulent device or the making of an untrue statement of material fact or the omission to state a material fact in connection with the purchase of sale . . . . Thus, a violation is not complete until a sale or purchase occurs.

<u>Randolph County Fed. Sav. & Loan Assoc. v. Sutliffe</u>, 775 F. Supp. 1113, 1122 (S.D. Ohio 1991). ONESCO's contentions thus rest on a disputed technical contention of law about the applicable statute of repose for Rule 10b-5 claims.

Regardless of this technical point about repose periods, Defendants' arbitration claims are based on their causes of action, which are necessarily based on the Lancorp sales to them. They have no claims and no standing, under Rule 10b-5 or otherwise, until the sales occurred, and they lost their money. "[O]ne asserting a claim for damages based on the violation of Rule 10b-5 must be either a purchaser or seller of securities." <u>Blue Chip Stamps v. Manor Drug Stores</u>, 421 U.S. 723, 749 (1975) (Person who is induced as a result of misrepresentations in a prospectus not to purchase a security lacks standing to bring a Rule 10b-5 claim.).

As stated in more detail in Defendants' Memorandum to Compel Arbitration at 8-13, the Lancorp investors' initial subscription agreements were merely conditional, because Lancorp could

1    cancel, modify, or withdraw the offer at any time.  Consequently, execution of the initial Lancorp

2    subscription agreements did not constitute sales, and the Lancorp shares were not sold until, at the

3    earliest, April or May 2004 after Lancaster became an ONESCO employee, when the investors

4    reconfirmed their investments, opted not to receive back their funds, and Lancorp became

5    operational.

6        "Words of promise do not constitute a promise if they make performance . . . optional
         with the purported promisor." Id. § 76, cmt. d; see also id. § 77, cmt. a. Thus, even
7        if the subscribers are viewed as promisors who irrevocably committed themselves to
         purchase securities by executing the Subscription Agreement, a contract of purchase
8        was not formed because Stratosphere made no return promise . . . .

9    Cohen v. Stratosphere Corp., 115 F.3d 695, 701 (9th Cir. 1997). "Here, the class members had the

10   option of rejecting the renewals. Therefore, each renewal, whether accompanied by new

11   representations or not, was based upon a new decision, and each constituted a new investment" when

12   the investment decision was made. Getty v. Harmon, 53 F. Supp. 2d 1053, 1056 (W.D. Wash. 1999).

13   Under Cohen and Getty, the Lancorp investments were sold when Lancaster was an ONESCO

14   employee.  Defendants are entitled to arbitrate Rule 10b-5 claims based on these sales.

15       ONESCO also fails to recognize that Defendants have other claims besides their Rule 10b-5

16   claims. Their claims under the Securities Act of 1933 require an actual purchases, and, when Lampf

17   was decided, the statute of repose for their securities fraud claims under the 1933 Act was "three

18   years after the sale." 15 U.S.C. 77l, m.  If ONESCO is correct that arbitrability depends on the timing

19   of the operative event of the claim, then Defendants' 1933 Act claims are arbitrable, because these

20   claims require actual sales which did not occur until after Lancaster became an ONESCO employee.

21   Similarly, Defendants' claims under the California and Oregon securities laws require actual sales

22   to purchasers. Cal. Corp. Code § 25501; Ore. Rev. Stat. § 59.115; Ainslie v. Spolyar, 926 P.2d 822,

23   824-827 (Ore. Ct. App. 1996).  Defendants' common law claims require actual damages and

24   therefore require that the sale occurred.  See, e.g.,Trujillo v. North County Transit Dist., 63 Cal. App.

25   4th 280, 286-287, 73 Cal. Rptr. 2d 596, 600 (1998) ("[T]the usual elements of a tort . . . [are] legal

26   duty of care . . ., breach of duty . . ., legal causation, and damages . . . .").

27       ONESCO also cites a number of cases addressing arbitrability under NASD rules regarding

28   claims that arose before the investors had an association with the brokerage firm.  Injunction

Memorandum at 15-17.  As Defendants pointed out in their Memorandum to Compel Arbitration at 11-12, however, these cases are largely irrelevant, because, unlike the present case, none of them concerns new investment decisions made after the investment changed, and the investors were told to accept the change or take back their funds, while the investors were customers of the firm.  In addition, as explained in Defendants' Memorandum to Compel Arbitration at 15-17, these cases have questionable application to this case in light of the decision in Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002), that arbitrators, not courts, decide timing disputes under NASD arbitration rules.

In Coenen v. R.W. Pressprich & Co., 453 F.2d 1209, 1212 (2d Cir. 1972), the court made short shrift of an argument that mandatory stock exchange arbitration rules do not apply to past events.

> [W]e think the [stock exchange arbitration] clause is clear on its face. It reads "any controversy" between members. . . . The purpose . . .  is to keep "any controversy" between members . . . out of the courts. This purpose would be frustrated and in effect nullified if we were to construe such clause as applicable only to "future" disputes.

In Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967), the Court ruled that misrepresentations inducing the formation of a contract with an arbitration provision are arbitrable, unless the misrepresentations relate specifically to the arbitration provision.  As the Second Circuit has pointed out in a similar case, if ONESCO were correct that the Defendants cannot arbitrate their claims based on their completed Lancorp sales contracts because the representations that induced the contracts occurred earlier, then the Court would have decided Prima Paint differently.

> [A]s fraudulent inducement claims necessarily involve actions that predate the signing of a contract, taking SCI's argument to its logical extreme would mean that such claims are generally non-arbitrable. Yet, the Supreme Court in [Prima Paint], held that claims of fraudulent inducement of a contract generally, as opposed to fraudulent inducement of the arbitration clause specifically, are arbitrable. SCI's claims in the Dominican Lawsuit relate to the inducement of the 1994 Agreement as a whole. Thus, resolving any doubt with respect to the scope of the arbitration clause in favor of arbitration, we find that SCI's claims in the Dominican Lawsuit are arbitrable.

Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 99 (2d Cir. 1999).

This Court should reach the same conclusion.  This Court must reject ONESCO's position that Defendants cannot arbitrate their claims on the ground that these claims arose before Lancaster started working for ONESCO.  All of their investments were sold to them after Lancaster started working for ONESCO. They are entitled to arbitrate claims based on these sales.

WHEREFORE, Defendants respectfully request this Court to deny ONESCO's Motion for Preliminary Injunction.

Respectfully submitted,

DATED: October 17, 2007

GOODMAN & NEKVASIL, P.A.
By: /s/ Joel A. Goodman
Joel A. Goodman
Attorney *pro hac vice*

LAW OFFICES OF RICHARD A. KUTCHE
Richard A. Kutche
Local counsel

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List below.

/s/ Joel A. Goodman
Joel A. Goodman
Goodman & Nekvasil, P.A.
14020 Roosevelt Blvd., Suite 808
P.O. Box 17709
Clearwater, Florida 33762
Telephone:  727-524-8486
Facsimile:  727-524-8786

**Electronic Mail Notice List**

Daniel T. Balmat
dbalmat@ssd.com, rarroyo@ssd.com

Marion Homer Little, Jr,
little@litohio.com

Joseph Anthony Meckes
jmeckes@ssd.com, sfr_docket@ssd.com

Michael R. Reed
reed@litohio.com