Not Reported in F.Supp.2d                                                                                          Page 1
Not Reported in F.Supp.2d, 2004 WL 2284503 (N.D.Ga.)
(Cite as: Not Reported in F.Supp.2d)

H
Hornor, Townsend & Kent, Inc. v. Hamilton
N.D.Ga.,2004.
Only the Westlaw citation is currently available.
United States District Court,N.D. Georgia, Atlanta Division.
HORNOR, TOWNSEND & KENT, INC., Plaintiff,
v.
Joseph HAMILTON and Millicent Hamilton, Defendants.
No. Civ.A.1:01 CV 2979 J.

Sept. 30, 2004.

Christian R. Bartholomew, Randi Perry Spallina, Morgan Lewis & Bockius, Miami, FL, Jonathan Brennan Butler, Paul W. Stivers, Rogers & Hardin, Atlanta, GA, for Plaintiff.
J. Pat Sadler, Sadler & Hovdesven, Atlanta, GA, Joel A. Goodman, Goodman & Nekvasil, Clearwater, FL, for Defendants.

ORDER
CARNES, J.
*1 This case is presently before the Court on Defendants' Motion for Reconsideration and Correction [63]; Plaintiff's Motion for Leave to File Sur-Reply Memorandum in Opposition to Defendants' Motion for Reconsideration [69]; and Plaintiff's Motion to Strike Defendants' Notice of Filing Supplemental Authority in Support of Their Motion for Reconsideration [73]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that Defendants' Motion for Reconsideration and Correction [63] should be DENIED in part and GRANTED in part; Plaintiff's Motion for Leave to File Sur-Reply Memorandum in Opposition to Defendants' Motion for Reconsideration [69] should be DENIED; and Plaintiff's Motion to Strike Defendants' Notice of Filing Supplemental Authority in Support of Their Motion for Reconsideration [73] should be DENIED.

BACKGROUND
This case now makes its third appearance before the Court. The Court will briefly summarize the history of this controversy to date. The dispute underlying this litigation arose over the purchase of investments in payphones by Joseph and Millicent Hamilton. The Hamiltons lost $364,000 when they purchased allegedly fraudulent, unregistered securities from investment broker Tommy Fountain. They allege that Tommy Fountain was acting as a registered agent for Hornor, Townsend & Kent, Inc. ("HTK"), a brokerage firm, when he sold them the investments, and the Hamiltons therefore seek to hold HTK responsible for their losses. On April 27, 2001, the Hamiltons filed a Statement of Claim against HTK, seeking arbitration before the National Association of Securities Dealers ("NASD"), pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2.

After the Hamiltons filed their Statement of Claim, HTK filed an action for Declaratory and Injunctive Relief, seeking a Declaratory Judgment that no agreement to arbitrate exists between HTK and the Hamiltons that would require HTK to participate in the arbitration and seeking an Order from this Court staying the arbitration. HTK contended that, contrary to the Hamiltons' allegations in their Statement of Claim, the Hamiltons did not purchase the allegedly fraudulent investments from Tommy Fountain, but instead purchased them from his son, Scott Fountain, who was never associated with HTK in any way. Thus, HTK contended that, as the Hamiltons were never customers of HTK or of any of its associated persons, HTK could not be liable for any alleged losses they may have sustained on the investments in question.

In an Order [32] dated August 6, 2002, this Court concluded that a valid agreement to arbitrate existed between the parties and that HTK was required to arbitrate. (Order [32] at 8.) The Court granted the Hamiltons' Motion for Order Directing Arbitration

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT

C

Case 5:07-cv-03303-JF   Document 45-4   Filed 10/19/2007   Page 2 of 10

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2004 WL 2284503 (N.D.Ga.)
(Cite as: Not Reported in F.Supp.2d)

[27] and dismissed the case. (*Id.*) Specifically, the Court held that HTK was bound to arbitrate by Rule 10301(a) of the NASD Code of Arbitration Procedure, which provides, in relevant part:

*2 Any dispute, claim, or controversy ... between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code, as provided by any duly executed and enforceable written agreement or upon the demand of the customer.

NASD Code § 10301(a). The Court reached its conclusion by applying the "two-component test" for determining whether the party challenging arbitration is entitled to litigate the matter fully before the court, as set out in *Wheat, First Secs., Inc. v. Green,* 993 F.2d 814, 817 (11th Cir.1993). (Order [32] at 27-34.) Under this two-prong test, a party challenging arbitration must unequivocally deny that an agreement to arbitrate was reached and must also offer "some evidence" to substantiate that denial. *Wheat, First Secs.,* 993 F.2d at 817; *Chastain v. Robinson-Humphrey Co.,* 957 F.2d 851, 854 (11th Cir.1992) (citing *T & R Enters., Inc. v. Cont'l Grain Co.,* 613 F.2d 1272, 1278 (5th Cir.1980)). Otherwise, the district court has no choice but to compel arbitration. *See Chastain,* 957 F.2d at 855 (to place the making of the arbitration agreement in issue, a party must substantiate his denial of such an agreement "with enough evidence to make the denial colorable").

The Court found that HTK met the first prong of the test by unequivocally denying that it had an agreement to arbitrate with the Hamiltons. (Order [32] at 27.) The Court concluded, however, that the Hamiltons alleged sufficient facts and produced sufficient evidence to establish that they were customers of Tommy Fountain, an associated person of HTK, and that HTK failed to produce "some evidence" to substantiate its denial that the Hamiltons were customers of Tommy Fountain. (*Id.* at 33-34.) The Court thus concluded that the Hamiltons' claims fell within the scope of NASD Rule 10301 and that HTK was therefore required to submit to mandatory arbitration of these claims. (*Id.* at 34.)

On October 8, 2002, HTK filed a motion requesting the Court to vacate its Order of August 6, 2002, which Order directed HTK to arbitrate with the Hamiltons. (Pl.'s Mot. For Relief from J. Pursuant to Fed. R. Civ. P. 60(b)(2) and/or 60(b)(3) and Supp. Mem. of Law [35] at 1.) HTK contended that the Hamiltons had produced documents in the arbitration ordered by this Court that established that either they or their counsel misled the Court. (*Id.*) HTK asserted that these documents showed that the Hamiltons actually made their first investment in ETS Payphones on August 2, 1999, before Tommy Fountain was ever even associated with HTK, not in October 1999, as they had represented to the Court. (*Id.* at 2-3.) Specifically, HTK pointed to a Purchase Agreement, dated August 2, 1999, under which the Hamiltons purchased thirty-four payphones for $238,000, to be leased and shipped to ETS, subject only to a 15-day right of refusal. (*Id.* at 4 and Ex. F.) The Hamiltons did not exercise this right of recision and were then sent a confirming letter dated September 10, 1999, welcoming them to the "ETS Payphone Equipment Lease Program." (*Id.* at 4 and Ex. G.) The letter stated that "[t]he ' Commencement Date' for your 'Payphone Equipment Lease' is hereby established and your first lease payment will be made and mailed on October 1, 1999." (*Id.*)

*3 In an Order [62] dated September 29, 2003, the Court indicated its belief HTK's Motion for Relief From Judgment was meritorious because HTK had satisfied all requirements for relief under Federal Rule of Civil Procedure 60(b)(2).[FN1] Specifically, the Court determined that HTK's discovery of the August 2, 1999 Purchase Agreement raised the possibility that Tommy Fountain was not employed by HTK at the time that the Hamiltons first invested in ETS. (Order [62] at 11.) Discovery in the arbitration proceeding revealed to HTK that although the Hamiltons had sworn that they first purchased their securities on October 1, 1999, they actually made this purchase on August 2, 1999. (*Id.*) Tommy Fountain was not employed by HTK on August 2, 1999, but he was so employed on October 1, 1999. (*Id.*) As the Court noted, "if the sale occurred at a time when Tommy Fountain was not employed by HTK, the latter cannot be hauled into an arbitration proceeding convened to adjudicate

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-03303-JF   Document 45-4   Filed 10/19/2007   Page 3 of 10

Not Reported in F.Supp.2d                                                                                                Page 3
Not Reported in F.Supp.2d, 2004 WL 2284503 (N.D.Ga.)
(Cite as: Not Reported in F.Supp.2d)

the Hamiltons' complaint about the propriety of the sale." (*Id.*)

> FN1. The Court could not actually grant HTK's motion because it lacked jurisdiction to do so. At the time the motion was filed, the original Order directing arbitration was on appeal to the Eleventh Circuit. Once an appeal has been filed, a district court has the jurisdiction to deny a Rule 60(b) motion, but it lacks jurisdiction to grant such a motion. *Mahone v. Ray,* 326 F.3d 1176, 1180 (11th Cir.2003). Instead, when the district court believes that such a motion should be granted, it should "indicate its belief that the arguments raised are meritorious." *Id.* Then, the movant may petition the appellate court to remand the matter to confer jurisdiction on the district court to grant the motion. *Id.* In an Order [65] dated October 31, 2003, the Eleventh Circuit granted HTK's motion to remand the case to this Court.

DISCUSSION

I. *Defendants' Motion for Reconsideration*

A. Motion for Reconsideration Standard

The parties disagree on the proper standard to be applied to defendants' motion for reconsideration. Plaintiff argues that the Court should apply the traditional standard for motions for reconsideration applicable under Local Rule 7.2E, which provides that "[m]otions for reconsideration should not be filed as a matter of routine practice." LR 7.2E, NDGa. Under this standard, the decision to grant a motion for reconsideration is committed to the sound discretion of the district court and will not be overturned on appeal absent an abuse of discretion. *Florida Ass'n of Rehab. Facilities, Inc. v. State of Florida Dep't of Health and Rehabilitative Servs.,* 225 F.3d 1208, 1216 (11th Cir.2000) (citing *Region 8 Forest Serv. Timber Purchasers Council v. Alcock,* 993 F.2d 800, 806 (11th Cir.1993)). Normally, motions for reconsideration should not be used to raise legal arguments which could and should have been made before the judgment was issued. *Lockard v. Equifax, Inc.,* 163 F.3d 1259, 1267 (11th Cir.1998) (citing *O'Neal v. Kennamer,* 958 F.2d 1044, 1047 (11th Cir.1992)). "Denial of a motion for reconsideration is 'especially soundly exercised when the party has failed to articulate any reason for the failure to raise the issue at an earlier stage in the litigation.' " *Id.* (citation omitted). Traditionally, motions for reconsideration are to be filed only when "absolutely necessary," and reconsideration is only absolutely necessary where there is: "(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact." *Bryan v. Murphy,* 246 F.Supp.2d 1256, 1258-59 (N.D.Ga.2003) (Martin, J.) (citing *Pres. Endangered Areas of Cobb's History, Inc. v. United States Army Corps of Eng'rs,* 916 F.Supp. 1557 (N.D.Ga.1995) (O'Kelley, J.) and *Jersawitz v. People TV,* 71 F.Supp.2d 1330 (N.D.Ga.1999) (Moye, J.)) (additional citations omitted).

*4 Defendants, on the other hand, argue that the Court's Order granting plaintiff relief under Rule 60(b)(2) is an interlocutory order, and therefore standards applicable to motions to alter or amend a judgment do not apply to their instant motion for reconsideration. (Defs.' Reply Mem. in Supp. of Their Mot. for Recons. and Correction (hereinafter, "Defs.' Reply") [68] at 1.) According to defendants, controlling precedent in this circuit provides that standards for reconsideration of a final order or judgment do not apply to reconsideration of interlocutory orders, particularly when, as in this case, the order in question effectively grants a new trial and invalidates the finality of a prior judgment. (*Id.* at 4.)

Defendants point to *Toole v. Baxter Healthcare Corp.,* 235 F.3d 1307 (11th Cir.2000), in which the court stated:
There is no sound reason why the court may not reconsider its ruling [granting] a new trial.... Since an order granting a new trial is an interlocutory order, the district court has plenary power over it and this power to reconsider, revise, alter or amend

the interlocutory order is not subject to the limitations of Rule 59.

*Id.* at 1315 (quoting *Gallimore v. Missouri Pac. R. Co.*, 635 F.2d 1165, 1171 (5th Cir. Unit A Feb.1981)); *see also Hardin v. Hayes*, 52 F.3d 934, 938 (11th Cir.1995). At any time before final judgment, a district court may modify, rescind, or vacate an interlocutory order. *Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 858, 862 (5th Cir.1970) (citing *John Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82, 88, 42 S.Ct. 196, 66 L.Ed. 475 (1922)).[FN2]

> FN2. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

Fortunately, it is not necessary for the Court to decide precisely between the two standards proposed by the parties. First, defendants argue that the Court's prior Order contains clear errors of law. If the Court accepts defendants' arguments in this regard, defendants will be entitled to reconsideration even under the standard proposed by plaintiff. (*See* Defs.' Reply [68] at 2.) Second, under either standard, the decision to grant a motion for reconsideration is committed to the sound discretion of this Court. *Florida Ass'n of Rehab. Facilities*, 225 F.3d at 1216; *Bon Air Hotel, Inc.*, 426 F.2d at 862. The only difference is that under plaintiff's standard, the Court's discretion is confined somewhat by the necessity of finding that one of three circumstances (newly discovered evidence, an intervening development or change in controlling law, or a need to correct a clear error of law or fact) exists. Since defendants argue that one of the three circumstances, namely, clear errors of law, is present here, there is in actuality little practical difference between the parties' competing standards. Finally, as the Court concludes that defendants' arguments are without merit under any standard, this debate is merely academic.

B. Rule 60(b)(2)

Under Rule 60(b)(2), a court may relieve a party from a final judgment, order, or proceeding upon production of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)."[FN3] Fed. R. Civ. P. 60(b)(2). In order for a court to grant such a motion, a party must satisfy a five-part test:

> FN3. Federal Rule of Civil Procedure 59(b) requires that a motion for a new trial be filed no later than 10 days after the entry of judgment. Fed. R. Civ. P. 59(b).

*5 (1) the evidence must be newly discovered since the trial; (2) due diligence on the part of the movant to discover the new evidence must be shown; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be such that a new trial would probably produce a new result.
*Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1316 (11th Cir.2000) (quoting *Scutieri v. Paige*, 808 F.2d 785, 793 (11th Cir.1987)). "A motion for a new trial under Rule 60(b)(2) is an extraordinary motion and the requirements of the rule must be strictly met." *Id.* (citation omitted). The movant bears the burden of demonstrating that the requirements have been satisfied. *Stilwell v. Travelers Ins. Co.*, 327 F.2d 931, 933 (5th Cir.1964). If any one of the five elements is not satisfied, the motion fails. *Harduvel v. General Dynamics Corp.*, 801 F.Supp. 597, 604 (M.D.Fla.1992) (citing *Raymond v. Raymond Corp.*, 938 F.2d 1518, 1527 (1st Cir.1991)).

In their Motion for Reconsideration and Correction [63], defendants argue that plaintiff failed to meet two of the requirements in the five-part test for relief under Rule 60(b)(2), set out above. First, defendants argue that plaintiff failed to exercise due diligence to discover the new evidence. Second, defendants assert that the newly discovered evidence would not probably produce a new result. The Court will consider each argument in turn.

C. Did plaintiff fail to exercise due diligence?

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2284503 (N.D.Ga.)
(Cite as: Not Reported in F.Supp.2d)

Defendants again argue that plaintiff failed to exercise due diligence in regard to the discovery of the August 2, 1999 Purchase Agreement because plaintiff could have obtained the information from the filings in connection with the ETS bankruptcy proceeding. (Defs.' Mot. for Recons. and Correction and Supp. Mem. of Law (hereinafter, "Defs.' Mot. for Recons.") [63] at 1-2.) Defendants previously made a version of the argument, and the Court rejected it. (*See* Order [62] at 13.) The Court noted that the document which defendants pointed to as a public record relating to their ETS purchase that could have been obtained through the bankruptcy court was not the Purchase Agreement that plaintiff argued constituted the article of newly discovered evidence but was instead a proof of claim form that was apparently sent to defendants by the bankruptcy court. (*Id.*) Moreover, the form listed "10/01/1999" as the "Date of your agreement with ETS," and there was no reference to the August 2, 1999, purchase date for the first ETS investment by the defendants. (*Id.*) As the Court stated, "[t]his new date, not the October date listed by the bankruptcy court's claim form, is what makes the purchase agreement new evidence." (*Id.*)

Defendants now argue that plaintiff should have obtained the Purchase Agreement from ETS's bankruptcy counsel. (Defs.' Mot. for Recons. [63] at 2.) According to defendants, "counsel for ETS' post-reorganization proceedings has stated that documents such as the Defendants' ETS purchase agreements have been provided in the past upon written request, and he stated orally that such requests were typically granted." (*Id.*) In support of this assertion, defendants provide a copy of a letter from Jonathan W. Jordan, an attorney at King & Spalding. In the letter, dated October 14, 2003, Mr. Jordan stated that he was writing in response to an inquiry about ETS's "willingness to comply with limited informal requests for production of documents relating to payphone investors, such as purchase contracts and lease agreements." (*Id.* at Ex. A.) Mr. Jordan further stated as follows:
*6 Such requests are handled on a case-by-case basis, and ETS's response is based on a variety of factors, including the burdensomeness of the response, the specific documents being requested, and so on. However, the company does not have a blanket policy against producing limited numbers of documents to litigants in response to informal requests, and has produced payphone investor documents such as purchase agreements to plaintiffs and defendants in the past.

(*Id.*) Defendants thus conclude that plaintiff "had only to ask for the documents, and it would have received them." (*Id.* at 2.)

Defendants point out that "[e]vidence that is contained in the public records at the time of trial cannot be considered newly discovered evidence." *Scutieri v. Paige*, 808 F.2d 785, 794 (11th Cir.1987). Defendants also cite *Harduvel v. General Dynamics Corp.*, 801 F.Supp. 597, 605 (M.D.Fl.1992), in which the court denied the plaintiff's 60(b)(2) motion because she ultimately obtained all of her "new" evidence from the United States Air Force, "a source which she had exploited successfully prior to trial." The court stated that "[e]vidence ultimately procured from government agencies well-known to the movant will not form the basis of a successful 60(b)(2) motion." *Id.* (citation omitted). *See also Malandris v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 703 F.2d 1152, 1180-81 (10th Cir.1983) (en banc) (stating that a 60(b)(2) movant had not exercised due diligence because the new evidence could have been discovered earlier through "the filing of formal Freedom of Information Act requests promptly or by contacting parties known to defendant prior to trial who might have pertinent information"); *Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place, Inc.*, 62 F.3d 767, 772 (5th Cir.1995) (denying 60(b)(2) motion where the movant stated that it obtained the new evidence from the records of the local government but did not contend that it did not have access to the records either before or during trial, leading the court to conclude that the movant failed to demonstrate that it could not have obtained the new evidence earlier, even if it had exercised due diligence).

Defendants contend that plaintiff should have obtained the August 2, 1999 Purchase Agreement from ETS's bankruptcy counsel. Yet, there is no indication that this Agreement was part of the public bankruptcy record. Clearly, the ETS

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-03303-JF   Document 45-4   Filed 10/19/2007   Page 6 of 10

Not Reported in F.Supp.2d                                                                 Page 6
Not Reported in F.Supp.2d, 2004 WL 2284503 (N.D.Ga.)
(Cite as: Not Reported in F.Supp.2d)

bankruptcy counsel is a private individual, not a government agency, and there is no evidence that this individual was well-known to plaintiff or that he had been a source of information in the past. Obviously, obtaining information from him would not be as simple as filing a Freedom of Information Act request, as in *Malandris*. Furthermore, Mr. Jordan's letter states only that requests for information are handled on a case-by-case basis, that ETS does not have a blanket policy against producing limited numbers of documents to litigants on an informal basis, and that ETS has produced payphone purchase agreements to plaintiffs and defendants in the past. Thus, while defendants assert that if plaintiff had asked for defendants' purchase documents, that ETS would have produced them, it does not appear from Mr. Jordan's letter that this would have been certain at all. At best, it only appears that ETS might have been willing to share such documents.

*7 Defendants assert that parties "have an obligation to obtain documents from third parties, and they cannot simply limit their investigation to discovery from the parties in the case." (Defs.' Reply [68] at 10.) Even if that is so, the Court does not believe that obligation would extend to requesting the complete ETS bankruptcy file from its bankruptcy counsel, at least under the facts of this case. The salient point here is that, prior to the issuance of the Court's August 2002 Order [32] compelling arbitration, the date of defendants' ETS transaction had not been called into question. Rather, the issue had been whether defendants purchased their ETS securities from Tommy Fountain or not. Defendants averred that they made the investment after Fountain became affiliated with HTK. Nothing in the public record, either in this case or the ETS bankruptcy, suggested otherwise. Even if ETS bankruptcy counsel had information suggesting the actual transaction date was August 2, and even if there were some general duty on the part of plaintiff to track down all pertinent information from all third parties who might know anything, under the facts of this case, plaintiff would not have had to ask ETS bankruptcy counsel for all the ETS bankruptcy information in order to have covered its due diligence requirement. Simply put, the issue of the transaction date was not in issue until defendants put it in issue by releasing the Purchase Agreement during the arbitration. To find that plaintiff did not exercise due diligence by not going out of its way to find evidence on facts that had not previously been in dispute would be too extreme a requirement.

Defendants next argue that plaintiff could have obtained the Purchase Agreement from Tommy Fountain or his son Scott Fountain. (Defs.' Mot. for Recons. [63] at 3.) According to defendants, the Fountains were willingly communicating with HTK, and it could have asked them about the dates of defendants' ETS investments and could have asked them to produce copies of the relevant sale documents. (*Id.*) Defendants argue that since the Fountains were communicating voluntarily with plaintiff, it does not matter that this Court had entered an Order [32] stating that plaintiff was not entitled to discovery and was not allowed to depose the Fountains. (Defs.' Reply [68] at 12.)

In this vein, defendants rely on *United States v. Potamkin Cadillac Corp.,* 697 F.2d 491 (2d Cir.1983). In that case, the Rule 60(b)(2) movant offered as newly discovered evidence the affidavit of one of its former employees. *Id.* at 492. The court held that the movant had failed to show due diligence because the former employee's affidavit was silent as to why his statement had not been available earlier, and the movant's attorney's explanation that the former employee could not be located was insufficient. *Id.* at 493. The movant gave no explanation as to why the former employee's evidence was not memorialized before he left the movant's employ. *Id.* Movant's counsel's only explanation as to why he was not able to reach the former employee for a year and a half was that he had the wrong telephone number. *Id.* Movant's counsel stated that he could not locate the former employee " 'by any other means," 'but he did not specify what other means, if any, were attempted. *Id.* Also key to the court's decision, however, was an admission by the movant's attorney that he had known about the supposed "new" evidence all along. *Id.* The court stated that, given the feebleness of counsel's proffer of "due diligence" and his acknowledgment that he had known of the "new" evidence all along, it was well within the district

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

court's discretion to reject his explanations and to consider the "evidence" not newly discovered. *Id.* See also *Hall v. Daka Int'l, Inc.,* 172 F.R.D. 19, 21-22 (N.D.N.Y.1997) (holding that where the 60(b)(2) movant was previously aware of the existence of the "new" witness and was aware that the witness may have heard information that would be probative in the case, and where the movant did not offer any explanation for the previous failure to contact the witness, the movant had not shown the type of due diligence required by Rule 60(b)(2)).

*8 This case is distinguishable from the facts in *Potamkin* in one very important way. In that case, the court found that the Rule 60(b)(2) movant knew that its former employee had certain information but failed to secure it until the time it filed its 60(b)(2) motion. Here, there is no allegation that plaintiff knew that the Fountains had the Purchase Agreement but simply failed to obtain it from them. Moreover, the fact that plaintiff was in communication with the Fountains about some matters does not mean that they would necessarily have been completely forthcoming with information about this case, absent a discovery process sanctioned by this Court. Logically, the interests of the Fountains and HTK are potentially adverse. The Fountains would have an interest in obtaining a determination that the disputed sale took place under auspices of employment with HTK, as that would then allow defendants to arbitrate their dispute over the sale with HTK. A finding that the sale took place before Tommy Fountain became employed with HTK, on the other hand, would allow HTK to avoid this arbitration and would potentially place the Fountains on the hook for liability to defendants over the allegedly fraudulent sale. Thus, the Fountains would not be the most reliable voluntary source for information that could potentially let HTK out of arbitration and subject them to liability.

Furthermore, as plaintiff points out, this Court had entered an Order expressly staying all discovery in this case and preventing plaintiff from deposing the Fountains. (HTK's Opp'n to Defs.' Mot. for Recons. and Correction [66] at 12.) Given the context of this Court's Order, it was a rational decision for plaintiff to then avoid seeking further information from the Fountains, even on an informal basis. Defendants filed a motion for a protective order to preclude all discovery in this matter, and the Court granted that motion. Defendants should not now be surprised that plaintiff did, in fact, cease all discovery. As plaintiff asserts, it did not want to be seen as attempting to conduct an "end run" around the Court's order denying it discovery. (*Id.* at 13.) Due diligence to discover all possible evidence obviously does not include taking actions that could potentially subject a party to sanction for the violation of the Court's discovery orders.

Finally, defendants argue that plaintiff could have obtained the Purchase Agreement through discovery in the arbitration. (Defs.' Mot. for Recons. [63] at 4.) According to defendants, while the Court stayed discovery in this case, discovery was proceeding in the arbitration, and plaintiff ultimately obtained the Purchase Agreement from defendants through discovery in the arbitration. (*Id.*) Defendants aver that discovery in the arbitration was stayed until June 3, 2002, and that defendants served their discovery request promptly at that time. (Defs.' Reply [68] at 13.) Plaintiff, however, did not serve its discovery request until July 3, 2002. (*Id.*) Defendants argue that if plaintiff had served its discovery request one month earlier, when it was first allowed to do so, defendants would likely have served their responsive documents one month earlier, on August 5, 2002, rather than on September 5, 2002. (*Id.*) According to defendants, because the Court issued its original Order [32] in this case on August 6, 2002, a diligent discovery request by plaintiff in the arbitration would likely have produced the Purchase Agreement in time for plaintiff to move for a new trial under Rule 59(b), and plaintiff would not have had to rely upon Rule 60(b)(2). (*Id.*) Defendants further point out that arbitration discovery had been stayed in the first place at plaintiff's request, as plaintiff had wanted to wait from a ruling from this Court on whether it would be compelled to arbitrate before engaging in arbitration discovery. (*Id.* at 14.) Defendants argue that if plaintiff had not procured the stay, defendants would have produced the Purchase Agreement at an earlier time, and the existence of the arbitration discovery stay does not help plaintiff. (*Id.*)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-03303-JF    Document 45-4    Filed 10/19/2007    Page 8 of 10

Not Reported in F.Supp.2d                                                                          Page 8
Not Reported in F.Supp.2d, 2004 WL 2284503 (N.D.Ga.)
(Cite as: Not Reported in F.Supp.2d)

*9 The Court finds these arguments to be unavailing. The Court will not fault plaintiff for seeking a stay in the arbitration proceeding while its motion to avoid arbitration entirely was pending before this Court. In fact, this was a perfectly rational tactic for plaintiff to pursue. Had the Court granted plaintiff's motion, it would not have been required to arbitrate at all, so it only made sense for plaintiff to seek to avoid spending time and resources on the arbitration before it knew whether it would have to engage in that proceeding.

Second, the Court will not fault plaintiff for the timing of its discovery requests in the arbitration once discovery did commence. According to defendants, discovery began on June 3, 2002, and plaintiff served its discovery request on July 3, 2002. Defendants have given no indication that this was not timely under the NASD arbitration rules. It may be true that, had plaintiff acted more swiftly, it might have obtained the Purchase Agreement in time to challenge this Court's initial Order compelling arbitration under Rule 59(b) instead of Rule 60(b)(2), but the Court will not penalize plaintiff for being unable to predict when this Court would issue its rulings. A simple showing that plaintiff could have filed its discovery requests in the arbitration in an even more timely fashion will not lead to a conclusion that plaintiff did not exercise due diligence in attempting to uncover all pertinent evidence in this case.

D. Does the new evidence produce a new result?

Defendants' second argument is that the newly discovered evidence, the August 2, 1999 Purchase Agreement, would not probably produce a new result. (Defs.' Mot. for Recons. [63] at 5.) The Court has already dealt with that issue in its previous Order and does not further revisit it here. Again, as the Court noted previously, defendants may or may not prevail on their contention that the dispute is arbitrable, but that is not the issue before the Court at this time. (*See* Order [62] at 21.) Rather, the issue is whether plaintiff has offered " some evidence" that it should not be compelled to arbitrate. All the Court has determined is that HTK is entitled to litigate fully that question before this Court. (*Id.*) At that time, defendants will be able to present fully their argument that delivery of their ETS investment occurred at a time when Tommy Fountain worked for HTK, and thus that should be the relevant date of their ETS investment and entitle them to arbitrate with HTK. (*See* Defs.' Mot. for Recons. [63] at 7.)

Accordingly, the Court DENIES Defendants' Motion for Reconsideration [63-1]. The Court, however, GRANTS defendants' Motion For Correction [63-2]. In its Order addressing plaintiff's Motion For Relief, pursuant to Rule 60, the Court expressed its concern that defendants had purposefully concealed the date of the first ETS sale, as plaintiff had suggested. In its current motion, defendants assure the Court that such is not the case and that the drafting decisions made by defendants were not made with the effort to conceal material information. The Court accepts defense counsel, Mr. Goodman's representation, and hereby grants his motion to correct, to the extent that the Court indicates that plaintiff has not established an intentional misrepresentation by defense counsel, nor should the Court's previous Order be read to suggest any finding by the Court that any intentional omission or misrepresentation was shown.

*10 Further, in its previous Order addressing plaintiff's motion for relief, the Court had indicated that because someone, not the Court, had caused the publication of the Court's initial order ruling in favor of defendants, the Court might be required to publish its later order effectively ruling in favor of plaintiff on the motion for relief. Upon further consideration, the Court believes that no other orders are appropriate for publication at this juncture. First, the original order in favor of defendants was, the Court believes, sound in its legal principles; the facts may have merely changed a bit. Second, this case remains to be litigated. With regard to their request for arbitration, defendants may prevail on both sales, only one sale, or no sales. Noone can tell at this point. Until there is a final resolution, the publication of interim orders only serves to create confusion. When there is a final resolution, the Court expects that, as a matter of courtesy, anyone seeking publication of any order will first confer with opposing counsel, as

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

well as the Court as to which orders, if any, should be published.

## II. *Remaining Motions*

### A. Plaintiff's Motion for Leave to File Surreply

Plaintiff has filed a motion for leave to file a surreply memorandum in opposition to defendants' motion for reconsideration. Plaintiff argues that such leave should be granted for two reasons. First, plaintiff wishes to respond to defendants' arguments based on *USAllianz Sec., Inc. v. Southern Michigan Bancorp, Inc.,* 290 F.Supp.2d 827 (W.D.Mich.2003). (Pl.'s Mot. and Supp. Mem. For Leave to File Sur-Reply Mem. in Opp'n to Defs.' Mot. for Recons. [69] at 1-2.) Second, plaintiff asserts that defendants have quoted precedent out of context in their argument regarding the proper standard for their motion for reconsideration and states that it should be given the opportunity to show that the correct standard is the one set out by plaintiff. (*Id.* at 2.)

"No authorization exists in the Federal Rules of Civil Procedure or the local rules for the Northern District of Georgia for parties to file surreplies. To allow such surreplies as a regular practice would put the court in the position of refereeing an endless volley of briefs." *Garrison v. Northeast Georgia Med. Ctr., Inc.,* 66 F.Supp.2d 1336, 1340 (N.D.Ga.1999) (O'Kelley, J.). Moreover, such a surreply is unnecessary, as the Court has denied defendants' motion for reconsideration of the Court's September 29, 2003 Order [62]. Accordingly, the Court DENIES Plaintiff's Motion for Leave to File Sur-Reply Memorandum in Opposition to Defendants' Motion for Reconsideration [69].

### B. Plaintiff's Motion to Strike Defendants' Notice of Filing of Supplemental Authority

Plaintiff has filed a Motion to Strike Defendants' Notice of Filing Supplemental Authority in Support of Their Motion for Reconsideration [73]. Plaintiff first argues that the authorities cited by defendants are neither binding upon the Court nor material to any question currently pending before the Court but instead are from courts outside the Eleventh Circuit and do not contradict the clear holding in *Wheat, First Sec., Inc. v. Green,* 993 F.2d 814 (11th Cir.1993). (Mot. to Strike Defs.' Notice of Filing Supplemental Authority in Supp. of Their Mot. for Recons. [73] at 1-2.) Plaintiff asserts that though parties may from time to time be required to bring to the Court's attention new decisions that are binding and on point, defendants "have abused this privilege by essentially re-briefing the issues at hand." (*Id.* at 2.) Second, plaintiff argues that defendants' "Notice of Filing includes an extended discussion of an arbitration award that has been available since October and that does not contain any of the 'facts' recited by counsel." (*Id.*) Plaintiff thus asserts that this "'new authority' amounts to the unsworn representations of counsel" and is an "improper use of the supplemental authority practice and, particularly in view of prior events in this case, should not be permitted." (*Id.* at 2-3.)

*11 As defendants point out, filing notices of supplemental authorities that come to a party's attention after briefing is complete is a well-established practice. (Defs.' Mem. in Opp'n to Pl.'s Mot. to Strike Defs.' Notice of Filing Supplemental Authority [75] at 1.) Moreover, such practice is helpful to the Court, which of course always endeavors to apply current authority in resolving the issues before it. The fact that some of the material that defendants have filed is from other jurisdictions and is non-binding is immaterial; the Court is quite capable of differentiating between binding and persuasive authority. Further, the Court has reviewed the arbitration award of which plaintiff complains so vehemently and has determined that plaintiff's concerns seem excessive. The arbitration award does cite facts of that case, and it does not appear that defendants just made them up, as plaintiff implies. Finally, the Court has considered the supplemental authority, and it has not changed the Court's determination that defendants' motion for reconsideration must be denied. Accordingly, the Court DENIES plaintiff's Motion to Strike Defendants' Notice of Filing Supplemental Authority in Support of Their Motion

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 2284503 (N.D.Ga.)
**(Cite as: Not Reported in F.Supp.2d)**

for Reconsideration [73].

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' Motion for Reconsideration [63-1], but GRANTS defendants' Motion for Correction [63-2]; DENIES Plaintiff's Motion for Leave to File Sur-Reply Memorandum in Opposition to Defendants' Motion for Reconsideration [69]; and DENIES Plaintiff's Motion to Strike Defendants' Notice of Filing Supplemental Authority in Support of Their Motion for Reconsideration [73].

SO ORDERED

N.D.Ga.,2004.
Hornor, Townsend & Kent, Inc. v. Hamilton
Not Reported in F.Supp.2d, 2004 WL 2284503 (N.D.Ga.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.