FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

SEP 0 6 2005

LUTHER D. THOMAS, Clerk
By _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HORNOR, TOWNSEND & KENT, INC.,

        Plaintiff,

v.

JOSEPH HAMILTON and MILLICENT
HAMILTON,

        Defendants.

CIVIL ACTION NO.
1:01-CV-2979-JEC

## O R D E R

This case is presently before the Court on Defendants' Motion for Reconsideration [88], Plaintiff's Motion for Leave to Amend Complaint [95], Plaintiff's Motion for Summary Judgment [96], Defendants' Unopposed Motion for Extension of Time to Respond to Plaintiff's Motion for Summary Judgment and Motion for Leave to Amend Complaint [97], and Plaintiff's Unopposed Motion for Extension of Time to Reply to Defendants' Response in Opposition to Plaintiff's Motion for Summary Judgment [102].

Defendants do not object to Plaintiff's Motion for Leave to Amend Complaint [95]; hence, this motion is **GRANTED**. Likewise, Defendants' Unopposed Motion for Extension of Time to Respond to Plaintiff's Motion for Summary Judgment and Motion for Leave to Amend

EXHIBIT D

AO 72A
(Rev.8/82)

Complaint [97] and Plaintiff's Unopposed Motion for Extension of Time to Reply to Defendants' Response in Opposition to Plaintiff's Motion for Summary Judgment [102] are **GRANTED**.

I. **History of this Case**

This is the fourth substantive Order issued by this Court on this case. Previously, the Court has issued an Order dated August 6, 2002, effectively granting defendants' motion for arbitration [32] ("*Hamilton I*"); an Order dated September 29, 2003, issued upon limited remand by the Eleventh Circuit and effectively vacating the original order, as a result of new evidence learned by the plaintiff [62] ("*Hamilton II*"); and an Order dated September 30, 2004, denying defendants' motion for reconsideration of *Hamilton II* [78] ("*Hamilton III*"). Hence, this present Order may be referred to as "*Hamilton IV*."

The fourth movie in a series usually recycles old plot lines and is lacking in much suspense. The same fate often befalls court orders in legal cases that involve continuing procedural wrangling. So, it is with this case. The arguments are starting to circle back, and the Court issues this Order, which hopefully will now resolve the long-running dispute, at least in this Court.

For a complete understanding of the procedural twists and turns in this case, the Court refers the reader to the previous three Orders, which set out, at length, the disputed issues. An

2

AO 72A
(Rev.8/82)

abbreviated summary of what has happened is, as follows. Defendants, who are retired Tennessee residents, filed a Claim for arbitration with the National Association of Securities Dealers ("NASD") against plaintiff Hornor, Townsend, and Kent, Inc., a brokerage firm. This claim arose out of two investments in payphones, totaling $364,000, that defendants made at the behest of investment broker Tommy Fountain and his son, Scott Fountain. Specifically, defendants alleged in their claim that they had made an investment in ETS Payphone Equipment Inc. of $238,000 and $126,000, and affixed dates of October 1, 1999 and December 1, 1999, respectively, to these investments.[1] In their Claim, defendants contended that the Fountains had fraudulently sold them unregistered securities and that they had ultimately lost their entire investment. Because Tommy Fountain was a registered agent of plaintiff's, defendants sought arbitration pursuant to the NASD Code of Arbitration Procedures, which requires arbitration of any dispute between a customer and a member and/or associated person.

Plaintiff then filed suit in this court, seeking to enjoin arbitration of this claim, arguing, essentially, that the defendants were never plaintiff's customers and hence that there was no

---

[1] The chart in their Claim that set out these two investments actually had a heading, "ETS Investment *Recommendations* to Joseph and L. and Millicent Hamilton by their HTK Broker--Tommy L. Fountain." (Statement of Claim, [3] Exh. A at 8.)  (emphasis added).

3

arbitration agreement between plaintiff and defendants. Plaintiff acknowledged that Tommy Fountain was its registered agent from September 11, 1999 to July 11, 2001--the period of time during which the defendants had allegedly purchased the ETS investments--but contended that defendants had dealt with Scott Fountain, who was never affiliated with plaintiff.

This Court rejected plaintiff's argument in *Hamilton I*, concluding that the defendants, who were "customers," had averred that they had dealt with Tommy Fountain, who was "associated" with a "member," and that, accordingly, defendants had established the constructive existence of an arbitration agreement between them and plaintiff, sufficiently enough to warrant the submission of the claim to an arbitration panel. See generally *Hamilton I* [32]. Accordingly, this Court denied plaintiff's motion for an injunction and directed that the dispute proceed to arbitration.

The plaintiff appealed this decision to the Eleventh Circuit and, during the appeal process, uncovered facts that prompted plaintiff to question the accuracy of material representations that defendants had made to this Court, which representations had caused the latter to order the parties to arbitration. Accordingly, the plaintiff sought a limited remand to this Court to pursue a Motion for Relief from Judgment, which motion for remand the Eleventh Circuit panel granted.

4

Following remand and briefing this Court issued a second Order [62] that essentially vacated its first Order directing arbitration. In this second Order, *Hamilton II*, the Court noted that the defendants had represented that they had made their investments on October 1, 1999 and December 1, 1999. Plaintiff had learned through discovery in the arbitration proceeding, however, that defendants, in fact, had made their first investment in ETS, <u>not</u> on October 1, 1999, as the Court had understood, but instead on <u>August 2, 1999</u>. As this Court noted:

> This fact is tremendously significant because on August 2, 1999, Tommy Fountain was not employed by HTK, although he was so employed on October 1, 1999. Clearly, if the sale occurred at a time when Tommy Fountain was not employed by HTK, the latter cannot be hauled into an arbitration proceeding convened to adjudicate the Hamiltons' complaint about the propriety of the sale.

*Hamilton II* [62] at 11.

The Court further noted that plaintiff was not required to arbitrate claims between a customer and a person who was neither a member nor an associate of plaintiff's firm. Accordingly, because Tommy Fountain did not become associated with plaintiff until September 11, 1999, which was after defendants had made their first investment, the Court concluded that this new evidence would probably result in a decision against arbitrating the dispute, at least as to the first investment of $238,000.

Upon issuance of *Hamilton II*, the Eleventh Circuit remanded the

5

case back to this Court for further proceedings. The Court denied defendants' motion for reconsideration of *Hamilton II*. Discovery was then about to begin when defendants filed an emergency motion to stay discovery as a result, in part, of a recently issued decision by the Eleventh Circuit--*Multi-Financial Corp., v. King*, 386 F.3d 1364 (October 6, 2004)--that defendants contended should require this Court to again order arbitration. Thereafter, defendants filed another motion for reconsideration and a renewed motion to compel arbitration [88]. This motion is presently before the Court.

## II. Defendants' Motion for Reconsideration

In their motion for reconsideration, defendants cite to two 2004 Eleventh Circuit cases: *Multi-Financial Securities Corp., v. King*, 386 F.3d 1364 (October 6, 2004)("King") and *MONY Securities Corp. v. Bornstein*, 390 F.3d 1340 (11th Cir. Nov. 18, 2004) ("MONY"). In *King*, the plaintiff purchased non-registered securities from Micciche, whom all parties agreed was a person associated with IFG: a member of NASD. The apparent issue before the Eleventh Circuit was whether the plaintiff could be considered to be a customer of IFG, with whom she had not directly dealt, if she was a customer of a person affiliated with IFG. The Eleventh Circuit answered in the affirmative. In reaching its conclusion, the panel noted that a customer is anyone who is not a broker or dealer; hence, the plaintiff was a customer. *Id.* at 1368. The panel noted that when an investor deals with a

6

member's agent or representative, the investor deals with the member and becomes that member's "customer." Id. at 1370.

In MONY, the Eleventh Circuit reconfirmed the validity of King and rejected the investment company's argument that King had run afoul of an earlier Eleventh Circuit decision: Wheat, First Securities, Inc. v. Green, 993 F.2d 814 (11th Cir. 1993). The panel noted that Wheat, which had concluded that an investment company was not required to arbitrate with a putative customer of its predecessor-in-interest, was based on a very narrow issue of timing. Specifically, Wheat held "only 'that customer status for purposes of' the NASD is 'determined as of the time of the events providing the basis for the allegations of fraud.'" MONY, 390 F.3d at 1345. As the MONY panel noted, the investor in both King and the case before it was a customer at the time the events providing the basis for allegations of fraud had occurred. Id. at 1346.

The above recitation of the holdings in King and MONY vindicate plaintiff's contention that neither case overturned the holding in Wheat nor undermined the basis of this Court's earlier ruling that the timing issues in the present case would likely doom the defendants' efforts to arbitrate the first investment, which was made before Tommy Fountain ever became associated with the plaintiff's firm. Wheat ruled against the investors before it because they were not customers of the NASD member at the time of the allegedly

7

fraudulent transactions. *Wheat*, 993 F.2d at 820. *Wheat* applies with equal force here. Accordingly, extrapolating the principle espoused in *Wheat* and applying it to the present case: if the defendants were customers of a broker who was *not* associated with the plaintiff firm at the time of the fraudulent acts giving rise to the claim, then defendants cannot be considered to be customers of the firm under NASD and they cannot compel plaintiff to arbitrate their claim against this non-associated broker. The Court therefore **DENIES** Defendants' Motion for Reconsideration [88].

### III. Plaintiff's Motion For Summary Judgment

The above conclusion leads to plaintiff's motion for summary judgment in which motion plaintiff indicates that the undisputed facts show that Tommy Fountain was not associated with plaintiff at the pertinent time in question with regard to the first investment. Accordingly, plaintiff argues that it and defendants had no relationship with regard to the first investment that would properly trigger a duty to arbitrate plaintiff's grievance against Tommy Fountain.

This Court believes plaintiff to be correct in its contention. As plaintiff has demonstrated, the evidence indicates that plaintiff signed a purchase agreement, on August 2, 1999, to purchase thirty-four payphones for $238,000, which phones were to be later shipped. This agreement was subject only to a 15 day window for rescission.

8

On August 2, 1999, Tommy Fountain was not associated with plaintiff. The defendants did not exercise their right to revoke the purchase agreement and hence on August 17, 1999, fifteen days later, the purchase transaction was complete. Tommy Fountain was not affiliated with plaintiff on August 17, 1999.

Defendants try mightily to date their first investment after September 11, 1999--the date on which Tommy Fountain became associated with plaintiff--in an understandable effort to tie plaintiff to Fountain and thereby to force plaintiff to an arbitration. Defendants note that a letter was sent by ETS to them on September 10, 1999 setting down a lease payment schedule and fixing October 1, 1999, as the date for the first lease payment. Yet, as plaintiff notes, whatever date ETS had set down as the deadline for payment to it, the sales transaction had already occurred, and Tommy Fountain's work on that transaction was done. Similarly without effect is defendants' argument that they received other paperwork from ETS in November 1999.

At bottom, *Wheat* requires that an investor's status as a customer be determined "as of the time of the occurrence of events that constitute the factual predicate for the causes of action contained in the arbitration complaint." 993 F.3d at 820. The events that constitute the factual predicate for defendants' claim that Tommy Fountain made fraudulent representations are the sales pitches

9

that Fountain made up to the date that the sale was made. The sale was made on August 2, 1999 and effective on August 17, 1999. Necessarily, Fountain could not induce a sale on a date after the sale had already occurred. That the defendants later received paperwork or payment schedules from ETS does not seem, to this Court, to be events that are tied to the factual predicate for claims against Fountain.

As plaintiff notes, defendants' claim against plaintiff is a claim based on plaintiff's failure to supervise Fountain. Plaintiff could not have supervised Fountain at a time before Fountain became employed with plaintiff, which date was September 11, 1999. Moreover, as set out in great detail in *Hamilton II*, the failure of defendants' counsel to alert the Court originally to the existence of this August 2nd purchase date and the drafting inconsistencies now apparent in defendants' original description of the purchase dates strongly suggest that even defendants' counsel recognize the weakness of their present argument. Otherwise, they would have aired all of these matters when they were originally before the Court instead of the Court having to learn of all this only after plaintiff later received discovery material that brought to light the existence of an earlier purchase date than that initially represented by counsel.

The defendants appear to have been hard-working people who have now lost a chunk of their savings as a result of the actions of men

10

whom they believe to be unscrupulous hucksters. The Court feels badly for them. It is truly an unfortunate piece of luck for the defendants that the timing of Fountain's employment has turned out as it has. Had their first investment occurred just six weeks later, Fountain would have been an agent of plaintiff's and plaintiff would potentially be on the hook for Fountain's actionable misrepresentations. Indeed, this was the ruling of this Court in *Hamilton I*, which was issued before the Court was made aware that defendants had not reported accurately the actual purchase date of their first investment. Yet, as explained above, the Court must conclude that defendants were not customers of plaintiff at the time when Tommy Fountain allegedly made fraudulent representations to them. This conclusion means that defendants cannot require plaintiff to arbitrate claims concerning the first investment before a NASD panel. Accordingly, the Court **GRANTS** plaintiff's motion for summary judgment [96].

IV. **Second Investment**

The above analysis does not affect defendants' ability to arbitrate the second investment, as Fountain's representations inducing this investment clearly occurred at a time when Fountain was associated with plaintiff. Indeed, plaintiff has now moved to amend its Complaint to delete reference to this second investment; this Court has granted that motion this date. Accordingly, as far as this

11

Court is concerned, no impediment exists to arbitration of the second investment in the amount of $138,000.

## V. Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Leave to Amend Complaint [95], Plaintiff's Motion for Summary Judgment [96], Defendants' Unopposed Motion for Extension of Time to Respond to Plaintiff's Motion for Summary Judgment and Motion for Leave to Amend Complaint [97], and Plaintiff's Unopposed Motion for Extension of Time to Reply to Defendants' Response in Opposition to Plaintiff's Motion for Summary Judgment [102]. The Court **DENIES** Defendants' Motion for Reconsideration [88].

Defendants are enjoined from arbitrating the first investment before a NASD panel. The Clerk is directed to **close** this case.

SO ORDERED this  6  day of September, 2005.

JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

12

AO 72A
(Rev.8/82)