Joel A. Goodman (FL Bar No. 802468)
Admitted *pro hac vice*
Email: gn.law@verizon.net
Goodman & Nekvasil, P.A.
14020 Roosevelt Blvd., Suite 808
P.O. Box 17709
Clearwater, Florida 33762
Telephone:  727-524-8486
Facsimile:  727-524-8786

Richard A. Kutche (CA Bar No. 151950)
Email: rakutche@pacbell.net
Law Offices of Richard A. Kutche
46 South First Street
San Jose, CA 95113
Telephone:  (408) 295-0474
Facsimile: (408) 295-6693
Local counsel

Attorneys for Defendants

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE O.N. EQUITY SALES COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> THOMAS NEMES, Individually and as Trustee of the THOMAS NEMES TRUST, MICHAEL J. BENKERT, Individually and on Behalf of SHORE 2 SHORE ENTERPRISES, INC., and JERRY J. THOMAS and NANCY M. THOMAS, Individually and as Trustees of the JERRY J. THOMAS and NANCY M. THOMAS 1998 INTER VIVOS TRUST, <br><br> Defendants. | Case No. C 07-03303 JF RS <br><br> Judge Jeremy Fogel <br><br> **DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION** <br><br> Date:  November 9, 2007 <br> Time:  9:00 a.m. <br> Courtroom:  3, 5th Floor |

Defendants Thomas Nemes, Individually and as Trustee of the Thomas Nemes Trust, Michael J. Benkert, Individually and on Behalf of Shore 2 Shore Enterprises, Inc., and Jerry J. Thomas and Nancy M. Thomas (the "Thomases"), Individually and as Trustees of the Jerry J. Thomas and Nancy M. Thomas 1998 Inter Vivos Trust, through the undersigned counsel, have previously filed a Motion to Compel Arbitration and Memorandum of Points and Authorities in Support ("Memorandum to Compel Arbitration"), a Memorandum of Points and Authorities in

Opposition to Plaintiff's Motion for an Order Authorizing the Parties to Engage in Immediate Discovery on the Issue of Arbitrability, a Memorandum of Points and Authorities in Opposition to ONESCO's Motion for Preliminary Injunction ("Memorandum against Injunction"), a Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to Consolidate Preliminary Injunction Hearing with Trial on its Merits, a Memorandum of Points and Authorities in Opposition to Plaintiff's Motion under Civil Rule 56(f) to Preclude Summary Disposition of Defendants' Motion to Compel Arbitration Pending Discovery to Be Taken on the Issue of Arbitrability ("Memorandum against Plaintiff's Rule 56(f) Motion"), supporting exhibits for these filings, and a Notice of Supplemental Authority. In this Reply Memorandum in Support of their Motion to Compel Arbitration, Defendants rely on and incorporate herein their other filings and do not repeat them in detail here.

**A. This Court should Follow the Decisions of Five Judges to Compel ONESCO to Arbitrate with Lancorp Investors without Delay for Discovery, as Well as Judge James's Decision and the Decisions of Three Other Judges not to Allow Discovery until the Court had Considered the Investors' Motion to Compel Arbitration.**

The present case is one of 20 cases around the country that raise identical issues about whether investors' disputes with ONESCO are arbitrable under the rules of the National Association of Securities Dealers, Inc. ("NASD"), regarding the activities of ONESCO's former representative Gary L. Lancaster ("Lancaster") in selling investments in Lancorp Financial Fund Business Trust ("Lancorp"). In their previous filings in this Court, Defendants have cited the decisions of eight of these courts either to compel arbitration or not to allow discovery until the Court had considered the Lancorp investors' motion to compel arbitration. O.N. Equity Sales Co. v. Steinke, ___ F. Supp. 2d ___, 2007 WL 2421761 (C.D. Cal. Aug. 27, 2007); O.N. Equity Sales Co. v. Pals, ___ F. Supp. 2d ___, 2007 WL 2506033 (N.D. Iowa Sept. 6, 2007); O.N. Equity Sales Co. v. Venrick, ___ F. Supp. 2d ___, 2007 WL 2705859 (W.D. Wash. Sept. 17, 2007); O.N. Equity Sales Co. v. Scott, Case No. 4:07cv269-RH/WCS (N.D. Fla. Sept. 9, 2007); O.N. Equity Sales Co. v. Robinson, 2007 WL 2840477 (E.D. Va. Sept. 27, 2007); O.N. Equity Sales Co. v. Gibson, ___ F. Supp. 2d ___, 2007 WL 2705859 (S.D.W. Va. Oct. 1, 2007); O.N. Equity Sales Co. v. Rahner, 2007 WL 2908297 (D. Colo. Oct. 3, 2007); O.N. Equity Sales Co. v. Prins, 2007 WL 3052756 (D. Minn. Oct. 17, 2007).

Just last week, Judge James of this Court likewise ruled that the arbitrability issue could be decided without discovery. O.N. Equity Sales Co. v. Maria Cui, 2007 WL 3071553 (N.D. Cal. Oct. 19, 2007).[1] Defendants ask this Court to review and adopt these decisions, which are directly on point.

Defendants also direct this Court's attention to World Group Sec., Inc. v. Sanders, 2006 WL 1278738 (D. Utah May 8, 2006), USAllianz Sec., Inc. v. Southern Mich. Bancorp, Inc., 290 F. Supp. 2d 827 (W.D. Mich. 2003), and Beer v. Nutt, 2007 WL 13100 (S.D.N.Y. Jan. 3, 2007), in which the courts found that allegations of failure to supervise and continuing fraud about investments were arbitrable under NASD rules, even though, in Beer, for example, the disputes concerned an investment in 2000, one year before the brokerage firm came into existence, two years before the firm became an NASD member, and two years before the broker became an associated person of the NASD member.

> Plaintiffs argue that the dispute does not arise in connection with their business. . . . Plaintiffs allege that the Statement of Claim exclusively involves [the investor's] investment in Fiesta in 2000, a year before [brokerage firm's] formation and two years before [the broker] became an associated person of [the firm]. Thus, Plaintiffs contend, they cannot be compelled to arbitrate in front of the NASD panel because they were not members at the time the claim arose. While it is true that causes of action in the Statement of Claim primarily deal with [the investor's] initial investment . . . in 2000, [he] alleges a continuing fraud that spanned the formation of [the brokerage firm] and includes [the broker's] association with the company.

Id. at *3. These cases are also closely on point and strongly support the Defendants' Motion to Compel Arbitration.

**B.    For Arbitrability Purposes, the Pertinent Facts are Undisputed.**

In its Memorandum in Opposition to Defendants' Motion to Compel Arbitration ("Memorandum against Arbitration"), ONESCO focuses on what it believes to be the timing of the representations and omissions made to Defendants in connection with their Lancorp investments. Nowhere in the dozens of pages that ONESCO has written and filed in this Court, however, does

---

[1] ONESCO has incorrectly asserted that the Court in O.N. Equity Sales Co. v. Maria Cui, Case No. 3:07-cv-02844-JSW (N.D. Cal.), decided not to allow discovery. In fact, the Court referred discovery matters to the magistrate and made no final determination on the issue, as indicated by the magistrate's October 19 Order denying discovery. A copy of the October 19 Order is attached to Defendants' Memorandum Brief in Opposition to Plaintiff's Rule 56(f) Motion.

-3-

ONESCO dispute that the Defendants' initial investments were not sold until April or May 2004, after Lancaster became an ONESCO employee in March 2004. Nowhere does ONESCO dispute that the initial Lancorp subscription agreements were not completed contracts when signed, because they imposed no obligation on Lancorp, and Lancorp could withdraw the offers at any time, prior to closing in May 2004. Nowhere does ONESCO dispute that Defendants had no standing to bring a claim at the time the initial subscription agreements were signed, because the investments were not yet sold at that time. ONESCO's contentions amount to the nonsensical proposition that Defendants cannot arbitrate ONESCO's liability for the Lancorp sales to the Defendants, because the pertinent representations and omissions were supposedly made earlier, even though ONESCO does not dispute that Defendants could not bring a claim at the time ONESCO thinks the representations and omissions were made.

Nowhere does ONESCO dispute that Lancaster offered Defendants an opportunity in April 2004 to get back their initial investments, before the Lancorp offering closed in May 2004 and after Lancaster became an ONESCO employee. Nowhere does ONESCO dispute that Defendants made the investment decision in April 2004 not to get back their money and to sign reconfirmation letters, attached to their Memorandum to Compel Arbitration as Exhibit "3," stating that they desired to remain invested in Lancorp. Although ONESCO characterizes the initial Lancorp subscription agreements as "irrevocable," Memorandum against Arbitration at 2, they manifestly were not irrevocable in light of Lancaster's offer to refund Defendants' funds. Nowhere does ONESCO dispute that paragraph 41 of Defendants' arbitration claim, attached to ONESCO's Complaint as Exhibit "K," alleges that they purchased their investments in April 2004, while Lancaster worked for ONESCO. Nowhere does ONESCO dispute that Defendants allege in their arbitration claim that ONESCO failed to supervise Lancaster while he worked for ONESCO.

Contrary to ONESCO's assertions that Defendants are now offering a "slew of new factual contentions," Memorandum against Arbitration at 1, Defendants' position in this Court is the same as it was in paragraph 41 of their arbitration claim. Their Lancorp investments were sold to them after Lancaster started worked for ONESCO, and Defendants are entitled to arbitrate whether ONESCO is responsible for those sales. Defendants have undisputedly alleged facts that occurred

while Lancaster worked for ONESCO on which Defendants may properly seek to hold ONESCO liable in arbitration.

ONESCO wants to focus this Court's attention on earlier representations and omissions that ONESCO believes took place. ONESCO argues that claims about these earlier representations and omissions, if any, as well as claims about events after Lancaster left ONESCO, should be severed and determined to be non-arbitrable, even if this Court determines that claims about the actual Lancorp sales are arbitrable. See Memorandum against Arbitration at 2-4. Each Defendant, however, is seeking to arbitrate about single transactions; their claims about their individual, single transactions are not severable. Earlier representations and omissions, if any, carried forward as part of the background for the actual sales, in the same way that ONESCO may seek to introduce evidence in the arbitration about Defendants' financial, educational, and employment history, as part of the background for their dealings with Lancaster, Lancorp, and ONESCO. The arbitrators are entitled to know the full picture, which would include the events leading up to the sales, as well as the sales themselves. Similarly, whether events relating to damages occurred after Lancaster left ONESCO does not alter the Defendants' entitlement to arbitrate whether ONESCO is liable for the sales and for any damages that the sales proximately caused.

This Court therefore need not be concerned about ONESCO's allegations of disputed facts, which pertain only to liability, not arbitrability. For example, ONESCO alleges that Robert Reese ("Reese") was involved in the Lancorp sale to Defendants. See ONESCO's Memorandum against Arbitration at 12. As Defendants explained in more detail in their Memorandum against Plaintiff's Rule 56(f) Motion at 2-3, however, Lancaster was heavily involved in the Lancorp offering. Regardless of the nature and extent of Reese's participation in the Lancorp offering and regardless of whether Lancaster used Reese as an agent to contact the Defendants, Defendants have alleged events performed by Lancaster while he worked for ONESCO for which ONESCO may be held liable and about which they are entitled to arbitrate. The same conclusion applies to ONESCO's assertion that Lancaster's changes in the insurance element of the Lancorp offering were immaterial. Memorandum Brief against Arbitration at 12 n.5. The Thomases had requested insurance. (See Exh. "J" (SB-11), attached to ONESCO's Complaint.) Defendants might have preferred insurance rather

-5-

than the new Lancorp provision for a bank or broker-dealer's assurance that the liquidation value of the securities purchased--which could later decrease--was required to be greater than the amount paid. (See Exh. "3" attached to the Memorandum to Compel Arbitration) This Court can readily see that insurance is better than a mere assurance that the securities purchased can initially be liquidated for the amount paid for them.

More importantly, contrary to ONESCO's repeated assertions, whether the changes in the Lancorp offering were material or different from those made earlier–or, indeed, whether Lancaster made any new representations after he became an ONESCO representative that were material or different from those made earlier–is pertinent at best only to liability, not to arbitrability. Even assuming *arguendo* that all of ONESCO's factual allegations on these issues on which it hopes to discover supporting evidence are true, Defendants can still arbitrate, because their allegations still satisfy the requirements for arbitrability under NASD Rule 12200.  First, they were ONESCO customers through Lancaster, because a customer under NASD Rule 12200 is anyone who is not a broker or dealer. Multi-Financial Sec. Corp. v. King, 386 F.3d 1364, 1368 (11th Cir. 2004) ("The NASD generally defines the term 'customer' as anyone who is not a broker or a dealer."). "[U]nder the NASD Code, when the investor deals with an agent or representative, the investor deals with the member, and on that basis the investor is entitled to have resolved in arbitration any dispute that arises out of that relationship." Vestax Sec. Corp. v. McWood, 280 F.3d 1078, 1082 (6th Cir. 2002). Second, they have alleged that ONESCO failed to supervise events occurring in connection with their Lancorp investments while they were Lancaster's customers and while Lancaster worked for ONESCO. "'A dispute that arises from a firm's lack of supervision over its brokers arises in connection with its business,'" for purposes of this requirement for arbitrability under NASD Rule 12200 and its predecessor Rule 10301. Id. at 1082 (citation omitted).

ONESCO is improperly attempting to convert liability issues into arbitrability issues. For arbitrability purposes under NASD Rule 12200, the pertinent facts are undisputed.

> [W]e are unconcerned with MONY's cornucopia of disputed facts. Instead, we focus on those facts required to satisfy . . . [the] two-part test [for arbitrability under Rule 10301, the predecessor to Rule 12200].  So while there many be dozens of disputed facts, the facts that matter in this case are undisputed: the Bornsteins were customers of Keller, who was an associated person of MONY. This undisputed fact pattern is

somewhat common, and the overwhelming response is that the case is subject to arbitration. More importantly, this fact pattern falls wholly within the clear language of Rules 10101 and 10301, which focus first on whether the investor is a customer, and second on whether the dispute arose in connection with the business of the member.

MONY Sec. Corp. v. Bornstein, 390 F.3d 1340, 1346 (11th Cir. 2004) (citations omitted). Because the requirements for arbitrability under Rule 12200 are satisfied, Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, mandates that this Court summarily compel arbitration, without delay for discovery and a two-day evidentiary hearing.

      C. **This Court must Apply a Presumption of Arbitrability.**

ONESCO continues not to understand that the issue in this case is the scope of NASD Rule 12200, not its existence. (See Memorandum against Arbitration at 10-11.) ONESCO concedes that NASD Rule 12200 exists and is binding on ONESCO. The issue is whether this undisputedly valid arbitration agreement applies to the disputes between ONESCO and Defendants. This issue is by definition an issue of scope, not of existence.

ONESCO invents a distinction between the second bullet point in Rule 12200 relating to the "customer" element of the Rule, which ONESCO thinks involves an "existence" issue, and the third bullet point in Rule 12200 relating to the "business activities" element of the Rule, which ONESCO agrees is a "scope" issue. See Memorandum against Arbitration at 6. No case, however, holds that arbitration agreement can be parsed into constituent elements subject to differing arbitrability standards. If an arbitration agreement exists, which Rule 12200 unmistakably does, and if a party is bound by it, which ONESCO unmistakably is, then whether a particular dispute satisfies one of the elements of the agreement is a scope question subject to a presumption of arbitrability.

Furthermore, the disputed issue in this case is not whether the Defendants were customers of Lancaster, because they clearly were. Instead, the disputed issue, according to ONESCO, is whether they were customers at the right time to be entitled to enforce Rule 12200. Timing questions are certainly subject to a presumption of arbitrability.

> Plaintiffs argue that the arbitration agreements are not enforceable as to their particular antitrust claims because the arbitration agreements do not apply retroactively. Plaintiffs concede that the arbitration agreements are generally valid. Put another way, Plaintiffs argue that their antitrust claims do not fall within the scope of the arbitration agreements as a result of non-retroactivity. Plaintiffs are in

-7-

> fact raising a scope question. Thus, the general [presumption in favor of arbitration for the resolution of scope questions] . . . applies.

Kristian v. Comcast Corp., 446 F.3d 25, 35 (1st Cir. 2006).

In Washington Square Sec., Inc. v. Aune, 385 F.3d 432, 435 (4th Cir. 2004) (citations omitted), the Fourth Circuit applied this presumption to Rule 10301, the predecessor to Rule 12200.

> We address first the district court's finding that no presumption in favor of arbitration applied in this case because the Investors and [the brokerage firm] never entered into an agreement to arbitrate [under NASD Rule 10301]. . . . We find . . . the reasoning of the district court unpersuasive.
>
> . . . .
>
> . . . The NASD Code constitutes an "agreement in writing" under the Federal Arbitration Act, 9 U.S.C. § 2, which binds . . . an NASD member[] to submit an eligible dispute to arbitration upon a customer's demand. Because this arbitration agreement binds Washington Square, the remaining issue is whether the Investors are "customers" whose dispute falls within its scope.

This Court must therefore apply a presumption of arbitrability to the scope issue in this case.

**D.     The Cases Cited by ONESCO are Distinguishable.**

ONESCO continues to cite cases such as Wheat, First Sec., Inc. v. Green, 993 F.2d 814 (11th Cir. 1993), which found that certain disputes were not arbitrable under NASD rules. (See Memorandum against Arbitration at 11) As Defendants explained in more detail in their Memorandum to Compel Arbitration at 15-17, however, the decision in Wheat First is questionable in light of the Supreme Court's decision in Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 85 (2002), that timing disputes under NASD rules are for the arbitrators to decide, not the courts. Moreover, as Defendants explained in more detail in their Memorandum to Compel Arbitration at 13-14, Wheat First and the other cases cited by ONESCO are distinguishable, because they did not involve a new investment decision made while the broker worked for the firm as a result of representations made while the broker worked for the firm, which the investors alleged the firm failed to supervise at that time. Indeed, Wheat First itself permitted arbitration regarding trading that occurred after the successor firm purchased the predecessor firm's assets. 993 F.2d at 816.

ONESCO is equally incorrect in relying on cases holding that the statute of repose for violations of Securities and Exchange Commission's Rule 10b-5, 17 C.F.R. § 240.10b-5, runs from the date of the representation rather than the date of the sale. (See Memorandum against Arbitration

-8-

at 16-17.) As Defendants explained in more detail in their Memorandum against Injunction at 6-8, these cases address a technical issue about the repose period for one of Defendants' claims. The limitations periods for their common law and other statutory claims, however, run from the date of the sale, not the representation. Moreover, Lancaster did make new representations while he worked for ONESCO. In any case, regardless of the applicable repose periods, Defendants' claims are based on their causes of action, which did not arise until the investments were actually sold, after Lancaster started working for ONESCO. Defendants are entitled to arbitrate claims based on these sales.

WHEREFORE, Defendants respectfully request this Court to grant their Motion to Compel Arbitration.

Respectfully submitted,

DATED: October 26, 2007

GOODMAN & NEKVASIL, P.A.
By: /s/ Joel A. Goodman
Joel A. Goodman
Attorney *pro hac vice*

LAW OFFICES OF RICHARD A. KUTCHE
Richard A. Kutche
Local counsel

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List below.

      /s/ Joel A. Goodman
Joel A. Goodman
Goodman & Nekvasil, P.A.
14020 Roosevelt Blvd., Suite 808
P.O. Box 17709
Clearwater, Florida 33762
Telephone:  727-524-8486
Facsimile:  727-524-8786

**Electronic Mail Notice List**

Daniel T. Balmat
dbalmat@ssd.com, rarroyo@ssd.com

Marion Homer Little, Jr,
little@litohio.com

Joseph Anthony Meckes
jmeckes@ssd.com, sfr_docket@ssd.com

Michael R. Reed
reed@litohio.com