**E-Filed 1/28/2008**

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| THE O.N. EQUITY SALES COMPANY, an Ohio Corporation, | Case Number C 07-03303 |
| Plaintiff, | ORDER[1] GRANTING MOTION TO COMPEL ARBITRATION AND DENYING OTHER MOTIONS |
| v. | [re: docket nos. 20, 22, 26, 29, 34] |
| THOMAS NEMES, et al., | |
| Defendants. | |

**I. BACKGROUND**

1.    **Factual Background**

O.N. Equity Sales Company ("ONESCO") is a full service securities broker dealer, registered in all fifty states and a member of the National Association of Securities Dealers ("NASD"). From March 23, 2004 until January 2, 2005, non-party Gary Lancaster was employed as an independent contractor and registered representative of ONESCO. Prior to and during his

---

[1] This disposition is not designated for publication and may not be cited.

1  association with ONESCO, Lancaster served as Trustee of the Lancorp Fund  and President of

2  Lancorp Financial Group, LLC.  ONESCO contends that Lancaster did not disclose to ONESCO

3  his prior or continuing involvement with the Lancorp entities.

4      In March 2003, prior to his association with ONESCO, Lancaster solicited investors for

5  the Lancorp fund by circulating a detailed Private Placement Memorandum. All potential

6  investors were required to review the Private Placement Memorandum and execute a

7  Subscription Agreement. Pursuant to the Subscription Agreement, the amounts paid by investors

8  initially were deposited in an escrow account and held until the closing date.  By its terms,

9  investors could not "cancel, terminate or revoke" the Subscription Agreement.

10     Defendants never established any form of contractual or customer relationship with

11  ONESCO; it is undisputed that all their dealings were solely with the Lancorp Fund. However,

12  while Defendants' initial irrevocable commitments to purchase Lancorp Fund investments

13  occurred before Lancaster's association with ONESCO, their investment decisions were

14  memorialized in reconfirmation letters dated April 2004, during which time Lancaster was

15  employed by ONESCO. The reason for the delay in finalizing the terms was Lancorp's stated

16  need to make a material alteration in its offering because of insurance industry changes.[2]

17     On May 2, 2007, non-party Scott Walls and other claimants, including Defendants, filed

18  an amended statement of claim as part of an action initiated with the NASD against ONESCO.

19  Claimants sought to hold ONESCO responsible for the Private Placement Memorandum because

20  Lancaster was associated with ONESCO and ONESCO allegedly were negligent in supervising

21  him.

22     On June 22, 2007, ONESCO filed the instant diversity action pursuant to 28 U.S.C. §

23  1332 seeking declaratory and injunctive relief.  ONESCO's complaint seeks a judgment that no

24  form of written arbitration agreement exists between the parties, and thus, they are entitled to

25

26      [2]  Lancorp could not obtain insurance and had to guarantee investments by way of a new
27  bank or broker/dealer obligation. Lancaster circulated a letter to previous investors in April 2004,
    asking them either to: (1) confirm their subscriptions and acknowledge the change; or (2) request
28  withdrawal.

2

1  preliminary and permanent injunctive relief: (1) enjoining Defendants from further proceedings

2  before the NASD; and (2) enjoining Defendants from filing any arbitration claims against

3  ONESCO before the NASD.

4      ONESCO moves to expedite discovery on the issue of arbitrability and to consolidate the

5  hearing on its motion for a preliminary injunction with a trial on the merits.  The Court heard oral

6  argument on all of the motions on October 5, 2007.

7                          **III.  DISCUSSION**

8      1.    **NASD Rule 12200**

9      At issue in all of the motions before the Court, and at the core of the dispute between

10  Plaintiff and Defendants, is NASD Rule 12200.[3]  The rule provides in relevant part:

11      Parties *must* arbitrate a dispute under the Code if:
            • Arbitration under the code is either:
12      (1) Required by a written agreement, or (2) Requested by the customer;
            • The dispute is <u>between a customer and a member or associated person of</u>
13      <u>a  member</u>; *and*
            • The dispute <u>arises in connection with the business activities of the</u>
14      <u>member or the associated person,</u> except disputes involving the insurance
            business activities of a member that is also an insurance company.

15  (emphasis added).  Courts applying this rule have developed a two part test.  "First, the claim

16  must involve a dispute between either an NASD-member and a customer, or an associated person

17  and a customer.  Second, the dispute must arise in connection with the activities of the member

18  or in connection with the business activities of the associated person."  *O.N. Equity Sales Co. v.*

19  *Steinke*, No. CV 07-3170, 2007 WL 2421761 at *3 (N.D. Cal. Aug. 27, 2007); *see also Vestax*

20  *Sec. v. McWood*, 280 F.3d 1078, 1080 (6th Cir. 2002).

21      ONESCO and Defendants dispute: (1) whether this rule requires arbitration in the present

22  case; and (2) whether fact discovery is necessary to answer this question.  ONESCO argues that

23  arbitration is not required because Defendants' investments were made prior to Lancaster's

24  association with ONESCO and thus the events giving rise to the dispute were not between a

25  customer and an associate of ONESCO.  Defendants respond by pointing out that in April 2004,

26

27

28      [3]  Formerly Rule 10301.

                                3

1  while Lancaster was working for ONESCO, Defendants were required to reconfirm their

2  subscriptions or withdraw their funds.  Defendants argue that this commitment made them

3  "customers" of ONESCO within the meaning of Rule 12200.  Defendants also argues that their

4  claim against ONESCO for failure to supervise Lancaster is one that "arises in connection with

5  the business" of ONESCO.

6  　　　ONESCO  argues that discovery is needed to determine the time at which a customer

7  relationship developed between Defendants and Lancaster. Defendants assert that ONESCO has

8  all of the pertinent documents, and that even if additional facts were to come to light during

9  discovery arbitration still would be required.

10  　　　2.  **Discovery**

11  　　　Under Federal Rule 26(b)(1) the Court has discretion to grant discovery  "relevant to the

12  claim or defense of any party."[4] ONESCO requests discovery for the following reasons:

13  　　　•　　"While we believe this simple analysis compels the issuance of injunctive relief,
14  　　　　　Defendants contend otherwise and will attempt to interject "new facts."  By doing
    　　　　　so, Defendants will attempt to create factual disputes as to the occurrence and
    　　　　　timing of events giving rise to Defendants' NASD claims; while at the same time
15  　　　　　inexplicably arguing that no actual dispute exists.  In any event, discovery as to
    　　　　　the actual timing and occurrence of the events giving rise to Defendants' claims is
16  　　　　　clearly appropriate."  Motion to Compel Discovery at 5.

17  　　　•　　"The question of whether . . . misrepresentations or omissions occurred before
18  　　　　　Lancaster became affiliated with ONESCO cannot be fully answered without
    　　　　　discovery on the issue of arbitrability."  *Id*. At 8.

19

20  _____

21  　　　[4] The parties dispute the applicable standard of review–Plaintiff argues that the Federal
    Rules govern discovery relating to judicial actions to compel arbitration and Defendants argue
22  that the more restrictive FAA rules apply.

23  　　　　　The Federal Rules apply to proceedings relating to arbitration only when the
    　　　　　proceeding is judicial in nature and the matters of procedure are not otherwise
24  　　　　　provided for in the Federal Arbitration Act.  *The federal rules apply to judicial*
    　　　　　*proceedings under the FAA, such as the actions brought in district court to*
25  　　　　　*compel arbitration*. For example, a district court may order discovery pursuant to
    　　　　　Rule 26 to provide evidence relevant to the existence of an arbitration agreement
26  　　　　　when deciding whether to compel arbitration.

27
    Moore's Federal Practice, 3d ed. ¶ 81.08; *see also Overseas Oil Transp. Corp. v. Phibro Energy,*
28  *A.G.*, No. 88 Civ. 1302, 1989 WL 77176 at *3 (S.D.N.Y. Feb. 1, 1989).

Case No. C 07-3303
ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DENYING ALL OTHER MOTIONS
(JFLC1)

1   ONESCO doesn't describe with specificity the additional facts it seeks to discover.  Defendants

2   note Lancaster already has provided Plaintiff with a full set of the investment documents he

3   provided to every investor, including the Private Placement Memorandum and the Subscription

4   Agreement.  Defendants also explain that Defendants have complied with Plaintiff's sixty-six

5   prior document requests.

6       Faced with the same arguments in similar cases involving the same underlying facts,

7   other district courts consistently have denied discovery.  As one court in this jurisdiction

8   explained, "there are really no issues that are secret.  All of the documents . . . are available to

9   everyone and it's just going to be a legal argument."   Scheduling conference, *O.N. Equity Sales*

10  *Co. v. Steinke* No. 07-3170, Doc. no. 30.  In light of the extensive documentation that has been

11  provided to date and ONESCO's failure to identify any real need for additional information, the

12  request for discovery will be denied.

13      3.    **Arbitration**

14      A party seeking to compel arbitration must demonstrate that: (1) a valid arbitration

15  agreement exists; and (2) the particular dispute is within the terms of that agreement.  9 U.S.C. §

16  4; *see also United Computer Sys. Inc. v. AT&T Corp.*, 298 F.3d 756, 766 (9th Cir. 2002).

17      *O.N. Equity Sales Co. v. Pals*, No. 07-4049, 2007 WL 2506033 (N.D. Iowa Sept. 6,

18  2007), is instructive.  In *Pals*, as here, ONESCO requested a preliminary injunction against the

19  defendant, an individual who sought to arbitrate claims related to his investment with Lancaster

20  and ONESCO's alleged failure to supervise him.  Addressing the issue of whether a valid

21  arbitration agreement existed, the court framed ONESCO's arguments regarding the applicability

22  of the NASD rule as a question of whether the dispute in fact falls under the existing arbitration

23  agreement.  This Court finds *Pals* persuasive and indistinguishable here.  As in *Pals*, the parties

24  in this case are subject to Rule 12200 and thus have a duty to arbitrate agreement.

25      Where Rule 12200 is involved, courts analyze the question of whether a particular dispute

26  is within the terms of the agreement by applying the two-part test under that Rule.  ONESCO's

27  arguments relate solely to the first part of the test, which requires that the dispute involve both a

28  "customer" and either a NASD corporation or an affiliate thereof.  *Steinke* 2007 WL 2421761 at

*3.  ONESCO  does not dispute that Defendants had a "customer" relationship with *Lancaster*.

Rather, ONESCO argues that the well established rule that "[c]ustomer status [under the NASD

Rules] must be determined as of the time of the events providing the basis for the allegations of

fraud," *Wheat, First Sec. v. Green*, 993 F.2d 814, 820 (11th Cir. 1993), precludes a finding that

Defendants had a customer relationship with *ONESCO*.  Specifically, Plaintiffs argue that in this

case the customer status did not exist at the time of the events giving rise to this dispute because

Defendants allowed themselves to be bound by the Private Placement Memorandum and the

Subscription Agreements circulated prior to Lancaster's employment with ONESCO.[5]  Plaintiff's

Motion for Preliminary Injunction at 17.

Plaintiff's argument overlooks two basic points.  First, other courts analyzing the

relationship between Lancaster's investors and ONESCO consistently have held that the events

occurring after the Private Placement Memorandum and Subscription Agreements were

distributed are sufficient to establish the customer/affiliate relationship required under Rule

12200.  For instance, as the court explained in *Pals*:

> [T]he rules of the private placement offering were materially changed in April
> 2004, which required all subscribers to confirm their subscriptions or receive a
> return of their funds [and] Lancaster held all funds invested in the Lancorp Fund
> private placement offering until May 2004, all of which shows that there was still
> an investment relationship between Lancaster and [the defendant] after Lancaster
> became an 'associated person' of ONESCO, and as such [the defendant] was a
> 'customer of Lancaster after March 2004 . . . .

2007 WL 2506033 at *7.  Similarly, at least one court in this jurisdiction has discussed the

confirmation occurring in May 2004 and explained that "the actual investment using Defendants'

funds was not made until May of 2004–two months after Lancaster became a registered

representative of ONESCO."  *Steinke*, 2007 WL 2421761 at *3 (holding that "accordingly,

Defendants are 'customers' of ONESCO for the purposes of [the NASD Rule]."); *see also O.N.

Equity Sales Co. v. Venrick*, 2007 WL 2705859 at *4 (W.D. Wash. Sept. 17, 2007) ("[t]he actual

investment of defendant's money was not made until two months after Lancaster became a

---

[5]  Plaintiff also argues that Defendants were not "customers" of ONESCO.  The Court
need not address this argument because it is not in dispute.

6

1  registered representative of ONESCO.").  Moreover, as other courts have explained, Defendants'

2  claim against ONESCO for mismanagement of Lancaster "on its own, serves as a basis to

3  compel ONESCO to arbitrate defendant's claim."  *Id*. at *3.  Accordingly, the motion to compel

4  arbitration will be granted.  The remaining motions will be denied as moot.

5  **IV.  ORDER**

6         Good cause therefor appearing, IT IS HEREBY ORDERED that the motion to compel

7  arbitration is GRANTED, all other pending motions are DENIED.

8  DATED: January 28, 2008.

9

10                                          _____

11                                          JEREMY FOGEL
                                            United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 07-3303
ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DENYING ALL OTHER MOTIONS
(JFLC1)

1   This Order has been served upon the following persons:

2

3   Joseph Anthony Meckes          jmeckes@ssd.com

4   Daniel T. Balmat          dbalmat@ssd.com

5   Marion Homer Little, Jr.          little@litohio.com

6   Michael R. Reed          reed@litohio.com

7   Joel A. Goodman          gn.law@verison.net

8   Richard Angelo Kutche          rakutche@pacbell.net

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 07-3303
ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DENYING ALL OTHER MOTIONS
(JFLC1)