1   ZEIGER, TIGGES & LITTLE LLP
    Marion H. Little, Jr., Esq. (admitted *pro hac vice*)
2   Michael R. Reed, Esq. (admitted *pro hac vice*)
    3500 Huntington Center
3   41 South High Street
    Columbus, OH  43215
4   Telephone:     (614) 365-9900
    Facsimile:     (614) 365-7900
5   Email: reed@litohio.com

6   SQUIRE, SANDERS & DEMPSEY L.L.P.
    Joseph A. Meckes (State Bar No. 190279)
7   Daniel T. Balmat (State Bar No. 230504)
    One Maritime Plaza, Suite 300
8   San Francisco, CA  94111-3492
    Telephone:  +1.415.954.0200
9   Facsimile:   +1.415.393.9887
    Email:  jmeckes@ssd.com
10  Email:  dbalmat@ssd.com

11  Attorneys for Plaintiff
    THE O.N. EQUITY SALES COMPANY

12                     UNITED STATES DISTRICT COURT

13                    NORTHERN DISTRICT OF CALIFORNIA

14                          (SAN JOSE DIVISION)

15

16  THE O.N. EQUITY SALES COMPANY,        Case No.  C07-03303 JF (RS)
    an Ohio Corporation,
17                                        The Honorable Jeremy Fogel
                    Plaintiff,
18                                        **(FILED VIA ECF/PACER)**
            vs.
19                                        **PLAINTIFF'S REQUEST FOR COURT TO
    THOMAS NEMES, INDIVIDUALLY            ENTERTAIN MOTION FOR RELIEF
20  AND AS TRUSTEE OF THE THOMAS          FROM JUDGMENT UNDER CIVIL RULE
    NEMES TRUST, and MICHAEL J.           60(b)(2) & (3) DURING THE PENDENCY
21  BENKERT, INDIVIDUALLY AND ON          OF APPEAL**
    BEHALF OF SHORE 2 SHORE
22  ENTERPRISES, INC., and JERRY J.
    THOMAS, INDIVIDUALLY AND AS
23  TRUSTEE OF THE JERRY J.               Date:          May 23, 2008
    THOMAS AND NANCY M. THOMAS            Time:          9:00 a.m.
24  1998 INTER VIVOS TRUST,  and NANCY M. Courtroom:      3, 5th Floor
    THOMAS, INDIVIDUALLY AND AS
25  TRUSTEE OF THE JERRY J. THOMAS        Complaint Filed:    June 22, 2007
    AND NANCY M. THOMAS 1998 INTER
26  VIVOS TRUST.

27                    Defendants.

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

PLAINTIFF'S REQUEST FOR COURT TO ENTERTAIN MOTION FOR RELIEF FROM       Case No. C07-03303 JF (RS)
JUDGMENT UNDER CIVIL RULE 60(b)(2) & (3) DURING THE PENDENCY OF APPEAL

1    TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

2         PLEASE TAKE NOTICE that Plaintiff The O.N. Equity Sales Company ("ONESCO"),

3    pursuant to Civil Rule 60(b)(2) & (3) and *Williams v. Woodford*, 384 F.3d 567, 586 (9th Cir.

4    2004), hereby requests that the Court state its desire to entertain and/or grant Plaintiff's proposed

5    motion for relief from its prior judgment granting Defendants' motion to compel arbitration and

6    denying ONESCO's motion for preliminary injunction.  [Docket No. 48.]  Should the Court

7    desire to entertain and/or grant such motion, ONESCO respectfully requests that the Court

8    provide it with notice of such desire so that ONESCO may seek a remand of the case from the

9    Ninth Circuit Court of Appeals.

10        Subsequent to the Court's entry of decision in this case, which prohibited ONESCO from

11   taking discovery, ONESCO has uncovered evidence indicating that Defendants, through their

12   reliance on false affidavits their counsel procured from a non-party, misidentified both the

13   occurrence and timing of events that constitute the factual predicate for their NASD claims.  This

14   evidence contradicts the findings upon which the Court's prior decision was based.  As a result,

15   Rule 60(b) relief is both necessary and proper.   The basis for ONESCO's proposed motion is set

16   forth in the attached Memorandum of Points and Authorities.

17

18                                          Respectfully submitted,

19   Dated: April 15, 2008                  ZEIGER, TIGGES & LITTLE LLP

20

21                                          By:_____/s/_____
                                                          Michael R. Reed

22
                                            Attorneys for Plaintiff
23                                          THE O.N. EQUITY SALES COMPANY

24

25

26

27

28

**SQUIRE, SANDERS & DEMPSEY L.L.P.**
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

PLAINTIFF'S REQUEST FOR COURT TO ENTERTAIN MOTION FOR RELIEF FROM    Case No. C07-03303 JF (RS)
JUDGMENT UNDER CIVIL RULE 60(b)(2) & (3) DURING THE PENDENCY OF APPEAL

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................... 1

II.   STATEMENT OF FACTS ...................................................................................... 4

    A.    The Three Effective Dates ......................................................................... 5

    B.    The May 2004 "Effective" Date Has Nothing To Do With Defendants' Claims ........................................................................................................ 7

    C.    The Relevant Date is the February, 2005 Effective Date........................... 8

III.  LAW & ARGUMENT ............................................................................................ 9

    A.    ONESCO Is Entitled To Relief From Judgment Under Civil Rule 60(b)(2).......... 9

        1.    The Evidence Existed At The Time Of The Court's Decision, Was Discovered After The Court Issued Its Decision, And ONESCO Exercised Due Diligence In Seeking Discovery Prior To Such Decision ......................................................................................... 10

        2.    The New Evidence Is Material To The Existence/Scope Of An Agreement To Arbitrate Between Defendants And ONESCO ................ 11

        3.    The New Evidence Is Not Cumulative Or Merely Impeaching............... 14

        4.    The New Evidence Would Have Been Likely To Change The Disposition Of The Case .......................................................................... 15

    B.    ONESCO Is Entitled To Relief From Judgment Under Civil Rule 60(b)(3)........ 16

IV.   CONCLUSION ....................................................................................................... 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SQUIRE, SANDERS & DEMPSEY L.L.P.**
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

1

# TABLE OF AUTHORITIES

2

**Page**

3

## FEDERAL CASES

4

*Bensadoun v. Jobe-Riatt,*
  316 F.3d 171 (2d Cir. 2003)................................................................................................... 12

5

*BMA Financial Services, Inc. v. Guin,*
  164 F. Supp. 2d 813 (W.D. La. 2001)..................................................................................... 13

6

*California Fina Group, Inc. v. Herrin,*
  379 F.3d 311 (5th Cir. 2004)................................................................................................... 13

7

8

*Collins & Aikman Products Co. v. Building Systems, Inc.,*
  58 F.3d 16 (2d Cir. 1995)........................................................................................................ 15

9

*Dean Witter Reynolds v. Byrd,*
  470 U.S. 213 (1985)................................................................................................................. 15

10

11

*Estate of Murdoch v. Commonwealth of Pennsylvania, City of Philadelphia,*
  432 F.2d 867 (3d Cir. 1970).................................................................................................... 17

12

*Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.,*
  264 F.3d 770 (8th Cir. 2001)................................................................................................... 12

13

14

*Hornor, Townsend & Kent, Inc. v. Hamilton,*
  218 F. Supp. 2d 1369 (N.D. Ga. 2002) .................................................................................... 3

15

*Jones v. Aero/Chem,*
  921 F.2d 875 (9th Cir. 1990)................................................................................................... 10

16

17

*Peacock Records, Inc. v. Checker Records, Inc.,*
  365 F.2d 145 (7th Cir. 1966)................................................................................................... 16

18

*Rosebud Sioux Tribe v. A & P Steel, Inc.,*
  733 F.2d 509 (8th Cir. 1984)................................................................................................... 10

19

20

*Schultz v. Butcher,*
  24 F.3d 626 (4th Cir. 1994)..................................................................................................... 17

21

*Simula, Inc. v. Autoliv, Inc.,*
  175 F.3d 716 (9th Cir. 1999)................................................................................................... 13

22

23

*Williams v. Woodford,*
  384 F.3d 567 (9th Cir. 2004)................................................................................................... 10

24

25

26

27

28

# TABLE OF AUTHORITIES
### (Continued)

**Page**

## UNREPORTED CASES

*Hornor, Townsend & Kent, Inc. v. Hamilton*,
   2003 WL 23832424 (N.D. Ga. Sept. 29, 2003) ......................................................................... 1

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   1993 WL 135953 (N.D. Cal. April 15, 1993) ......................................................................... 16

*The O.N. Equity Sales Company v. Emmertz*,
   Case No. 07-2670 (E.D. Pa. Dec. 19, 2007) ........................................................................... 4

**SQUIRE, SANDERS &
DEMPSEY L.L.P.**
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

-iii-

**MEMORANDUM IN SUPPORT**

## I.    INTRODUCTION

*"In summary, the Hamiltons made two separate investments in ETS phones. <u>The Court's Order was explicitly based on the premise that both of those investments were made during the time period that Tommy Fountain was an associated person of HTK.</u> It now appears that the first of those investments was made in August of 1999, before Tommy Fountain became associated with HTK in September of 1999. <u>If the investment was made through Tommy Fountain when he was not associated with HTK, then the Hamiltons were not the customers of an associated person, which fact must be determined 'as of the time of the events providing the basis for the allegations' of wrongdoing.</u> ... The new evidence allows HTK to substantiate its denial of any obligation to arbitrate 'with enough evidence to make the denial colorable.' <u>Thus, the Court must reach a different conclusion under the Wheat, First test, and it now concludes that HTK is entitled to litigate the question of arbitrability fully before this Court, as provided in Section 4 of the FAA.</u>"*

\*        \*        \*

*"At the very least, <u>it appears to the Court that the Hamiltons misrepresented the date of their first investment in ETS phones.</u> In their original affidavit, the Hamiltons stated that their first investment was made on October 1, 1999. October 1, 1999, however, appears to be the date that their lease agreement with ETS started, not the date they originally purchased the phone securities. ..."*

[*Hornor, Townsend & Kent, Inc. v. Hamilton*, 2003 WL 23832424, \*7, 10 (N.D. Ga. Sept. 29, 2003) (emphasis added).]

It's déjà vu all over again. Counsel for Defendants Thomas Nemes, individually, and as Trustee of the Thomas Nemes Trust; Michael J. Benkert, individually, and on behalf of Shore 2 Shore Enterprises, Inc.; and Jerry J. and Nancy M. Thomas, individually, and as Trustees of the Jerry J. Thomas and Nancy M. Thomas 1998 Inter Vivos Trust (collectively, "Defendants") – the same counsel who represented the defendant investors in *Hornor* – has once again manipulated the NASD and judicial processes in order to force an NASD member firm into arbitration where it has no agreement to arbitrate. And once again, the NASD member firm, which was denied an

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

PLAINTIFF'S REQUEST FOR COURT TO ENTERTAIN MOTION FOR RELIEF FROM
JUDGMENT UNDER CIVIL RULE 60(b)(2) & (3) DURING THE PENDENCY OF APPEAL

Case No. C07-03303 JF (RS)

opportunity to conduct discovery, has subsequently uncovered evidence that directly contradicts the investors' asserted bases for arbitrability.

In this case, Defendants obtained an order compelling arbitration of all of their claims against Plaintiff The O.N. Equity Sales Company ("ONESCO") with the aid of two materially false declarations their counsel procured from Gary Lancaster. ONESCO only recently discovered the falsity of these declarations. But Defendants and/or their counsel certainly were aware of much, if not all, of the contrary information before the Court's entry of judgment in this case. It is, thus, no wonder why Defendants have so adamantly opposed discovery at every stage of the proceedings.

To recap, on January 28, 2008, this Court issued its decision granting Defendants' motion to compel arbitration and denying all other motions, including ONESCO's motion for preliminary injunction. [Docket No. 48 ("Decision").] The Court concluded that Defendants are "customers" entitled to arbitrate their claims against ONESCO pursuant to NASD Rule 12200 because of certain events that allegedly occurred after Lancaster became associated with ONESCO. [Decision at 6.] Specifically, the Court held that events including a purported "material alteration" in the Lancorp Fund offering in April 2004 and the Lancorp Fund's purported "effective" date in May 2004 established the arbitrability of Defendants' claims. [*Id.* at 2, 6.] The problem is that the only basis for these findings (including materiality), in the limited record before the Court, is Lancaster's declarations and the attachments thereto, which ONESCO has been afforded no opportunity to challenge.

Simply put, the factual basis for the Court's findings in this regard is inaccurate. Recent testimony elicited from Lancaster on cross examination as part of an arbitration hearing reveals that Lancaster's declarations, and his statements regarding the materials attached thereto, are replete with *false* statements and omissions, and the truth as to the timing of the underlying events is inconsistent with the Court's factual findings. [*See* Exh. A to Affidavit of Marion H. Little Jr. ("Little Aff'd"), filed contemporaneously herewith") (relevant excerpts of Lancaster's February

SQUIRE, SANDERS & DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CA 94111-3492

PLAINTIFF'S REQUEST FOR COURT TO ENTERTAIN MOTION FOR RELIEF FROM JUDGMENT UNDER CIVIL RULE 60(b)(2) & (3) DURING THE PENDENCY OF APPEAL    Case No. C07-03303 JF (RS)

4-6, 2008 Testimony) (hereinafter "Lancaster Tr.").][1] Specifically, despite Defendants' repeated efforts to prevent ONESCO from learning the truth, ONESCO finally had an opportunity in February 2008 to examine Lancaster, under oath, as part of an NASD arbitration held in Atlanta, Georgia. During the hearing, Lancaster offered testimony that reveals: (a) the actual "effective date" of the investment for purposes of Defendants' claims was *after Lancaster was terminated from ONESCO*; (b) a purported April 2004 "change" in promised insurance coverage was hardly "material"; and (c) the material falsity of significant portions of his two declarations – declarations procured by Defendants' counsel and filed by Defendants as part of this case. [*See* Lancaster Tr., Volume III, at 10; 21-22.] In fact, Lancaster readily admitted the falsity of key portions of the declarations submitted to this Court.

In short, the "evidence" procured by opposing counsel and upon which the Court, in significant part, based its arbitrability decision is riddled with inaccuracies. The same thing happened in *Hornor*. In that case, Defendants' counsel represented investors attempting to force arbitration against an NASD member. After the broker-dealer initiated a court action challenging the arbitrability of their claims, the investors opposed all efforts by the broker-dealer to obtain discovery and ultimately secured an order allowing arbitration to proceed without delay for discovery. *Hornor, Townsend & Kent, Inc. v. Hamilton*, 218 F. Supp. 2d 1369 (N.D. Ga. 2002). The court's decision was based on an *unchallenged* sworn statement submitted by the defendants that a transaction they claimed was subject to arbitration had occurred on October 1, 1999 – three weeks after the sales representative with whom they had dealt became associated with Hornor Townsend.

Later, during discovery in the arbitration, Hornor Townsend learned that the transaction in question had actually occurred on August 2, 1999 – more than a month *before* the sales representative became its associated person – not on October 1, *as the investors had claimed in their sworn statement*. After Hornor Townsend presented this new evidence to the court, the

---

[1]     Consistent with local practice, we are not filing the entire transcript of Lancaster's hearing testimony herewith. Rather, we are filing only the relevant excerpts referenced herein. ONESCO, however, is separately filing a complete copy of the transcript of Lancaster's hearing testimony, along with all exhibits referenced therein.

SQUIRE, SANDERS & DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CA 94111-3492

PLAINTIFF'S REQUEST FOR COURT TO ENTERTAIN MOTION FOR RELIEF FROM          Case No. C07-03303 JF (RS)
JUDGMENT UNDER CIVIL RULE 60(b)(2) & (3) DURING THE PENDENCY OF APPEAL

1   court stated its intent to *grant relief from judgment under Civil Rule 60(b)(2)*, conditioned upon

2   remand of an appeal of the arbitrability issue from the Eleventh Circuit. *See Hornor, Townsend*,

3   2003 WL 23832424 (Exh. B to Little Aff'd). Based on the newly discovered evidence, which

4   contradicted the investors' sworn statement, the court set aside its prior decision and held that

5   Hornor Townsend was entitled to "fully" litigate the issue of arbitrability. *Id.* at *7.

6        Just as in *Hornor*, Defendants' counsel has convinced this Court to compel arbitration, at

7   least in part, on the basis of false declarations that identify certain, self-serving dates as

8   establishing the basis for arbitrability. Just as in *Hornor*, Defendants' counsel convinced the

9   Court to reach this conclusion without permitting ONESCO an opportunity to conduct relevant

10  discovery.

11       As it has often been said, "sunshine is the great disinfectant." Civil Rule 60(b) provides a

12  mechanism for ensuring that the sun continues to shine, even after a court issues a final judgment.

13  Here, the light cast by a cross examination, where all counsel had an opportunity to participate,

14  reveals the *truth*: all of the key events (i.e., the "factual predicate") for Defendants' NASD

15  claims occurred either before or after Lancaster's association with ONESCO. As Defendants'

16  counsel conceded in another federal district court action involving ONESCO, Defendants are

17  simply not entitled to arbitrate any claims based on events occurring outside of Lancaster's

18  association with ONESCO. *See The O.N. Equity Sales Company v. Emmertz*, Case No. 07-2670,

19  *4 (E.D. Pa. Dec. 19, 2007) ("Emmertz confirmed that he is only seeking arbitration for those

20  actions that took place subsequent to March 23, 2004, when Lancaster became a representative of

21  ONESCO, and prior to Lancaster's termination on January 3, 2005.") (Exh. C to Little Aff'd) Just

22  as in *Hornor*, this Court should grant ONESCO relief from judgment under Civil Rule 60(b), and

23  reopen the case for relevant discovery and an evidentiary hearing.

24  ## II.    **STATEMENT OF FACTS**

25       Gary Lancaster was an associated person of ONESCO, on an independent contractor

26  basis, from March 23, 2004 to January 3, 2005. Lancaster purportedly served as Trustee of the

27  Lancorp Financial Fund Business Trust ("Lancorp Fund"), a private placement unaffiliated with

28  ONESCO. As Lancaster testified during the recent NASD hearing, investors in Lancorp Fund

SQUIRE, SANDERS &
DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CA 94111-3492

1  purportedly suffered losses when, beginning in February 2005, the Lancorp Fund invested

2  significant funds in Megafund – later revealed to be a Ponzi scheme.  [*See* Lancaster Tr., Vol. III,

3  at 4-5 (stating that Megafund investment did not begin until at least February 2005).]

4        Defendants, who never had any type of relationship with ONESCO, executed their

5  irrevocable commitments to purchase investments months before Lancaster became affiliated

6  with ONESCO.  Defendant Nemes executed a subscription agreement with Lancorp Fund on or

7  about July 15, 2003; Defendant Benkert executed a subscription agreement with Lancorp Fund on

8  or about June 23, 2003; and Defendants Jerry Thomas and Nancy Thomas executed a subscription

9  agreement with Lancorp Fund on or about August 14, 2003.  Nonetheless, in their various briefs,

10  Defendants urged the Court to ignore the dates of their irrevocable commitments, and instead

11  asserted – on the basis of the Lancaster declarations – that their purported April 2004

12  "reconfirmation" of their Lancorp Fund investments following a purported "material" change in

13  promised insurance coverage, and the Lancorp Fund's purported May 2004 "effective" date

14  clearly established the arbitrability of their claims.  Ultimately, the Court compelled arbitration of

15  all claims without delay for discovery or an evidentiary hearing.

16        **A.**    **The Three Effective Dates.**

17        As made clear by Lancaster's recent sworn testimony, Defendants' asserted bases for

18  arbitrability turn out to be the biggest red herring of all time.  Indeed, Lancaster confirmed that

19  the Lancorp Fund had at least three effective dates and that, contrary to his June 18, 2007

20  declaration [Exh. 2 to Defendant's Motion to Compel Arbitration (Docket No. 29)], the purported

21  May 2004 "effective" date was not the first such date.  Specifically, Lancaster testified that the

22  Lancorp Fund originally became "effective" in March 2003, and that it had an additional

23  "effective" date on February 1, 2005.  [Lancaster Tr., Vol. III, at 6-7.]  Neither Defendants in

24  their papers nor Lancaster in his declarations disclosed the February 2005 "effective" date.

25        So let's be clear about what actually happened.  First, a year before he was even registered

26  with ONESCO, Lancaster formed the Lancorp Fund.  The "effective" date on the private

27  placement memorandum is March 17, 2003.  As part of this offering process, and before he had

28  even applied for registration with ONESCO, Lancaster retained counsel [Lancaster Tr., Vol. II, at

1    166-67], accountants [*Id.* at 159], filed a Reg-D filing with the SEC [*Id.* at 167], made various

2    filings with state regulators [*Id.* at 170-72], distributed the private placement memorandum [*Id.* at

3    160], received subscription agreements from investors [*Id.* at 185-86], and had collected over $3

4    million [*Id.* at 187].  In the case of Defendants, they signed their subscription agreements in June,

5    July and August 2003.

6            The second "effective" date, May 14, 2004, supposedly represents the date until which

7    Lancaster "waited … to see which investors would stay in the offering and which investors would

8    withdraw their money and cancel their investment."  [June 2007 Declaration, at 3.]   In fact, this

9    supposed "effective" date related *only* to the Lancorp Fund's deposits with Tricom, an investment

10   that ultimately resulted in no losses to the Lancorp Fund investors.  [Lancaster Tr., Vol. II, at 25-

11   26.] As Lancaster testified, the Lancorp Fund opened the Tricom account in March 2004 and

12   began depositing investors' monies thereafter.  [*Id.*]  In December 2004, Lancaster learned that

13   the monies deposited with Tricom had, in fact, not been invested as originally contemplated.  [*Id.*]

14   Instead, the funds simply sat in the Tricom account until, in December 2004, the Lancorp Fund

15   withdrew its entire Tricom investment, and placed all of the investors' monies in an account with

16   Bank of America.  [*Id.*]  Although the Lancorp Fund's Tricom investment did not result in the

17   contemplated earnings, it resulted in *no loss* of the investors' principal investments.  [*See*

18   Lancaster Tr., Vol III, at 12.]

19           Lancaster's hearing testimony also revealed that, after the Lancorp Fund recovered its

20   Tricom investment in December 2004, and continuing into February 2005, the Fund gave all

21   investors an opportunity to obtain a full refund of their investment.  Indeed, in January 2005 –

22   after Lancaster's termination – the Fund had still not secured a viable investment alternative.

23   Lancaster communicated this information to the investors with the intent that they would at that

24   time, *withdraw or confirm their investments*:

25        Q.    And what the investors know is that in January 2005, you still have not secured
              a viable investment alternative for them?

26
       A.    Correct.
27
       Q.    And when you're communicating this in January 2005, it is after you have left
28            ONESCO?

PLAINTIFF'S REQUEST FOR COURT TO ENTERTAIN MOTION FOR RELIEF FROM
JUDGMENT UNDER CIVIL RULE 60(b)(2) & (3) DURING THE PENDENCY OF APPEAL

Case No. C07-03303 JF (RS)

1    A.    Yes.

2    *    *    *

3    Q.    And it's fair to say that what you wanted the investors to do when you
         communicated that there had been this inappropriate conduct [with respect to
4        the Tricom investment], was to make a choice.  Stay in or stay out?

5    A.    Correct.

6    Q.    And if they told you they were out, they were out, right?

7    A.    Yes.

8    Q.    And if they stayed in they were in?

9    A.    Correct.

10                                    [Lancaster Tr., Vol. II, at 282-83.]

11

12   **B.    The May 2004 "Effective" Date Has Nothing To Do With Defendants' Claims.**

13        So which "effective" date actually is relevant to the Court's inquiry?  It certainly is not the

14   May 2004 effective date cited in the Court's prior decision, which related only to the Fund's

15   Tricom investment.  Indeed, in his June 2007 declaration, Lancaster stated that the May 2004

16   "effective" date followed an April 2004 change in promised insurance coverage that, according to

17   Lancaster, constituted a "material" change in the investment.  He now admits that even this

18   statement is not accurate.

19   Q.    Now, if we then go to what is marked as Exhibit B to the declaration …
         this is the letter that was sent to the investors with respect to the insurance,
20        correct?

21   A.    Correct.

22   Q.    And if I recall your testimony on direct examination, the investors had a
         choice of choosing to have insurance for this particular fund?
23
     A.    Correct.
24
     Q.    And only about a third of them elected that type of coverage?
25
     A.    Yes.
26
     Q.    And, in fact, that coverage never existed?
27
     A.    Correct.
28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CA 94111-3492

-7-

Q.    And what you communicated in April 2004 is, in fact, there would be no coverage?

A.    Correct.

Q.    *As a practical matter, what you told the investors in this letter is that even though there would be no insurance coverage, you alternatively would have security through the bank, the bank holding the monies*?

A.    *Correct*.

Q.    So in terms of preserving principal, there was no material difference in what had existed prior to April 5, 2004, and what occurred after April 5, 2004?

A.    Correct.

Q.    *And so, functionally, in terms of what the representations were to the investors as to the preservation of the principal, it was – it was the same at all points in time during the relationship*?

A.    *Correct*.

[Lancaster Tr., Vol. III, at 12-13 (emphasis added).]

In short, the purported "material" change in April 2004, by Lancaster's own admission, actually reflected no change in the protection promised to investors. Lancaster's sworn testimony directly contradicts his prior statement in the June 18, 2007 declaration procured by Defendants' counsel.[2] The purported May 2004 "effective" date related to an investment not implicated by Defendants' NASD claims, and was premised upon a *non-material* change in promised insurance coverage. We now know that such date is simply irrelevant to the arbitrability of Defendants' claims.

C.    **The Relevant Date is the February, 2005 Effective Date.**

Instead, based on Lancaster's testimony, it is now clear that the "effective" date for the

---

[2]    Lancaster's testimony also reveals the falsity of his claim that he expressly disclosed his involvement with the Lancorp Fund (not Lancorp LLC, a completely different entity) to ONESCO in May 2004. During the arbitration hearing, Lancaster admitted that he did not return such a form to ONESCO and that he likely *fabricated* the document dated May 2004 in 2005 *after the failure of Megafund*. [*See* Lancaster Tr., Vol. II, at 241-43.]

Likewise, In his July 2007 declaration [Exh. 4 to Defendant's Motion to Compel Arbitration], Lancaster further stated that during his tenure with ONESCO, the firm never provided him with any copies of the firm's procedures or compliance manuals. Once again, during the arbitration, and in response to questioning by one of the arbitrators, Lancaster admitted that this statement was inaccurate:  he had, in fact, received a copy of ONESCO's February 2004 Compliance Manual.  [Lancaster Tr., Vol. II, at 82-85.]

SQUIRE, SANDERS & DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CA 94111-3492

Lancorp Fund's Megafund investment – the investment that actually resulted in the losses sustained by Defendants – was February 1, 2005, *after Lancaster's termination by ONESCO*.

> Q.   And, in fact, the investment that ultimately gave rise to the losses sustained by the investors, that particular investment became effective in February of 2005?
>
> A.   Correct.
>
> Q.   And that information was not included in the affidavit of June 18, 2007, is it?
>
> A.   Correct.

[Lancaster Tr. Vol. III, at 11.]

In short, contrary to Lancaster's June 2007 declaration, the May 2004 "effective" date is not the pertinent date for purposes of the Court's arbitrability analysis. Any decision by investors such as Defendants to maintain their Lancorp Fund investments in or prior to May 2004 ultimately had no bearing on the actual losses suffered after February 1, 2005. For purposes of that loss, it was Defendants' decisions in January/February 2005 to continue with their Lancorp Fund investments – despite learning of the failed Tricom investment – that gives rise to their claims.

Thus, even using Defendants' arbitrability yardstick, the *actual* facts indicate that Defendants' decisions to continue with their Lancorp Fund investments *in 2005*, prior to the loss of which they now complain, is dispositive – not any decision by them in April or May 2004 to continue with such investment in light of a *non-material* change in promised insurance coverage. In short, all of the key events giving rise to Defendants' claims, including their execution of the Subscription Agreements and their *2005* "reconfirmations", occurred when Lancaster *was not associated with ONESCO*.

## III.   LAW & ARGUMENT

### A.   ONESCO Is Entitled To Relief From Judgment Under Civil Rule 60(b)(2).

Civil Rule 60(b)(2) provides: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for …

-9-

SQUIRE, SANDERS &
DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CA 94111-3492

PLAINTIFF'S REQUEST FOR COURT TO ENTERTAIN MOTION FOR RELIEF FROM
JUDGMENT UNDER CIVIL RULE 60(b)(2) & (3) DURING THE PENDENCY OF APPEAL          Case No. C07-03303 JF (RS)

1   newly discovered evidence which by due diligence could not have been discovered in time to

2   move for a new trial under Rule 59(b) …."  Pursuant to Rule 60(b)(2):

3           the movant must show the evidence (1) existed at the time of the
            trial, (2) could not have been discovered through due diligence, and
4           (3) was "of such magnitude that production of it earlier would have
            been likely to change the disposition of the case."

5           [*Jones v. Aero/Chem*, 921 F.2d 875, 878 (9th Cir. 1990).][3]

6

7           Rule 60(b) "was intended to preserve the delicate balance between the sanctity of final

8   judgments … and the incessant command of a court's conscience that justice be done in light of

9   all the facts."  *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 515 (8th Cir. 1984).

10  Accordingly, Rule 60(b) is "intended to prevent the judgment from becoming a vehicle of

11  injustice … [and it is] to be given a liberal construction and is to be construed liberally to do

12  substantial justice."  *Id.* (citations omitted).  As discussed below, all of the elements for Rule

13  60(b)(2) relief are readily established here.

14          **1.**      **The Evidence Existed At The Time Of The Court's Decision, Was**
                        **Discovered After The Court Issued Its Decision, And ONESCO**
15                      **Exercised Due Diligence In Seeking Discovery Prior To Such**
                        **Decision.**
16

17          Obviously, ONESCO obtained the benefit of Lancaster's NASD hearing testimony *after*

18  the Court issued its decision on January 28, 2008.  Such information, however, inasmuch as it

19  relates to 2004 and 2005 events, clearly existed at the time of the Court's decision. More

20  importantly, ONESCO exercised due diligence in attempting to obtain this information prior to

21  the Court's decision, but it was denied the right to engage in discovery that would have entailed

22  an opportunity to depose Defendants and Lancaster.

23

24  _____

25  [3]      We note, at the outset, that ONESCO has appealed this Court's order granting Defendants' motion
    to compel arbitration to the Ninth Circuit Court of Appeals.  "To seek Rule 60(b) relief during the
    pendency of an appeal, 'the proper procedure is to ask the district court whether it wishes to entertain the
26  motion, or to grant it, and then move [the Ninth Circuit], if appropriate, for remand of the case."  *Williams*
    *v. Woodford*, 384 F.3d 567, 586 (9th Cir. 2004).  Consistent with *Williams*, ONESCO herein requests that
27  the Court entertain its proposed Rule 60(b) motion.  Should the Court indicate its desire to entertain and/or
    grant the proposed motion, ONESCO will move for remand from the Ninth Circuit.
28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CA 94111-3492

-10-

PLAINTIFF'S REQUEST FOR COURT TO ENTERTAIN MOTION FOR RELIEF FROM          Case No. C07-03303 JF (RS)
JUDGMENT UNDER CIVIL RULE 60(b)(2) & (3) DURING THE PENDENCY OF APPEAL

1    *Hornor*, which applied the Eleventh Circuit's similar Rule 60(b)(2) standard, is directly on

2    point.  In addressing the "diligence" element of Rule 60(b)(2), the *Hornor* court recognized that

3    the plaintiff broker-dealer was denied discovery and, thus, "it had no ability to obtain [the

4    relevant] information" until it was subsequently produced as part of discovery in the arbitration

5    proceeding.  *Hornor*, 2003 WL 23832424, at * 5.  According to the court:

6         The bill of sale was in the exclusive control of the Hamiltons, who
          did not produce it until they were required to do so in the NASD
7         arbitration.  Moreover, *this Court granted the Hamiltons' Motion
          *for Protective Order to Preclude Discovery in the August 6, 2002*
8         *Order*.  The Court specifically concluded that "HTK is not entitled
          to engage in discovery in order to depose the Fountains [the
9         representatives], the Hamiltons, or any other potential witnesses."
          The Court pointed out that both parties had the opportunity to
10        present affidavits and documentary evidence. … Yet, the Hamiltons
          did not produce this documentary evidence, *and HTK did not have*
11        *the ability to compel them to do so*.

12                                              [*Id.* (emphasis added).]

13

14        The same is true here.  This Court, at the urging of Defendants, denied ONESCO an

15   opportunity to engage in discovery that would have led it to discover the falsity of Lancaster's

16   affidavits, and the inaccuracy of Defendants' assertions regarding the timing of relevant events.

17   ONESCO exercised due diligence in seeking such discovery, but its efforts were unsuccessful.

18               **2.      The New Evidence Is Material To The Existence/Scope Of An
                          Agreement To Arbitrate Between Defendants And ONESCO.**
19
          "[T]he evidence is obviously material.  Under NASD Rule
20        10301(a), HTK is required to arbitrate any claim between the
          Hamiltons and an associated person of HTK arising in connection
21        with the activities of the associated person.  As this Court noted in
          its Order, Tommy Fountain became associated with HTK on
22        September 11, 1999. … The August purchase agreement is thus
          highly material because it indicates that the Hamiltons' first ETS
23        investment might have occurred in August of 1999, before Tommy
          Fountain even became associated with HTK.  *HTK is not required*
24        *to arbitrate claims between customers and unassociated persons*
          *that arose because of the activities of those unassociated persons.*
25        *HTK can be required to arbitrate with the Hamiltons only if Tommy*
          *Fountain was associated with HTK at the time the Hamiltons made*
26        *their ETS investments*.  The August purchase agreement is material
          to a determination whether that is the case or not."
27
                                         [*Hornor*, 2003 WL 23832424, at *6 (emphasis added).]
28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CA 94111-3492

-11-
PLAINTIFF'S REQUEST FOR COURT TO ENTERTAIN MOTION FOR RELIEF FROM          Case No. C07-03303 JF (RS)
JUDGMENT UNDER CIVIL RULE 60(b)(2) & (3) DURING THE PENDENCY OF APPEAL

Under *Wheat, First Sec., Inc. v. Green*, 993 F.2d 814, 820 (11th Cir. 1993), "customer" status under NASD Rule 10301(a) must be determined as of the time of "*the occurrence of events that constitute the factual predicate for the causes of action contained in the arbitration complaint*." This is because, as the *Wheat* court explained: "We cannot imagine that any NASD member would have contemplated that its NASD membership would require it to arbitrate claims which arose while a claimant was a customer of another member merely because the claimant subsequently became its customer. …" *Id.* at 820. This is a *factual* inquiry. And facts/information relating to the timing of relevant events is, obviously, material to this analysis.

Regardless of whether NASD "customer" status is viewed as an issue of contract "existence" or "scope," this factual inquiry cannot be resolved solely on the unilateral, untested submissions of one party to the dispute. *See Bensadoun v. Jobe-Riatt*, 316 F.3d 171 (2d Cir. 2003). In *Bensadoun*, the court applied a presumption in favor of arbitration in considering the issue of an investor's "customer" status under Rule 10301(a), but nonetheless reversed and remanded the district court's decision dismissing a broker's suit for declaratory and injunctive relief with respect to arbitrability. *Id.* at 176 (recognizing presumption as guiding analysis). It did so because the district court failed to properly resolve the *factual issues* essential to its resolution of the investor's "customer" status. *Id.* at 177. Specifically, the district court erred when it "liberally construed" what little evidence was in the record with respect to the claimant's "customer" status *against the plaintiff* while "appear[ing] to have resolved against [the plaintiff] the factual issues he sought to present." *Id.* at 174-75. Thus, despite the presumption, the district court was required to permit the party opposing arbitration an opportunity to challenge the purported "customer's" submissions before determining "customer" status. *Id.* at 175-76.

But, let's be clear: as circuit courts have expressly recognized, Defendants' "customer" status in this case presents an issue of contract "existence," to which no presumption applies. For instance, as the Eighth Circuit stated in *Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.*, 264 F.3d 770, 771 (8th Cir. 2001):

> The essence of the dispute before this court is whether [the NASD claimant] was a customer of [the broker-dealer] under the NASD Code. If the answer is yes, then, according to the NASD Code, [the

SQUIRE, SANDERS &
DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CA 94111-3492

-12-

PLAINTIFF'S REQUEST FOR COURT TO ENTERTAIN MOTION FOR RELIEF FROM
JUDGMENT UNDER CIVIL RULE 60(b)(2) & (3) DURING THE PENDENCY OF APPEAL

Case No. C07-03303 JF (RS)

1    broker-dealer] has agreed to submit any claim by a customer to
     arbitration, thus, the motion to stay litigation and compel arbitration
2    should be granted.  *If the answer is no, then there has been no*
     *agreement to submit to arbitration, and the litigation shall*
3    *continue*.

4                          [*Innovex, Inc.*, 264 F.3d at 771 (emphasis added).]

5    The Fifth Circuit has reached the same conclusion:

6        [T]he federal policy favoring arbitration does not apply in a
         situation like this when a court is determining whether an
7        agreement to arbitrate exists. … ("Thus, *until [the] court*
         *determines that the Defendant-Investors were 'customers' and are*
8        *therefore entitled to invoke arbitration pursuant to [Rule*
         *10301(a)], [the] court may not give the Defendant-Investors the*
9        *benefit of the federal policy favoring arbitration*.").

10                         [*California Fina Group, Inc. v. Herrin*, 379 F.3d 311, 316 n.6 (5th
                           Cir. 2004) (quoting *BMA Financial Services, Inc. v. Guin*, 164 F.
11                         Supp. 2d 813, 818 (W.D. La. 2001)) (emphasis added).]

12

13       Likewise, the Eleventh Circuit has recognized that "customer" status presents an issue of

14   contract existence, where such status is the focus of a factual dispute.  *Wheat, First*, 993 F.2d at

15   820.  Specifically, the *Wheat* court stated that:  "[t]he Appellants were not customers of Wheat

16   First at the time of the allegedly fraudulent … transactions.  Thus, *they cannot invoke the NASD*

17   *Code to compel Wheat First to arbitrate*."  *Id.* (emphasis added).

18       Cases addressing NASD "customer" status in circumstances where there is no dispute as

19   to the occurrence and timing of events giving rise to the claims simply have no application where,

20   as here, the investor's "customer" status is the focus of a *factual dispute*.  Under these

21   circumstances, as in *Wheat*, the issue of "customer" status presents a fundamental issue of

22   contract *existence* – an issue that can be resolved only after discovery and an evidentiary hearing.

23   *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) (a trial is proper, under the

24   Federal Arbitration Act, if "the making of the arbitration agreement or the failure, neglect, or

25   refusal to perform the same be in issue.").

26       The new evidence uncovered by ONESCO is directly relevant to the occurrence and

27   timing of the "factual predicate" for Defendants' NASD claims.  As a result, the new evidence is

28   directly relevant, under *Wheat* and *Bensadoun* to Defendants' "customer" status under NASD

SQUIRE, SANDERS &
DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CA 94111-3492

PLAINTIFF'S REQUEST FOR COURT TO ENTERTAIN MOTION FOR RELIEF FROM
JUDGMENT UNDER CIVIL RULE 60(b)(2) & (3) DURING THE PENDENCY OF APPEAL

Case No. C07-03303 JF (RS)

1    rules.  The new evidence tends to directly contradict the "events" identified by Defendants –

2    through Lancaster's declarations – as providing the "factual predicate" for their claims.

3    Assuming arguendo that it is the Lancorp Fund's effective date and/or Defendants'

4    "reconfirmation" of their investments that provide the critical dates for purposes of arbitrability,

5    the new evidence reveals it is the 2005 events that are _material_ to this analysis.

6                    **3.      The New Evidence Is Not Cumulative Or Merely Impeaching.**

7                Certainly, the newly discovered evidence directly impacts Lancaster's credibility.  But its

8    significance, as described above, goes well beyond impeachment.  Indeed, just as in *Hornor*, the

9    newly-discovered evidence "tends to prove a substantive matter at dispute in this litigation," i.e.,

10   the occurrence and timing of events giving rise to Defendants' NASD claims.  *See Hornor*, 2003

11   WL 23832424, at *6.  Specifically, the new evidence reveals, contrary to Lancaster's

12   declarations, that the actual "effective" date for purposes of Defendants' _losses_ was in February

13   2005, after Lancaster's termination by ONESCO.  Any decision by Defendants to continue with

14   their Lancorp Fund investments in April or May 2004 is – in light of this new evidence –

15   irrelevant to arbitrability.

16               As noted by the court in *Hornor*, such newly-discovered evidence, which directly relates

17   to the occurrence and timing of the "factual predicate" for an investor's arbitration claims:

18                    tends to prove a substantive matter at dispute in this litigation.  In
                      sum, the [new evidence] creates an entirely different time-line for
19                    the Hamiltons' first ETS investment than the one that the Hamiltons
                      gave this Court before it issued its Order in this case.  It is neither
20                    cumulative nor merely impeaching.

21                    [*Hornor*, 2003 WL 23832424, at *6 (emphasis added).]

22

23               The same is true here.  Although Defendants, with the aid of Lancaster's declarations,

24   established a self-serving timeline of "relevant" events, the newly discovered evidence reveals

25   that their timeline _omitted_ the key events occurring outside of Lancaster's tenure with ONESCO.

26   As discussed above, these events are essential to the Court's arbitrability analysis and, at

27   minimum, reveal the inequity of unchallenged acceptance of one party's submissions.

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CA 94111-3492

-14-

PLAINTIFF'S REQUEST FOR COURT TO ENTERTAIN MOTION FOR RELIEF FROM          Case No. C07-03303 JF (RS)
JUDGMENT UNDER CIVIL RULE 60(b)(2) & (3) DURING THE PENDENCY OF APPEAL

1

### 4.    The New Evidence Would Have Been Likely To Change The Disposition Of The Case.

2

3        ONESCO submits that, with the benefit of this new evidence, the Court, at the very least,

4    would have concluded that ONESCO was entitled to conduct discovery and present evidence that

5    directly contradicts Defendants' unilateral submissions and, thus their asserted factual bases for

6    arbitrability.  Just as in *Hornor*, the new evidence "allows [ONESCO] to make a different and

7    more persuasive argument than the one it made before," both with respect to the necessity for

8    discovery and an evidentiary hearing, and the ultimate arbitrability of Defendants' claims.

9    *Hornor*, 23832424, at *6.  Like in *Hornor*:

10              [t]he new evidence allows [ONESCO] to substantiate its denial of
               any obligation to arbitrate 'with enough evidence to make the
11              denial colorable.' … Thus, the Court must reach a different
               conclusion under the *Wheat, First* test, and … now conclude[] that
12              *[ONESCO] is entitled to litigate the question of arbitrability fully
               before this Court, as provided in Section 4 of the FAA*.

13

14                               [*Id.* at *7 (emphasis added).]

15        In addition, such evidence makes clear the necessity for severance of any arbitrable claims

16    from those that are clearly non-arbitrable, such as those claims arising out the newly-identified

17    2005 events – including the actual Megafund losses following Defendants' reconfirmation of

18    their Lancorp Fund investments.  As the Second Circuit stated:

19              BSI contends that, because one of the claims is clearly arbitrable,
               and because all of the claims are related to a single set of facts,
20              federal policy disfavors bifurcation of proceedings in which some
               claims are presented to arbitrators and some are decided by a court
21              of law.  This argument is frivolous.  The Supreme Court has
               directly addressed and soundly rejected it:  'The preeminent
22              concern of Congress in passing the [Arbitration] Act was to enforce
               private agreements … and that concern requires that we rigorously
23              enforce agreements to arbitrate, even if the result is piecemeal
               litigation …' *If some claims are non-arbitrable, while others are
24              arbitrable, then we will sever those claims subject to arbitration
               from those adjudicable only in court*.

25

26                   [*Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d
                    16, 20 (2d Cir. 1995) (quoting *Dean Witter Reynolds v. Byrd*, 470
                    U.S. 213, 221 (1985)) (emphasis added).]

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CA 94111-3492

-15-

PLAINTIFF'S REQUEST FOR COURT TO ENTERTAIN MOTION FOR RELIEF FROM          Case No. C07-03303 JF (RS)
JUDGMENT UNDER CIVIL RULE 60(b)(2) & (3) DURING THE PENDENCY OF APPEAL

1    In other words, severance of non-arbitrable claims is mandatory under U.S. Supreme

2    Court precedent.  For this additional reason, in light of the newly discovered evidence, ONESCO

3    is entitled to relief from judgment under Civil Rule 60(b)(2).

4    **B.    ONESCO Is Entitled To Relief From Judgment Under Civil Rule 60(b)(3).**

5    "We hold that where it appears that perjured testimony may have
     played some part in influencing the court to render a judgment, the
6    perjury will not be weighed, on a motion to set aside the judgment.
     This seems self-evident. *The factual question which the district*
7    *court failed to answer is, 'Was the judgment obtained in part by the*
     *use of perjury?' . . . . If it was, then it was clearly the duty of the*
8    *district court to set aside the judgment, because poison had*
     *permeated the fountain of justice.* Thus, in that event, this taint had
9    affected the entire proceeding in the court below, although we find
     no indication that any counsel herein was a party to any
10   wrongdoing."

11   [*Peacock Records, Inc. v. Checker Records, Inc.*, 365 F.2d 145,
     147 (7th Cir. 1966) (emphasis added).]
12

13   In this case, the "taint" of Lancaster's materially false affidavits is revealed in the Court's

14   findings set forth at page 2 *supra*.  Because these conclusions were based, at least in part, on

15   materially false affidavits, ONESCO was prevented from fully and fairly presenting its case in

16   opposition to arbitration.  As a result, it also is entitled to relief from judgment under Civil Rule

17   60(b)(3).

18   Rule 60(b)(3) provides:  "On motion and upon such terms as are just, the court may

19   relieve a party or a party's legal representative from a final judgment, order, or proceeding for …

20   fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other

21   misconduct of the adverse party … ."  To prevail under Rule 60(b)(3), the movant must "(1)

22   prove by clear and convincing evidence that the verdict was obtained through fraud,

23   misrepresentation or other misconduct. (2) [E]stablish that the conduct complained of prevented

24   the losing party from fully and fairly presenting his case or defense."  *Intel Corp. v. Advanced*

25   *Micro Devices, Inc.*, 1993 WL 135953, *3 (N.D. Cal. April 15, 1993) (Exh. D to Little Aff'd).

26   In this case, Defendants and/or their counsel clearly had access to information reflecting

27   that the key events, for purposes of Lancorp Fund's investment in Megafund and Defendants'

28   alleged losses arising therefrom, occurred in 2005.  Yet their counsel procured and filed

SQUIRE, SANDERS &
DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CA 94111-3492

-16-

PLAINTIFF'S REQUEST FOR COURT TO ENTERTAIN MOTION FOR RELIEF FROM          Case No. C07-03303 JF (RS)
JUDGMENT UNDER CIVIL RULE 60(b)(2) & (3) DURING THE PENDENCY OF APPEAL

1   declarations from Lancaster that omitted the critical dates for purposes of arbitrability. After

2   Defendants had filed these false declarations, the Court concluded that discovery was unnecessary

3   and summarily compelled arbitration of all of Defendants' claims.[4]

4       As another court has recognized, Rule 60(b)(3) relief is especially appropriate where a

5   party's misrepresentation proves instrumental in a court's grant of summary disposition. As the

6   court stated in *Estate of Murdoch v. Commonwealth of Pennsylvania, City of Philadelphia*, 432

7   F.2d 867, 870 (3d Cir. 1970):

8           Clause (3) of Rule 60(b), F.R.Civ.P., makes a misrepresentation by
            an adverse party a ground for relieving a party from a final
9           judgment against him. *We think that such relief is especially*
            *appropriate where the judgment in question is a summary one, the*
10          *entry of which has precluded a trial on the merits.*

11                              [Emphasis added.]

12

13  In *Estate of Murdoch*, the court granted Rule 60(b)(3) relief where, as here, its prior grant of

14  summary judgment was based on an affidavit whose falsity was revealed in documents uncovered

15  by the movant following the grant of summary judgment. *Id.* at 869.

16      In summarily compelling arbitration without delay for discovery, the Court apparently

17  relied upon two declarations that have proven to be false. The taint of Lancaster's false affidavits

18  has permeated the proceeding, and has prevented ONESCO from receiving a full and fair

19  opportunity to litigate the issue of arbitrability. Under the circumstances "the fairness and

20  integrity of the fact finding process" simply outweighs any desire to preserve the finality of

21  judgments. *Schultz v. Butcher*, 24 F.3d 626, 631 (4th Cir. 1994).

22

23

24  ---

[4]     It is worth noting that Defendants' counsel also procured a third declaration from Lancaster dated
25  December 3, 2007, that contains additional, materially false statements. Although Defendants did not file
    the December 3, 2007 declaration in this case, the misstatements therein are further enlightening here. For
26  instance, in the December 2007 declaration, Lancaster stated that he sent an "outside business disclosure"
    reporting form regarding Lancorp Fund to ONESCO in May 2004, following his purported completion of
27  an online educational course. On cross examination, Lancaster admitted that that he did not take the
    course until June 2004, and that it could not have prompted him to submit a purported disclosure one
28  month earlier. [Lancaster Tr., Vol. III, at 25-26.]

SQUIRE, SANDERS &
DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CA 94111-3492

PLAINTIFF'S REQUEST FOR COURT TO ENTERTAIN MOTION FOR RELIEF FROM          Case No. C07-03303 JF (RS)
JUDGMENT UNDER CIVIL RULE 60(b)(2) & (3) DURING THE PENDENCY OF APPEAL

IV.    **CONCLUSION**

For all of the reasons stated herein, the Court should grant relief from judgment under Civil Rule 60(b) and provide ONESCO with an opportunity to fully litigate the issue of arbitrability.  Therefore, ONESCO respectfully requests that the Court provide it with notice of its intent to entertain and/or grant the proposed motion, so that ONESCO may seek leave/remand of the case from the Ninth Circuit.

Respectfully submitted,

Dated: April 15, 2008

ZEIGER, TIGGES & LITTLE LLP

By: _____/s/_____

Michael R. Reed

Attorneys for Plaintiff
THE O.N. EQUITY SALES COMPANY

SANFRANCISCO/257237.1

SQUIRE, SANDERS &
DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CA 94111-3492

-18-
PLAINTIFF'S REQUEST FOR COURT TO ENTERTAIN MOTION FOR RELIEF FROM          Case No. C07-03303 JF (RS)
JUDGMENT UNDER CIVIL RULE 60(b)(2) & (3) DURING THE PENDENCY OF APPEAL