IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE O.N. EQUITY SALES COMPANY,<br>    Plaintiff, | :<br>:<br>: |
| v. | :   CIVIL ACTION |
| LAWRENCE F. EMMERTZ JR.,<br>    Defendant. | :   NO. 07-2670<br>:<br>:<br>:<br>: |

**Memorandum and Order**

YOHN, J.                                                                December ____, 2007

The O.N. Equity Sales Company ("ONESCO") brings this action against defendant Lawrence Emmertz seeking a declaration that it has no obligation to arbitrate any claims brought by Emmertz under the National Association of Securities Dealers, Inc. ("NASD") Code of Arbitration Procedure ("NASD Arbitration Code") and to enjoin the pending arbitration. The parties have filed multiple motions regarding the issue of arbitrability and whether discovery on this issue is necessary. I previously granted Emmertz's motion for a protective order prohibiting discovery pending the outcome of both Emmertz's motion to compel arbitration and ONESCO's motion for an order to preclude summary disposition of defendant's motion to compel arbitration pending discovery to be taken on the issue of arbitrability. For the reasons discussed below, I will grant Emmertz's motion to compel arbitration and will deny ONESCO's motion for an order precluding summary judgment of Emmertz's motion to compel arbitration pending discovery. The remaining motions will be dismissed as moot, and ONESCO's complaint will be dismissed.

1

EXHIBIT C

I.   **Factual and Procedural Background**

Emmertz is a private investor. The cause of this lawsuit is Emmertz's investment in a private placement offered by Lancorp Financial Fund Business Trust ("Lancorp"). Gary Lancaster served as a trustee for Lancorp, and he made a private placement memorandum ("PPM") on Lancorp available to Emmertz and others on or about March 17, 2003. Lancaster required all potential investors, including Emmertz, to review a copy of the PPM prior to investing in Lancorp. The PPM defined Lancorp as a Nevada business trust that is "an unregistered closed-end non-diversified management investment company." (Compl. Ex. A.)

Emmertz signed an Accredited Investor's Letter and Subscription Agreement for Lancorp on January 6, 2004 and apparently transferred $100,000 to Lancaster. (*See* Compl. Exs. C & D.) The investors' initial payments were not invested immediately after they paid the money, but were held in escrow by Lancaster until the closing date of Lancorp. (Compl. Ex. A. at I). Additionally, the PPM stated that it would be amended or supplemented if any material changes were made to the Lancorp offering prior to the closing. (*Id.* at ii.) Although Emmertz's offer to purchase was initially irrevocable, the offer from Lancorp was "subject to withdrawal, cancellation, or modification by the trust without notice." (*Id.* at iii.) Furthermore, at any time prior to the maximum number of units being sold to investors, Lancorp could terminate the offering, at its sole discretion. (*Id.* at 4.)

Lancorp investors were initially offered the opportunity to purchase insurance, which would insure them against Lancorp's failure to return their funds. Due to changes in the insurance industry in 2003 and 2004, however, Lancaster was not able to obtain this insurance. He replaced this insurance with a validated, written obligation from a bank or broker-dealer

2

acting as a custodian that provided the same level of protection as the outside insurance. After finding this replacement, Lancaster required all initial investors to acknowledge the changes and confirm their subscriptions with these changes included or to withdraw their subscriptions.

On March 23, 2004, while the investment in Lancorp was still pending, Lancaster became a representative of ONESCO.[1] Lancaster sent a letter dated April 5, 2004 to Lancorp investors informing them that Lancorp was in the final stages of underwriting participation agreements, outlining the changes that had occurred with reference to the insurance issues, and asking the investors to confirm their desire to proceed as a subscriber or to withdraw their subscriptions. On April 8, 2004, Emmertz acknowledged the changes in the offering and confirmed that he wanted to proceed as a subscriber in Lancorp under the new terms Lancaster provided. (Def. Mot. to Compel Arbitration Ex. 3.) Some of the other investors withdrew their funds. Lancorp became effective on May 14, 2004, and Emmertz's funds were then invested in Lancorp. Lancorp invested a significant portion of its funds in Megafund, which was later discovered to be a Ponzi scheme. As a result, many of Lancorp's investors, including Emmertz, sustained significant losses, and Lancorp was placed in receivership.

Emmertz initiated an arbitration action against ONESCO pursuant to the NASD Arbitration Code on or about March 16, 2007. He filed an amended statement of claim on or about April 25, 2007 and a second amended statement of claim on or about May 3, 2007. Emmertz specifically alleges in his second amended NASD pleading that ONESCO is liable to Emmertz for the monetary losses he sustained because it (1) never inspected Lancaster's office; (2) failed to review Lancaster's incoming and outgoing correspondence, e-mails, and sales

---

[1] ONESCO terminated Lancaster's relationship with it on January 3, 2005.

3

literature; (3) failed to verify independently that Lancaster was not selling unapproved securities through his outside business; (4) learned of Lancaster's involvement with Lancorp in September 2004 when the Pennsylvania Securities Commission informed ONESCO that it was investigating Lancaster's outside activities, but failed to inspect his office and independently confirm this; (5) had already been sanctioned by the Securities and Exchange Commission for not maintaining an adequate supervisory system and was required to adopt new supervisory procedures, but failed to do so; (6) failed to investigate Lancaster's lack of production; (7) improperly allowed Lancaster to "park" his securities license; (8) negligently failed to investigate Lancaster's background and negligently failed to place Lancaster under special supervision; and (9) reported inaccurate information to NASD regarding Lancaster. (Compl. Ex. E.) Emmertz also alleges that ONESCO is liable to him because ONESCO, acting through Lancaster, made numerous false representations to Emmertz, including misrepresentations that (1) the securities purchased by Lancorp would have a liquidation value greater than the amount paid for them, or that they would be insured; and (2) the investment was safe, insured, and did not have sales charges. (Id.) He further alleges that ONESCO, acting through Lancaster, failed to disclose material facts concerning Lancorp and Megafund, including the fact that Lancorp invested Emmertz's money in Megafund, which was a Ponzi scheme, and Lancorp and Megafund were not registered with the Securities and Exchange Commission or with Pennsylvania. (Id.) During a telephone conference with counsel on December 13, 2007, Emmertz confirmed that he is only seeking arbitration for those actions that took place subsequent to March 23, 2004, when Lancaster became a representative of ONESCO, and prior to Lancaster's termination on January 3, 2005.

On April 3, 2007, NASD sent ONESCO's Chief Operating Officer a letter informing her

that NASD dispute resolution rules require ONESCO to arbitrate Emmertz's dispute. (Def. Mot. to Compel Arbitration Ex. 1.) ONESCO filed the current action against Emmertz on June 25, 2007. ONESCO asks the court to enjoin the arbitration and to declare that ONESCO is not obligated to arbitrate Emmertz's claims under the NASD Arbitration Code. This action is one of twenty-one similar actions brought by ONESCO against Lancorp investors in Arizona, California, Colorado, Florida, Iowa, Michigan, Minnesota, New Jersey, Pennsylvania, Texas, Vermont, Virginia, Washington, and West Virginia.[2]

ONESCO filed motions to consolidate a preliminary injunction hearing with a trial on the merits and for a preliminary injunction on August 9, 2007. The following day, ONESCO moved for an order authorizing the parties to engage in immediate discovery on the issue of arbitrability. Emmertz filed a motion to compel arbitration pursuant to 9 U.S.C. § 4 of the Federal Arbitration Act and a motion for a protective order on August 14, 2007. I held a scheduling conference with counsel on August 16, 2007. On October 25, 2007, ONESCO filed its fourth motion, a motion pursuant to Federal Rule of Civil Procedure 56(f) for an order precluding summary disposition of

---

[2] The parties have filed nearly identical motions in all of these actions. Orders are available in ten of these cases, and in seven, the courts have granted defendants' motions to compel arbitration without allowing the discovery requested by ONESCO. *See O.N. Equity Sales Co. v. Wallace*, No. 07-0859, 2007 WL 4106476 (S.D. Cal. Nov. 15, 2007); *O.N. Equity Sales Co. v. Prins*, __ F. Supp. 2d __, No. 07-3075, 2007 WL 3286406 (D. Minn. Nov. 7, 2007); *O.N. Equity Sales Co. v. Gibson*, __ F. Supp. 2d __, No. 07-0362, 2007 WL 2840400 (S.D. W. Va. Sept. 27, 2007); *O.N. Equity Sales Co. v. Robinson*, No. 3:00 CV 378, 2007 WL 2840477 (E.D. Va. Sept. 27, 2007); *O.N. Equity Sales Co. v. Venrick*, 508 F. Supp. 2d 872 (W.D. Wash. 2007); *O.N. Equity Sales Co. v. Pals*, 509 F. Supp. 2d 761 (N.D. Iowa 2007); *O.N. Equity Sales Co. v. Steinke*, 504 F. Supp. 2d 913 (C.D. Cal. 2007). The remaining three courts denied ONESCO's request for discovery but have not yet ruled on the issue of arbitration. *See O.N. Equity Sales Co. v. Cui*, No. 07-2844, 2007 WL 3071553 (N.D. Cal. Oct. 17, 2007); *O.N. Equity Sales Co. v. Rahner*, No. 07-1323, 2007 WL 2908297 (D. Colo. Oct. 3, 2007); *O.N. Equity Sales Co. v. Scott*, No. 07-269, Doc. No. 15, Order Staying Proceedings Pending Ruling on Motion to Compel Arbitration (N.D. Fla. Sept. 7, 2007).

Emmertz's motion to compel arbitration pending discovery to be taken on the issue of arbitrability. I granted Emmertz's motion for a protective order pending the outcome of both his motion to compel arbitration and ONESCO's motion to preclude summary disposition of Emmertz's motion to compel.

The parties' primary dispute for purposes of the pending motions is whether ONESCO is required to arbitrate Emmertz's claims arising between March 23, 2004 and January 3, 2005. For the reasons addressed herein, Emmertz's motion to compel arbitration will be granted, and ONESCO's motion for an order to preclude summary disposition of Emmertz's motion to compel pending discovery will be denied. The remaining motions will be dismissed as moot.

## II. Discussion

### A. Standard

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 634, 648 (1986) (citations omitted); *see also Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp.*, 868 F.2d 573, 576 (3d Cir. 1989) (per curiam). "The question whether the parties have submitted a particular dispute to arbitration . . . is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citations omitted); *see also Laborers' Int'l Union of N. Am.*, 868 F.2d at 576. When determining whether the parties entered into a valid arbitration agreement, the court "decides only whether there was an agreement to arbitrate, and if so, whether the agreement is valid." *Great W. Mortgage Corp. v. Peacock*, 110 F.3d 222, 228 (3d Cir. 1996) (citing 9 U.S.C. § 2). The "court is not to consider the merits of the claims giving

rise to the controversy, but is only to determine . . . whether there is a valid agreement to arbitrate." *Id.* If the court finds there is an agreement to arbitrate, the disposition of the merits is left to the arbitrator. *Id.*

The Third Circuit has set forth a two-prong inquiry for courts to use when determining whether to compel arbitration. Under this two-prong test, the issues are: "(1) Did the parties seeking or resisting arbitration enter into a valid arbitration agreement? (2) Does the dispute between those parties fall within the language of the arbitration agreement?" *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998) (citations omitted). Additionally, "when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, [the court] should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Par-Knit Mills v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980).

### B.   Discovery Is Not Necessary to Determine Arbitrability

ONESCO argues that discovery is necessary to determine the issue of arbitrability. It seeks depositions from Emmertz, Lancaster, and nonparty Robert Reese,[3] as well as additional documents, to determine the following: who sold the securities to Emmertz; which

---

[3] ONESCO wants to depose Robert Reese because the Subscription Agreement Emmertz signed January 6, 2004 requests the following information: "NAME OF REFERENCING PARTY: Provide the name of the persons(s) or entity who initially informed you of Lancorp Financial Fund" and Emmertz listed Reese as the referencing party. Based on this information, ONESCO argues that Lancaster may not have actually induced Emmertz to invest in Lancorp. The form, however, requests the name of the person initially informing Emmertz of Lancorp, not the name of the person who actually sold securities to Emmertz. Moreover, to the extent Reese's potential role in inducing Emmertz to invest in Lancorp is an issue, it is an issue that pertains to the underlying merits of Emmertz's NASD claim and ONESCO's liability, and not to the issue of arbitrability.

7

misrepresentations and omissions induced Emmertz's investment, who made these misrepresentations and omissions, and when they were made; whether Emmertz considered the April 2004 change in insurance and other changes to the agreement to be material; and whether Lancaster is credible.[4]

Questions of the scope of discovery are left to the sound discretion of the trial court. *See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1034 (3d Cir. 1997); *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1213 (3d Cir. 1984). Commentators have expressed increasing concern over the delays and expenses caused by discovery, and recent amendments to Federal Rule of Civil Procedure 26 have allowed greater judicial involvement in the discovery process to alleviate the delays and expenses caused by over-discovery. *See* Fed. R. Civ. P. 26 Advisory Comm. Notes. These concerns are relevant here because the parties have presented multiple exhibits with undisputed facts, and the evidence before the court is sufficient to determine the issue of arbitrability without further discovery.

The goals of arbitration are also relevant in determining the extent to which discovery is necessary in the current dispute over whether the parties are required to arbitrate. These goals

---

[4] ONESCO additionally argues that *Bensadoun v. Jobe-Riat*, 316 F.3d 171 (2d Cir. 2003), demonstrates that discovery is necessary here. In *Bensadoun*, the Second Circuit ordered the district court to stay arbitration pending discovery because it determined there was a potential issue of material fact regarding whether the investor had a customer relationship with Bensadoun, the NASD-member firm. However, the Second Circuit clearly stated that if undisputed facts required the issue of arbitrability to be decided against Bensadoun, then further proceedings would not have been necessary. In this case, as will be seen, there are undisputed facts that show there is a valid arbitration agreement between the parties and the current dispute falls within the scope of that agreement. Thus, further proceedings are not necessary.

As ONESCO has identified, there may be factual disparities that pertain to the underlying transactions, but these disparities go to the merits of the allegations Emmertz made in his NASD statement of claim and whether ONESCO is liable to Emmertz. These factual issues are not relevant to the arbitrability issue before me.

include resolving disputes in a timely and cost-efficient manner and promoting judicial economy. *PaineWebber, Inc. v. Hofmann*, 984 F.2d 1372, 1380 (3d Cir. 1993). Notably, discovery may serve to undermine the advantages offered by arbitration. *Cf. Hay Group, Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 409 (3d Cir. 2004) (citing *COMSAT Corp. v. Nat'l Sci. Found.* 190 F.3d 269, 276 (4th Cir. 1999)) (discussing how over-discovery in arbitration proceedings can undermine arbitration's advantages).

As analyzed below, the multiple exhibits filed by the parties provide undisputed facts regarding Emmertz's investment relationship with Lancaster while Lancaster was a representative of ONESCO. These undisputed facts lead to the determination that there is a valid arbitration agreement between the parties and that the dispute falls within the scope of that agreement. Thus, more evidence is not necessary in order to decide the issue of arbitrability. Further, discovery in this case would only incur expense and delay, which the Federal Rules and the goals of arbitration seek to avoid.[5] Because the undisputed evidence before me allows for a determination on the issue of arbitrability, I will deny ONESCO's motion to preclude summary disposition of Emmertz's motion to compel arbitration pending discovery.

    C.    **A Valid Arbitration Agreement Exists Under the NASD Code of Arbitration and the Dispute Falls Within the Scope of the Agreement**

As a member of NASD, ONESCO is bound by NASD's rules and regulations. The NASD Arbitration Code requires "the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association" that is "between or among members or associated persons and public customers." NASD Code Arb. P. R. 10100l.

---

[5] The fact that none of the other district courts deciding this issue have allowed the type of discovery ONESCO seeks is also significant.

9

Further,

> [a]ny dispute, claim, or controversy eligible for submission under the Rule 10100 Series between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code, as provided by any duly executed and enforceable written agreement or upon the demand of the customer.

*Id.* at R. 10301(a). Emmertz has demanded an arbitration under the NASD Arbitration Code, and the NASD Arbitration Code binds ONESCO to arbitrate under Rule 10301(a) if (1) Emmertz is a "customer" of ONESCO, and (2) the dispute arose in connection with ONESCO's business or in connection with Lancaster's activities.

### 1.   Emmertz was a Customer of ONESCO

The first requirement for arbitration is that the dispute arise between a customer and a NASD member, such as ONESCO, or an associated person, such as Lancaster. Emmertz did not deal directly with ONESCO; therefore, for the requirement to be satisfied, Lancaster must have been an associated person, and Emmertz must have been a customer.

One of the definitions NASD provides for an associated person is "a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member." NASD Bylaws Art. I(rr). Lancaster fit this description during the period he was a representative of ONESCO, from March 23, 2004 to January 3, 2005. Further, the parties do not dispute that Lancaster was a person associated with ONESCO during this time. Thus, Lancaster was an associated person for purposes of the NASD Arbitration Code.

The parties dispute whether Emmertz was a customer of ONESCO. Neither the Supreme Court nor the Third Circuit has defined "customer" as used in the context of the NASD

10

Arbitration Code. The NASD Arbitration Code also does not explicitly define the term "customer." The General Provisions section of the NASD Rules provides that its definitions are to apply unless the context provides otherwise. When defining customer, this section states that "[t]he term 'customer' shall not include a broker or dealer."[6] R. 0120(g). The NASD Arbitration Code does not provide another definition of the term "customer"; therefore, the definition from the general provisions applies here.[7] Under this definition, Emmertz was ONESCO's customer because he was not a broker or dealer.

Persuasive opinions from other courts that have examined the relationship between the associated person and the investor also lead to the conclusion that Emmertz was a customer of ONESCO. *See Vestax Securities Corp. v. McWood*, 280 F.3d 1078, 1081-82 (6th Cir. 2002) (concluding that securities buyers were customers of the NASD-member firm for purposes of

---

[6] Emmertz relies on this definition, as used in *Multi-Financial Securities Corp. v. King*, 386 F.3d 1364, 1368 (11th Cir. 2004), to argue that he is a customer under the NASD Arbitration Code. In *King*, the Eleventh Circuit addressed the definition of customer when determining whether an investor was a customer of a NASD-member firm and its association person for purposes of the NASD Arbitration Code. The court concluded that "Rules 10101(c) and 10301(a) . . . unambiguously provide that the [investor] is a customer as long as she is not a broker or dealer; nothing in the Code directs otherwise or requires more." *Id.* at 1368. Thus, using the simple definition of customer from *King* and the NASD Arbitration Code, Emmertz argues persuasively that he is a customer because he is not a broker or a dealer.

[7] Other definitions of "customer" are provided for in specific contexts within other NASD rules. For example, in the Business Conduct section of the NASD Conduct Rules, "'customer' means any person who, in the regular course of such member's business, has cash or securities in the possession of such member." R. 2270(b). In the Margin Requirements section of the Conduct Rules, "'customer' means any person for whom securities are purchased or sold or to whom securities are purchased or sold whether on a regular way, when issued, delayed or future delivery basis" and "any person for whom securities are held or carried and to or for whom a member organization extends, arranges or maintains any credit." R. 2520(a)(3). Because these definitions clearly apply in the context of other specific sections, they are not applicable to the NASD Arbitration Code.

11

Rule 10301 because they had trading accounts with agents of the NASD-member firm); *John Hancock Life Insurance Co. v. Wilson*, 254 F.3d 48, 59-60 (2d Cir. 2001) (relying on the terminology in the NASD Arbitration Code to determine that investors were customers of the NASD-member firm under Rule 10301 because they were clients of a person associated with the NASD member); *Daughtery v. Washington Square Securities, Inc.*, 271 F. Supp. 2d 681, 689 (W.D. Pa. 2003) (determining that the plaintiffs were customers within the meaning of Rule 10301(a) because a registered representative of a NASD-member firm sold them financial products). In the case at bar, Emmertz invested in Lancorp through Lancaster, who was an associated person of ONESCO from March 23, 2004 to January 3, 2005. This relationship between Emmertz and Lancaster compels the conclusion that Emmertz was ONESCO's customer for purposes of Rule 10301 during that period.

ONESCO does not address the NASD Arbitration Code's definition of customer. Instead, ONESCO argues that the alleged misrepresentations and omissions are the basis of Emmertz's NASD pleading. ONESCO further contends that the time at which they induced Emmertz's investment in Lancorp, which is prior to Lancaster's association with ONESCO, controls the determination of whether Emmertz is a customer. ONESCO basis its argument on *Wheat, First Securities, Inc. v. Green*, 993 F.2d 814, 820 (11th Cir. 1993). In *Wheat*, the Eleventh Circuit addressed whether the NASD Arbitration Code required Wheat to arbitrate disputes brought by investors. The *Wheat* investors bought securities through an agent of Marshall Securities. 993 F.2d at 815. The Eleventh Circuit determined that Wheat was not required to arbitrate the claims of the investors who had purchased their stock from a Marshall Securities agent because these investors were not Wheat's "customers" under the NASD

12

Arbitration Code. *Id.* at 820. The court held "that customer status for the purposes of the 'customer' requirement of [the] NASD Code . . . must be determined as of the time of the events providing the basis for the allegations of fraud." *Id.*

*Wheat* is distinguishable from the present case because the *Wheat* investors' only claim was that Marshall Securities's agent made material misrepresentations to them. The investors did not make any allegations regarding any agents' actions while the agents were affiliated with Wheat, nor any claims regarding Wheat's actions. ONESCO attempts to argue that, similar to the investors in *Wheat*, Emmertz's only claim is that Lancaster made misrepresentations and omissions prior to his association with ONESCO, which induced Emmertz to invest. Emmertz's NASD pleading, however, clearly encompasses more than this narrow claim; his claim includes allegations that ONESCO was negligent in its supervision of Lancaster and that it failed in its oversight duties. Moreover, some of the specific actions regarding Emmertz's investment in Lancorp, including the actual investment of Emmertz's funds in Lancorp, took place while Lancaster was affiliated with ONESCO. These facts preclude application of *Wheat* to this case.[8] Moreover, in the telephone conference with counsel on December 13, 2007, Emmertz confirmed that he was seeking arbitration only with reference to the activities of ONESCO and Lancaster between March 23, 2004 and January 3, 2005.

---

[8] ONESCO also relies on *Hornor, Townsend & Kent, Inc. v. Hamilton*, No. 01-2979, 2005 WL 5895396 (N.D. Ga. Sept. 6, 2005) to support its claim that Emmertz decided to invest in Lancorp and signed pertinent documents in January 2004, so he cannot be ONESCO's customer because Lancaster was not a representative of ONESCO at that time. *Hornor* is also factually distinguishable from the case at bar. In *Hornor*, the investors not only decided to invest in the stocks before the agent became affiliated with the NASD-member firm, but the transaction was also completed before the agent became affiliated with the firm. *Id.* at *4. In the case currently before the court, however, Emmertz had an investment relationship with Lancaster while Lancaster was a representative of ONESCO.

13

In conclusion, undisputed facts show that Emmertz had an investment relationship with Lancaster while Lancaster was a representative of ONESCO. These undisputed facts include Lancaster's April 5, 2004 letter to Emmertz; Emmertz's April 8, 2004 confirmation that he would proceed with his subscription; Lancaster's holding of Emmertz's funds in escrow until Lancorp's effective date; and Lancorp's effective date of May 14, 2004. Thus, Emmertz was a customer of ONESCO through Lancaster as an associated person for purposes of Rule 10301(a).

### 2. The Dispute Arose in Connection with the Business of Any Member or Activities of an Associated Person

The second requirement for arbitration under the NASD Arbitration Code is that the dispute arose out of or in connection with the business of any member or the activities of an associated person. ONESCO contends that the dispute did not arise in connection with its business or in connection with Lancaster's activities while he was affiliated with the firm. ONESCO argues Emmertz is trying to rewrite the claims he alleged in the NASD pleading in order to avoid discovery and a ruling that ONESCO is not bound to arbitrate his claims. According to ONESCO, Emmertz's NASD pleading shows that the basis for his complaint is the alleged material misrepresentations and omissions that induced his original decision to invest in Lancorp, and these took place when Lancaster issued the PPM and when Emmertz signed the pertinent documents on January 6, 2004. ONESCO also emphasizes the fact that when Emmertz signed the documents in January 2004, his offer to purchase became irrevocable.

ONESCO's argument that Emmertz is misconstruing his own NASD pleading and, therefore, it should not be compelled to arbitrate his claims fails for the following reasons. First, Emmertz's NASD pleading includes claims regarding ONESCO's actions and a claim that

14

ONESCO negligently failed to supervise Lancaster; the pleading is not just a claim based on Lancaster's alleged misrepresentations and omissions. Second, the pages cited by ONESCO specifically allege that "Lancaster, at all times relevant to the transactions alleged herein, was a registered representative, employee, and agent of Respondent ONESCO"[9] (Compl. Ex. E ¶ 36), and the pleading states that each alleged misrepresentation or omission was made by ONESCO, acting through Lancaster. Third, although misrepresentations and omissions are a part of Emmertz's claim, his NASD statement of claim also alleges a number of failures to act by ONESCO, clearly showing that he is also basing his complaint on ONESCO's alleged failure to act while Lancaster was an ONESCO representative. Finally, although the issue has not been addressed in the Third Circuit, other courts of appeals have found that a negligent failure to supervise claim satisfies the requirement that the dispute arose in connection with the NASD member's business. *See Multi-Fin. Sec. Corp.*, 386 F.3d at 1370 (concluding that a "claim of negligent supervision satisfies the Code's second arbitration condition"); *Vestax*, 280 F.3d at 1082 (determining that a claim arising from a NASD-member firm's lack of supervision of its brokers arises in connection with its business).

In addition, ONESCO's argument fails because it overstates the importance of the fact that Emmertz's offer to purchase was "irrevocable." Emmertz's offer to purchase may have been irrevocable at the time it was made, but Lancaster gave him the opportunity to either withdraw or confirm his participation in April 2004. Thus, although Emmertz could have withdrawn his "irrevocable" offer to purchase in April 2004, he confirmed his participation. Lancaster's offer

---

[9] ONESCO argues this is not true, but whether Emmertz will actually be able to prove this allegation is a merits determination and is not for the court to decide for purposes of the current motion.

15

to allow Emmertz to withdraw, and Emmertz's confirmation that he would participate in the investment, as well as the actual investment of Emmertz's funds in Lancorp, took place while Lancaster was associated with ONESCO.

The second requirement for arbitration under the NASD Arbitration Code is fulfilled because Emmertz's NASD pleading includes a claim for negligent supervision and alleges pertinent activities that took place while Lancaster was an ONESCO representative. Because both requirements for arbitration under the NASD Arbitration Code are satisfied, the parties have a valid arbitration agreement, and the dispute is within the scope of the agreement. Emmertz's motion to compel arbitration will therefore be granted.

### D.  All of the Issues in Dispute Will be Submitted to Arbitration

ONESCO argues that if it is compelled to arbitrate, I should follow the Third Circuit's reasoning in *PaineWebber, Inc. v. Hofmann* and find that ONESCO should only be compelled to arbitrate the claims that are based on Lancaster's activities while he was associated with ONESCO. In *PaineWebber*, the Third Circuit addressed the applicability of the NASD rule that requires that claims submitted for arbitration must have occurred within six years of the filing of the arbitration claim. The Third Circuit concluded that this six-year rule was a "substantive limit on the claims that the parties have contracted to submit to arbitration." 984 F.2d at 1379. Therefore, on remand the district court had to determine which claims were arbitrable because they clearly fell within the six-year period, and which were merely claims regarding tolling or discovery that the district court should enjoin from being arbitrated. *Id.* at 1380-81.

The Third Circuit's reasoning in *PaineWebber* is broader than the statute of limitations issue and can be applied to any substantive limits on the claims that parties have agreed to submit

16

to arbitration. In the current case, the relevant substantive limits are those set forth by the NASD Code of Arbitration—Emmertz must be ONESCO's customer, and the dispute must arise from ONESCO's business or Lancaster's activities. ONESCO argues that, following this reasoning, Emmertz's claims based on events or occurrences that took place before Lancaster was associated with ONESCO, and therefore before Emmertz was ONESCO's customer, must be enjoined from arbitration.

Under the Third Circuit's reasoning in *PaineWebber*, the threshold question when determining whether some or all of Emmertz's claims are arbitrable is "whether the occurrence or event giving rise to a particular claim occurred" while Lancaster was a representative of ONESCO.[10] *See id.* at 1382. The determination of which claims are arbitrable is to be made with "care" to avoid "'rul[ing] on the potential merits of the underlying claims.'" *Id.* at 1383 (quoting *AT&T Tech.*, 475 U.S. at 649-50).

*PaineWebber* does not compel the conclusion that only some of Emmertz's claims should be arbitrated. ONESCO points out that the misrepresentations Emmertz included in his NASD pleading were contained in the PPM issued in March 2003 and that these were the relevant events or occurrences, i.e., the events underlying his claim. ONESCO's argument ignores the facts that only a few of the misrepresentations and omissions Emmertz's alleges were contained in the PPM and, more importantly, that Emmertz alleges that other misrepresentations or omissions took place while Lancaster was an ONESCO representative. Given the totality of

---

[10] A court can properly determine which are the relevant events and occurrences underlying an arbitration claim only if the parties have not agreed to arbitrate disputes over this issue. *See id.* at 1382-83. Here, the NASD Arbitration Code does not require arbitration of disputes over what are the relevant events or occurrences underlying arbitration claims, so I may decide the issue.

Emmertz's allegations, the issuance of the PPM was not the sole event or occurrence on which any of Emmertz's claims are based. Further, as already noted, all of the specific claims Emmertz has made against ONESCO deal directly with ONESCO's or Lancaster's actions, or failures to act, while Lancaster was an ONESCO representative. Thus, on the face of Emmertz's NASD pleading, the events on which Emmertz bases his NASD claim occurred while Lancaster was an ONESCO representative and, therefore, while Emmertz was a customer of ONESCO.

In essence, ONESCO seeks a determination of the merits of Emmertz's claims, which a court cannot do when determining the issue of arbitrability. *See AT&T Tech., Inc.*, 475 U.S. at 650. All of Emmertz's claims based on the relevant time period are arbitrable, and the arbitrator will decide which claims are meritorious. *Accord Prins*, 2007 WL 3286406, at *6 ("declin[ing] to accept ONESCO's invitation to sever claims that are based on activities that took place before Mr. Lancaster's association with ONESCO or after his departure" because "the arbitrator [is] to determine which events, if any, give rise to liability on the part of ONESCO").

### III. Conclusion

For the foregoing reasons, Emmertz was a customer of ONESCO and the dispute arose in connection with ONESCO's business and Lancaster's activities. Thus, pursuant to the NASD Arbitration Code, there is a valid agreement to arbitrate between Emmertz and ONESCO, and the dispute at issue here is within the scope of that agreement. Emmertz's motion to compel arbitration will therefore be granted. ONESCO's motion for an order precluding summary disposition of Emmertz's motion to compel arbitration pending discovery on the issue of arbitrability will be denied, the other pending motions will be dismissed as moot, and ONESCO's complaint will be dismissed. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE O.N. EQUITY SALES COMPANY,<br>Plaintiff,<br><br>v.<br><br>LAWRENCE F. EMMERTZ JR.,<br>Defendant. | CIVIL ACTION<br><br>NO. 07-2670 |

### Order

AND NOW on this _____ day of December 2007, upon careful consideration of defendant's motion to compel arbitration (Docket No. 18) and plaintiff's response thereto, and upon consideration of plaintiff's motion for an order precluding summary disposition of defendant's motion to compel arbitration pending discovery on the issue of arbitrability (Docket No. 27), defendant's response, and plaintiff's reply thereto, IT IS HEREBY ORDERED that:

1. Defendant's motion to compel arbitration is GRANTED.

2. Plaintiff's motion for an order precluding summary disposition of defendant's motion to compel arbitration pending discovery is DENIED.

3. Plaintiff's motions to consolidate a preliminary injunction hearing with a trial on the merits (Docket No. 11), for a preliminary injunction (Docket No. 12), and for an order authorizing the parties to engage in immediate discovery on the issue of arbitrability (Docket No. 14) are DISMISSED AS MOOT.

4. Plaintiff's complaint (Docket No. 1) is DISMISSED, and the Clerk shall mark this case CLOSED for statistical purposes.

s/William H. Yohn Jr.
William H. Yohn Jr., Judge