Not Reported in F.Supp.                                                                                           Page 1
Not Reported in F.Supp., 1993 WL 135953 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.)**

**H**
Intel Corp. v. Advanced Micro Devices, Inc.
N.D.Cal.,1993.
Only the Westlaw citation is currently available.
United States District Court, N.D. California.
INTEL CORPORATION, Plaintiff,
v.
ADVANCED MICRO DEVICES, INC., Defendant.
**No. C-90-20237-WAI.**

April 15, 1993.

ORDER

INGRAM, District Judge.
*1 AMD's Motion for a New Trial and Motion for
Reconsideration were heard by the court on March
25, 1993. After carefully reviewing the parties' ar-
guments and for the reasons stated below, the court
GRANTS AMD's Motion for a New Trial and
DENIES the Motion for Reconsideration.

I. BACKGROUND

Defendant AMD moves for a new trial pursuant to
Fed.R.Civ.P. 60(b)(3) (fraud, misrepresentation or
other misconduct by Intel) or in the alternative un-
der 60(b)(2) (newly discovered evidence). AMD
charges that Intel failed to produce evidence and
altered evidence which contained material admis-
sions from Intel concerning the scope and coverage
of the 1976 License Agreement.

AMD charges that Intel failed to produce, until
after trial, four relevant documents that were called
for by discovery requests.[FN1] The documents are:
1) an August 10, 1990 "Litigation Reporter" [FN2];
2) an undated Math CoProcessors Competitive
Summary [FN3]; 3) a September 1990 Math CoPro-
cessors Competitive Summary [FN4]; and 4) an Intel
news release discussing the Intel/AMD litigation.FN5

1. THE ADMISSIONS

These documents, according to AMD, contain Intel
admissions that the 1976 license granted AMD
rights to the 80287 microcode. At trial, Intel argued
that the license agreement did not cover this micro-
code. The admissions are all based on language
contained in the August 1990 Litigation Reporter,
which stated that:
Intel believes that the license does not permit AMD
to copy and distribute Intel's microcode. (It allows
them to "copy" or use *the* microcode, but not to
"DISTRIBUTE"). In doing so they infringe Intel's
Copyrights.

Derwin Dec., Ex. B, at 3 (emphasis added).

AMD argues that this admission is critical because
the word "the" in the above paragraph specifically
refers to the 80287 microcode. Therefore the state-
ment demonstrates that Intel believed the license
agreement covered rights to the 80287. Without the
article, the statement could be a general interpreta-
tion of the license without implicating the coverage
of the 80287 microcode. AMD also argues that it is
significant that the earlier Intel documents do not
refer to the "blue box" theory upon which Intel re-
lied at trial. This, according to AMD, demonstrates
that Intel fabricated the defense for litigation.

In opposition, Intel argues that AMD had access to
the "blue box" theory notwithstanding the fact it
did not have the Litigation Reporter or the Compet-
itive Summaries. The blue box theory was included
in Intel's original complaint. It was the "second
prong," says Intel, of its theory of liability; the
"first prong" being that at no time was AMD gran-
ted a license to distribute. Intel argues that the first
prong alone found its way into the Litigation Re-
porter and subsequently into the Competitive Sum-
maries because it was easier to describe the liability
theory to laymen by use of the first prong alone. In-
tel argues that at all times, by reason of the allega-
tions of the complaint and certain press releases

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT

D

Not Reported in F.Supp.
Not Reported in F.Supp., 1993 WL 135953 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.)

widely quoted in business, newspaper and wire service sources, it was always known that the "blue box" was a substantial factor in Intel's claim of infringement.

*2 Intel defends its failure to produce the documents by arguing that AMD had access to these public sources of the same information and therefore did not need the contested documents.[FN6] Thus, any failure to produce was harmless. Furthermore, Intel argues that AMD had a copy of the Business Wire article in the files of its public relations office. AMD, however, did not search *its* files for documents reflecting *Intel's* position. Opp. at 5-6. Even if it did have the newspaper articles that purported to explain the Intel position, AMD argues, they would not have carried the same evidentiary punch that a corporate admission in an Intel press release or Litigation Reporter would carry.FN7

The press release contained a further admission that AMD argues was critical. It states that "the 80287 is a peripheral chip used to perform arithmetic functions in conjunction with the Intel 80286." Derwin Supp.Dec. Ex. B at 2.

2. THE PRODUCTION

a. The Litigation Reporter

AMD deposed Intel employee Harry Laswell in March 1992, about one month before the start of trial.[FN8] During the first day of his deposition, Laswell mentioned a "nonconfidential customer discloseable statement" from the third quarter of 1990 that contained Intel's position on the 1976 license. AMD promptly requested this document. De Alcuaz Dec., Ex. A.

During his search for the document, Paul Williamson (Intel's counsel) contacted Lawrence Edelman, in-house counsel for Intel. Edelman told Williamson about the Litigation Reporters and sent him a current example (from November 1991), that could be shown to Laswell. Williamson Dec. at 2.

Laswell stated that the Litigation Reporter was not the document to which he was referring.[FN9] *Id.* at 3.

Upon receiving the Litigation Reporter, and before producing it to AMD, Williamson had the document redacted.[FN10] *Id.* at 5. When Williamson received the document, according to AMD, it included a cover memo (dated November 15, 1991, and indicating the nature of the document) and a two page distribution list. *See* Derwin Dec., Ex. G. Both the cover memo and the distribution list were dated. Before production to AMD, those pages were removed from the document. Thus, the document given to AMD did not contain a date.

At the continued deposition of Laswell, Intel produced the 11/91 Litigation Reporter.[FN11] Williamson indicated that it was the Litigation Reporter from the relevant time period, the third quarter of 1990. Laswell Dep. at 343-44, Derwin Dec., Ex. Q. AMD apparently accepted this characterization of the document and therefore did not pursue the August 1990 version further. The August 10, 1990 version was not produced until August 1992.

Intel concedes that Mr. Williamson "misspoke regarding the time frame of *Litigation Reporter* that I produced to AMD, although I thought I was accurate at the time." Williamson Dec. at 6. Williamson stated that any removal of the first three pages was not an attempt to deceive AMD or hide the date of the Litigation Reporter. *Id.* Although he does not know why the three pages were removed, he concedes that any conscious decision to remove the pages would have been made by him. *Id.* at 5. Notwithstanding this error, Intel argues that, had AMD carefully read the document, they would have known that the stated date of the document was wrong.[FN12] The November 1991 version referenced a 1992 trial date. In 1990, the trial was still set to begin in 1991.

b. The Competitive Summaries

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1993 WL 135953 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.)**

*\*3* The undated Competitive Summary was produced in August 1992 during discovery for the damages phase of the trial. It was found in the Intel North American Marketing Organization library. Williamson Dep. at 28, Derwin Dec., Ex. T. Intel argues that this document was not called for by any AMD requests. Instead "Intel produced documents to AMD which Intel believed related to the damages issue in a good faith effort to comply with the spirit of Order No. 34." Opp. at 12, n. 7.

The Competitive Summary directly quoted the August 1990 Litigation Reporter. After receiving the undated Competitive Summary, AMD apparently made a specific request for all other documents referring to the 8/90 Litigation Reporter. Derwin Dec. at 1. Intel produced the September 1990 Competitive Summary from Harry Laswell's files in January 1993. That document was found in an unmarked file holder containing five loose documents and three files. The Competitive Summary was one of the loose documents and on its face referenced the 387 math coprocessor. Seely Dec. at 2.

## II. ARGUMENT

### A. LEGAL STANDARD

AMD seeks a new trial based on Intel's alleged misconduct and misrepresentations in document production. In the alternative, AMD argues that a new trial is appropriate based on the newly discovered evidence. Technically, AMD brings these motions under Rule 59(e) of the Federal Rules because the court has not yet entered a final judgment. *See*Fed.R.Civ.Proc. 59(e) ("A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment."). However, in resolving the motion, this court applies the tests for resolving Rule 60(b)(2) and 60(b)(3) motions. *Jones v. Aero/Chem Corp.,* 921 F.2d 875, 878 (9th Cir.1990) (borrowing the Rule 60(b)(2) and 60(b)(3) tests to decide a Rule 59 motion).

### 1. RULE 60(b)(3)

Rule 60(b)(3) provides for a new trial based on the "(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party...." Fed.R.Civ.Proc. 60(b)(3). In order to prevail on a 60(b)(3) motion AMD must:
(1) prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation or other misconduct.
(2) establish that the conduct complained of prevented the losing party from fully and fairly presenting his case or defense.

*Jones,* 921 F.2d at 878-79 (*quoting Bunch v. United States,* 680 F.2d 1271, 1283 (9th Cir.1982)); *see also I n re M/V P eacock,* 8 09 F.2d 1403, 1404-05 (9th Cir.1987). This standard does not require that the withheld evidence "be of such nature as to alter the result in the case." *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1339,*rehearing denied,*578 F.2d 871 (5th Cir.1978). In fact "when the case involves the withholding of information called for by discovery, the adverse party need not establish that the result in the case would be altered." *Jones,* 921 F.2d at 879. Thus, Rule 60(b)(3) relieves parties from judgments that were unfair, but not necessarily incorrect. *Rozier,* 573 F.2d at 1339.

*\*4* Misconduct under Rule 60(b)(3) does not require an intent to obstruct or avoid discovery, but instead can include "even accidental omissions...." *Jones,* 921 F.2d at 879 (*quoting Anderson v. Cryovac, Inc.,* 862 F.2d 910, 923 (1st Cir.1988)). Misconduct can be demonstrated when "(1) they [plaintiffs] exercised due diligence in their discovery requests, (2) defendant knew, or was charged with knowledge, of the missing document, and had constructive (if not actual) possession of it' and (3) defendant did not divulge the document's existence." *Id.* (*quoting Anderson,* 862 F.2d at 928).

### B. ANALYSIS

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1993 WL 135953 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.)

The August 10, 1990, "Litigation Reporter," the September 1990 and the undated "Math Coprocessors Competitive Summaries," and the press release would all be admissible as party admissions and should have been produced before trial. The failure to produce them substantially interfered with AMD's discovery and trial presentation. Moreover, the non-production prevented AMD from fairly presenting its defense.

The unproduced documents are, in evidentiary import, comparable to the documents relating to the AMD/MIC negotiations. Those documents were the subject of vigorously contested *in limine* motions and eventually were admitted over AMD's objections.

The facts surrounding the non-production of the August 10, 1990 Litigation Reporter constitute, at a minimum, an avoidable, accidental omission which is the equivalent of "misconduct" under Rule 60(b)(3). The document was produced without any references to its correct date of November 15, 1991, because of the removal of the pages Bates numbered 44408-09 (which bore the correct date). Further, affirmative representations were made that the document was from the third quarter of 1990, when in fact it was from more than a year later. In view of the lack of explanatory testimony, the failure to produce and material alteration are supported by clear and convincing evidence.

The failure to produce the "CoProcessors Competitive Summaries" falls within the same rubric-Defendant has shown due diligence in the making of discovery requests; Plaintiff had at least constructive knowledge and possession of the requested documents; and the existence of the documents was not divulged. The contention that the availability of some or all of the contents of such documents from some other source does not mitigate the force of the rule.

The trial value of the documents in question is obvious. If the jury believes them to be corporate admissions they may each have substantial probative force.

Finally, there is no evidence that the press release or the "Business Wire" report, purporting to quote the press release, were ever produced by Plaintiff to Defendant. Nor has there been any showing that any facts exist which would properly charge Defendant's counsel with knowledge of the contents of the press release.

Accordingly, and good cause appearing, Defendant's Motion for New Trial is GRANTED pursuant to Rule 60(b)(3). Because the court is granting a new trial, Defendant's Motion for Reconsideration is DENIED.

FN1. The relevant document requests were: 1) No. 1 ("All documents relating to, referring to or mentioning the 1976 Agreement, interpretation of the 1976 Agreement or the negotiations leading to the 1976 Agreement."); 2) No. 140 ("All Harry Lazwell's [sic] files and their contents reflecting or referring to the AMD 80C287 math coprocessor"); 3) No. 146 ("All documents which support Intel's claim that AMD is not licensed to incorporate Intel microcode into a product and distribute or sell that product."); 4) No. 147 ("All documents which support Intel's claim that the 1976 license between Intel and AMD did not grant to AMD the right to distribute copies of microcode other than in those products purchased from Intel."); and 5) No. 38 (" 'All documents which relate to advertisement or promotional services', relating to certain Intel products."). Motion at 6-7; Reply at 7.

FN2. Litigation Reporters were "sent to senior management and public relations employees, and are intended to assist employees in explaining Intel's position to the world." Motion at 4. They were prepared by the Intel in-house counsel and could be disclosed to outsiders. *Id.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1993 WL 135953 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.)

FN3. This was "an optional handout used in a September 1990 Intel Field Product Training seminar." Opposition at 12. The document quoted the August 10, 1990 Litigation Reporter's description of the Intel/ AMD dispute. *Id.* at 13.

FN4. The undated Competitive Summary was a draft version of the September 1990 Summary. Opp. at 12.

FN5. AMD adds this claim in the reply in response to Intel's reliance on AMD's possession of this document. Additionally, AMD contends that the Intel had an obligation to produce a report from the Business Wire service which quoted the press release. Reply at 9.

FN6. These other sources did not, apparently, contain the same strong admission that the contested documents did.

FN7. For example, Thomas Dunlap disavowed the quotes attributed to him by the newspaper articles. Reply at 10-11.

FN8. The deposition came about after AMD moved for partial summary judgment on the unfair competition claim. Intel offered Laswell's declaration in support of its claim of actual damages. AMD then deposed Laswell. De Alcuaz Dec. at 1-2.

FN9. According to Intel, the discloseable document has never been found.

FN10. Apparently, Edelman had instructed an Intel paralegal to mark the irrelevant portions of the document. Edelman also forwarded only those pages that he felt were relevant.

FN11. Intel characterizes this production as a mere attempt to demonstrate its good faith efforts to find the customer discloseable document and not as a response to any outstanding document request.

FN12. AMD apparently did not seek production of other versions of the Litigation Reporter because they had been assured that the produced version was the August 1990 version.

N.D.Cal.,1993.
Intel Corp. v. Advanced Micro Devices, Inc.
Not Reported in F.Supp., 1993 WL 135953 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.