1  Joel A. Goodman (FL Bar No. 802468)
   Admitted *pro hac vice*
2  Email: gn.law@verizon.net
   Goodman & Nekvasil, P.A.
3  14020 Roosevelt Blvd., Suite 808
   P.O. Box 17709
4  Clearwater, Florida 33762
   Telephone: 727-524-8486
5  Facsimile: 727-524-8786

6  Richard A. Kutche (CA Bar No. 151950)
   Email: rakutche@pacbell.net
7  Law Offices of Richard A. Kutche
   46 South First Street
8  San Jose, CA 95113
   Telephone: (408) 295-0474
9  Facsimile: (408) 295-6693
   Local counsel
10
11 Attorneys for Defendants

12              UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA
13

14 THE O.N. EQUITY SALES COMPANY,          ) Case No. C 07-03303 JF RS
                                            )
15              Plaintiff,                  )
                                            ) **DEFENDANTS' MEMORANDUM**
16      v.                                  ) **OF POINTS AND AUTHORITIES IN**
                                            ) **OPPOSITION TO PLAINTIFF'S**
17 THOMAS NEMES, Individually and as Trustee of ) **REQUEST FOR COURT TO**
   the THOMAS NEMES TRUST, MICHAEL J.       ) **ENTERTAIN MOTION FOR**
18 BENKERT, Individually and on Behalf of SHORE ) **RELIEF FROM JUDGMENT**
   2 SHORE ENTERPRISES, INC., and JERRY J.  ) **UNDER CIVIL RULE 60(b)(2) & 3**
19 THOMAS and NANCY M. THOMAS, Individually ) **DURING THE PENDENCY OF**
   and as Trustees of the JERRY J. THOMAS and ) **APPEAL**
20 NANCY M. THOMAS 1998 INTER VIVOS         )
   TRUST,                                   ) Date:      May 23, 2008
21                                          ) Time:      9:00 a.m.
                Defendants.                 ) Courtroom: 3, 5th Floor
22 _____)

23 //

24 //

25 //

26 //

27 //

28 //

1

**TABLE OF CONTENTS**

2  ARGUMENT................................................................. 1

3  I.   ONESCO HAS NOT SATISFIED THE REQUIREMENTS FOR OBTAINING
       RELIEF ON THE GROUND OF NEWLY DISCOVERED EVIDENCE.............. 1
4
5       A.   Introduction...................................................... 1
6       B.   The Alleged Three Effective Dates for Lancorp........................... 2
7            1.   The Date of the Lancorp PPM................................. 2
8            2.   Lancorp's Effective Date..................................... 3
9            3.   The Date of Lancorp's Transfer of Funds to Megafund, after the
                  Expected Investment Activity at Tricom did not Occur............... 4
10      C.   Materiality...................................................... 12
11      D.   The Disclosure in May 2004........................................ 15
12      E.   Compliance Manuals.............................................. 17
13  II.  ONESCO HAS NOT SATISFIED THE REQUIREMENTS FOR OBTAINING
       RELIEF FROM JUDGMENT ON THE GROUND OF FRAUD................... 17
14
15  CERTIFICATE OF SERVICE.................................................. 21

16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

AT&T Tech., Inc. v. Communication Workers of Am.,
475 U.S. 643 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Burlington Indus., Inc. v. Ellerth,
524 U.S. 742, 759 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Casey v. Albertson's Inc.,
362 F.3d 1254 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Cleveland Demolition Co., Inc. v. Azcon Scrap Corp.,
827 F.2d 984 (4th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.,
833 F.2d 208 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Cohen v. Stratosphere Corp.,
115 F.3d 695 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Cowan v. Strafford R-VI School District,
140 F.3d 1153 (8th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Feature Realty, Inc. v. City of Spokane,
331 F.3d 1082 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8

Hopkins v. Andaya,
958 F.2d 881 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Latshaw v. Trainer Wortham & Co.,
452 F.3d 1097 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

MONY Sec. Corp. v. Bornstein,
390 F.3d 1340 (11th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ONESCO v. Broderson,
2008 WL 427468 (E.D. Mich. Feb. 14, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

ONESCO v. Cattan,
2008 WL 361549 (S.D. Tex. Feb. 8, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

ONESCO v. Emmertz,
526 F. Supp. 523 (E.D. Pa. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ONESCO v. Gibson,
514 F. Supp. 2d 857 (S.D.W. Va. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ONESCO v. Hoegler,
2008 WL 304924 (D.N.J. Jan. 28, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ONESCO v. Maria Cui,
2008 WL 170584 (N.D. Cal. Jan. 17, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ONESCO v. Nemes,
2008 WL 239258 (N.D. Cal. Jan. 28, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ONESCO v. Pals,
509 F. Supp. 2d 761 (N.D. Iowa 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ONESCO v. Prins,
519 F. Supp. 2d 1006 (D. Minn. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ONESCO v. Robinson,
2007 WL 2840477 (E.D. Va. Sept. 27, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ONESCO v. Rahner,
526 F. Supp. 2d 1195 (D. Colo. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ONESCO v. Samuels,
2007 WL 4237013 (M.D. Fla. Nov. 30, 2007),
approved, 2008 WL 104079 (M.D. Fla. Jan. 8, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ONESCO v. Staudt,
2008 WL 271329 (D. Vt., Jan. 30, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

ONESCO v. Steinke,
504 F. Supp. 2d 913 (C.D. Cal. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ONESCO v. Stephens,
2008 WL 835808 (N.D. Fla. Mar. 28, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ONESCO v. Thiers,
2008 WL 110603 (D. Ariz. Jan. 10, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ONESCO v. Venrick,
508 F. Supp. 2d 872 (W.D. Wash. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ONESCO v. Wallace,
2007 WL 4106476 (S.D. Cal. Nov. 15, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

R&W Technical Services Ltd. v. Commodity Futures Trading Comm'n,
205 F.3d 165 (5th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Swope v. Siegel-Robert, Inc.,
243 F.3d 486 (8th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**Statutes and Rules**

Federal Rule of Civil Procedure 60(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

NASD Rule 12200. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

1

**ARGUMENT**

2

**I.    ONESCO HAS NOT SATISFIED THE REQUIREMENTS FOR OBTAINING RELIEF ON THE GROUND OF NEWLY DISCOVERED EVIDENCE.**

3

4

**A.    Introduction**

5

Plaintiff O.N. Equity Sales Company ("ONESCO") has filed its Request for Court to

6

Entertain Motion for Relief from Judgment under Civil Rule 60(b)(2) & 3 During the Pendency of

7

Appeal ("Rule 60 Request") and Memorandum in Support ("Rule 60 Memorandum"), on the alleged

8

grounds that (1) ONESCO has discovered new evidence from the arbitration testimony of its former

9

employee Gary L. Lancaster ("Lancaster"), and (2) Defendants committed fraud in obtaining this

10

Court's decision on January 28, 2008 ("January 28 Order").  ONESCO, however, already had

11

discovered, or could have discovered, the evidence in question before January 28, 2008, and it would

12

not probably have produced a different result.  ONESCO also has not established that the Defendants

13

committed knowing and intentional fraud, and Defendants deny making any knowing misstatements

14

to this Court.  Accordingly, this Court must deny the Rule 60 Request.

15

Rule 60(b)(2) permits relief from judgment on the basis of "newly discovered evidence that,

16

with reasonable diligence, could not have been discovered in time to move for a new trial under Rule

17

59(b)."  The Ninth Circuit has adopted a three-part test for relief under Rule 60(b)(2).

18

> Relief from judgment on the basis of newly discovered evidence is warranted if (1) the moving party can show the evidence relied on in fact constitutes "newly discovered evidence" within the meaning of Rule 60(b); (2) the moving party exercised due diligence to discover this evidence; and (3) the newly discovered evidence must be of "such magnitude that production of it earlier would have been likely to change the disposition of the case."

19

20

21

Feature Realty, Inc. v. City of Spokane, 331 F.3d 1082, 1093 (9th Cir. 2003) (citation omitted).

22

ONESCO's arguments do not satisfy these requirements.  Although ONESCO's

23

Memorandum is long on insulting allegations against the Defendants and their counsel, it is short

24

on actual facts.  It identifies only four points on which ONESCO claims to have discovered new

25

evidence.  Two of these points are mentioned only in a footnote, and ONESCO has conceded that

26

they "do not directly implicate the Court's arbitrability analysis."  See Exh. 1 at 12 n.4, attached to

27

the Declaration of Joel A. Goodman ("Goodman Dec.") attached hereto.  The other two points are

28

likewise without merit.

1

**B.     The Alleged Three Effective Dates for Lancorp**.

2      ONESCO primarily relies on allegedly newly discovered evidence regarding three effective

3   dates for Lancorp Financial Fund Business Trust ("Lancorp") that ONESCO now claims exist.

4   Paragraph 9 of Lancaster's first declaration filed in this Court stated that Lancorp became effective

5   on May 14, 2004. <u>See</u> Exh. 2 attached to the Defendants' Motion to Compel Arbitration. ONESCO

6   thinks the declarations should have disclosed two other "effective" dates. March 17, 2003, was the

7   date that the Lancorp Private Placement Memorandum ("PPM") became effective. February 1, 2005,

8   was the date that Lancorp signed an agreement with Megafund–a Ponzi scheme in Texas–and the

9   date that Lancorp internally characterized its transfer of funds to Megafund as effective for

10  accounting and distribution purposes. ONESCO asserts that the Defendants' reliance on May 14,

11  2004, rather than on March 17, 2003, and February 1, 2005, "turns out to be the biggest red herring

12  of all time." Rule 60 Memorandum at 5. Defendants respectfully respond that, if their reliance on

13  May 14, 2004, is a red herring, then ONESCO's reliance on March 17, 2003, and February 1, 2005,

14  is a crimson whale.

15          **1.     The Date of the Lancorp PPM.**

16      The first date, March 17, 2003, is merely the effective date of the Lancorp PPM, when

17  Lancaster began selling Lancorp to investors. ONESCO has always known about this date and not

18  previously thought it was important, because it is on page 1 of Exh. A to ONESCO's Complaint in

19  this action. Defendants knew nothing about Lancorp at that point. Lancaster's declarations had no

20  reason to include this date, which had no bearing on any issue in this case. According to Lancaster's

21  arbitration testimony:

22          Q.     [D]o you see on the bottom where it says "Effective date, March 17, 2003?"

23          A.     Yes.

24          Q.     What does it indicate that this effective date is? Effective date of what?

25          A.     Effective date of the offering.

26          Q.     The effective date of the memorandum for the offering?

27          A.     Correct. . . .

28          Q.     Does it indicate anything else?

1
     A.    No.

2
Lancaster Arb. Tr. Vol. III, at 87.  (Lancaster's arbitration testimony is attached to the Goodman Dec.

3
as Exh. 2).

4
     Accordingly, evidence about the effective date of the Lancorp PPM is not grounds for relief

5
under Rule 60(b)(2), because it was neither newly discovered nor material.

6
### 2.    Lancorp's Effective Date.

7
     The actual effective date of the Lancorp investment, as opposed to the  Lancorp PPM, was

8
May 14, 2004.  As Defendants explained in their Memorandum in Support of their Motion to

9
Compel Arbitration at 8-10, citing Cohen v. Stratosphere Corp., 115 F.3d 695 (9th Cir. 1997), the

10
Lancorp contracts were not completed until that time, because Lancorp could cancel the contracts

11
at any time until the offering closed on May 14, 2004, when the minimum $5 million of invested

12
funds had been accumulated in an escrow account.

13

14
Q.    [W]ere all investor monies held in [an] escrow account . . . [u]ntil you reached a minimum?

15
A.    Correct.

16
Q.    And how much was that minimum.

17
A.    Five million.

18
Q.    And was [that] . . . the minimum that was reached in May 2004 when the investment became effective?

19

20
A.    Yep.

21
Q.    If you didn't reach the minimum, did you have the right to cancel the offering?

22
A.    Yes.

23
Lancaster Arb. Tr. Vol. I, at 249-50.

24
Q.    So let's take an investor . . . who signs a subscription agreement in 2003 . . . . That money was going to an escrow account; is that fair to say?

25

26
A.    Correct.

27
Q.    And Lancorp . . . reserved the right to terminate the deal, not close it merely terminate it and return investor monies.

28
A.    Correct.

Q.    So at any point in time until the initial closing date, Lancorp . . . could terminate the investor monies; is that a fair statement?

A.    Correct.

Lancaster Arb. Tr. Vol. III, at 121-22.

Q.    The Lancorp Financial Fund became officially effective in May 14, 2004; is that true?

A.    Correct.

Q.    Before Mary 14, 2004, you had the right to simply tell the investors you're not going to proceed with this offering; isn't that fair to say?

A.    Yeah. That's correct.

Lancaster Arb. Tr. Vol I, at 265.  When the offering closed after the accumulation in escrow of $5 million, the obligation between Lancorp and its investors became mutual, rather than merely unilateral on the part of the Lancorp investors, and enforceable agreements between Lancorp and its investors became effective.  Lancorp investors such as the Defendants are entitled to arbitrate ONESCO's responsibility for these sales that occurred in May 2004.

Although ONESCO now attempts to characterize the May 14, 2004, date as relating only to Lancorp's deposit of funds at Tricom Securities ("Tricom")–an overseas Australian brokerage firm–see Rule 60 Memorandum at 6, this characterization is false.  ONESCO cites Lancaster's testimony, Vol II, at 25-26, but these pages of the testimony do not support ONESCO's assertion on this point.  To the contrary, Lancaster testified that he had already opened the Tricom account two months earlier on March 18, 2004, and started depositing Lancorp funds there in April 2004. Lancaster Arb. Tr. Vol. II, at 269-71.

3.    **The Date of Lancorp's Transfer of Funds to Megafund, after the Expected Investment Activity at Tricom did not Occur.**

ONESCO cites a third effective date on February 1, 2005, but the allegedly newly discovered evidence of this date is not grounds for relief under Rule 60(b)(2), because ONESCO had all or almost all of this evidence before this Court's January 28 Order.  The concept of a third effective date was introduced in the arbitration through ONESCO's counsel's testimony in the form of leading questions, rather than through independent testimony by Lancaster.  See Lancaster Arb. Tr. Vol. II, at 290-91, Vol. III, at 4, 6, 11. After the investment activities that Lancaster thought would occur at

-4-

1   Tricom did not occur, Lancaster took back Lancorp's money in December 2004, while he worked

2   for ONESCO. Lancaster Arb. Tr. Vol. II, at 26. The arbitration evidence thus established that

3   ONESCO could have stopped the offering while Lancaster worked for ONESCO and been able to

4   restore to all of the Lancorp investors their invested funds. See Burlington Indus., Inc. v. Ellerth,

5   524 U.S. 742, 759 (1998) ("An employer is negligent with respect to sexual harassment if it knew

6   or should have known about the conduct and failed to stop it. Negligence sets a minimum standard

7   for employer liability . . . .")

8       At that time in December 2004, Lancaster sent a letter to some or all of the Lancorp

9   investors, telling them that expected trading activities had not occurred and offering to refund their

10  money at their request. He also, however, optimistically informed them that the news was not all

11  bad because he had contacted another securities firm and expected shortly to use Lancorp funds to

12  become a participant in that firm's underwriting activities. Lancaster Arb. Tr. Vol. II, at 275-77.

13  Although ONESCO attempts to mislead this Court into thinking that Lancaster made this offer in

14  2005, after ONESCO fired Lancaster, the truth is that the offer and its optimistic statements–which

15  ONESCO does not provide to this Court–were made on December 6, 2004, while Lancaster worked

16  for ONESCO. Lancaster Arb. Tr. Vol. II, at 275; see attached Goodman Dec., Exh. 3. Although two

17  other written communications were sent to some or all of the Lancorp investors on January 18 and

18  February 8, 2005, see attached Goodman Dec., Exh. 3, neither letter contains this written offer.

19      Lancaster and Lancorp then transferred funds to Megafund, which turned out to be a

20  fraudulent Ponzi scheme. For internal bookkeeping purposes on a spreadsheet column heading,

21  Lancaster characterized the effective date of the transfer as February 1, 2005. This "effective" date

22  was an internal accounting date for the Megafund venture, which Lancaster used to calculate

23  distributions to Lancorp investors and which was based on the date of Lancorp's agreement with

24  Megafund.    See attached Goodman Dec., Exh. 4. ONESCO claims this evidence is newly

25  discovered from Lancaster's arbitration testimony and therefore grounds for Rule 60(b) relief.

26      ONESCO, however, had all of this evidence–or the opportunity to obtain all of this evidence

27  through reasonable diligence–prior to this Court's January 28 Order. The Securities and Exchange

28  Commission ("SEC") and the Megafund Receiver deposed Lancaster on November 17, 2005, and

-5-

1   March 25, 2006, and the Receiver sent a copy of the deposition to ONESCO's counsel on May 2,

2   2007. See attached Exh. 5. ("Lancaster SEC Tr.")   ONESCO cited this transcript and attached a

3   partial copy of it as an exhibit in this case on September 20, 2007, well before this Court's January

4   28 Order.  ONESCO argued that, "[a]ccording to testimony elicited from the [SEC] . . ., the funds

5   were actually invested in *2005*, after Lancaster was no longer associated with ONESCO."   See

6   attached Exh. 6, at 6.

7          Thus, ONESCO knew or had the opportunity to know (through reading Lancaster's

8   deposition) about the date of Lancorp's transfer of funds to Megafund, before it even filed its

9   Complaint in this Court.  ONESCO affirmatively argued this point to this Court more than four

10  months before this Court rendered its decision on January 28, 2008.  ONESCO cannot say, as

11  required by Rule 60(b)(2), that this evidence "could not have been discovered in time to move for

12  a new trial under Rule 59(b)."

13         Lancaster's SEC deposition explains in detail the history of events that ONESCO now

14  misrepresents to this Court that it only learned as a result of Lancaster's arbitration testimony.

15  Lancaster said in the SEC deposition that Lancorp first sent funds to the Australian broker-dealer,

16  Tricom. Lancaster SEC Tr., at 91.  The funds, however, did not generate earnings, and Lancaster

17  took back the money in late 2004.  Lancaster SEC Tr., at 94-95.  He told his investors that this

18  venture had not been profitable.  Lancaster SEC Tr., at 95.  He then started talking to Megafund in

19  January 2005.  Lancaster SEC Tr., at 24.  Lancorp entered into an agreement with Megafund on

20  February 1, 2005, and a copy of the agreement is an exhibit to the SEC deposition. Lancaster SEC

21  Tr., at 338; see attached Goodman Dec., Exh. 4.

22         Thus, through Lancaster's SEC deposition, ONESCO knew all or almost all of the events

23  relating to Megafund, that it now cites to this Court as newly discovered evidence.  Moreover, before

24  January 28, 2008, ONESCO had the December 6, 2004, and January 18 and February 8, 2005,

25  letters, as well as the Lancorp spreadsheet and agreement with Megafund that reflected the transfer

26  of funds to Megafund effective February 1, 2005.  See attached Goodman Dec., Exh. 3, 4. The first

27  arbitration claim against ONESCO by Lancorp investors was served on ONESCO on March 12,

28  2007.  See attached Goodman Dec., Exh. 7.  As part of its investigation, ONESCO contacted

Lancaster in the spring of 2007 and Lancaster voluntarily sent a full set of Lancorp records to ONESCO for all Lancorp investors, which may have included the 2004 and two 2005 letters. See Exh. 4, ¶ 5, attached to the Motion to Compel Arbitration; Lancaster Arb. Tr. Vol. III, at 159.

> Q.  Well, you produced, is it fair to say, about 5,000 sheets of paper for respondent's counsel?
>
> A.  Yes, thousands. . . .
>
> Q.  You did it voluntarily?
>
> A.  Yes.
>
> Q.  Mr. Little didn't have to subpoena you . . . . or tell you he was going to subpoena you? And it included both documents that you used and drafts, right?
>
> A.  Correct.

Lancaster Arb. Tr. Vol. III, at 108. Moreover, even if ONESCO did not receive the 2004 and two 2005 letters from Lancaster at that time in the spring of 2007, it could through reasonable diligence have asked Lancaster for all documents and information relating to Lancorp's transfer of funds to Megafund and his communications to investors about this transfer, particularly after ONESCO received Lancaster's SEC deposition which explained that the Megafund transfer occurred in 2005.

If ONESCO did not receive these letters in the spring of 2007, it did receive them by early October 2007, because other Lancorp investors in other arbitrations produced them on September 27 and October 9, 2007. See attached Goodman Dec., Exh. 8. ONESCO also received these letters, as well as the spreadsheet and Megafund agreement, pursuant to subpoenas it requested in other arbitrations on October 31, and November 7, 2007. The Lancorp investors did not oppose the subpoenas, the arbitration chairs signed them on November 17 and 19, 2007, and, on December 19, 2007, ONESCO sent the investors' counsel a disk containing 4,905 pages of documents produced by Lancaster in response to the subpoenas which included the three letters, spreadsheet, and Megafund agreement. See attached Goodman Dec., Exh. 9. If ONESCO was so concerned about obtaining documents from Lancaster, then it could through reasonable diligence have requested these subpoenas in June 2007, long before this Court's January 28 Order, because the arbitrators were appointed in one of the arbitrations against ONESCO on June 13, 2007, and the chair was available

1   to sign subpoenas at that time, which the Lancorp investors would not have opposed.  <u>See</u> attached

2   Goodman Dec., Exh. 10.

3          Thus, ONESCO knew all or almost or all of the evidence which it now cites to this court as

4   newly discovered, when it obtained Lancaster's deposition in May 2007, and it had the opportunity

5   to obtain any remaining evidence through reasonable diligence, either voluntarily from Lancaster or

6   as a result of an arbitration subpoena it could have requested as early as June 13, 2007, and which

7   it did eventually receive in December 2007.  Accordingly, ONESCO cannot satisfy the first and

8   second elements of Rule 60(b)(2) relief, because the evidence in question is either not newly

9   discovered or could have been discovered through reasonable diligence.  <u>See</u> <u>Feature Realty, Inc. v.</u>

10  <u>City of Spokane</u>, 331 F.3d 1082, 1093 (9th Cir. 2003) ("[T]he appellants could have obtained that

11  evidence sooner . . . ."); <u>Hopkins v. Andaya</u>, 958 F.2d 881, 887 (9th Cir. 1992) ("A defeated litigant

12  cannot set aside a judgment because he failed to present . . . all the facts known to him that might

13  have been useful to the court."); <u>Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.</u>, 833 F.2d 208,

14  212 (9th Cir. 1987) ("Evidence is not newly discovered under the Federal Rules if it was in the

15  moving party's possession . . . or could have been discovered with reasonable diligence.").

16         In this connection, Defendants observe that ONESCO's original theory in this Court was that

17  the  material events relating to the Defendants' Lancorp investments occurred when actionable

18  misrepresentations were made to them.  ONESCO believed that the misrepresentations to the

19  Defendants in this instance must have been made before Lancaster started working for Lancorp and

20  that the Defendants' claims therefore were not arbitrable.  Accordingly, although ONESCO knew

21  before filing suit in this Court that Lancorp had transferred funds to Megafund in 2005, after

22  ONESCO fired Lancaster, ONESCO never argued this point to this or any other court in detail.

23  ONESCO either did not think the point had merit or it thought it could not argue that the material

24  events for the Lancorp investors' claims occurred when the investors finally lost their money as a

25  result of the transfer to Megafund, after ONESCO fired Lancaster, because this theory was

26  inconsistent with the theory that ONESCO had chosen to argue–that the material events occurred

27  at the time of the alleged misrepresentations, before ONESCO hired Lancaster.

28

-8-

1    ONESCO, however, has now lost on this latter theory in 18 different courts.[1]  In its Rule 60

2    Memorandum, ONESCO has therefore reversed field and now argues instead that the material events

3    occurred at the time of the Megafund losses rather than at the time of the initial misrepresentations–a

4    theory which ONESCO could have argued from the inception of this lawsuit but chose not to do so.

5    Parties cannot use Rule 60(b)(2) as a device to argue new theories that could have been made earlier.

6    Under Rule 60(b), "'advanc[ing] new arguments or supporting facts which were otherwise available

7    for presentation when the original summary judgment motion was briefed' is . . . inappropriate."

8    Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir. 1991).

9        The evidence relating to the February 1, 2005, effective date also does not meet the third

10   requirement for relief under Rule 60(b)(2), because this evidence is cumulative, is not material to

11   this Court's arbitrability decision, and would not probably produce a new result.  The December 6,

12   2004, letter, in which Lancaster offered to refund Lancorp investors' funds because the placement

13   of Lancorp funds in the Tricom account had not been successful, does not help ONESCO, because

14   it was sent while Lancaster worked for ONESCO.  ONESCO does not rely on this letter in its Rule

15   60 Memorandum and indeed does not even disclose it to this Court.  The January 18 and February

16   8, 2005, letters merely tell investors that their investment is proceeding.  The mere existence of

17   events that occurred after ONESCO fired Lancaster does not in any way alter ONESCO's

18   responsibility to arbitrate regarding events that occurred before ONESCO fired Lancaster.

19

20

21   _____

22       [1]    ONESCO v. Steinke, 504 F. Supp. 2d 913 (C.D. Cal. 2007); ONESCO v. Pals, 509
     F. Supp. 2d 761 (N.D. Iowa 2007); ONESCO v. Venrick, 508 F. Supp. 2d 872 (W.D. Wash. 2007);
23   ONESCO v. Robinson, 2007 WL 2840477 (E.D. Va. Sept. 27, 2007); ONESCO v. Gibson,514 F.
     Supp. 2d 857 (S.D.W. Va. 2007); ONESCO v. Prins, 519 F. Supp. 2d 1006 (D. Minn. 2007);
24   ONESCO v. Wallace, 2007 WL 4106476 (S.D. Cal. Nov. 15, 2007); ONESCO v. Samuels, 2007
     WL 4237013 (M.D. Fla. Nov. 30, 2007), approved, 2008 WL 104079 (M.D. Fla. Jan. 8, 2008);
25   ONESCO v. Rahner, 526 F. Supp. 2d 1195 (D. Colo. 2007); ONESCO v. Emmertz, 526 F. Supp.
     523 (E.D. Pa. 2007); ONESCO v. Thiers, 2008 WL 110603 (D. Ariz. Jan. 10, 2008); ONESCO v.
26   Maria Cui, 2008 WL 170584 (N.D. Cal. Jan. 17, 2008); ONESCO v. Nemes, 2008 WL 239258
     (N.D. Cal. Jan. 28, 2008); ONESCO v. Hoegler, 2008 WL 304924 (D.N.J. Jan. 28, 2008); ONESCO
27   v. Staudt, 2008 WL 271329 (D. Vt., Jan. 30, 2008); ONESCO v. Cattan, 2008 WL 361549 (S.D.
     Tex. Feb. 8, 2008); ONESCO v. Broderson, 2008 WL 427468 (E.D. Mich. Feb. 14, 2008); ONESCO
28   v. Stephens, 2008 WL 835808 (N.D. Fla. Mar. 28, 2008).

1    Moreover, contrary to ONESCO's assertions, February 1, 2005, was not the effective closing

2    date of Lancorp itself, which was May 14, 2004.  The May 14 closing date was the first date that

3    Lancaster could no longer unilaterally terminate the Lancorp offering.  After May 14,  Lancaster

4    could only offer to refund individual investor's investments, as he did in December 2004.  The

5    difference between May 14, 2004, and February 1, 2005, is that the agreements that became effective

6    on May 14, 2004, were between Lancorp and the Lancorp investors; by contrast, the February 1,

7    2005, date reflected only the date of an agreement between Megafund and Lancorp, which Lancaster

8    had no reason to disclose–and did not disclose–to the Lancorp investors.

9        Q.    Did you tell your investors that you had invested in Megafund?

10       A.    No.

11       Q.    Why not?

12       A.    I didn't feel it was necessary.

13   Lancaster SEC Tr., at 34.

14       A.    There's no reason for me to disclose who I was making investments to.  I
             could pull all the money out of Megafund and it wouldn't make any
15           difference.  I could go anywhere I wanted to.

16   Lancaster SEC Tr., at 229.

17       By attempting to equate the "effective" date of investors' investments in Lancorp with the

18   "effective" date of Lancorp's internal decisions to transfer funds to other investment entities,

19   ONESCO is comparing apples and oranges and misleading this Court.  For example, on the date of

20   an investment in a mutual fund, the fund takes control of the investor's money.  It then uses the

21   money to buy and sell assets internally, with little or no outside control or even knowledge by

22   individual investors.  The effective date of the investor's actual mutual fund investment, however,

23   is not the date of the later internal asset transfers but rather the date that the fund took final control

24   of the investor's money.  Similarly, in this instance, Lancorp took final control of the investors'

25   funds on May 14, 2004.  That Lancorp then for accounting purposes internally established

26   "effective" dates for its various asset transfers to Tricom or Megafund, to allow Lancorp to calculate

27   distributions to the Lancorp investors, in no way altered the date of the investors' investments in

28   Lancorp itself.

-10-

1   More importantly, ONESCO's allegations about the February 1, 2005, date are pertinent at

2   best only to the merits, not to arbitrability. Whether ONESCO is responsible for the sales that

3   became final on May 14, 2004, whether ONESCO's failure to supervise had causal effects after

4   ONESCO fired Lancaster without telling the Lancorp investors why he was fired and what ONESCO

5   knew or should have known about Lancaster, and whether events occurred after ONESCO fired

6   Lancaster that might alter ONESCO's liability for events that occurred while Lancaster worked for

7   ONESCO are timing questions relating to the merits.  They have no bearing on arbitrability.

8   Pursuant to black letter arbitration law, "[i]n deciding whether the parties have agreed to submit a

9   particular grievance to arbitration, a court is not to rule on the potential merits of the underlying

10  claims. . . . 'The agreement is to submit all grievances to arbitration, not merely those which the

11  court will deem meritorious.'" AT&T Tech., Inc. v. Communication Workers of Am., 475 U.S. 643,

12  649-50 (1986) (citation omitted).

13      For arbitrability purposes, the Defendants have undisputedly alleged events that occurred

14  while Lancaster worked for ONESCO, for which the Defendants seek to hold ONESCO

15  responsible. "The issues raised by ONESCO go not to the question of arbitrability, but to liability.

16  It is not the role of the Court to weigh the merits of the underlying claim; such is the province of the

17  arbitrator." ONESCO v. Staudt, 2008 WL 271329, at *5 (D. Vt. Jan. 30, 2008); see also ONESCO

18  v. Cattan, 2008 WL 361549, at *4 (S.D. Tex. Feb. 8, 2008).

19          [W]e are unconcerned with MONY's cornucopia of disputed facts. Instead, we focus
20          on those facts required to satisfy . . . [the] two-part test [for arbitrability under Rule
            10301]. . . . [T]he facts that matter in this case are undisputed: the Bornsteins were
21          customers of . . . an associated person of MONY. This . . . fact pattern is somewhat
            common, and the overwhelming response is that the case is subject to arbitration.
22          More importantly, this fact pattern falls wholly within the clear language of Rules
            10101 and 10301, which focus first on whether the investor is a customer, and second
23          on whether the dispute arose in connection with the business of the member.

24  MONY Sec. Corp. v. Bornstein, 390 F.3d 1340, 1346 (11th Cir. 2004) (citations omitted).

25      This Court can adopt ONESCO v. Broderson, 2008 WL 427468, at *5 (E.D. Mich. Feb. 14,

26  2008), which rejected ONESCO's similar attempt to rely on Lancaster's arbitration testimony.

27          ONESCO recently . . . indicat[ed] that . . . Lancaster offered [arbitration]
            testimony that directly contradicts . . . statements in his declarations. ONESCO seeks
28          a two week extension to obtain the transcript . . . The Court denies ONESCO's
            request noting that the Court did not rely on Lancaster's declaration on the issue of

-11-

1    whether the claims were arbitrable. . . . ONESCO does not dispute that it is an NASD
2    member and in fact admits that Lancaster was associated with ONESCO during some
     of the time Lancaster was involved with the Lancorp Fund . . . .

3    The timing of the pertinent events is a merits question for the arbitrators, not an arbitrability

4    question for this Court. Accordingly, the allegedly newly discovered evidence regarding the February

5    1, 2005, Megafund funds transfer does not satisfy the third element of relief under Rule 60(b)(2),

6    because the evidence is not material and would not probably produce a different result.

7         **C.    Materiality**

8         ONESCO's second alleged inaccuracy in Lancaster's declarations in this Court on which

9    ONESCO claims to have discovered new evidence through Lancaster's arbitration testimony is

10   Lancaster's statement in paragraph 5 of his first declaration that the change in the Lancorp offering

11   from an insured product to a product guaranteed by a bank or broker-dealer to retain its liquidation

12   value was a material change.  See Exh. 2 attached to the Motion to Compel Arbitration.  Lancaster

13   testified in the arbitration that, in his mind, the substituted bank or broker-dealer validation was as

14   good as insurance, Lancaster Arb. Tr. Vol III, at 12-13, and ONESCO concludes that this change

15   therefore was not material.  Lancaster, however, also later expressly reaffirmed in the arbitration that

16   paragraph 5 of his declaration was accurate, and, indeed, other than two points that are discussed in

17   the next two sections of this Memorandum, he reaffirmed that all of his declarations in this Court

18   were accurate.  Lancaster Arb. Tr. Vol. III, at 123-40.  He also testified as follows on this point in

19   response to a leading question by ONESCO's counsel:

20        Q.    Sir, in fact, because there was no real change in terms of the security being
21              provided prior to April and after April 2004, you can't accurately describe
              that as a material change, can you?
22
23        A.    I guess not, it just – it seemed like a significant change, particularly for those
              who wanted the assurance that they had bought insurance to protect their
              investment.
24
25   Lancaster Arb. Tr., Vol III, at 20.

     This evidence fails to satisfy the requirements of Rule 60(b)(2) for several reasons.  First, the
26
27   substance of Lancaster's arbitration testimony is the same as Lancaster's declaration in this court and

     is therefore not newly discovered.  In addition to his statement in paragraph 5 of his declaration that
28
     the insurance change was material, Lancaster said in paragraph 4, as he did later in the arbitration,

-12-

that "Lancorp replaced the insurance element with a validated written obligation from the bank or broker/dealer acting as custodian, which would provide the same level of protection that was initially contemplated from an outside insurer." The reconfirmation letter which Lancaster sent to the Defendants in April 2004 made the same statement that the bank obligation would provide "the same level of protection" that was "originally contemplated from an outside insurer." <u>See</u> Exh. 3 attached to the Motion to Compel Arbitration.

Already by October 19, 2007, more than three months before this Court's January 28 Order, ONESCO argued in this Court that paragraph 4 of Lancaster's declaration meant that Lancaster had admitted that the insurance change was not material. <u>See</u> Exh. 11 at 13 n.5. Now, ONESCO argues that substantially similar testimony by Lancaster is newly discovered. ONESCO cannot treat the evidence as newly discovered when ONESCO already knew that Lancaster considered the bank or broker/dealer guarantee to provide the same level of protection as insurance. The evidence therefore does not satisfy the first requirement for relief under Rule 60(b)(2)–that the evidence in fact be newly discovered.

The evidence also did not satisfy the second requirement for relief under Rule 60(b)(2)–that ONESCO exercised due diligence. As Defendants have previously explained, Lancaster sent thousands of pages to ONESCO in the spring of 2007. When ONESCO (1) received from Lancaster copies of the April 2004 reconfirmation letters, stating that the change in the Lancorp insurance element was intended to provide Lancorp investors with the same level of protection and then (2) later saw Lancaster's declaration in this court that the change in the insurance element was material, even though it was intended to provide the same level of protection to Lancorp investors, nothing prevented ONESCO from picking up the phone and talking to Lancaster, to determine exactly what he meant. Through reasonable diligence, ONESCO could have discovered whatever additional details ONESCO thought were necessary about Lancaster's views on the materiality of the change in Lancorp's insurance element. In this respect, ONESCO's failure to ask questions to Lancaster is like <u>Cowan v. Strafford R-VI School District</u>, 140 F.3d 1153, 1159-60 (8th Cir. 1998), in which the Court said that the "School District did not ask Cowan questions that would have elicited the

1    information now complained about regarding that pregnancy. This circumstance does not provide

2    an appropriate basis to grant Rule 60(b) relief . . . ."

3         ONESCO also has not satisfied the third element of a Rule 60(b)(2) motion for relief from

4    judgment with respect to Lancorp's change of its insurance element.    ONESCO already had

5    Lancaster's declaration that the insurance change was intended to provide the same level of

6    protection as originally contemplated, and Lancaster's later, nearly identical arbitration testimony

7    was at best not significantly different and was merely cumulative to his declaration on this point.

8    This testimony would not probably have produced a different result in this Court.

9         Moreover, the materiality of the insurance change is ultimately a question for the arbitrators,

10   and Lancaster's opinion about it is not dispositive.   A witness's opinion is not grounds for Rule

11   60(b) relief.  See Swope v. Siegel-Robert, Inc., 243 F.3d 486, 498 (8th Cir. 2001) ("Rule 60(b)

12   permits consideration only of facts which were in existence at the time of trial, not opinions, which

13   can be formulated at any time.").   Although Lancaster may have persuaded himself–and

14   misrepresented to investors–that a bank or broker-dealer validation was as good as insurance, he

15   nevertheless undisputedly thought the change was important enough to require the Lancorp investors

16   to confirm they still wanted the investment, before he would allow them to proceed. See Exh. 3

17   attached to the Motion to Compel Arbitration.

18        In addition, this Court can readily see that a mere validation by a bank or broker-dealer is not

19   as good as insurance from a recognized and regulated domestic insurance carrier.  Insurance would

20   typically have been directly to the investors as beneficiaries, while, as Lancaster stated in his

21   reconfirmation letter, see Exh. 3 attached to the Motion to Compel Arbitration, the bank or broker-

22   dealer obligation was only to Lancorp.  If a judgment was entered against Lancorp, the judgment

23   creditor could have seized the funds at the financial institution.  A Lancorp creditor could not

24   similarly have seized the investors' insurance proceeds.  Furthermore, Lancaster's inability to obtain

25   insurance from a legitimate insurance carrier was itself material, even for investors who had opted

26   not to have insurance, because it cast significant doubt on Lancorp's financial backing and stability.

27        "A statement or omitted fact is 'material' if there is a substantial likelihood that a reasonable

28   investor would consider the information important in making a decision to invest." R&W Technical

-14-

Services Ltd. v. Commodity Futures Trading Comm'n, 205 F.3d 165, 169 (5th Cir. 2000). Reasonable investors would consider the Lancorp insurance change to be important, and some of the Lancorp investors likely chose to obtain a refund of their investment as a result of this disclosure. The proof here is in the pudding, because the validated bank or broker-dealer obligation which Lancaster did obtain in place of the insurance was inadequate to prevent the losses which occurred.

Even more significantly for purposes of this proceeding, this Court need not determine whether the change was material. Contrary to ONESCO's assertions, materiality is not an element of NASD Rule 12200, and the NASD arbitration obligation is not limited to disputes which a court has determined in advance are based on material misrepresentations. Thousands of NASD arbitrations are filed every year, and most of them require arbitrators to decide on the merits whether representations are material. If this Court was required as part of its arbitrability determination to decide whether representations are material, then courts could improperly interfere with the merits decisions of most NASD arbitrations, and courts could have thousands of mini-proceedings on materiality before allowing NASD arbitrations to continue. Because a determination of materiality is not needed to decide arbitrability, the allegedly newly discovered evidence regarding materiality is not pertinent to this Court's decision on arbitrability and certainly would not probably have produced a different result in this Court.

### D.    The Disclosure in May 2004

The third item of newly discovered evidence, which ONESCO mentions only in a footnote, see Rule 60 Memorandum at 8 n.2, and which ONESCO has conceded is not relevant to arbitrability, see attached Goodman Dec., Exh. 1 at 12 n.4, was in connection with the following three sentences in paragraph 8 of Lancaster's first declaration, attached as Exh. 2 to the Defendants' Motion to Compel Arbitration:

> When I knew that the Lancorp Fund offering would be going forward, I called ONESCO to determine how to disclose this information. I received a one page form from ONESCO, which I returned to ONESCO in May 2004. I told ONESCO on this disclosure form that I would be starting the Lancorp Fund as a private placement fund on May 14, 2004.

In the arbitration, Lancaster continued to assert that most of the substance of these statements was correct. He had called ONESCO about Lancorp, received the one page form, and filled it out.

-15-

1  Lancaster Arb. Tr. Vol. III, at 135-38.   Indeed, the undisputed existence of the form in Lancaster's

2  files supports his testimony that he obtained it from ONESCO, because he was unlikely to have

3  obtained it elsewhere.  In his testimony, however, Lancaster was no longer certain of the dates and

4  whether he sent back the form to ONESCO.  Lancaster Arb. Tr. Vol. III, at 136.

5          Although this testimony was surprising to the investors in the arbitration and in fact was

6  initially elicited by the investors on direct examination, Lancaster Arb. Tr. Vol. II, at 78, it at best

7  pertains only to the merits and would have had no direct impact on this Court's arbitrability

8  determination.  None of the 18 courts that has ruled on arbitrability has relied on this assertion in

9  Lancaster's declaration.  The change in Lancaster's testimony relating to this assertion was not a

10  material change that would probably have produced a different result in this Court. It therefore is not

11  grounds for relief under Rule 60(b)(2).

12          Moreover, the core of this testimony–that Lancaster called ONESCO to determine how to

13  disclose his involvement in Lancorp–is now corroborated by e-mails which ONESCO did not

14  disclose to the investors until after Lancaster's arbitration testimony, thereby preventing counsel

15  from examining Lancaster on them.  These e-mails show that, in September 2004, Lancaster told

16  ONESCO he was the issuer of an active private placement fund, which was Lancorp.  ONESCO told

17  him to fill out an ONESCO personal brokerage account form.  Lancaster then disclosed on the

18  ONESCO disclosure form that he had an overseas brokerage account in Lancorp's name.  <u>See</u>

19  attached Goodman Dec., Exh. 12.

20          The ONESCO disclosure form stated that, under NASD rules and ONESCO's regulations,

21  ONESCO would obtain account statements for this overseas account. <u>See</u> attached Goodman Dec.,

22  Exh. 12.  If ONESCO had obtained these account statements, it would have seen that Lancaster, who

23  had been unemployed for months before ONESCO hired him, who was having severe financial

24  difficulties, and who had executed no securities transactions for ONESCO, had deposited

25  approximately $9 million of Lancorp investor funds overseas.  <u>See</u> Exh. 4 attached to the Motion to

26  Compel Arbitration; Lancaster Arb. Tr. Vol. I, at 222; Vol. III, at 53, 81. These disclosures were

27  more than a red flag.  They were a stop sign which ONESCO heedlessly plowed through, thereby

28  leading to the losses that ultimately occurred.

E.    **Compliance Manuals**

The final item of newly discovered evidence, which ONESCO mentions only in a footnote, see Rule 60 Memorandum at 8 n.2, and which ONESCO has conceded is not relevant to arbitrability, see attached Goodman Dec., Exh. 1 at 12 n.4, was an assertion in the second sentence of paragraph 2 of Lancaster's second declaration, see Exh. 4 attached to Defendants' Motion to Compel Arbitration, that ONESCO had not provided him with procedures or compliance manuals. Based on Lancaster's testimony in the arbitration, this sentence in the declaration should more accurately have said that Lancaster did not remember being provided with these manuals, and he did not have any manuals he could find. Lancaster Arb. Tr. Vol. II, at 84. This minor change continues to support the primary point of the sentence, that ONESCO's supervisory procedures had no impact on Lancaster and that the Defendants had a factual basis for their allegations of failure to supervise. None of the 18 courts thus far that has compelled ONESCO to arbitrate, including this Court, has relied on this assertion in Lancaster's second declaration. The change in Lancaster's testimony regarding this assertion would not have altered this Court's arbitrability decision. This change is not material evidence that would probably produce a different result, and it therefore does not satisfy the third element of relief under Rule 60(b)(2).

II.    **ONESCO HAS NOT SATISFIED THE REQUIREMENTS FOR OBTAINING RELIEF FROM JUDGMENT ON THE GROUND OF FRAUD.**

ONESCO also has not satisfied the requirements for relief under Rule 60(b)(3), which allows relief on the ground of "fraud . . ., misrepresentation, or misconduct by an opposing party."

> "To prevail, the moving party must prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the defense." "Federal Rule of Civil Procedure 60(b)(3) require[s] that fraud ... not be discoverable by due diligence before or during the proceedings."

Casey v. Albertson's Inc., 362 F.3d 1254, 1260 (9th Cir. 2004) (citations omitted). In addition,

> Subsection (b)(3) permits relief only when the fraud was committed by "an adverse party." See In re Grantham Bros., 922 F.2d 1438, 1442-43 (9th Cir.1991) (declining to apply Rule 60(b)(3) where fraud was committed by the appellant's clients in part because the rule "is aimed at fraud perpetrated by an adverse party"). Thus, in order to prevail on a Rule 60(b)(3) motion, the defendants must have committed the fraud at issue.

Latshaw v. Trainer Wortham & Co., 452 F.3d 1097, 1102 (9th Cir. 2006).

1    Here, ONESCO complains about two declarations signed by ONESCO's former employee,

2 Lancaster, and not by the opposing parties, the Defendants. Lancaster testified that his declarations

3 repeated what he told Defendants' counsel and accurately stated what he believed at that time.

4    Q.    [T]hese declarations were prepared by my law firm; is that not an accurate
         statement?
5
6    A.    Yes.

     Q.    Prior to each declaration being sent to you, was there a conversation with you
7          by someone in our office?

8    A.    Yes.

9    Q.    And in that conversation, you were asked certain questions?

10   A.    Yes.

11   Q.    And you were then given the declaration to sign . . . [b]ased on the
         conversation?
12
13   A.    Correct.

     Q.    At the time you signed each of these declarations, did you believe that they
14          were accurate at the time?

15   A.    I did.

16   Q.    . . . [W]as this information that you relayed to our law firm during these
         conversations?
17
18   A.    Yes.

19 Lancaster Arb. Tr. Vol III, at 123-24.

20    Thus, at best, assuming *arguendo* that fraud occurred, ONESCO can establish only that the

21 fraud was committed by ONESCO's former employee, Lancaster. ONESCO has not alleged or

22 established any deliberate and intentional fraud by the Defendants or their counsel. Moreover,

23 Defendants deny that they committed any such fraud. Defendants' counsel's preparation of

24 Lancaster's declarations is not enough to establish fraud by the Defendants.

25    The only evidence that Spine committed perjury, however, is the conflict between his
      trial testimony and Dun & Bradstreet's version of the July 5th report; the only
26    evidence of Demas''s involvement is that he was Azcon's trial attorney. This meager
      evidence falls woefully short of proving a fraud on the court. More importantly, if a
27    losing party could attack a verdict whenever two witnesses disagreed and an attorney
      was involved, no verdict would be final.
28

1  Cleveland Demolition Co., Inc. v. Azcon Scrap Corp., 827 F.2d 984, 986 (4th Cir. 1987).

2  Accordingly, ONESCO is not entitled to relief under Rule 60(b)(3).

3      Defendants also deny that ONESCO has established that fraud was in fact committed by

4  anybody in this instance, including Lancaster, and they deny that ONESCO was prevented from

5  "fully and fairly presenting" its case, as required for relief under Rule 60(b)(3).  Much of the analysis

6  that applies to ONESCO's Rule 60(b)(2) arguments also applies to ONESCO's Rule 60(b)(3)

7  arguments.  As Defendants have previously explained, ONESCO knew or could readily have

8  discovered all of the information about the alleged three effective dates for the Defendants' Lancorp

9  investments which it now claims it was prevented from discovering.  Defendants' reliance on the

10  May 14, 2004, Lancorp closing date was fully justified.  They had no reason to discuss the effective

11  date for the Lancorp PPM or the effective date of Lancorp's transfer of funds to Megafund, because

12  they did not consider these dates to be relevant to this Court's arbitrability decision.  They still do

13  not consider these dates to be relevant.  ONESCO cannot reasonably accuse the Defendants of

14  committing fraud in this respect, when ONESCO alleges at most only an omission from Lancaster's

15  declarations, not a misrepresentation.

16      Similarly, viewed *in toto* rather than out of context, Lancaster's testimony in the arbitration

17  and his declarations in this Court were substantially identical with respect to the materiality of the

18  change in Lancorp's insurance element.  Both in the arbitration and in this Court, Lancaster said that

19  the validated bank or broker-dealer guarantee which replaced the insurance that Lancorp had

20  originally offered would provide the same level of protection as the insurance, but he also believed

21  that this change was significant or material, and he therefore required Lancorp investors to

22  acknowledge the change before they could continue their investment. These beliefs were only

23  Lancaster's opinions and therefore not grounds for relief under Rule 60(b)(3), which must focus on

24  the underlying facts rather than on a witness's opinions about the facts.  In addition, because

25  Lancaster's arbitration testimony and his declarations are effectively the same on this point, no fraud

26  even arguably occurred.  ONESCO was not prevented from "fully and fairly presenting" its case as

27  required for relief under Rule 60(b)(3).

28

1    In the arbitration, Lancaster did withdraw two statements in his declarations, but  ONESCO

2  has conceded these two statements "do not directly implicate the Court's arbitrability analysis." <u>See</u>

3  attached Goodman Dec., Exh. 1 at 12 n.4.  Accordingly, ONESCO was again not prevented from

4  "fully presenting its case" on these points.  Lancaster withdrew the first statement–that he had not

5  received compliance manuals from ONESCO–when he saw a document he signed that indicated he

6  must have seen ONESCO's compliance manuals. Lancaster Arb. Tr. Vol. II, at 84. Lancaster had not

7  remembered seeing the compliance manuals, but a mistaken memory is not uncommon and not

8  fraudulent.

9    Similarly, Lancaster withdrew his statement that he notified ONESCO about Lancorp in May

10  2004.  Lancaster Arb. Tr. Vol. II, at 78.  This arbitration testimony was unexpected, because

11  Lancaster had said in his SEC deposition that he had provided this notice.  Lancaster SEC Tr., at

12  168-69.  Perhaps, Lancaster confused this notice with the notice he provided ONESCO in September

13  2004 about his Lancorp account at Tricom.  ONESCO did not produce the e-mails that confirmed

14  this September 2004 notice until after Lancaster testified in the arbitration, thereby preventing

15  complete examination at that time of the issue. <u>See</u> attached Goodman Dec., Exh. 12.  In any event,

16  based on attached Goodman Dec., Exh. 12, the substance of Lancaster's declarations is correct–that

17  he told ONESCO about Lancorp while he worked for ONESCO.  Whether he provided this notice

18  in May or September 2004 has no bearing on arbitrability.  ONESCO has not established that

19  Lancaster committed deliberate fraud and certainly has not established that ONESCO's ability to

20  present its arguments to this Court was in any way impeded as a result.

21    For all of these reasons, ONESCO has not satisfied the Rule 60(b)(3) requirements with

22  respect to its allegations of fraud.  Because it also has not satisfied the Rule 60(b)(2) requirements

23  with respect to newly discovered evidence, it has not established any basis for relief under Rule

24  60(b).

25    WHEREFORE, Defendants respectfully request this Court to deny ONESCO's Rule 60

26  Request.

27

28

1

Respectfully submitted,

2

DATED: May 2, 2008

GOODMAN & NEKVASIL, P.A.

3

By: /s/ Joel A. Goodman

4

Joel A. Goodman
Attorney *pro hac vice*

5

LAW OFFICES OF RICHARD A. KUTCHE

6

Richard A. Kutche
Local counsel

7

Attorneys for Defendants

8

## CERTIFICATE OF SERVICE

9

I hereby certify that on May 2, 2008, I caused the foregoing to be electronically filed with the

10

Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-

11

mail addresses denoted on the Electronic Mail Notice List below.

12

/s/ Joel A. Goodman

13

Joel A. Goodman
Goodman & Nekvasil, P.A.
14020 Roosevelt Blvd., Suite 808

14

P.O. Box 17709
Clearwater, Florida 33762

15

Telephone:  727-524-8486
Facsimile:  727-524-8786

16

17

**Electronic Mail Notice List**

18

Daniel T. Balmat
dbalmat@ssd.com, rarroyo@ssd.com

Marion Homer Little, Jr,
little@litohio.com

19

Joseph Anthony Meckes
jmeckes@ssd.com, sfr_docket@ssd.com

Michael R. Reed
reed@litohio.com

20

21

22

23

24

25

26

27

28