# Exhibit 11

ZEIGER, TIGGES & LITTLE LLP
Marion H. Little, Jr. (admitted *pro hac vice*)
Michael R. Reed, Esq. (admitted *pro hac vice*)
3500 Huntington Center
41 South High Street
Columbus, OH  43215
Telephone:  (614) 365-990
Facsimile:  (614) 365-7900
Email:  little@litohio.com

SQUIRE, SANDERS & DEMPSEY L.L.P.
Joseph A. Meckes (State Bar No. 190279)
Daniel T. Balmat (State Bar No. 230504)
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492
Telephone:  (415) 954-0200
Facsimile:  (415) 393-9887
Email:  jmeckes@ssd.com
Email:  dbalmat@ssd.com

Attorneys for Plaintiff
THE O.N. EQUITY SALES COMPANY

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### (SAN JOSE DIVISION)

| | |
|---|---|
| THE O.N. EQUITY SALES COMPANY, an Ohio Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>THOMAS NEMES, INDIVIDUALLY AND AS TRUSTEE OF THE THOMAS NEMES TRUST, and MICHAEL J. BENKERT, INDIVIDUALLY AND ON BEHALF OF SHORE 2 SHORE ENTERPRISES, INC., and JERRY J. THOMAS, INDIVIDUALLY AND AS TRUSTEE OF THE JERRY J. THOMAS AND NANCY M. THOMAS 1998 INTER VIVOS TRUST, and NANCY M. THOMAS, INDIVIDUALLY AND AS TRUSTEE OF THE JERRY J. THOMAS AND NANCY M. THOMAS 1998 INTER VIVOS TRUST<br><br>Defendants. | Case No.  C07-03303 JF (RS)<br><br>The Honorable Jeremy Fogel<br><br>**(Filed via ECF/PACER)**<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>Date:  November 9, 2007<br>Time:  9:00 a.m.<br>Courtroom: 3, 5th Floor |

**Plaintiff's Memorandum in Opposition to Defendants' Motion to Compel Arbitration**
**Case No.  C07-03303 JF (RS)**

As to the question of who would have actually made any misrepresentations to induce the execution of the Subscription Agreement or any other actions by Defendants, we know that Defendants stated in their Subscription Agreements that it was a Robert Reese who was the actual referring party for their underlying Lancorp Fund purchases. [Subscription Agreements, at SB-11 & SB-12.] We also know that Lancaster, in his deposition in connection with S.E.C. v. Megafund Corp., et al., Case No. 3:05-CV-1328-L (N.D. Tex.), testified that he did not, in fact, solicit *any* investors in the Lancorp Fund, but that such solicitation was conducted by others who, like Reese, indisputably had no relationship with ONESCO. [See Lancaster Tr. at 66, Exh. A to ONESCO's Reply In Support of Motion for Immediate Discovery (Docket No. 34).] Defendants offer nothing to suggest that Lancaster, as opposed to someone else, solicited their investments in the Lancorp Fund.

Finally, we know that Lancaster never disclosed to ONESCO any involvement by him with the Lancorp Fund. Lancaster stipulated to this fact in his August 10, 2006 Letter of Acceptance, Waiver and Consent with the NASD. [Exh. C to ONESCO's Motion for Immediate Discovery, at 5.]

### 3. Multiple Factual Issues Exist As to The "Something" Supposedly Occurring After March 2004.

Defendants' purported "evidence" does nothing more than raise numerous questions of fact. While opposing all discovery and now seeking a *de facto* summary judgment, Defendants ironically highlight the inherent *factual nature* of the inquiry. In lieu of declarations or affidavits from themselves, Defendants offer Lancaster's declarations and argue that certain activities *after* Defendants' execution of Subscription Agreements in 2003 actually provides the basis for their claims.[5] But again, this testimony does nothing more

---

[5] For instance, Defendants argue that an April 2004 letter in which Lancaster allegedly asked them to "confirm" their investment in the Lancorp Fund, and Defendants' execution thereof, constitutes a new and material event for purposes of determining the "customer" status. Such "confirmation" was allegedly premised on the Lancorp Fund's procurement of a replacement for insurance coverage offered as part of the original private placement offering. This contention, of course, is nowhere to be found in Defendants' 50-plus page Statement of Claim, and it is otherwise a red herring. Whether or not this "confirmation" qualifies as an "investment," it is, in light of Defendants' own "evidence," irrelevant to the question of arbitrability, which focuses on the occurrence of material misrepresentations or omissions, that *induced* their investment in the

than confirm that Defendants' claims are suspect and may not be presumptively sent to arbitration.. This is made clear in numerous respects:

First, as with Defendants' unsworn contentions, Lancaster's declarations do not answer the question of the timing of any misrepresentations.

Second, Lancaster offers his opinions as to the import of Defendants' irrevocable Subscription Agreements and he asserts that he expressly informed ONESCO in writing of his involvement with the Lancorp Fund. [Id.] Putting aside obvious issues with respect to the admissibility of Lancaster's interpretations of express written agreements, his declarations reveal serious questions as to Lancaster's credibility. Specifically, Lancaster's contention that he provided express written notice to ONESCO of his involvement with the Lancorp Fund private placement is a falsehood and directly contradicts the NASD's finding in its Letter of Acceptance, Waiver and Consent with Lancaster, which Lancaster executed on August 10, 2006. [Exh. C to ONESCO's Motion for Immediate Discovery, at 5.] Specifically, the NASD found that "Lancaster failed to provide written notice of his participation in these securities transactions to O.N. Equity." [Id. at 5.] This blatant

---

Lancorp Fund. In the First Declaration of Gary L. Lancaster, upon which Defendants place significant reliance, Lancaster described the "confirmation" in the following manner:

> During 2003 and early 2004, changes in the insurance industry prevented Lancorp from obtaining this insurance and prevented Lancorp from going forward. Accordingly, Lancorp replaced the insurance element with a valid written obligation from the bank or broker/dealer acting as custodian, *which would provide the same level of protection that was initially contemplated from an outside insurer*.
>
> [Lancaster Declaration, ¶ 4; Exh. 2 to Defendants' Motion (emphasis added).]

In other words, the "confirmation" reflected *no change* in the "level of protection" promised to investors in the Lancorp Fund. Thus, by Defendants' own submission, such "confirmation" did not reflect a new or material change in the representations that allegedly induced their investments in the Lancorp Fund. Here, although Defendants identify a change in the *source* of promised protection (*i.e.*, insurer versus bank or broker/dealer), they do not allege *any change whatsoever* in the substance of the initial representations. Unless there is a material change in the alleged misrepresentation, Defendants cannot push forward the "timing" of their investment decision.

13

determine whether any of Defendants' claims are arbitrable.

Dated: October 19, 2007             Respectfully submitted,

ZEIGER, TIGGES & LITTLE LLP


/s/ Michael R. Reed
Michael R. Reed

Attorneys for Plaintiff
THE O.N. EQUITY SALES COMPANY

414-011:180600v2

SANFRANCISCO/239310.1