ZEIGER, TIGGES & LITTLE LLP
Marion H. Little, Jr., Esq. (admitted *pro hac vice*)
Michael R. Reed, Esq. (admitted *pro hac vice*)
3500 Huntington Center
41 South High Street
Columbus, OH 43215
Telephone:    (614) 365-9900
Facsimile:    (614) 365-7900
Email: reed@litohio.com

SQUIRE, SANDERS & DEMPSEY L.L.P.
Joseph A. Meckes (State Bar No. 190279)
Daniel T. Balmat (State Bar No. 230504)
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492
Telephone: +1.415.954.0200
Facsimile: +1.415.393.9887
Email: jmeckes@ssd.com
Email: dbalmat@ssd.com

Attorneys for Plaintiff
THE O.N. EQUITY SALES COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN JOSE DIVISION)

| | |
|---|---|
| THE O.N. EQUITY SALES COMPANY, an Ohio Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> THOMAS NEMES, INDIVIDUALLY AND AS TRUSTEE OF THE THOMAS NEMES TRUST, and MICHAEL J. BENKERT, INDIVIDUALLY AND ON BEHALF OF SHORE 2 SHORE ENTERPRISES, INC., and JERRY J. THOMAS, INDIVIDUALLY AND AS TRUSTEE OF THE JERRY J. THOMAS AND NANCY M. THOMAS 1998 INTER VIVOS TRUST, and NANCY M. THOMAS, INDIVIDUALLY AND AS TRUSTEE OF THE JERRY J. THOMAS AND NANCY M. THOMAS 1998 INTER VIVOS TRUST. <br><br> Defendants. | Case No. C07-03303 JF (RS) <br><br> The Honorable Jeremy Fogel <br><br> **(FILED VIA ECF/PACER)** <br><br> **PLAINTIFF'S REPLY IN SUPPORT OF REQUEST FOR COURT TO ENTERTAIN MOTION FOR RELIEF FROM JUDGMENT UNDER CIVIL RULE 60(b)(2) & (3) DURING THE PENDENCY OF APPEAL** <br><br> Date:            May 23, 2008 <br> Time:           9:00 a.m. <br> Courtroom:   3, 5th Floor <br><br> Complaint Filed:   June 22, 2007 |

SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

PLAINTIFF'S REPLY ISO REQUEST FOR COURT TO ENTERTAIN MOTION FOR RELIEF FROM JUDGMENT UNDER CIVIL RULE 60(b)(2) & (3) DURING THE PENDENCY OF APPEAL -- Case No. C07-03303 JF (RS)

**A.    After Convincing The Court To Preclude Discovery, Defendants Cannot Now Be Heard To Argue That ONESCO Should Have Discovered The Information That Confirms The Falsity Of Lancaster's Declarations Earlier.**

Defendants know they are caught between a rock and a hard place.  First, in an obvious effort to rewrite their allegations and manufacture a basis for arbitration, Defendants sought and procured two declarations from Gary Lancaster riddled with falsehoods.  The next step in their plan was to shield these declarations from any scrutiny, by preventing discovery from anyone, including both Defendants and Lancaster, as to the veracity of the false statements.  For their final step, Defendants urged this Court, like a number of other district courts in cases involving NASD claimants represented by the same counsel, to find that these false statements conclusively established the arbitrability of his claim.  [*See* Motion to Compel Arbitration at 2-4 (Doc. No. 29).]  *Defendants succeeded in each effort*, culminating with the Court specifically holding that events including a purported "material alteration" in the Lancorp Fund offering in April 2004 and the Lancorp Fund's purported "effective" date in May 2004, established the arbitrability of Defendants' claims.  [Decision, at 2, 6 (Docket No. 48).]  Now, they argue that ONESCO's recent discovery of information that clearly proves the falsity of such declarations somehow should not impact the Court's prior decision.  Huh?

There is no way to reconcile such a fundamental inconsistency, but Defendants nevertheless offer two excuses.  The first is that ONESCO should have caught them earlier.  According to Defendants, ONESCO had or should have discovered the information confirming they were submitting false testimony to this Court.[1]  Such argument is disingenuous, to say the

---

[1]    In support of this contention, Defendants cite: (1) a transcript of a 2006 deposition of Lancaster the SEC took in connection with *unrelated* Megafund litigation; (2) Lancaster's voluntary production of limited documents to ONESCO in 2007; and (3) the production of documents by non-parties to this action.  Defendants argue that these pieces of information are somehow equivalent to *sworn testimony* from Lancaster upon cross examination by ONESCO. They are not.  First, a simple review of the SEC deposition transcript, a copy of which ONESCO filed as Exh. A to its Reply in Support of Motion for an Order Authorizing the Parties to Engage in Immediate Discovery on the Issue of Arbitrability (Doc. No. 33), reveals that it provides little guidance with respect to the veracity of Lancaster's declarations in this case.  Obviously, the issues in that case were different, and the SEC's questioning of Lancaster was not tailored to the issues raised by Lancaster's present declarations, but rather as to potential lawsuits against attorneys involved in the scam.  Second, other investors' productions, while supporting the importance of discovery, hardly prove the falsity of Lancaster's statements with respect to Defendants – the investors in this case.  Third, although Lancaster did produce Lancorp-related

-1-

SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

PLAINTIFF'S REPLY ISO REQUEST FOR COURT TO ENTERTAIN MOTION FOR RELIEF FROM JUDGMENT UNDER CIVIL RULE 60(b)(2) & (3) DURING THE PENDENCY OF APPEAL -- Case No. C07-03303 JF (RS)

least. Let's be clear. ONESCO believed that Defendants' story was false, if for no other reason than it was inconsistent with the terms of their Lancorp Fund subscription agreements executed before Lancaster became associated with ONESCO.

That's why ONESCO sought discovery to prove the timing of the relevant facts for the Court's consideration. But Defendants opposed ONESCO's discovery efforts at every turn and, just as in *Hornor, Townsend & Kent, Inc. v. Hamilton*, 1:01-CV-2979, 2003 WL 23832424 (N.D. Ga. Sept. 29, 2003), their counsel convinced the Court to compel arbitration without providing ONESCO an opportunity to challenge Defendants' unilateral submissions. Unfortunately, it was not until after the Court entered its decision, specifically during the week of February 4, 2008, that ONESCO was able to collect the sworn testimony confirming the falsity of Lancaster's statements.

### B. The Evidence Revealing The Falsity Of Lancaster's Declarations Is Relevant To Arbitrability.

Next, Defendants argue that, even though their counsel procured, filed, and relied upon Lancaster's declarations in support of their arbitrability argument, the newly-discovered information would not affect the Court's decision.[2] In other words, when Defendants thought Lancaster's declarations would help them force ONESCO into arbitration, they relied upon them as providing material information with respect to the occurrence and timing of relevant events for purposes of arbitrability. Now that ONESCO has confirmed the falsity of the declarations, however, Defendants argue that the new information is irrelevant to the Court's decision. They

---

documents to ONESCO in the spring of 2007, he did not produce documents reflecting any January/February 2005 communications with Defendants at that time. A complete copy of the Defendant-related documents produced by Lancaster on June 1, 2007, is attached as Exh. A to the affidavit of Marion H. Little, Jr. ("Little Aff'd"). Of course, it is nonetheless ironic that Defendants' counsel filed Lancaster's declarations in this case despite the existence and availability of this evidence that, they say, should have led ONESCO to discover the falsity of Lancaster's declarations sooner.

[2] We note that, in direct and redirect examination during the arbitration hearing, Defendants' counsel elicited summary testimony from Lancaster allegedly confirming the truth of certain statements in his declarations. But, as the Court can plainly see, such conclusory assertions simply do not truly challenge the specific, *fact-based* testimony elicited by ONESCO during its cross-examination of Lancaster. Lancaster's testimony, when he was confronted with these actual facts, leaves no doubt as to the falsity of his declarations.

-2-

SQUIRE, SANDERS & DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CA 94111-3492

PLAINTIFF'S REPLY ISO REQUEST FOR COURT TO ENTERTAIN MOTION FOR RELIEF FROM JUDGMENT UNDER CIVIL RULE 60(b)(2) & (3) DURING THE PENDENCY OF APPEAL -- Case No. C07-03303 JF (RS)

make this argument despite the fact that the Court, in granting Defendants' motion to compel arbitration, relied – at least in part – on the Lancaster declarations and attachments thereto.

For instance, Defendants now argue that the February 1, 2005 "effective" date for Lancorp Fund (which Lancaster confirmed in his arbitration testimony), is irrelevant because the purported May 14, 2004 "effective" date (the only such date identified in Lancaster's declarations) establishes the date on which "the obligation between Lancorp and its investors became mutual." [Defendant's Memorandum in Opposition, at 4 ("Memo Contra").] This argument conveniently ignores Defendants' previous emphasis on their purported decisions in April 2004 "not to get back their money." [Motion to Compel at 3.]³ According to Defendants, this date – which Lancaster described in his June 2007 declaration – constituted an "investment decision" giving rise to arbitrability. [*Id.* at 13.] The Court, ultimately accepted these arguments, in light of the express findings quoted at page 1, *supra*.

Thanks to Lancaster's arbitration testimony, however, we now know that the investors, including Defendants, had an additional opportunity to *take back their funds* at least through the beginning of February 2005 – after Lancaster's termination from ONESCO and *prior to the Lancorp Fund's investment in Megafund*. [Lancaster Tr., Vol. II, at 282-83.] Defendants now say that this information is irrelevant. Apparently to Defendants, evidence of an investor's opportunity to take back his funds is material to arbitrability only when the date thereof *supports his or her position*. They cannot have it both ways.

---

³ Defendants' prior emphasis on this purported "opportunity" to withdraw their funds further reveals the disingenuousness of their current contention that ONESCO is somehow trying to raise a new argument for the first time as part of its request for Rule 60(b) relief. [Memo Contra, at 8-9.] First, contrary to Defendants' apparent belief, ONESCO's proposed Rule 60(b) motion does not seek a determination of the merits of the case in its favor. Rather, it requests – in light of the newly-discovered evidence – that the Court reopen the case for discovery and the presentation of evidence that, as Defendants' previous submissions indicate, is relevant to arbitrability. Second, ONESCO's belief that the newly-discovered evidence is relevant to arbitrability is fundamentally based on its argument – made repeatedly throughout this case – that Defendants are not entitled to arbitrate any claims premised on events that occurred outside of Lancaster's association with ONESCO – *either before or after*. [*See*, *e.g.*, ONESCO's Rule 56(f) Motion, at 10 (Doc. No. 34).] Given Defendants' repeated argument that it was the opportunity to get back their funds that is significant for purposes of arbitrability, they cannot now be heard to argue that ONESCO should be precluded from presenting newly-discovered evidence showing that the critical "opportunity," for purposes of Defendants' actual losses, occurred *after Lancaster's termination from ONESCO*.

-3-
PLAINTIFF'S REPLY ISO REQUEST FOR COURT TO ENTERTAIN MOTION FOR RELIEF FROM JUDGMENT UNDER CIVIL RULE 60(b)(2) & (3) DURING THE PENDENCY OF APPEAL -- Case No. C07-03303 JF (RS)

SQUIRE, SANDERS & DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CA 94111-3492

In the same vein, Defendants now argue that the "materiality" of a purported change in insurance coverage in April 2004 is "a question for the arbitrators" and not the Court. Of course, Defendants emphasized the "materiality" of this purported change no less than *4 times* in their motion to compel arbitration. [Motion to Compel Arbitration, at 2, 10, 11.] Again, Defendants argued that "materiality" was important to the Court's analysis when they felt it helped them. It became irrelevant only after the falsity of Lancaster's assertions came to light.[4]

At the very minimum, application of these rules to the newly discovered evidence (which contradicts the precise information Defendants previously deemed essential to their arbitrability arguments) makes clear the judgment should be vacated and a scheduling conference conducted.[5] More fundamentally, however, this newly-discovered information should impact the Court's analysis regarding the need to sever and enjoin arbitration of any claims that fall outside of

---

[4] Such an argument contradicts the well-settled rule that questions of arbitrability, including the occurrence and timing of events giving rise to Defendants' NASD claims, are questions to be answered *by the Court*, and not arbitrators. *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator"). In this regard, Defendants' reliance on *O.N. Equity Sales Co. v. Broderson*, 2008 WL 427468 (E.D. Mich. Feb. 14, 2008), is misplaced. The *Broderson* court's decision to reject ONESCO's proffered evidence of falsity was premised on an erroneous understanding of the court's role in determining arbitrability. Specifically, the *Broderson* court recognized that "the arbitrators have the authority to determine if a claimant is a customer as construed under the NASD rules." *Id.* at *6. To the contrary, NASD "customer" status is undisputedly an issue of substantive arbitrability (whether viewed as an issue of contract existence or scope), as analyzed by virtually every other court to address the issue.

[5] We add that ONESCO also recently uncovered information further indicating that it was a Robert Reese, and not Lancaster, who actually was the primary (if not only) solicitor of Defendants' Lancorp Fund investments. Of course, each of the Defendants in this case identified Reese, in their respective Subscription Agreements, as the "referring" party for his or Lancorp Fund investments. Now, ONESCO has obtained a copy of a complaint the SEC filed against, among others, Lancaster and Reese for events related to the Lancorp Fund. [*See* SEC Complaint, Exh. B to Little Aff'd.] The SEC's complaint describes Reese – and not Lancaster – as the "broker" who sold the Lancorp Fund investments. [*Id.* at 5.] This new evidence, which reflects the results of the SEC's detailed investigation of Lancorp Fund, raises additional questions as to whether Defendants qualify as "customers" of Lancaster, or whether they are customers *only of Reese* – a person who was never associated with ONESCO. Under *Bensadoun v. Jobe-Riatt*, 316 F.3d 171 (2d Cir. 2003), the question of whether an investor qualifies as a "customer" of an "associated person" can be answered only after both parties have had an opportunity to gather and present relevant evidence.

Defendants' counsel apparently procured an additional false affidavit from Reese, but they have not used it as part of these or the arbitration proceedings.

-4-

SQUIRE, SANDERS & DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CA 94111-3492

PLAINTIFF'S REPLY ISO REQUEST FOR COURT TO ENTERTAIN MOTION FOR RELIEF FROM JUDGMENT UNDER CIVIL RULE 60(b)(2) & (3) DURING THE PENDENCY OF APPEAL -- Case No. C07-03303 JF (RS)

ONESCO's alleged obligation to arbitrate with Defendants under NASD Rule 12200 – based on the occurrence and timing of events giving rise thereto. *See*, *e.g.*, *Becker v. Davis*, 491 F.3d 1292, 1301-03 (11th Cir. 2007); *Collins & Aikman Products Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995). This precludes Defendants from arbitrating any claims based on the pre-March 23, 2004 and post-January 3, 2005 events ONESCO confirmed by Lancaster's testimony.

### C. Defendants And/Or Their Counsel Knew or Should Have Known Lancaster's Declarations Were False.

Finally, Defendants argue that ONESCO is not entitled to relief under Rule 60(b)(3) because they and/or their counsel did not know Lancaster's declarations were inaccurate and because, in any event, their counsel's procurement and reliance on them did not prevent ONESCO from "fully and fairly presenting its case."[6] Of course, as described in ONESCO's motion, courts have not emphasized intent under Rule 60(b)(3) where, as here, perjured testimony taints the entire proceeding and/or results in a summary disposition.

But, lest there be any confusion, Defendants and/or their counsel cannot so easily deny their knowledge of Lancaster's false statements. For instance, Defendants, themselves, certainly had access to documents and information reflecting the key 2005 events described above. Surely, Defendants' counsel had access to the same SEC deposition testimony Defendants now highlight in their efforts to demonstrate ONESCO's lack of due diligence. Counsel also clearly had access to Lancaster's letter of acceptance with the NASD, which stated that Lancaster never provided written notice to ONESCO of his involvement in the sale of Lancorp Fund securities. Likewise, their counsel had the same opportunity to informally obtain information from Lancaster that they now attempt to use against ONESCO. This is particularly true, given Lancaster's obvious willingness to sign declarations prepared and submitted to him by Defendants' counsel. In short,

---

[6] Indeed, Defendants' counsel have patted themselves on the back, claiming *they* first challenged the accuracy of certain statements in Lancaster's declarations. Of course, *they* were also the ones who continued to procure the false declarations from Lancaster as late as December 2007. What really happened is Defendants' counsel got caught. At the start of the arbitration hearing, the claimants in that case moved for copies of ONESCO's cross examination materials, even though NASD Rule 10321 makes clear they were not entitled to them. As a result, it is clear that Defendants' counsel conducted the examination in question as a preemptive strike, with the benefit of ONESCO's cross examination materials.

SQUIRE, SANDERS & DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CA 94111-3492

-5-
PLAINTIFF'S REPLY ISO REQUEST FOR COURT TO ENTERTAIN MOTION FOR RELIEF FROM JUDGMENT UNDER CIVIL RULE 60(b)(2) & (3) DURING THE PENDENCY OF APPEAL -- Case No. C07-03303 JF (RS)

Defendants and/or their counsel should have known, or at least discovered, the falsity of Lancaster's declarations earlier. Had they done so, ONESCO would not have been forced to wait until the arbitration hearing to uncover and/or confirm the contrary information.

But Defendants offered nothing. Rather, they just filed Lancaster's false affidavits. These actions make clear that, just as they did in *Hornor*, 2003 WL 23832424, Defendants' counsel *procured* and *filed* false declarations in an effort to establish a self-serving and inaccurate timeline of events for purposes of arbitrability. Such efforts, coupled with a denial of discovery, obviously denied ONESCO a full and fair opportunity to present its case. This Court should follow *Hornor* and grant ONESCO's request for Rule 60(b) relief.

Respectfully submitted,

Dated: May 9, 2008                     SQUIRE, SANDERS & DEMPSEY L.L.P.


By:          */s/ Daniel T. Balmat*
                  Daniel T. Balmat

Attorneys for Plaintiff
THE O.N. EQUITY SALES COMPANY

SQUIRE, SANDERS & DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CA 94111-3492

-6-
PLAINTIFF'S REPLY ISO REQUEST FOR COURT TO ENTERTAIN MOTION FOR RELIEF FROM JUDGMENT UNDER CIVIL RULE 60(b)(2) & (3) DURING THE PENDENCY OF APPEAL -- Case No. C07-03303 JF (RS)