# EXHIBIT B

# ORIGINAL

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| Plaintiff, | : |
| vs. | :    Civil Action No. |
| GARY L. McDUFF,<br>GARY L. LANCASTER, and<br>ROBERT T. REESE, | :    **3-08CV-526-L** |
| Defendants. | : |

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

MAR 26 2008

CLERK, U.S. DISTRICT COURT
By _____

## COMPLAINT

The United States Securities and Exchange Commission ("Commission") files this Complaint against Gary L. McDuff, Gary L. Lancaster and Robert T. Reese and would respectfully show the Court as follows:

### SUMMARY

1.      The Commission files suit against Gary L. McDuff ("McDuff"), Gary L. Lancaster ("Lancaster") and Robert T. Reese ("Reese") for their respective roles in a fraudulent, unregistered offering through which they raised over $11 million from approximately 105 investors nationwide. McDuff, the mastermind behind the fraud and a convicted felon, recruited Lancaster, a former registered representative, to be the "face" of the offering, which was conducted through the Lancorp Financial Fund Business Trust ("Lancorp Fund"). McDuff also recruited Reese, his long-standing partner, to be the primary salesman for the investment. The Lancorp Fund's offering document, a materially false and misleading Private Placement Memorandum ("PPM"), stated that the Lancorp Fund would invest only in highly rated debt

**EXHIBIT**

**B**

04/14/2008 11:48 Case 5:07-cv-03303-JF 7273246786 Document 65-4 GOODMAN AND NEKVASIL Filed 05/09/2008 Page 3 of 24 PAGE 36/66

Case 3:08-cv-00526 Document 1 Filed 03/26/2008 Page 2 of 16

securities; Lancaster, as Trustee, would be paid a maximum of 50 basis points a quarter; and no commissions would be paid on initial investments. Unfortunately for investors, the defendants adhered to none of these restrictions.

    2.    As a result of facts learned in connection with its action styled *Securities and Exchange Commission v. Megafund Corp., et al.*, Civil Action No. 3-05-CV-1328-L (N.D. Texas) (hereinafter *"Megafund"*), involving a fraudulent "high yield" Ponzi scheme, the Commission learned that $9.3 million of over $14 million invested with Megafund came from the Lancorp Fund. Examining the operation of the Lancorp Fund leads to the inescapable conclusion that the defendants engaged in fraud and deception. Lancorp Fund assets were supposed to be invested only in highly-rated debt securities, yet Lancaster and McDuff agreed to have the Lancorp Fund invest millions in the Megafund Ponzi scheme. The Lancorp Fund was not allowed to pay commissions on investments in the fund, yet Lancaster paid out over $300,000 in covert commissions to McDuff and Reese. Finally, the Lancorp Fund was to distribute investment profits to investors and only allowed to pay Lancaster 50 basis points minus expenses per quarter, yet Lancaster paid himself over $336,000 by establishing an undisclosed side agreement to share in the Megafund Ponzi payments without ever distributing "profits" to investors.

    3.    In the interest of protecting the investing public from further such unscrupulous conduct, the Commission files suit against the Defendants seeking injunctive relief, disgorgement of ill-gotten gains, prejudgment interest, and civil penalties.

### JURISDICTION

    4.    The Court has jurisdiction over this action pursuant to Section 20(d) and 22(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77t(d) and § 77v(a)], Sections

*SEC v. Gary L. Lancaster, et al.*
COMPLAINT
Page–2

21(d), 21(e) and 27 of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78u(d), 78u(e) and 78(aa)] and Section 214 of the Investment Advisers Act of 1940 (the "Investment Advisers Act") [15 U.S.C. § 80b-14]. Venue is proper because many of the transactions, acts, practices and courses of business described below occurred within the jurisdiction of the Northern District of Texas.

## DEFENDANTS

5.     **Gary L. McDuff** ("McDuff"), age 52, is a former resident of Deer Park, Texas. McDuff has never been associated with a registered broker dealer or investment adviser. In 1994, McDuff was convicted of two counts of money laundering and was sentenced to 36 months in federal prison. McDuff refused to appear for testimony in response to an investigative subpoena issued by the Commission and was the subject of a subpoena enforcement action, *SEC v. Gary Lynn McDuff*, Misc. Action No. 406-MC-Y (N.D. Tex. filed March 10, 2006). On information and belief McDuff currently resides in Mexico.

6.     **Gary L. Lancaster** ("Lancaster"), age 54, is a resident of Vancouver, Washington and the control person of the Lancorp Financial Fund Business Trust and Lancorp Financial, LLC. Lancaster was a registered representative, most recently with American Fidelity Securities, Inc. from March 2006 through July 2006. Previously, Lancaster was registered with Sloan Securities Corporation from July 2005 through October 2005 and with The O.N. Equity Sales Company from March 2004 through January 2005. Lancaster has held Series 6, 7, 63, and 65 licenses. On September 5, 2006, the NASD barred Lancaster from association with any NASD member in any capacity.

7.     **Robert T. Reese** ("Reese"), age 65, is a resident of Carmel, California and a licensed insurance agent. In 2004, the California Department of Corporations entered a Desist

and Refrain Order against Reese for acting as an unregistered broker selling unregistered securities. Reese has never been associated with a registered broker, dealer or investment adviser.

## RELATED ENTITIES

8.     Lancorp Financial Fund Business Trust (previously referred to as the "Lancorp Fund") was a private placement fund that Lancaster organized as a Nevada domestic business trust. Lancaster began soliciting investor funds for the trust in 2003. Lancaster was the lone signatory on all Lancorp Fund bank accounts. The State of Nevada revoked the Lancorp Fund's registration in 2006. Lancorp Financial Group, LLC (previously referred to as "Lancorp LLC"), incorporated in Oregon in 1996, was established to be the financial adviser for a private placement fund, and ultimately, served in this capacity for the Lancorp Fund. Lancaster was the sole principal and control person of Lancorp LLC. The Oregon Secretary of State revoked Lancorp LLC's registration in 2006. Pursuant to an agreement between the *Megafund* court-appointed receiver and Lancaster, the Lancorp Fund and Lancorp LLC became part of the *Megafund* receivership in January of 2006.

## BACKGROUND FACTS

9.     In the fall of 2000, Lancaster was working as a bank officer. In the course of his duties, Lancaster was introduced to McDuff, who was looking for a loan. Ultimately, the bank elected not to do business with McDuff because of his 1994 conviction for money laundering. McDuff, however, convinced Lancaster that he was innocent of any wrong-doing. Lancaster later went into business with McDuff, helping to manage investments with McDuff. In March 2003, at the direction of McDuff, Lancaster created the Lancorp Fund.

*SEC v. Gary L. Lancaster, et al.*
COMPLAINT
Page—4

04/14/2008 11:40  Case 5:07-cv-03303-JF  275248766  Document 65-4  Filed 05/09/2008  GOODMAN AND NEKVASIL  Page 6 of 24  PAGE  39/66

Case 3:08-cv-00526  Document 1  Filed 03/26/2008  Page 5 of 16

10.     The Lancorp Fund's private placement offering began on March 17, 2003.   The Private Placement Memorandum, previously referred to as the "PPM" for the Lancorp Fund was prepared by an attorney in Houston who had a prior existing relationship with McDuff.  Once he provided Lancaster with the PPM, McDuff supplied Lancaster with a "broker" to sell the investment – Robert T. Reese, an insurance agent in Carmel, California.

11.     According to the PPM, the Lancorp Fund was an "unregistered closed-end non-diversified management investment company" that would "not be managed like a typical closed-end investment company."   Instead, the Lancorp Fund would be internally managed by the trustees (i.e., Lancaster) and not by a separate investment adviser.  The PPM stated that the Lancorp Fund's investment strategy involved the "issuance of Forward Commitments" to participate in transactions relating to debt securities with the goal of "maximizing the protection of investors' funds."   Specifically, the PPM stated that the Lancorp Fund was only allowed to invest in original issue debt securities rated at least "A+" by Standard & Poor's Corporation or "A1" by Moody's Investor Service.  Additionally, the PPM falsely stated that that Lancaster was "an investment adviser registered with the Commission under the Investment Advisers Act of 1940, as amended."

12.     The PPM set forth that no commissions would be paid on the sale of investor shares, and that Lancaster, as trustee of the Lancorp Fund, would be compensated in an amount equal to .5% of the fund's deposits (i.e., assets under management) minus expenses. The PPM also set forth that any remaining quarterly income would be distributed as "investor returns" to the fund's shareholders.   Application materials asked potential investors whether they were accredited, and if so to "check the box."   Investors were not provided with any financial information, audited or otherwise.

*SEC v. Gary L. Lancaster, et al.*
COMPLAINT
Page–5

04/14/2008 11:46 7275248786 Case 5:07-cv-03303-JF Document 65-4 Filed 05/09/2008 Page 7 of 24 GOODMAN AND NEKVASIL PAGE 40/66

Case 3:08-cv-00596 Document 1 Filed 03/26/2008 Page 6 of 16

13. The Lancorp Fund was offered to investors nationwide through a general solicitation. The Lancorp Fund raised approximately $11 million from 105 investors (including at least 37 unaccredited investors). The majority of the investors in the Lancorp Fund were referred to the Lancorp Fund by Reese, with the remainder coming from McDuff. Reese advertised the Lancorp Fund investment in at least one investor periodical, and even created his own "lead sheets" that he sent to potential investors. The lead sheets borrowed some information from the Lancorp Fund PPM, but also contained statements that Reese simply fabricated. According to the lead sheets, investor funds would be deposited in an A+ or higher rated US Bank; security for the deposits, which guaranteed protection of 100% of an investor's principal, would be provided by US insurers rated A or higher by AM Best Company; investments in the Lancorp Fund were safe and would have no sales charges; and the trustee fee would be deferred until a minimum return was paid to investors.

14. In January 2005, McDuff introduced Lancaster to Leitner and the Megafund investment opportunity. McDuff showed Lancaster the Megafund offering documents, which set forth that investor funds would be placed in "an account at a major U.S. Brokerage firm" where an unnamed "Trader" would engage in "arbitrage" transactions involving the purchase and sale of "Treasury bills, certificates of deposit, stocks, bonds, securities and derivatives of such on margin or otherwise . . . and Tri-Party Repurchase Agreement transactions." The Megafund materials went on to promise that investors would receive a "ten percent profit" per month and that their principal investment would never be at risk. After hearing a pitch on Megafund, and at McDuff's recommendation, on February 8, 2005 Lancaster directed the Lancorp Fund to invest $5 million in the Megafund offering regardless that such an investment was clearly outside the investment parameters allowed by the Lancorp Fund PPM.

*SEC v. Gary L. Lancaster, et al.*
COMPLAINT
Page–6

15. Lancaster initially told McDuff and Reese that the Lancorp Fund could not compensate them for referring investors to the fund for two reasons: the Lancorp Fund PPM explicitly stated that no commissions would be paid, and Lancaster knew that McDuff and Reese were not registered representatives and therefore could not receive transaction-based compensation. Shortly after the Lancorp Fund's initial investment in Megafund, however, McDuff devised a plan to circumvent the Lancorp Fund's proscription on the payment of commissions.

16. McDuff caused an entity he controlled named MexBank S.A. de C.V. ("MexBank") to enter into a "joint-venture" profit-sharing arrangement with Lancorp Financial Group LLC (previously described as "Lancorp LLC"), which Lancaster controlled. Lancorp LLC also entered into an agreement with the Lancorp Fund, which provided that Lancorp LLC would act as an investment adviser to the Lancorp Fund. Lancaster executed the agreement for both parties. The joint-venture agreement set forth that all monthly gross profits payable by Megafund to the Lancorp Fund would be divided 64.8% to Lancorp LLC and 35.2% to MexBank. The agreement was dated March 17, 2005, but stated that the effective date was February 2, 2005, in order to "memorialize a prior understanding of the division of earnings derived from investments in the Megafund Corporation." None of this was ever disclosed to Lancorp Fund investors. As a result, when Megafund started making "profit" payments, which were in reality Ponzi payments, to the Lancorp Fund, McDuff and Reese were able to receive compensation through MexBank for bringing investors to the Lancorp Fund.

17. Between June 2004 and May 2005, Megafund raised over $14 million from investors, including over $9.3 million from the Lancorp Fund. Megafund never deposited investor funds with a U.S. brokerage firm as represented to investors. Instead, it transferred

approximately $11 million of investor funds to an offshore bank account controlled by James Rumpf. Approximately $9.5 million of those funds were transferred to a U.S. bank account controlled by a convicted felon named Bradley Stark ("Stark"). Stark's bank records revealed that he was operating a separate Ponzi scheme, and that at the time the Commission filed the *Megafund* emergency action, he had transferred approximately $2.6 million in Ponzi payments from his scheme back to Megafund.

18.     On March 23, 2005, Megafund made a $500,000 "profit" payment to the Lancorp Fund. Lancaster re-invested some of those funds with Megafund, transferred $138,229 through Lancorp LLC to a personal account, and transferred $128,437 to MexBank. On April 26, 2005, Megafund made a second $500,000 "profit" payment to the Lancorp Fund. This time, Megafund sent $175,835 to MexBank directly, and $324,165 to the Lancorp Fund. Lancaster transferred $198,000 from the Lancorp Fund to his personal account, and re-invested the remaining $126,165 with Megafund.

19.     By the time the Commission filed its emergency action against Megafund on July 5, 2005, Lancaster had kept $336,229 for himself and Reese and McDuff had divided $304,272 through the undisclosed compensation arrangement. McDuff transferred $45,792 to Reese from the MexBank account and kept the remaining $258,480 for himself. No money or profits were distributed to Lancorp Fund investors.

**CLAIMS**

**FIRST CLAIM**
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5**

20.     Plaintiff Commission repeats and incorporates paragraphs 1 through 19 of this Complaint by reference as if set forth *verbatim*.

*SEC v. Gary L. Lancaster, et al.*
COMPLAINT
Page–8

21.     Defendants, directly or indirectly, singly or in concert with others, in connection
with the purchase and sale of securities, by use of the means and instrumentalities of interstate
commerce and by use of the mails have: (a) employed devices, schemes and artifices to defraud;
(b) made untrue statements of material facts and omitted to state material facts necessary in
order to make the statements made, in light of the circumstances under which they were made,
not misleading; and (c) engaged in acts, practices and courses of business which operate as a
fraud and deceit upon purchasers, prospective purchasers and other persons.

22.     As a part of and in furtherance of their scheme, Defendants, directly and
indirectly, prepared, disseminated or used contracts, written offering documents, promotional
materials, investor and other correspondence, and oral presentations, which contained untrue
statements of material facts and misrepresentations of material facts, and which omitted to state
material facts necessary in order to make the statements made, in light of the circumstances
under which they were made, not misleading, including, but not limited to, those set forth in
Paragraphs 1 through 19 above.

23.     Defendants made the above-referenced misrepresentations and omissions
knowingly or with severe recklessness regarding the truth.

24.     By reason of the foregoing, Lancaster, McDuff and Reese have violated and,
unless enjoined, will continue to violate the provisions of Section 10(b) of the Exchange Act [15
U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### SECOND CLAIM
#### Violations of Section 17(a) of the Securities Act

25.     Plaintiff Commission repeats and incorporates paragraphs 1 through 19 of this
Complaint by reference as if set forth *verbatim*.

*SEC v. Gary L. Lancaster, et al.*
COMPLAINT
Page–9

26. Defendants, directly or indirectly, singly, in concert with others, in the offer and sale of securities, by use of the means and instruments of transportation and communication in interstate commerce and by use of the mails, have: (a) employed devices, schemes or artifices to defraud; (b) obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices or courses of business which operate or would operate as a fraud or deceit.

27. As part of and in furtherance of this scheme, Defendants, directly and indirectly, prepared, disseminated or used contracts, written offering documents, promotional materials, investor and other correspondence, and oral presentations, which contained untrue statements of material fact and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including, but not limited to, those statements and omissions set forth in paragraph 1 through 19 above.

28. Defendants made the above-referenced misrepresentations and omissions knowingly or with severe recklessness with regard for the truth. Defendants were also negligent in their actions regarding the representations and omissions alleged herein.

29. By reason of the foregoing, Lancaster, McDuff and Reese have violated, and unless enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

### THIRD CLAIM
### Violations of Section 5(a) and 5(c) of the Securities Act

30. Plaintiff Commission repeats and incorporates paragraphs 1 through 19 of this Complaint by reference as if set forth *verbatim.*

31. Defendants, directly or indirectly, singly and in concert with others, have been offering to sell, selling and delivering after sale, certain securities, and have been, directly and

*SEC v. Gary L. Lancaster, et al.*
COMPLAINT
Page-10

04/14/2008 Case 5:07-cv-03303-JF 12732487866 Document 65-4 Filed 05/09/2008 GOODMAN AND NEKVASIL Page 12 of 24 PAGE 45/66

Case 3:08-cv-005    Document 1    Filed 03/26/200    Page 11 of 16

indirectly: (a) making use of the means and instruments of transportation and communication in interstate commerce and of the mails to sell securities, through the use of written contracts, offering documents and otherwise; (b) carrying and causing to be carried through the mails and in interstate commerce by the means and instruments of transportation, such securities for the purpose of sale and for delivery after sale; and (c) making use of the means or instruments of transportation and communication in interstate commerce and of the mails to offer to sell such securities.

32.    As described in paragraphs 1 through 19, the investments were offered and sold to the public through a general solicitation of investors. No registration statements were ever filed with the Commission or otherwise in effect with respect to these securities.

33.    By reason of the foregoing, Lancaster, McDuff and Reese have violated and, unless enjoined, will continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## FOURTH CLAIM
### Violations of Section 15(a)(1) of The Exchange Act

34.    Plaintiff Commission repeats and incorporates paragraphs 1 through 19 of this Complaint as if set forth *verbatim*.

35.    At the times alleged in this Complaint, Defendants have been in the business of effecting transactions in securities for the accounts of others.

36.    Defendants made use of the mails and of the means and instrumentalities of interstate commerce to effect transactions in and to induce or attempt to induce the purchase of securities.

*SEC v. Gary L. Lancaster, et al.*
COMPLAINT
Page-11

37.     At the times alleged in this Complaint Defendants were not registered with the Commission as a broker or dealer, as required by Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)].

38.     By reason of the foregoing, Lancaster, McDuff and Reese have violated and, unless enjoined, will continue to violate Section 15(a)(1) of the Exchange Act [15 U.S.C. §78o(a)(1)].

**FIFTH CLAIM**
**(Against Lancaster)**
**Violations of Sections 206(1) and 206(2) of the Investment Advisers Act**

39.     Plaintiff Commission repeats and incorporates paragraphs 1 through 19 of this Complaint as if set forth *verbatim*.

40.     Lancaster, directly and indirectly, by use of the mails and means and instrumentalities of interstate commerce, while acting as an investment adviser, intentionally, knowingly or recklessly:

        (a)     employed devices, schemes and artifices to defraud clients or prospective clients; and

        (b)     engaged in transactions, practices or courses of business which operated as a fraud or deceit upon clients or prospective clients.

41.     By reason of the foregoing, Lancaster violated and, unless enjoined, will continue to violate Sections 206(1) and 206(2) of the Investment Advisers Act [15 U.S.C. §§80b-6(1) and (2)].

**SIXTH CLAIM**
**(Against McDuff and Reese)**
**Aiding and Abetting**
**Violations of Sections 206(1) and 206(2) of the Investment Advisers Act**

Case 3:08-cv-00596    Document 1    Filed 03/26/2008    Page 13 of 16

42.    Plaintiff Commission repeats and incorporates paragraphs 1 through 19 of this
Complaint as if set forth *verbatim*.

43.    Lancaster, directly and indirectly, by use of the mails and means and
instrumentalities of interstate commerce, while acting as an investment adviser, intentionally,
knowingly or recklessly:

(a)    employed devices, schemes and artifices to defraud clients or prospective
advisory; and

(b)    engaged in transactions, practices or courses of business which operated as a
fraud or deceit upon clients or prospective clients.

44.    McDuff and Reese knowingly provided substantial assistance to Lancaster in his
violations of Sections 206(1) and 206(2) of the Investment Advisors Act.

45.    By reason of the foregoing, McDuff and Reese aided and abetted violations of,
and unless enjoined, will continue to aid and abet violations of Sections 206(1) and 206(2) of the
Investment Advisers Act [15 U.S.C. §§80b-6(1) and (2)].

## RELIEF REQUESTED

The Commission seeks the following relief:

46.    An order of the Court permanently enjoining the defendants, their agents,
servants, employees, attorneys and all persons in active concert or participation with them who
receive actual notice of the injunction by personal service or otherwise, and each of them, from
future violations of Sections 5(a), 5(c) and 17(a) of the Securities Act, [15 U.S.C. §§ 77e(a),
77e(c) and 77q(a)], and Sections 10(b) and 15(a)(1) of the Exchange Act, [15 U.S.C. § 78j(b)
and § 78o(a)(1)], and of Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

*SEC v. Gary L. Lancaster, et al.*
COMPLAINT
Page–13

04/14/2008 Case 5:07-cv-03303-JF 11:48 727 248786 Document 65-4 GOODMAN AND NEKVASIL Filed 05/09/2008 Page 15 of 24 PAGE 48/66

Case 3:08-cv-0052 Document 1 Filed 03/26/2008 Page 14 of 16

47.    An order of the Court permanently enjoining the Lancaster, his agents, servants, employees, attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Sections 206(1) and 206(2) of the Investment Advisers Act [15 U.S.C. §§80b-6(1) and (2)].

48.    An order of the Court permanently enjoining the McDuff and Reese, their agents, servants, employees, attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from aiding and abetting future violations of Sections 206(1) and 206(2) of the Investment Advisers Act [15 U.S.C. §§80b-6(1) and (2)].

49.    An order of the Court directing Defendants to disgorge an amount equal to the funds and benefits each obtained illegally as a result of the violations alleged, plus prejudgment interest on that amount.

50.    An order of the Court directing defendants to pay civil monetary penalties in an amount determined as appropriate by the Court pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] and Section 209(e) of the Investment Advisers Act [15 U.S.C. § 80b-9(e)] for their violations of the federal securities laws as alleged herein.

51.    All further relief as the Court may deem just and proper.

*SEC v. Gary L. Lancaster, et al.*
COMPLAINT
Page-14

DATED: March 26, 2008

Respectfully submitted,

HAROLD R. LOFTIN, JR.
Texas Bar No. 12487090
U.S. Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX 76102-6882
(817) 978-6450
(817) 978-4927 (fax)

*SEC v. Gary L. Lancaster, et al.*
COMPLAINT
Page-15

Case 3:08-cv-00526   Document 1   Filed 03/26/2008   Page 16 of 16

JS 44
(Rev. 3/99)

ORIGINAL

# CIVIL COVER SHEET  3-08CV-526-L

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I.(a) PLAINTIFF

SECURITIES AND EXCHANGE COMMISSION

## DEFENDANTS

GARY L. McDUFF, GARY L. LANCASTER and ROBERT T. REESE

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant:  Country of Mexico
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

RECEIVED

**(c)** ATTORNEY (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
HAROLD R. LOFTIN, JR.
U.S. Securities & Exchange Commission, Burnett Plaza, Ste. 1900,
801 Cherry Street, Unit #18, Fort Worth, TX 76102-6882
(817) 978-6450

ATTORNEYS (If known):

MAR 26 2008

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

| | |
|---|---|
| ☒ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | PTF | | PTF | PTF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | | | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 650 Airline Regs | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health ☐ 690 Other | ☐ 830 Patent ☐ 840 Trademark | ☐ 810 Selective Service ☐ 850 Securities Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General ☐ 535 Death Penalty | | | ☐ 890 Other Statutory Actions |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | |
| ☐ 290 All Other Real Property | | | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

| | |
|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court |
| ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933, [15 U.S.C. § 77e(a), 77e(c) and 77q(a)]("Securities Act") and Sections 10(b) and 15(a) of the Securities Exchange Act of 1934, [15 U.S.C. §78j(b) and 78o(a)] ("Exchange Act"), and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5].

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND ☐ YES  ☒ NO

26 USC 7609

## VIII. RELATED CASE(S) (See Instructions):
IF ANY

JUDGE Sam A. Lindsay   DOCKET NUMBER 3-05CV1328-L

DATE 3/26/08   SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

Receipt # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

5

Case 3:08-cv-00526    Document 8    Filed 03/27/2008    Page 1 of 6



ORIGINAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

MAR 27 2008

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

SECURITIES AND EXCHANGE COMMISSION,

                                    Plaintiff,

                    v.

GARY L. MCDUFF, GARY L. LANCASTER and
ROBERT T. REESE,

                                    Defendants.

**3 - 08 CV - 5 26 - L**

C.A. No. __-____

---

### FINAL JUDGMENT AS TO DEFENDANT GARY L. LANCASTER

The Securities and Exchange Commission having filed a Complaint and Defendant Gary L. Lancaster having entered a general appearance; consented to the Court's jurisdiction over Defendant and the subject matter of this action; consented to entry of this Final Judgment without admitting or denying the allegations of the Complaint (except as to jurisdiction); waived findings of fact and conclusions of law; and waived any right to appeal from this Final Judgment:

I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating Sections 5(a) and 5(c) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. §§ 77e(a) and 77e(c)] by, directly or indirectly, in the absence of any applicable exemption:

(a)    Unless a registration statement is in effect as to a security, making use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or

(b)    Making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed with the Commission as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under Section 8 of the Securities Act [15 U.S.C. § 77h].

II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

(a)    to employ any device, scheme, or artifice to defraud;

(b)    to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

2

(c)    to engage in any transaction, practice, or course of business which operates or

would operate as a fraud or deceit upon the purchaser.

III.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant and

Defendant's agents, servants, employees, attorneys, and all persons in active concert or participation

with them who receive actual notice of this Final Judgment by personal service or otherwise are

permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the

Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5

promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate

commerce, or of the mails, or of any facility of any national securities exchange, in connection with

the purchase or sale of any security:

(a)    to employ any device, scheme, or artifice to defraud;

(b)    to make any untrue statement of a material fact or to omit to state a material fact

necessary in order to make the statements made, in the light of the circumstances

under which they were made, not misleading; or

(c)    to engage in any act, practice, or course of business which operates or would

operate as a fraud or deceit upon any person.

IV.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that

Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active concert

or participation with them who receive actual notice of this Final Judgment by personal service or

otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section

15(a) of the Exchange Act [15 U.S.C. § 78o(a)], by using the mails or any means or instrumentality

3

of interstate commerce, while acting as a broker or dealer, effecting transactions in or inducing or
attempting to induce the purchase or sale of securities while not registered with the Commission as a
broker or dealer or while not associated with an entity registered with the Commission as a broker or
dealer.

V.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that
Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active concert
or participation with them who receive actual notice of this Final Judgment by personal service or
otherwise are permanently restrained and enjoined from violating, directly or indirectly, Sections
206(1) and 206(2) the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1) and
80b-6(2)], by using the mails or any means or instrumentalities of interstate commerce:

    (a)    with scienter, to employ devices, schemes or artifices to defraud clients and
            prospective clients; or

    (b)    to engage in transactions, practices or courses of business which operate as a fraud or
            deceit upon clients or prospective clients.

VI.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is
liable for disgorgement of $336,229, representing profits gained as a result of the conduct alleged in
the Complaint, together with prejudgment interest thereon in the amount of $56,156.39, for a total of
$392,385.39. Based on Defendant's sworn representations in his Statement of Financial Condition
dated December 5, 2007, and other documents and information submitted to the Commission,
however, the Court is not ordering Defendant to pay a civil penalty and payment of all disgorgement
and pre-judgment interest thereon is waived. The determination not to impose a civil penalty and to

4

waive payment of the disgorgement and pre-judgment interest is contingent upon the accuracy and completeness of Defendant's Statement of Financial Condition. If at any time following the entry of this Final Judgment the Commission obtains information indicating that Defendant's representations to the Commission concerning his assets, income, liabilities, or net worth were fraudulent, misleading, inaccurate, or incomplete in any material respect as of the time such representations were made, the Commission may, at its sole discretion and without prior notice to Defendant, petition the Court for an order requiring Defendant to pay the unpaid portion of the disgorgement, pre-judgment and post-judgment interest thereon, and the maximum civil penalty allowable under the law. In connection with any such petition, the only issue shall be whether the financial information provided by Defendant was fraudulent, misleading, inaccurate, or incomplete in any material respect as of the time such representations were made. In its petition, the Commission may move this Court to consider all available remedies, including, but not limited to, ordering Defendant to pay funds or assets, directing the forfeiture of any assets, or sanctions for contempt of this Final Judgment. The Commission may also request additional discovery. Defendant may not, by way of defense to such petition: (1) challenge the validity of the Consent or this Final Judgment; (2) contest the allegations in the Complaint filed by the Commission; (3) assert that payment of disgorgement, pre-judgment and post-judgment interest or a civil penalty should not be ordered; (4) contest the amount of disgorgement and pre-judgment and post-judgment interest; (5) contest the imposition of the maximum civil penalty allowable under the law; or (6) assert any defense to liability or remedy, including, but not limited to, any statute of limitations defense.

5

## VII.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is

incorporated herein with the same force and effect as if fully set forth herein, and that Defendant

shall comply with all of the undertakings and agreements set forth therein.

## VIII.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain

jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

## IX.

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil

Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.

Dated: *March 27*, 2008

*Sam G. Lindsay*
UNITED STATES DISTRICT JUDGE