# Exhibit 1

Case 5:07-cv-03303-JF   Document 66-2   Filed 05/14/2008   Page 1 of 15

--- F.Supp.2d ----  
--- F.Supp.2d ----, 2008 WL 1993043 (N.D.Iowa)  
**(Cite as: --- F.Supp.2d ----, 2008 WL 1993043)**

O.N. Equity Sales Co. v. Pals  
N.D.Iowa,2008.  
Only the Westlaw citation is currently available.  
United States District Court,N.D. Iowa,Western Division.  
The O.N. EQUITY SALES COMPANY, Plaintiff,  
v.  
Harold E. PALS, Individually and as Trustee of the Harold E. Pals Revocable Living Trust, and The Claire E. Pals Revocable Living Trust, through Harold E. Pals, Trustee, Defendants.  
No. C 07-4049-MWB.

May 5, 2008.

Marion H. Little, Jr., Michael Ralph Reed, Zeiger, Tigges & Little, LLP, Columbus, OH, Patrick L. Sealey, Heidman Redmond Fredregill Patterson Plaza Dykstra & Prahl, Sioux City, IA, for Plaintiff.  
Gail E. Boliver, Boliver Law Firm, Marshalltown, IA, Joel A. Goodman, Goodman & Nekvasil, PA, Clearwater, FL, for Defendants.

**MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT UNDER CIVIL RULE 60(b)**

MARK W. BENNETT, District Judge.

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | 3 | |
| | A. | *Nature Of The Action And Prior Findings* | 3. |
| | B. | *The Rule 60(b) Motion And The "New" Time Line* | 7. |
| II. | LEGAL ANALYSIS | 11 | |
| | A. | *Standards For Relief From A Judgment* | 11. |
| | B. | *Newly Discovered Evidence* | 12. |
| | | 1. | *Arguments of the parties*. | 13 |
| | | 2. | *Analysis*. | 15 |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-03303-JF   Document 66-2   Filed 05/14/2008   Page 3 of 15

--- F.Supp.2d ----  Page 2
--- F.Supp.2d ----, 2008 WL 1993043 (N.D.Iowa)
**(Cite as: --- F.Supp.2d ----, 2008 WL 1993043)**

|      |         | C. *Fraud*                    | 19  |
|------|---------|-------------------------------|-----|
|      |         | 1. *Arguments of the parties*. | 19  |
|      |         | 2. *Analysis*.                | 22  |
| III. | CONCLUSION |                            | 24  |

**\*1** A little over six months ago, the court denied the motion of the plaintiff securities broker-dealer to enjoin preliminarily the defendant investors from taking any further action with respect to an arbitration action before the National Association of Securities Dealers (NASD) and, instead, granted the investors' motion to compel arbitration. *See O.N. Equity Sales Co. v. Pals,* 509 F.Supp.2d 761 (N.D.Iowa 2007) (*ONESCO I* ). The broker-dealer now seeks relief from that ruling, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, on the basis of newly discovered evidence and fraud. More specifically, the broker-dealer contends that it is now apparent that the affidavits of a non-party, procured by the investors' counsel, concerning the occurrence and timing of certain events, upon which the court relied to compel arbitration, are false, so that the broker-dealer should now be given the opportunity to litigate fully whether the parties' dispute is arbitrable. Indeed, the broker-dealer contends that the investors' prior assertion of a basis for arbitrability was "the biggest red herring of all time." The investors respond that the newly discovered evidence upon which the broker-dealer relies actually changes nothing and was not "newly discovered," because it was known to the broker-dealer or could have been discovered with reasonable diligence prior to the court's ruling on the arbitrability issue. They also contend that they did not engage in any fraud in procuring the order compelling arbitration. Thus, the investors describe the broker-dealer's reliance on irrelevant events to challenge arbitrability as "a crimson whale." In this environment purportedly populated with scarlet sea creatures, the court must decide whether or not to set aside its order compelling arbitration.

## I. INTRODUCTION

### A. *Nature Of The Action And Prior Findings*

This is an action for declaratory and injunctive relief by plaintiff O.N. Equity Sales Company (ONESCO) against defendant Harold E. Pals, individually and as the trustee of two revocable living trusts, the Harold E. Pals Revocable Living Trust, and the Claire E. Pals Revocable Living Trust (collectively Pals). In this action, ONESCO seeks an order enjoining Pals, both preliminarily and permanently, from taking any further action with respect to an arbitration action, Case No. 07-00937, filed with the National Association of Securities Dealers (NASD) on or about March 16, 2007, and amended on or about April 20 and April 25, 2007.[FN1]

> FN1. This action is apparently one of eighteen that ONESCO has brought addressing essentially the same arbitrability question in different federal courts, each apparently involving the same arbitration action, but different groups of investors. All of the courts to address the issue have compelled arbitration of the actions before them.

Plaintiff ONESCO is a full-service securities broker-dealer registered in all 50 states. Non-party Gary Lancaster was a registered repres-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

entative with ONESCO, as an independent contractor, from March 23, 2004, to January 3, 2005. Prior to and during his association with ONESCO, Lancaster was the trustee of a private placement offered by Lancorp Financial Fund Business Trust (the Lancorp Fund), which was described in offer documents as "an unregistered, closed-end non-diversified management investment company." ONESCO contends, however, that Lancaster did not disclose to ONESCO his prior or continuing involvement with the Lancorp Fund.

**\*2** Defendant Harold E. Pals executed a subscription agreement, purportedly as Trustee of the Harold E. Pals Revocable Living Trust, on June 23, 2003, to subscribe to the private placement offering by the Lancorp Fund and executed a similar subscription agreement, purportedly as Trustee of the Claire H. Pals Revocable Living Trust, on August 14, 2003, approximately nine months and seven months, respectively, before Lancaster became associated with ONESCO in March 2004. ONESCO acknowledges that Pals did engage in some activity with the Lancorp Fund investment after execution of the subscription agreements and after Lancaster became associated with ONESCO, including payments into the Lancorp Fund of $75,000 and $37,000 on April 28 and May 17, 2004, respectively. ONESCO nevertheless contends that, despite this later activity, Pals was not a customer of ONESCO and that ONESCO was unaware of Lancaster's involvement with the Lancorp Fund.

In its prior ruling on the arbitrability issue, the court found that Lancaster did not, in fact, invest Pals's or other investors' funds initially, but held those funds in escrow, because the Lancorp Trust had not yet "gotten off the ground." The court also found that, according to the private placement memorandum, the investors' initial cash payments were held in escrow until the closing date and that the investment was subject to withdrawal, cancellation, or modification by Lancorp without notice until the closing date. Indeed, the court found that, pursuant to the private placement memorandum, Lancorp could decide, in its sole discretion, to terminate the offering at any time before the maximum number of units had been sold. The private placement memorandum also stated that, if any material changes in the Lancorp offering occurred before closing, Lancorp would amend or supplement the private placement memorandum.

In prior litigation in this case, Pals contended that material changes did occur and that Lancorp did amend the private placement offering. The court found that Lancorp had initially included an option to purchase insurance to insure investors against failure by Lancorp to return funds upon redemption of shares, but insurance industry changes in 2003 and 2004 prevented Lancorp from obtaining insurance. Therefore, in April 2004, Lancaster notified all Lancorp investors that a material change in the investment had occurred, because Lancorp had replaced the insurance with a new bank or broker/dealer obligation that would guarantee their investment. Because of the change, Lancorp required all investors either to confirm their subscription participation and acknowledge the changes in the offering or to request withdrawal of their subscriptions. Pals confirmed his participation and acknowledged the changes in the offering and, eventually, invested about $1.1 million in the Lancorp Fund. Pals contended that no subscription became final until May 14, 2004, after the changes to the insurance component of the investment, when subscriptions for all of the units of the fund were obtained. In other words, Pals contended that no investment became final until after Lancaster became associated with ONESCO.

**\*3** In prior litigation in this court, ONESCO alleged, and Pals apparently did not dispute,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

that Lancaster eventually invested significant funds from the Lancorp Fund in Megafund, which turned out to be a Texas-based Ponzi scheme. Because of its bad investment in Megafund, the Lancorp Fund also failed, and eventually went into receivership. Pals contends that, had ONESCO properly supervised Lancaster, ONESCO could have stopped the Lancorp offering and could have directed Lancaster to return all funds to his customers before any losses were sustained.

On or about March 16, 2007, Pals and other investors in the Lancorp Fund private placement offering filed an arbitration action with the National Association of Securities Dealers, Inc. (NASD), Case No. 07-00937, and amended their statement of claims on or about April 20 and April 25, 2007. In prior litigation in this court, ONESCO argued that Pals's claims in the arbitration action are premised on alleged misrepresentations that Lancaster made in the private placement memorandum to induce investors to invest in the Lancorp Fund's private placement offering, although ONESCO admitted that Pals and other investors also assert that ONESCO negligently supervised Lancaster. ONESCO contended that the critical actions that induced Pals to invest in the Lancorp Fund and, thus, the critical actions on which Pals's arbitration action is based occurred before Lancaster was even associated with ONESCO. Pals, on the other hand, contended that his arbitration claims are also based, in significant part, on conduct of Lancaster that occurred after Lancaster became associated with ONESCO and on ONESCO's own conduct in failing to supervise Lancaster after Lancaster became associated with ONESCO.

This matter last came before the court on ONESCO's August 16, 2007, Motion For Preliminary Injunction (docket no. 8), which sought to enjoin Pals, preliminarily, from taking any further action with respect to the NASD arbitration action, and pursuant to Pals's August 24, 2007, Motion To Compel Arbitration (docket no. 20), which was a companion to Pals's August 24, 2007, Brief In Opposition To Plaintiff's Motion For Preliminary Injunction (docket no. 22). In a ruling issued September 6, 2007, *see ONESCO I,* 509 F.Supp.2d 761, this court found that there is a valid arbitration agreement in this case, by virtue of NASD Rule 10301, notwithstanding that there was no express arbitration agreement between Pals and ONESCO. The court also found that, contrary to ONESCO's contentions, the record showed beyond dispute that the terms of the Lancorp Fund private placement offering were materially changed in April 2004, which required all subscribers to confirm their subscriptions or receive a return of their funds, that Lancaster held all funds invested in the Lancorp Fund private placement offering until May 2004, and that the Lancorp Fund private placement offering did not close until May 2004, all of which showed that there was still an investment relationship between Lancaster and Pals after Lancaster became an "associated person" of ONESCO, and as such, Pals was a "customer" of Lancaster after March 2004, and was thereby a customer of ONESCO. Next, the court found that, in light of activity with Pals's investment in Lancorp during April and May 2004, Pals has alleged negligent supervision of Lancaster, the "associated person," by ONESCO, the "member," during the time that Lancaster was an "associated person," establishing that there was a dispute within the terms of the arbitration agreement. Because there was a valid arbitration agreement and a dispute that fell within the terms of that arbitration agreement, the court granted Pals's motion to compel arbitration.[FN2]

> FN2. The court also denied as moot ONESCO's August 16, 2007, Motion To Consolidate Preliminary Injunction

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Hearing With Trial On The Merits (docket no. 10) and ONESCO's August 24, 2007, Motion For Order Authorizing The Parties To Engage In Immediate Discovery On The Issue Of Arbitrability (docket no. 17).

### B. The Rule 60(b) Motion And The "New" Time Line

**\*4** This matter now comes before the court pursuant to ONESCO's March 5, 2008, Motion For Relief From Judgment Under Civil Rule 60(b) (docket no. 33) (Rule 60(b) Motion), in which ONESCO seeks relief from the court's September 6, 2007, ruling denying ONESCO's motion for preliminary injunction and granting Pals's motion to compel arbitration, on the basis of a "new" time line for critical events. Pals resisted ONESCO's Rule 60(b) Motion on March 24, 2008 (docket no. 35), and ONESCO filed a reply in further support of its motion on March 31, 2008 (docket no. 37). Neither party requested oral arguments on ONESCO's Rule 60(b) Motion.

In support of its Rule 60(b) Motion, ONESCO contends that testimony by Lancaster in the arbitration proceedings in February 2008 demonstrates the falsity of the basis on which the court ordered arbitration of the present dispute, because that testimony discloses a new or different time line for critical events. More specifically, ONESCO contends that Lancaster disclosed for the first time that, in addition to the purported "effective" dates of the Lancorp Fund in March 2003, when the Fund opened for subscriptions, and May 2004, when investors were required to "reconfirm" their investments after the change in the insurance component, there was a third, far more critical "effective" date in February 2005, when the Lancorp Fund invested in Megafund. ONESCO contends that it is the February 2005 "effective" date that matters here, because it was only after that "effective" date that the Lancorp Fund investors suffered any losses and, more importantly, by that date, Lancaster was no longer an "associated person" of ONESCO, so that there is no basis for arbitration of any claims against ONESCO.

Still more specifically, ONESCO contends, and the court finds, that the record now shows that, in early 2004, the Lancorp Fund opened an account with Tricom, an off-shore investment company, and began depositing investors' monies in that account. However, in December 2004, Lancaster learned that the monies deposited with Tricom had not, in fact, been invested as originally contemplated, but had, instead, simply sat in the Tricom account. Consequently, in December 2004, the Lancorp Fund withdrew its investors' monies, in their entirety, from the Tricom account, and placed all of the investors' monies in an account with Bank of America. Although the Tricom investment did not result in contemplated earnings, ONESCO contends, Pals apparently does not dispute, and the court finds that the Tricom investment did not result in any loss of the investors' principal, either. Thus, ONESCO contends, the May 2004 "closing" or "effective" date for reconfirmation of investors' investments related *only* to the Tricom investment, an investment that resulted in no injury to the investors. The court nevertheless reiterates its prior finding that, had investors not reconfirmed their investments by the May 2004 "closing" date, they would not have continued to participate in the Lancorp Fund investment. That "reconfirmation" occurred while Lancaster was associated with ONESCO.

**\*5** ONESCO also contends that Lancaster has now admitted that the change in the insurance component of the investment in April and May 2004 was not a "material" change, because only about a third of the investors had elected insurance coverage, and he believed that, as a practical matter, the change to a bank or

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

broker/dealer obligation provided the same protections. Thus, ONESCO contends that the purported May 2004 "effective" date relates only to an investment that is not implicated in Pals's NASD claims and relates only to a "non-material" change in the investment. The court finds, however, that whether or not the change in insurance coverage was itself "material"-a matter on which Lancaster's opinion in his arbitration testimony is far more equivocal than ONESCO indicates and, moreover, a matter on which Lancaster's opinion is not dispositive-the important fact is that investors were required to reconfirm their investment in the Lancorp Fund by May 14, 2004, in order to continue their investment in the Lancorp Fund.

ONESCO contends that, in addition to the May 2004 "effective" or "closing" date, the record now shows a February 1, 2005, "effective" date for the Lancorp Fund not previously disclosed by Lancaster or Pals. ONESCO contends that this February 1, 2005, "effective" date is after Lancaster's termination by ONESCO. ONESCO argues that the February 1, 2005, "effective" date is the date that Lancaster identified in his arbitration testimony and in records now available to ONESCO as the commencement of Lancorp's investment in Megafund, the investment that led to the collapse of the Lancorp Fund. ONESCO argues that it was Pals's decision in January or February 2005 to continue his investment in the Lancorp Fund, despite learning of the failed Tricom investment, that gives rise to his claims, not any action during the time that Lancaster was associated with ONESCO.

In contrast, Pals argues, and the court finds, that the February 1, 2005, "effective" date is no more than an internal accounting date for the Megafund venture, which Lancaster used to calculate distributions to Lancorp investors, based on the date of Lancorp's agreement with Megafund. Pals argues that the purportedly new arbitration evidence demonstrates that ONESCO could have stopped the offering while Lancaster worked for ONESCO and could have restored all of the Lancorp investors' funds, because Lancaster took back the funds from Tricom in December 2004, while he was still employed by ONESCO. Moreover, Pals points out that, despite producing letters from Lancaster to Lancorp investors from January and February 2005, ONESCO has failed to produce a letter from Lancaster to some or all of the Lancorp investors in December 2004 telling them that the expected activities in the Tricom account had not occurred and offering to refund their money at their request. Thus, Pals contends that this critical activity also occurred while Lancaster was still associated with ONESCO. Neither of the letters from Lancaster to investors that ONESCO has now submitted to the court, dated January 18, 2005, and February 8, 2005, respectively-that is, dated after Lancaster had been terminated by ONESCO-contains such an offer to refund investments. Pals also points out that the Lancorp investors were not required to submit express reconfirmations in December 2004 or early 2005, as they had been in April and May of 2004.

**\*6** The court finds that, on December 6, 2004, Lancaster did notify investors that there had been no earnings for the Lancorp Fund from its investment in a syndicating group (Tricom) for the third and fourth quarters of 2004. *See* Defendant's Appendix, Exhibit 3. Although the letter also stated that Lancaster expected to execute necessary documents to begin another investment of the Lancorp Fund in January 2005 (presumably, the Megafund investment), the letter expressly stated that the investors now had a choice to continue their investment in the Lancorp Fund:

As an investor you now have the following

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

choices:

   1) Remain in the Fund.

   2) Redeem your shares.

If you choose to remain in the Fund, rest assured that I will do my utmost to attempt to assist you in earning the return that you expect. However, as was the case with the investment in question, and any future investments, I will use my "best efforts" to generate earnings for you, but do not guarantee that there will be any earnings.

If you choose to redeem your shares, I understand and wish you the very best. Should you seek to reinvest in the Fund in the future, it will be subject to availability since there are only 100 positions available. Previous investment in the Fund does not guarantee a position in the future.

Defendant's Appendix, Exhibit 3. In light of this letter, the court finds that, although the investment by the Lancorp Fund in Megafund may not have become "effective" until February 1, 2005, investors were given another chance to reconfirm their investment in the Lancorp Fund in December 2004, while Lancaster was still associated with ONESCO, and before the Lancorp Fund's investment in Megafund that led to the Lancorp Fund's losses.

## II. LEGAL ANALYSIS

### A. Standards For Relief From A Judgment

Rule 60 provides a mechanism to relieve a party from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

FED.R.CIV.P. 60(b). The rule states, further, "The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken."FED.R.CIV.P. 60(c). ONESCO seeks relief pursuant to Rule 60(b)(2) (newly discovered evidence) and (b)(3) (fraud). The court will consider in turn whether ONESCO is entitled to relief under either Rule 60(b)(2) or (b)(3).

**\*7** In doing so, the court must keep in mind that, as the Eighth Circuit Court of Appeals has explained,

> The rule "provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances."*United States v. Young,* 806 F.2d 805, 806 (8th Cir.1986) (per curiam). The district court has wide discretion in ruling on a Rule 60(b) motion, and we will only reverse for a clear abuse of discretion. *Sellers v. Mineta,* 350 F.3d 706, 715-16 (8th Cir.2003).

*Jones v. Swanson,* 512 F.3d 1045, 1047-48 (8th Cir.2008).

### B. Newly Discovered Evidence

ONESCO first seeks relief from the court's

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

September 6, 2007, ruling denying ONESCO's motion to enjoin arbitration and granting Pals's motion to compel arbitration on the basis of "newly discovered evidence" pursuant to Rule 60(b)(2). Pals disputes ONESCO's entitlement to any relief on this ground.

*1. Arguments of the parties*

ONESCO contends that, "obviously," it obtained the documents reflecting the Lancorp Fund investors' 2005 reconfirmations, as well as Lancaster's NASD hearing testimony, well after the court issued its September 6, 2007, ruling. ONESCO also argues that it exercised due diligence to obtain such information prior to the court's decision, but was denied the opportunity to engage in any discovery that might have revealed the falsity of the representations on which Pals relied to obtain the order compelling arbitration. ONESCO also argues that the new evidence is not cumulative or merely impeaching-although it does certainly impeach Lancaster's affidavit offered in support of the motion to compel arbitration-because it reveals for the first time that the effective date for the investment that caused Pals's loss was in February 2005, after Lancaster had been terminated by ONESCO. Thus, ONESCO contends that any decision by Pals to continue with his Lancorp Fund investment in April or May 2004 is irrelevant to arbitrability, where he was given an additional opportunity to withdraw his investment in early 2005. ONESCO argues that the new evidence is also material, because it demonstrates the timing of the factual predicate for Pals's NASD claims is *not* May 2004, as he previously contended, but February 2005, at a time when he was not a "customer" of ONESCO, because Lancaster was no longer associated with ONESCO. Finally, ONESCO contends that, with the benefit of the new evidence, the court would have concluded, at a minimum, that ONESCO is entitled to conduct discovery and present evidence to contradict Pals's unilateral submissions in support of arbitrability. Therefore, ONESCO contends that it is entitled to relief from the September 6, 2007, ruling pursuant to Rule 60(b)(2).

In contrast, Pals argues that ONESCO had all or almost all of the purportedly "newly discovered" evidence relating to the supposed February 2005 "effective" date before the court filed its September 6, 2007, ruling. Indeed, Pals points out that ONESCO introduced the idea of a third effective date through leading questions in Lancaster's arbitration testimony, showing that ONESCO already had such information before Lancaster's arbitration testimony in February 2008. Pals also argues that the SEC and the Megafund Receiver deposed Lancaster on November 17, 2005, and March 25, 2006, and the Receiver sent a copy of the deposition to ONESCO's counsel on May 2, 2007. Next, Pals points out that ONESCO cited that transcript in another court case *on September 6, 2007,* asserting that the transcript showed that the Lancorp investors' funds were actually invested in Megafund in 2005 after Lancaster was no longer associated with ONESCO. Pals also argues that ONESCO had received thousands of pages of records from Lancaster in the spring of 2007, which included the 2004 and 2005 letters concerning failure of the Tricom investment and the opportunity to reconfirm investors' participation thereafter in anticipation of the Megafund investment. Finally, Pals points out that the pertinent letters were also produced to ONESCO by other investors in the arbitration proceedings in the fall of 2007. Thus, Pals argues that ONESCO could have argued long ago that the material events occurred at the time of the Megafund investment, but chose, instead, to argue that the material events occurred before Lancaster was ever associated with ONESCO, an argument on which it has lost in all of the actions in which ONESCO has raised it.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*8** Even assuming that the evidence on which ONESCO now relies was "newly discovered," Pals argues that that evidence was neither material nor likely to have changed the outcome in the court's September 6, 2007, ruling. Pals points out that Lancaster sent the letters notifying investors of the failure of the Tricom investment and his intent to reinvest Lancorp Fund monies in another investment, with a request that investors again reconfirm their continued participation in the Lancorp Fund, while Lancaster was still associated with ONESCO in late 2004 at a time when ONESCO could still have stopped Lancaster's activity. Thus, Pals contends that ONESCO's attempt to equate the "effective" date of the Lancorp Fund's investment in Megafund with the "effective" date of the investors' investments in Lancorp is misleading. Pals also reiterates that May 2004 is the date after which Lancaster could no longer unilaterally terminate the Lancorp offering, so that date, also while Lancaster was associated with ONESCO, is still material.

In reply, ONESCO argues that Pals's argument amounts to an assertion that ONESCO should have caught the falsity of the representations on which Pals and the court relied much sooner, despite Pals's concerted efforts to conceal that falsity. Because ONESCO was denied discovery, ONESCO argues that it could not obtain the pertinent information until Lancaster's arbitration testimony in February 2008. ONESCO also argues that the new information is material and would have led to a different result, because Pals has previously asserted the materiality of his reconfirmation of his investment in April or May 2004, but now wishes to ignore the materiality of the investors' additional opportunity to take back their funds in January 2005, after Lancaster's termination from ONESCO and prior to the Lancorp Fund's investment in Megafund. ONESCO argues that Pals cannot rely on one reconfirmation of his investment and ignore the other. ONESCO also argues that the new evidence demonstrates that the change in insurance in May 2004 was simply not material. Thus, at a minimum ONESCO argues that the new information makes clear that the judgment should be vacated and discovery on arbitrability should be authorized.

*2. Analysis*

"To prevail on a ...Rule 60(b)(2) motion, a party must show that (1) the evidence was discovered after trial; (2) the movant exercised due diligence to discover it before the end of trial; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would probably produce a different result."*Greyhound Lines, Inc. v. Wade,* 485 F.3d 1032, 1036 (8th Cir.2007) (citing *United States v. Metro. St. Louis Sewer Dist.,* 440 F.3d 930, 933 n. 3 (8th Cir.2006)*, and *U.S. Xpress Enters., Inc. v. J.B. Hunt Transp., Inc.,* 320 F.3d 809, 815 (8th Cir.2003)). Leaving aside the parties' dispute over whether the evidence on which ONESCO now relies is actually "newly discovered" or could, with diligence, have been discovered earlier, *see id.* (first two requirements for relief pursuant to Rule 60(b)(2)), the court finds that the evidence in question, while material, probably would not produce a different result. *Id.* (last two requirements).

**\*9** More specifically, the court finds that, in the context of determining whether or not a dispute between a member broker and an alleged "customer" is arbitrable within the meaning of NASD Rule 10301, a material issue is plainly whether conduct by the "associated person" or events relating to the investment on which the putative "customer" relies for his or her claims occurred during the time of the "associated person's" association with the member broker. *See, e.g.,* NASD Rule

10301(a) (providing for arbitration with a member of any dispute "between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons"). Indeed, in its prior ruling, this court held that critical actions of the "associated person," Lancaster, and critical events relating to the investment had occurred during Lancaster's association with ONESCO:

> [T]he record shows beyond dispute that the terms of the Lancorp Fund private placement offering were materially changed in April 2004, which required all subscribers to confirm their subscriptions or receive a return of their funds, that Lancaster held all funds invested in the Lancorp Fund private placement offering until May 2004, and that the Lancorp Fund private placement offering did not close until May 2004. All of this activity after Lancaster became an "associated person" of ONESCO, on which Pals in part relies for his claims in arbitration, plainly arose "in connection with the activities of such associated person."*See* NASD Rule 10301(a) (one alternative for the second requirement for arbitration on demand of a customer).

*ONESCO I,* 509 F.Supp.2d at 770. Similarly, whether the member broker engaged in "negligent supervision" of the associated person during the period of association is also material. *See Multi-Financial Sec. Corp. v. King,* 386 F.3d 1364, 1370 (11th Cir.2004) ("negligent supervision [also] satisfies the Code's second arbitration condition"); *see also* NASD Rule 10301(a) (one alternative for the "in connection with the business" condition is that the dispute arose "in connection with the business of such member"). Indeed, as this court also found,

> Here, in light of activity with Pals's investment in Lancorp during April and May 2004, Pals has alleged negligent supervision of Lancaster, the "associated person," by ONESCO, the "member," during the time that Lancaster was an "associated person." *See id.* Thus, the second condition for an arbitrable dispute within the terms of Rule 10301(a) is met. *Id.* That being so, the second query on a motion to compel arbitration, "whether the particular dispute falls within the terms of that [arbitration] agreement," is also answered in the affirmative. *See [EEOC v.] Woodmen of World Life Ins. Soc.,* 479 F.3d [561,] 566 [ (8th Cir.2007) ] (in addressing a motion to compel arbitration the second query for the court is "whether the particular dispute falls within the terms of that agreement' ").

*10 *ONESCO I,* 509 F.Supp.2d at 770. Thus, "new" allegations about the timing of additional or different conduct and events giving rise to Pals's claims are plainly material to the Rule 60(b)(2) analysis.

ONESCO's argument founders, however, on the requirement that the "new" evidence would probably lead to a different result. *See Greyhound Lines, Inc.,* 485 F.3d at 1036 (last requirement for relief pursuant to Rule 60(b)(2)). First, the court disagrees with ONESCO's contention that its "new" evidence of events in February 2005 somehow renders the events in April and May 2004, on which the court relied, irrelevant to the arbitrability analysis: Had investors not reconfirmed their investments by the May 2004 "closing" date, they would not have continued to participate in the Lancorp Fund investment. That "reconfirmation" occurred while Lancaster was associated with ONESCO. The court also finds that whether or not the change in insurance coverage prompting the reconfirmations in May 2004 was "material"-a matter on which Lancaster's opinion in his arbitration testimony is far more equivocal than ONESCO indicates and also a matter on which Lancaster's opinion is far

from dispositive-the important (*i.e.,* "material") fact is that investors were required to reconfirm their investment in the Lancorp Fund by May 14, 2004, in order to continue their investment in the Lancorp Fund. Again, that material event occurred while Lancaster was associated with ONESCO.

Second, although the events leading to the February 2005 "reconfirmation" are also "material" for much the same reason that the April and May 2004 "reconfirmation" events are "material," they do not change the result of the court's arbitrability analysis, *because they did not plainly occur after the end of Lancaster's association with ONESCO.* As noted above, the court finds that the February 1, 2005, "effective" date is no more than an internal accounting date for the Megafund venture, which Lancaster used to calculate distributions to Lancorp investors, based on the date of Lancorp's agreement with Megafund. Somewhat earlier, however, on December 6, 2004, Lancaster notified investors that there had been no earnings for the Lancorp Fund from its investment in a syndicating group (Tricom) for the third and fourth quarters of 2004. *See* Defendants' Appendix, Exhibit 3. Although the December 6, 2004, letter also stated that Lancaster expected to execute necessary documents to begin another investment of the Lancorp Fund in January 2005 (presumably, the Megafund investment), the letter expressly stated that the investors now had a choice to continue their investment in the Lancorp Fund. *Id.* In light of this letter, the court finds that, although the investment by the Lancorp Fund in Megafund may not have become "effective" until February 1, 2005, investors were given another chance to reconfirm their investment in the Lancorp Fund in December 2004, while Lancaster was still associated with ONESCO and before the investment in Megafund leading to the Lancorp Fund's losses occurred. Because Lancaster engaged in such conduct in December 2004, while he was still associated with ONESCO, Pals has also made a facially valid claim that ONESCO's negligent supervision of Lancaster at that time in part caused his losses. *King,* 386 F.3d at 1370 ("negligent supervision [also] satisfies the Code's second arbitration condition").

**\*11** Because the result probably would not be different, even in light of the "new" evidence that ONESCO has now presented, ONESCO is not entitled to relief from the court's September 6, 2007, ruling pursuant to Rule 60(b)(2).

### *C. Fraud*

In the alternative, ONESCO argues that the court should set aside its September 6, 2007, order compelling arbitration on the ground of fraud, pursuant to Rule 60(b)(3). Pals also disputes that contention.

### *1. Arguments of the parties*

ONESCO argues that the "taint" of Lancaster's materially false affidavits undermines the court's findings that the Lancorp Fund private placement did not close until May 2004 FN3 and that the terms of the Lancorp Fund private placement offering were materially changed in April 2004. Because the court's conclusions were based on materially false affidavits submitted by Pals's counsel, ONESCO contends that it was prevented from fully and fairly presenting its case in opposition to arbitration and, as a result, ONESCO is now entitled to relief from the court's September 6, 2007, ruling. ONESCO also argues that Pals and his counsel had access to documents and information reflecting that the key events actually occurred in 2005, not 2004, yet Pals procured declarations from Lancaster that misrepresented the critical dates for purposes of arbitrability.FN4 ONESCO argues that relief pursuant to Rule 60(b)(3) is especially appro-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-03303-JF    Document 66-2    Filed 05/14/2008    Page 13 of 15

--- F.Supp.2d ----                                                                                                               Page 12
--- F.Supp.2d ----, 2008 WL 1993043 (N.D.Iowa)
(Cite as: --- F.Supp.2d ----, 2008 WL 1993043)

priate where a party's misrepresentation proved instrumental in a court's grant of a summary disposition.

> FN3. ONESCO misquotes the court as finding that the Lancorp Fund private placement offering did not close until May 2005, *see* ONESCO's Brief In Support Of Motion For Relief From Judgment Under Civil Rule 60(b) (docket no. 33-2), 18, a finding that the court never made, even inadvertently. The court expressly found that the Lancorp Fund private placement closed in May 2004. See *ONESCO I,* 509 F.Supp.2d at 770.

> FN4. ONESCO contends that this is not the first time Pals's counsel has engaged in such conduct, citing *Horner, Townsend & Kent, Inc. v. Hamilton,* 2003 WL 23832424 (N.D.Ga. Sept. 29, 2003).

In response, Pals argues that ONESCO has not satisfied the requirements for relief pursuant to Rule 60(b)(3), because there has been no intentional and deliberate misconduct on the part of Pals or his counsel. Pals points out that Lancaster reaffirmed in his arbitration testimony that, at the time he made the declarations on which the court later relied, he believed them to be accurate. Pals also argues that, at most, ONESCO can show a fraud by Lancaster, which Pals does not concede, but cannot allege or establish any deliberate or intentional fraud by Pals or its counsel and, moreover, Pals and its counsel deny any such fraud. Pals also argues that ONESCO was not prevented by any supposed fraud from fully and fairly presenting its case against arbitration, because, as argued above, ONESCO had or could with reasonable diligence have obtained all of the information giving rise to ONESCO's present contentions that the important events actually occurred in February 2005. Pals contends that, for its part, its reliance on the May 2004 closing date of the Lancorp Fund was fully justified and that Pals had no reason to discuss either the effective date for the original investments in the Lancorp Fund in 2003 or the later investment by the Lancorp Fund in Megafund in 2005. Indeed, Pals argues that, at most, there was an omission from Lancaster's declarations of references to events in late 2004 and early 2005, not a misrepresentation about critical events, and even if there were misrepresentations, Lancaster's supposed fraudulent statements were not actually material to the arbitrability issue here. Pals contends that one of the few statements that Lancaster actually withdrew in his arbitration testimony was his statement that he had not received compliance manuals from ONESCO, when he was confronted with a document he signed indicating that he must have seen ONESCO's compliance manuals, which Pals contends shows no more than a mistake of memory, not a fraud, and all on a point on which the court did not rely when it ordered arbitration. Pals also points out that, in his arbitration testimony, Lancaster withdrew his statement that he had notified ONESCO about Lancorp in May 2004, despite his prior SEC deposition testimony that he had done so, but Pals also contends that this testimony demonstrates, at most, confusion on Lancaster's part and, again, was not a point on which the court relied to order arbitration.

*12 In its reply, ONESCO argues that courts have not emphasized intent of the filing party under Rule 60(b)(3) where perjured testimony taints the entire proceedings or results in a summary disposition. ONESCO also argues that Pals and its counsel knew or should have known that Lancaster's declarations were false. ONESCO argues that Pals certainly had access to documents and information reflecting the key events in 2005 on which ONESCO now relies, but offered nothing concerning those events, just Lancaster's false affidavits.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ONESCO argues that the record shows that Pals's counsel procured and filed false declarations in an effort to establish a self-serving and inaccurate time line of events for purposes of arbitrability. ONESCO contends that such conduct, coupled with denial of discovery, denied ONESCO a full and fair opportunity to present its case.

*2. Analysis*

"To prevail on a motion under Rule 60(b)(3), 'the movant must show, "with clear and convincing evidence, that the opposing party engaged in a fraud or misrepresentation that prevented the movant from fully and fairly presenting its case." ' " *Murphy v. Missouri Dep't of Corrections,* 506 F.3d 1111, 1117 (8th Cir.2007) (quoting *United States v. Metro. St. Louis Sewer Dist.,* 440 F.3d 930, 935 (8th Cir.2006), in turn quoting *Harley v. Zoesch,* 413 F.3d 866, 870 (8th Cir.2005)); *Greyhound Lines, Inc.,* 485 F.3d at 1036. Moreover, the movant must show that the evidence on which the opposing party relied, even if fraudulent, prevented the movant from fairly presenting its case. *Id.* The court finds that ONESCO has not met these standards, for several reasons.

First, notwithstanding the Eighth Circuit authority cited above, ONESCO contends that it is unnecessary to show fraudulent intent by the party who produced the allegedly false evidence on which the court relied, if that evidence is perjured testimony, citing *Peacock Records, Inc. v. Checker Records, Inc.,* 365 F.2d 145, 147 (7th Cir.1966). Eighth Circuit decisions, however, repeatedly state the requirement for relief pursuant to Rule 60(b)(3) to be that *the opposing party* engaged in fraud to obtain a judgment. *See Murphy,* 506 F.3d at 1117 (citing cases); *Greyhound Lines, Inc.,* 485 F.3d at 1036. Indeed, the *Murphy* decision appears to address ONESCO's contention head on, because in that decision, the court held that, even where evidence contradicts an affidavit previously relied on by a party to obtain a judgment, that evidence alone does not constitute clear evidence of fraudulent conduct *by the party who relied upon the affidavit* warranting relief pursuant to Rule 60(b)(3).*Id.* ONESCO has not shown, by clear and convincing evidence, that Pals or its counsel knew that the only critical events occurred in February 2005, not in April or May 2004, as Pals contended and the court found, at least in part on the basis of Lancaster's declarations. As explained above, the court has reiterated the materiality of events in April and May 2004 to Pals's claims, so that it was plainly not fraudulent for Pals and its counsel to rely on evidence of those events.

**\*13** Furthermore, the court found, above, that ONESCO has failed to show that events *in February 2005,* after Lancaster's association with ONESCO ended, rather than events in *April and May or December 2004,* while Lancaster was still associated with ONESCO, were the only events material to Pals's claims. Nor is the court now convinced that ONESCO has shown that Lancaster's declarations were so completely contradicted by his later arbitration testimony that the declarations were fraudulent or perjurious, even if those declarations omitted the events in February 2005 and, instead, focused on events in 2004. This is so, because ONESCO has failed to show that the events in 2004 that Pals and the court identified as critical did not happen essentially as described in Lancaster's declarations or that those events were so obviously irrelevant that description of those events, and omission of others, in the declarations constituted misrepresentations. Thus, even supposing that this court should recognize a "taint of perjured evidence" ground for relief under Rule 60(b)(3), absent evidence that the opposing party engaged in fraudulent activity, ONESCO would not be entitled to relief on that ground.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Finally, even supposing that Lancaster's declarations on which Pals and the court in part relied were "fraudulent," ONESCO has not shown that those declarations prevented ONESCO from fully and fairly presenting its case against arbitration. *See Murphy,* 506 F.3d at 1117 (the movant must show that the evidence on which the opposing party relied, even if fraudulent, prevented the movant from fairly presenting its case). Pals has shown that, notwithstanding that ONESCO was not allowed to conduct discovery on the arbitrability issue in this case, ONESCO had access to information well before the court's ruling on September 6, 2007, on which ONESCO could have based its argument concerning the sole relevance of events in February 2005. As Pals has pointed out-and ONESCO has failed to rebut-the SEC and the Megafund Receiver deposed Lancaster on November 17, 2005, and March 25, 2006, and the Receiver sent a copy of the deposition to ONESCO's counsel on May 2, 2007; ONESCO cited that transcript in another court case *on September 6, 2007,* asserting that the transcript showed that the Lancorp investors' funds were actually invested in Megafund in 2005 after Lancaster was no longer associated with ONESCO; ONESCO had received thousands of pages of records from Lancaster in the spring of 2007, which included the 2004 and 2005 letters concerning failure of the Tricom investment and the opportunity to reconfirm investors' participation thereafter in anticipation of the Megafund investment; and the pertinent letters were also produced to ONESCO by other investors in the arbitration proceedings in the fall of 2007.

Under these circumstances, relief pursuant to Rule 60(b)(3) is no more appropriate than relief under Rule 60(b)(2).

### III. CONCLUSION

**\*14** The court finds that ONESCO is not entitled to relief from the court's September 6, 2007, ruling compelling arbitration pursuant to either Rule 60(b)(2) or (b)(3). As to relief pursuant to Rule 60(b)(2), the court concludes that ONESCO has failed to show that its "new" time line evidence, even if material, would probably have led to a different result, where that evidence does not demonstrate that the events on which the court previously relied are immaterial or irrelevant, nor does it plainly prove that the only material events occurred after the end of Lancaster's association with ONESCO. As to relief pursuant to Rule 60(b)(3), the court concludes that ONESCO has failed to prove, by clear and convincing evidence, that Pals or its counsel engaged in any fraudulent activity or, in the alternative, that the declarations on which the court previously relied are actually perjurious, and ONESCO has failed to show that the evidence, even if fraudulent or perjurious, prevented ONESCO from fully and fairly litigating the arbitrability issue, where ONESCO already had access to or could with reasonable diligence have obtained the information on which it now relies prior to the court's original ruling.

THEREFORE, ONESCO's March 5, 2008, Motion For Relief From Judgment Under Civil Rule 60(b) (docket no. 33) is **denied.**

**IT IS SO ORDERED.**

N.D.Iowa,2008.
O.N. Equity Sales Co. v. Pals
--- F.Supp.2d ----, 2008 WL 1993043 (N.D.Iowa)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.