# Exhibit 1

--- F.Supp.2d ---- Page 1
--- F.Supp.2d ----, 2008 WL 2067058 (S.D.W.Va.)
**(Cite as: --- F.Supp.2d ----, 2008 WL 2067058 (S.D.W.Va.))**

O.N. EquitySales Co. v. Gibson
S.D.W.Va.,2008.
Only the Westlaw citation is currently available.
United States District Court, S.D. West Virginia.
The O.N. EQUITYSALES COMPANY, Plaintiff,
v.
Lonnie L. GIBSON, Defendant.
**Civil Action No. 3:07-0362.**

May 15, 2008.

Charles M. Love, III, Fazal A. Shere, Bowles Rice McDavid Graff & Love, Charleston, WV, Marion H. Little, JR., Michael R. Reed, Zeiger Tigges & Little, Columbus, OH, for Plaintiff.
Joel A. Goodman, Goodman & Nekvasil, Clearwater, FL, Stephen P. Meyer, Meyer & Ford, Charleston, WV, for Defendant.

**MEMORANDUM OPINION AND ORDER**

ROBERT C. CHAMBERS, District Judge.
*1 Pending before the Court is Plaintiff's Motion for Relief from Judgment Under Civil Rule 60(b)(2) & (3). (Doc. 46). For the reasons explained below, that motion is **DENIED.**

**Background**

This action ultimately arises from an unfortunate investment and the resulting failure of Lancorp Financial Business Trust ("Lancorp"). Plaintiff, O.N. EquitySales Co. ("ONESCO"), is a full service securities broker dealer, registered in all 50 states and a member of the National Association of Securities Dealers ("NASD"). From March 23, 2004 until January 2, 2005, ONESCO employed non-party Gary Lancaster as an independent contractor and registered representative. Lancaster also served as the Chairman, President, and CEO of Lancorp before, during, and after his employment with ONESCO. Lancorp failed after one of its first major investments (in the Texas based MegaFund) turned out to be a Ponzi scheme.

After the failure of Lancorp, numerous investors filed arbitration actions with the NASD asserting state and federal claims against ONESCO based on its employment and supervision of Lancaster. ONESCO filed actions in district courts across the country in an attempt to avoid arbitration. On October 1, 2007, this Court denied the Plaintiff's motion for a preliminary injunction and granted the Defendant's motion to compel arbitration. *O.N. EquitySales Co. v.. Gibson,* 514 F.Supp.2d 857, 865 (S.D.W.Va.2007). As a result, the parties proceeded to arbitration before the NASD.

The Court's decision to send the parties to arbitration was based on findings pertaining to the existence and scope of an arbitration agreement. *See generally, id.* The Court determined that the NASD Code of Arbitration Procedure served as an existing arbitration agreement between the parties and that the relationship between ONESCO and Gibson fit within the scope of that agreement.[FN1] *Id*. To reach this decision, the Court found Gibson was a customer of ONESCO, within the meaning of the NASD Code, and the dispute arose within a business relationship. *Id.* at 864-65. Plaintiff argues that the factual basis for these decisions has been contradicted by testimony of Lancaster during the NASD arbitration.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-03303-JF   Document 67-2   Filed 05/19/2008   Page 3 of 7

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 2067058 (S.D.W.Va.)
**(Cite as: --- F.Supp.2d ----, 2008 WL 2067058 (S.D.W.Va.))**

Page 2

FN1. To make its decision, the Court relied heavily on the Fourth Circuit Court of Appeals decision in *Washington Square Securities, Inc. v. Aune,* 385 F.3d 432 (4th Cir.2004). In its memoranda, Plaintiff argues that this reliance was misplaced. Having decided that new evidence identified by the Plaintiff is insufficient to justify reconsideration under Rule 60(b) the Court has not reconsidered its prior legal analysis and notes that the legal argument is best addressed during the pending appeal.

The Court found that Gibson could be considered a customer of ONESCO because events that occurred during Lancaster's association with ONESCO would support Gibson's claim. Facts in the record supported this finding. First, although Lancaster began soliciting investors prior to his association with ONESCO, all investments in the company were held in escrow and subject to modification, cancellation, or termination by Lancorp in its sole discretion until a later start-up date. Lancaster swore that this date was May 14, 2004, a time when he was associated with ONESCO. Second, in April of 2004, also a time when Lancaster was associated with ONESCO, Lancorp changed the terms of the investments. Lancaster informed buyers that insurance was no longer available and investments would be guaranteed by a new bank or by broker/dealer obligations; investors were asked to confirm their investments or request withdrawal. In affidavit, Lancaster described this change as material. Third, this Court found it significant that although Gibson made an initial investment in Lancorp before Lancaster was associated with ONESCO, Gibson made a second investment ($30,000) in September of 2004-during the time at which Lancaster was associated with ONESCO. Fourth, the Court found that ONESCO was at least on notice that Lancaster was associated with Lancorp. Finally, this Court noted that the complaint contained sufficient allegations to support claims against ONESCO based on its supervision of Lancaster.

*2 ONESCO now argues that new evidence indicates that the factual basis upon which the Court based its prior analysis is incorrect. It first contends that the May 14, 2004 "effective" startup date was but one of three possible start-up dates and irrelevant to the analysis. The first of the three dates is March 17, 2003-a date listed in a private placement memorandum and circulated by Lancorp with its offerings. This was the date Lancorp was organized and began soliciting investors. The second date, May 14, 2004, was the day on which Lancorp lost discretion to modify or cancel investment agreements and also the day when Lancorp made a deposit with Tricom Securities (an Australian brokerage firm). ONESCO describes a third date it considers effective, February 1, 2005, which was the date when Lancorp invested in MegaFund. Lancorp had recovered its Tricom investment in December 2004-a time at which Lancaster did work for ONESCO. At that time, and continuing until February 2005, Lancaster offered investors an opportunity to obtain a full refund on their investment. In February 2005-after Lancaster was terminated from ONESCO-Lancorp reinvested its funds in MegaFund, the investment which directly resulted in investors' losses. Lancaster's balance and deposit sheets list February 1, 2005 as the investment date and as a start-up date for Lancorp.

ONESCO also contends that the April 2004

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 2067058 (S.D.W.Va.)
**(Cite as: --- F.Supp.2d ----, 2008 WL 2067058 (S.D.W.Va.))**

Case 5:07-cv-03303-JF   Document 67-2   Filed 05/19/2008   Page 4 of 7

Page 3

"material modification" was not material at all. During cross-examination Lancaster testified that he was not able to obtain insurance for investors in Lancorp, but also that only about one-third of investors had chosen insurance. The following exchange then took place:

> Q. And what you communicated in April 2004 is, in fact, there would be no coverage?
>
> A. Correct.
>
> Q. As a practical matter, what you told the investors in this letter is that even though there would be no insurance coverage, you alternatively would have security through the bank, the bank holding the monies?
>
> A. Correct.
>
> Q. And so, functionally, in terms of what the representations were to the investors as to the preservation of the principal, it was-it was the same at all points during the relationship?
>
> A. Correct.

Plaintiff argues that this exchange proves that the April change was not material.FN2

> FN2. In a footnote, Plaintiff also brings up two other facts which it claims were proved false during arbitration: first, Lancaster's disclosure of his involvement with Lancorp to ONESCO; also, that Lancaster received a copy of ONESCO's February 2004 Compliance Manual. These new facts, however, can be quickly dismissed as irrelevant. Lancaster did admit during testimony that the disclosure form, submitted as evidence to this Court, might never have been returned to ONESCO. Other evidence, revealed during arbitration, however, indicates that ONESCO was aware of an overseas brokerage account in Lancorp's name. Defense counsel admitted surprise at Lancaster's admission, and more importantly Plaintiff offers nothing to demonstrate Defendant should have known about the falsity of the previous information. The facts of Lancaster's receipt of ONESCO's compliance manual were never mentioned in the Court's analysis and had no bearing on the decision regarding arbitrability of Gibson's claims.

**Standard of Review**

Federal Rule of Civil Procedure 60(b) provides grounds for relief from a final judgment under limited circumstances. Here, Plaintiff has filed a motion for relief under Rule 60(b) on two grounds. First, Plaintiff argues that the Court should reconsider its prior opinion based on Fed.R.Civ.P. 60(b)(2), which allows relief when there is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Second, Plaintiff argues that it is entitled to relief under Fed.R.Civ.P. 60(b)(3) which allows relief for "fraud ... misrepresentation, or misconduct by an opposing party."

**\*3** The remedy provided by Rule 60(b)"is extraordinary and is only to be invoked upon a showing of exceptional circumstances."*McLawhorn v. John Daniel & Co., Inc.* 924 F.2d 535 (4th Cir.1991) (internal quotations omitted). In seeking relief from judgment, "the movant assumes the burden of showing a meritorious defense against

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 2067058 (S.D.W.Va.)
(Cite as: --- F.Supp.2d ----, 2008 WL 2067058 (S.D.W.Va.))

Case 5:07-cv-03303-JF   Document 67-2   Filed 05/19/2008   Page 5 of 7

Page 4

the claim on which judgment was entered as a threshold condition to any relief whatsoever under the Rule."*Id.* (internal quotations omitted).

Relief based on newly discovered evidence, under Rule 60(b)(2) requires a party to show,

> (1) the evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the new evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended.

*Boryan v. U.S.,* 884 F.2d 767, 771 (4th Cir.1989).

To prevail on a Rule 60(b)(3) motion the movant must satisfy the following test:

> (1) the moving party must have a meritorious defense; (2) the moving party must prove misconduct by clear and convincing evidence; and (3) the misconduct prevented the moving party from fully presenting its case. After proof of these elements, the court must balance the competing policies favoring the finality of judgments and justice being done in view of all the facts, to determine within its discretion, whether relief is appropriate in each case.

*Schultz v. Butcher,* 24 F.3d 626, 630 (4th Cir.1994) (internal quotations omitted).

**Discussion**

**I. New Evidence Identified by ONESCO Is Neither Material nor Likely to Produce a New Outcome if the Case Were Retried**

ONESCO fails the test for relief from judgment under Rule 60(b)(2) because new evidence that it has uncovered during arbitration is not material and thus is unlikely to produce a new outcome if the case were retried. The relevant provision of the NASD Code-which serves as an arbitration agreement between the parties-states,

> Any dispute, claim, or controversy eligible for submission under Rule 10100 Series between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code, as provided by any duly executed and enforceable written agreement or upon the demand of the customer.

NASD Code of Arbitration Procedure, Rule 10301(a).

Rule 10301 thus establishes two conditions for arbitration: (1) the dispute must be between a customer and a member or a person associated with a member; (2) the dispute must have arisen in connection with the business of such member or in connection with the activities of such associated person. *See Washington Square Sec., Inc. v. Aune,* 385 F.3d. 432, 436 (4th Cir.2004)( *"Washington Sq."); Wheat, First. Sec., Inc. v. Green,* 993 F.2d 814 (11th Cir.1993). For guidance on the interpretation of these provisions, this Court looked to the precedent of *Washington Sq.* In *Washington Sq.,* the Fourth Circuit Court of Appeals held that investors could compel arbitration with an NASD member based on the actions of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 2067058 (S.D.W.Va.)
(Cite as: --- F.Supp.2d ----, 2008 WL 2067058 (S.D.W.Va.))

Case 5:07-cv-03303-JF    Document 67-2    Filed 05/19/2008    Page 6 of 7

Page 5

an independent agent who was involved in allegedly illegal activities related to outside business opportunities. This Court thus held that "[b]ecasue of the many facts linking Gibson to Lancaster during the time he was employed by ONESCO ..." Gibson should be considered a customer for purposes of arbitration. *O.N. EquitySales Co. v. Gibson,* 514 F.Supp.2d 857, 865 (S.D.W.Va.2007). This Court also relied on *Washington Sq* . to find that the connection between Gibson and ONESCO "[arose] in connection with the business of such a member" due to the allegations of ONESCO's negligent supervision of Lancaster. *Id.*

**\*4** The new facts uncovered by ONESCO would do little to change the Court's analysis. There were significant developments in Lancorp's relationship with its investors, and specifically Gibson, that occurred during the time Lancaster was associated with ONESCO. Gibson made a substantial investment, $30,000, with Lancorp after Lancaster became associated with ONESCO. At the time of its ruling the Court knew that there was a disagreement regarding the extent to which Lancaster disclosed his involvement with Lancorp to ONESCO. Nonetheless, the Court found that there was evidence ONESCO knew about Lancaster's association with Lancorp. This fact remains true. The date of May 14, 2004 remains significant in terms of the investment agreement between Lancorp and its investors. It was upon this date that Lancorp lost the ability to modify, terminate, or cancel its offering and the obligation between Lancorp and its investors became mutual. Finally, although Lancaster later discounted the importance of the April 2004 change in terms, it is clear that this change remains relevant. At the time Lancaster considered it important enough to

warrant a confirmation of investments in Lancorp.

In summary, there are a number of events which occurred during Lancaster's association with ONESCO and these may turn out to be significant on the merits of Gibson's claim against ONESCO. Mindful of its role not to become involved with the merits of the case, the Court remains convinced that this matter has properly been submitted to arbitration. *See AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650 (1986) ("The courts, therefore, have no business weighing the merits of the grievance ...") (internal quotations omitted).

**II. ONESCO Is Not Entitled To Relief Under Rule 60(b)(3) for Fraud or Misrepresentation**

To support its claim for relief under Rule 60(b)(3) Plaintiff argues that Defendant's counsel "manipulated the NASD and judicial processes in order to force an NASD member firm into arbitration where it has no agreement to arbitrate."Pl.'s Mem. in Supp. of Mot. for Relief from J. Under Civil Rule 60(b)(2) & (3) at 2. Allegedly, Defendant's counsel orchestrated a scheme that was successful in duping nearly twenty district courts across the country into forcing ONESCO to arbitrate despite the absence of an arbitration agreement. Counsel, supposedly, carried out this scheme by procuring false declarations in Lancaster's affidavits and then vigorously opposing discovery, which might have illuminated the falsity of the declarations. One is left only to wonder what such a master of deception has in store for the arbitration panel who must now decide the merits of the case.

Plaintiff is compelled to paint such a dast-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 2067058 (S.D.W.Va.)
(Cite as: --- F.Supp.2d ----, 2008 WL 2067058 (S.D.W.Va.))

Case 5:07-cv-03303-JF   Document 67-2   Filed 05/19/2008   Page 7 of 7

Page 6

ardly picture of Defendant's counsel because fraud or misrepresentation on the part of Lancaster himself is not enough for relief from judgment under Rule 60(b)(3); the fraud must come from the opposing party (or opposing party's counsel). A careful look, however, reveals that none of the alleged misrepresentations support the allegations of fraud or misconduct on the part of Defendant's counsel.

**\*5** As described in the previous section, the May 14, 2004 start-up date for Lancorp remains significant as the point in time when obligations on the offering became mutual. Both parties were aware that a different start-up date-March 17, 2003-was listed on the private placement memorandum. Moreover, both parties were aware (and ONESCO argued to this Court) that the actual investment in MegaFund was made at a time when Lancaster was no longer associated with ONESCO. The only potentially relevant information regarding an effective date unknown to ONESCO was Lancaster's offer to return investor's money after funds were recovered from Tricom. ONESCO, however, offers nothing more than vague accusations that defense counsel should have known about this date. This is insufficient to support relief from judgment under Rule 60(b)(3).

Regarding the April 2004 change in terms, the only difference from the time of this Court's original decision to the present is Lancaster's opinion about that change. Though he swore in affidavits that the change was material and later testified that he thought the underlying protection offered to investors was unchanged, this is not sufficient for fraud. In affidavit and in testimony Lancaster stated that the change in terms was from an insurance backed investment to security through a bank obligation. Lancaster's description of the changed terms never deviated, simply his opinion about the importance of the change.

In summary, ONESCO has done nothing to demonstrate fraud on the part of the opposing party. Although Plaintiff has made Defendant's counsel a villain in an intriguing story, there is nothing to demonstrate that it is anything more than fable.

### Conclusion

For the reasons stated, Plaintiff's motion for relief from judgment under Rule 60(b) (Doc. 45) is **DENIED.** The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

S.D.W.Va.,2008.
O.N. Equity Sales Co. v. Gibson
--- F.Supp.2d ----, 2008 WL 2067058 (S.D.W.Va.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.